MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
JACOB B. EBIN (*pro hac vice forthcoming*)
*jebin@mayerbrown.com*
ALLISON AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:   (212) 506-2500
Facsimile:   (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
MEERIM A. NEHME (SBN 322234)
*mnehme@mayerbrown.com*
350 S. Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:   (213) 625-0248

[*Additional counsel listed on signature page*]

Attorneys for Counterclaimant
PANDORA MEDIA, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Master File No.: 2:22-cv-00809-MCS-MAR<br><br><u>CONSOLIDATED ACTION</u><br><br>**DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO WORD COLLECTIONS' REQUEST FOR JUDICIAL NOTICE**<br><br>Filed concurrently with Pandora's Opposition to Motion to Dismiss and Pandora's Opposition to Plaintiffs' Joinder in Motion to Dismiss<br><br>Date:   August 29, 2022<br>Time:   9:00 AM<br>Crtrm:  7C - First Street Courthouse<br>            350 W. 1st Street, 7th Floor<br>            Los Angeles, CA 90021 |

Counterclaimant Pandora Media, LLC (Pandora) respectfully submits the following memorandum of points and authorities in opposition to Counterclaim Defendant Word Collections, Inc.'s (WC) request for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.[1] Specifically, Pandora asks the Court to deny WC's request as to portions of Exhibit C[2] and Exhibits D and E in their entirety, on the ground that WC improperly asks the Court to consider documents that were not referenced in—much less central to—Pandora's counterclaims and are not properly the subject of judicial notice.

**INTRODUCTION**

In connection with its motion to dismiss, WC asks the Court to take judicial notice of the following three documents:

- Exhibit C, an email and select attachments thereto allegedly sent by the CEO of WC.
- Exhibit D, alleged printouts from Spoken Giants' Website Homepage.

---

[1] WC has neither filed its request for judicial notice as a separate motion from its motion to dismiss nor included it as part of its memorandum of points and authorities on the motion to dismiss (which would have put the memorandum several pages over the limit). Given the page restrictions, Pandora is treating the request for judicial notice as a separate motion and responding accordingly. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). While WC has met and conferred with Pandora regarding its motion to dismiss, it failed to meet and confer with Pandora regarding this request for judicial notice and should be admonished accordingly. *See, e.g.*, *Taraska v. Swedelson*, 2021 WL 4734872, at *2 (C.D. Cal. Aug. 24, 2021) (J. Scarsi) (denying a motion to strike and a request for judicial notice based on failure to adequately meet and confer); *Caldera v. J.M. Smucker Co.*, 2013 WL 6987905, at *1-2 (C.D. Cal. June 3, 2013) (striking a motion to enjoin when plaintiff mentioned but did not discuss the substance of the motion as part of a larger meet and confer regarding a class certification motion).

[2] Pandora does not object to the request for judicial notice of the proposed blanket license, which is Attachment 3 to Exhibit C. Throughout this brief, "Exhibit C" is used to mean the entirety of Exhibit C as attached to WC's Request for Judicial Notice (ECF No. 49-1), except for Attachment 3 to Exhibit C.

- Exhibit E, excerpts from a transcript of a former employee of Pandora's predecessor, not the Defendant, testifying before the Copyright Royalty Board in an unrelated matter.

For the reasons set forth below, the Court should deny WC's request for judicial notice as to Exhibits C, D, and E and disregard these exhibits in considering WC's motion to dismiss.

## LEGAL STANDARD

When assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, district courts are generally not permitted to consider material outside of the pleadings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). As an exception, courts "may, however, consider certain materials," notably "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Pursuant to Federal Rule of Evidence 201, a court may only take judicial notice of relevant facts that are "not subject to reasonable dispute" because the facts are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Derosa v. ViacomCBS Inc.*, 2021 WL 1235039, at *2-3 (C.D. Cal. Mar. 3, 2021) (J. Scarsi).

Because judicially-noticed facts are binding on the parties, "[c]are must be taken that Rule 201 not be used as a substitute for more rigorous evidentiary requirements and careful factfinding." *Korematsu v. U.S.*, 584 F. Supp. 1406, 1415 (N.D. Cal. 1984). On a motion to dismiss, a court may not take judicial notice of facts favorable to the defendant if those facts may be reasonably disputed. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Irrelevant facts also should not be taken under judicial notice. *DoorDash, Inc. v. City & Cnty. Of San Francisco*,

2022 WL 867254, at *4 (N.D. Cal. March 23, 2022) (citing *Khoja*, 899 F.3d at 1000 n.5).

## ARGUMENT

The Court should not take judicial notice of Exhibits C, D, and E—or otherwise consider them in deciding WC's motion to dismiss—because they are not referenced in the pleadings, nor are they relevant to the motion itself. For the reasons below, the Court should deny WC's request for judicial notice of Exhibits C, D, and E.

**I.   The Court Should Not Take Judicial Notice of Exhibit C.**

WC improperly attempts to introduce an email thread and attachments that are neither referenced in the pleadings nor relevant to its motion to dismiss in order to improperly push disputed factual arguments.[3] Exhibit C contains an email and attachments allegedly sent by WC's CEO, Jeff Price, to individuals at Pandora. ECF No. 49-1 at 2. While WC claims "Pandora's Counterclaims incorporate these documents by reference," *id.* at 4, nowhere in the cited portions of the counterclaims does Pandora mention (let alone discuss) Mr. Price's email, the attached alleged notice of potential infringement, or the attached legal memorandum advocating WC's views regarding the copyright claims. As noted above, Pandora does not oppose the Court's consideration of Attachment 3 to Exhibit C—WC's proposed license agreement—because that document was referenced in the counterclaims, unlike the remainder of Exhibit C.

By contrast, the cases cited by WC take judicial notice of documents that are "repeatedly referenced" (*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 2012 WL 202664, at *4 n.4 (S.D. Cal. Jan. 23, 2012)) or "referred to extensively" (*Byron v. Maduros*, 2020 WL 70835, at *1 n.1 (C.D. Cal Jan 6, 2020)

---

[3] WC admits that an additional attachment was omitted from Exhibit C "because it is not directly relevant to the motion to dismiss." ECF No. 49-1 at 4, n.1. However, WC fails to explain how the email or its other attachments are relevant to the motion.

(citing *Ritchie*, 342 F.3d at 908)). There are no such "repeated" or "extensive" references to Exhibit C in the pleadings, and WC makes no argument that the Court should take judicial notice of Exhibit C on other grounds. In order to take judicial notice of a document not referenced in the pleadings, a court must find that there is another basis for judicial notice. *Synergy Project Mgmt. v. City & Cty. of San Francisco*, 2018 WL 2234596, at *1 (N.D. Cal. May 16, 2018). There is no such basis here. Exhibit C is not relevant to WC's motion to dismiss, and the Court should accordingly decline to take judicial notice of the document. *Lockandlocate, LLC v. Hiscox Ins. Co., INC*, 549 F. Supp. 3d 1093, 1099 (C.D. Cal. 2021) (J. Scarsi) (declining to take judicial notice of two exhibits "because it is unnecessary for the purposes of ruling on this motion").

**II.     The Court Should Not Take Judicial Notice of Exhibit D.**

WC attempts to introduce a document that it characterizes as a printout of the home page from the Spoken Giants website as proof that Spoken Giants is "another 'global rights administration company for the owners and creators of Spoken Word copyrights', including comedians and their estates." ECF No. 49 at 20 n.8 (citing Ex. D). First, this alleged fact is not relevant to whether Pandora sufficiently pled its counterclaims, and judicial notice should be denied on this basis alone. *PG&E v. Lynch*, 216 F. Supp. 2d 1016, 1025 (N.D. Cal. 2002) ("A judicially noticed fact may not be subject to reasonable dispute and must be relevant"). The existence of a second licensing cartel is not referenced anywhere in Pandora's counterclaims and is therefore wholly irrelevant to whether the allegations, taken as true, state a plausible claim. Additionally, even if facts outside the pleadings were properly considered, the existence of a second licensing cartel is not relevant to whether WC has violated the antitrust laws, especially where the exclusive nature of each cartel necessarily means, from the perspective of users of comedy, the two cartels are not competitive substitutes. Instead, their respective licenses would be complements. The Department

of Justice has said the same about ASCAP and BMI, the very two licensing collectives that WC touts as its model. Counterclaims ¶¶ 16, 44, 61; Brief for the United States at 25, *U.S. v. BMI*, No. 00-6123 (available at https://www.justice.gov/atr/case-document/file/489861/download) (2d Cir. June 26, 2000) ("Their relationship vis-a-vis users may be more accurately described as co-monopolists in the sale of blanket licenses"); Brief for the United States as Amicus Curiae at 1-2, *American Society of Composers, Authors, and Publishers v. DMX, Inc.*, No. 11-127, 2011 WL 1836821 (S.D.N.Y. May 6, 2011) (stating that ASCAP and BMI have "significant market power" because "no bulk user of music can operate without licenses for works from both," prompting the government to bring antitrust suits against them "[t]o cabin the exercise of their power"); *see also Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 188-89, 218-19 (S.D.N.Y. 2014) (explaining that ASCAP, BMI, and SESAC "have repertories of copyrighted music that are exclusive of one another" and "[t]ogether . . . account for virtually every copyrighted musical composition in the United States and its territories," leading to stations "overwhelmingly" and "consistently" purchasing blanket licenses from all three organizations); *U.S. v. BMI (In re Application of Music Choice)*, 426 F.3d 91, 96 (2d Cir. 2005) ("As we held with respect to ASCAP, rate-setting courts must take seriously the fact that they exist as a result of monopolists exercising disproportionate power over the market for music rights.").

Second, it is improper to take judicial notice of information on a third-party website as its accuracy cannot be adequately determined. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (holding that "information appearing on the third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination"). Courts should be reluctant to take judicial notice of facts on a private webpage because there is no oversight of such posting and the posting of a "fact" on a webpage does not necessarily make it

1  true. *Knight v. Std. Ins. Co.*, 2008 WL 343852, at *2 n.2 (E.D. Cal. Feb. 6, 2008).
2  Websites are a company's marketing tool, on which "anyone can say anything," and
3  courts should thus be wary of finding judicially noticeable facts among all the
4  material on the website. *Id.* at *2 n.2 (citing *Victaulic 25 Co. v. Tieman*, 499 F.3d
5  227, 237 (3d Cir. 2007)).

6  The cases cited by WC are inapposite. *Perkins v. LinkedIn Corp.*, 53 F. Supp.
7  3d 1190, 1205 (N.D. Cal. 2014) involved a screenshot of a webpage directly
8  referenced in the complaint; moreover, the request for judicial notice was unopposed.
9  So too in *Tromble v. W. Digital Corp.*, 2021 WL 2165796 at *1 n.2 (N.D. Cal. May
10 7, 2021), the other case cited by WC, where the request for judicial notice was
11 unopposed. WC's failure to meet-and-confer with Pandora in advance of its filing
12 does not render the Request unopposed.

13 Even when webpages are subject to judicial notice, "[t]he truth of the contents
14 of … [a] Web site [is] not [a] proper matter[] for judicial notice." *All One God Faith,*
15 *Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 107 Cal. Rptr. 3d 861, 870 n.12
16 (Cal. Ct. App. 2010). Judicial notice can only be used to establish that a website was
17 publicly available, and not to establish facts from the content of the webpage. *Spy*
18 *Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp.3d 755, 762 (C.D. Cal. 2015). The
19 existence of the webpage is neither referenced in Pandora's counterclaims nor
20 relevant to WC's motion to dismiss, and WC makes no argument to the contrary. The
21 Court should therefore decline to take judicial notice of Exhibit D.

22 **III.    The Court Should Not Take Judicial Notice of Exhibit E.**

23 WC asks the Court to take judicial notice of testimony from a separate and
24 unrelated proceeding involving a former employee of Pandora Media, Inc., an entity
25 that is not Pandora and is at best a predecessor Pandora, as evidence of Pandora's
26 existing business objectives and current positions as they relate to this case. ECF No.
27 49 at 16-17 n.6. The testimony in Exhibit E is not from an officer of Pandora,
28

referenced in Pandora's pleadings, nor is it in any way relevant to determining whether Pandora has sufficiently pleaded its antitrust counterclaims, and the Court should decline to take judicial notice for that reason alone. *See, e.g.*, *PG&E*, 216 F. Supp. 2d at 1025; *DoorDash*, 2022 WL 867254, at *4 (citing *Khoja*, 899 F.3d at 1000 n.5).

WC also improperly references the substantive content of the testimony rather than the fact of its existence. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) (noting that "[f]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice") (overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (stating that "[a]s a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"). Even if the Court were to take judicial notice of the fact that a former employee of a predecessor of Pandora testified in a 2017 rate-setting proceeding, it would be improper to take judicial notice of the alleged facts contained within that testimony. *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *5 (C.D. Cal. Dec. 11, 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."). The cases cited by WC further support this principle. *See Anschutz Corp. v. Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 834 (N.D. Cal. 2011) (in which the court only took judicial notice of the existence of the testimony at issue—not the facts asserted therein); *Diaz v. Carlson*, 5 F. Supp. 2d 809, 814 n.4 (C.D. Cal 1997) (same).

Beyond the procedural impropriety of what WC seeks to do with witness testimony from an unrelated proceeding, Pandora further takes issue with WC's substantive mischaracterization of that testimony. In an apparent effort to legitimize

its price-fixing conspiracy through which WC set a single fixed price for everything in its catalog, WC cites this testimony in support of the nonsensical proposition that Pandora actually wants a fixed price, rather than prices set by the forces of competition. Specifically, WC asserts "Pandora has stated in rate-setting proceedings that it does not want a royalty structure with non-static per play fees because that would create a perverse incentive for Pandora to limit the amount of hours of streaming its users consume . . . ." ECF No. 49 at 17 n.6. The cited testimony in no way supports WC's claim. As an initial matter, WC grossly misrepresents the cited testimony, which does not discuss "non-static per-play fees" at all. Rather, the testimony distinguished—crucially in the context of a blanket license created by statute—between a fixed per-play fee structure, which the predecessor of Pandora was apparently opposed to, and a percentage-of-revenue fee structure, which it was advocating for.[4]

      Moreover, the context of the regulated rate proceeding from which WC pulled this testimony is fundamentally different from that of the counterclaims at issue here. The testimony WC cites is from a 2017 Copyright Royalty Board ("CRB") proceeding, in which the CRB is charged with setting industry-wide statutory royalty rates and terms for so-called "mechanical" license fees to be paid by qualifying streaming services to all musical works rightsholders. 17 U.S.C. § 115. It involves a rate-setting standard explicitly designed to reign in the market power of those musical works rightsholders. *See, e.g.*, *Determination of Royalty Rates and Terms for Making and Distributing Phonorecords (Phonorecords III)*, 84 Fed. Reg. 1918, 1933 (2019) ("the so-called shadow [of the rate-setting proceeding] imbues licensees with countervailing power, to offset or mitigate the bargaining power of licensors who

---

[4] It is not clear how WC thinks this cited testimony is helpful to its motion. The per-play rate structure that the predecessor of Pandora was opposed to in the cited testimony is precisely the fee structure that WC has insisted on in the license it is demanding that Pandora take.

- 8 -

otherwise have the ability to threaten to 'walk away' from negotiations and thus decimate the licensees' businesses. The Judges find merit in this perspective, because it underscores the fact that a purpose of the compulsory license is to prevent the licensor from utilizing or monetizing the ability to 'walk away' as a cudgel to obtain a better bargain.") (remanded for further proceedings on other grounds).

This *regulated* proceeding has no bearing whatsoever on Pandora's counterclaims, in which it challenges the *unregulated* licensing tactics of WC and its co-conspirator comedians. First, there is no congressionally mandated rate-setting proceeding applicable to literary works rights like there is for musical works rights. Second, literary works rights licensing fees are not set on an industry-wide basis, nor is there any reason that they should be. Absent anticompetitive behavior like that engaged in by WC and its co-conspirator comedians, the licensing of any underlying comedic work would continue to occur pursuant to long-standing industry custom and practice (and, if not, in a competitive market in which comedians would compete on price to have their material streamed). Counterclaims ¶¶ 35, 41-43, 46. ECF No. 34. Third, the efficiencies from collectively licensing musical works (pursuant to regulation to lessen the anticompetitive problems associated with such collective licensing) are simply not present with comedy. *Id.* at ¶¶ 44-45. There is no reason to license comedy on a collective basis, nor has WC or any of the individual comedians articulated any basis for doing so. And finally, the musical works rightsholders are only able to negotiate on a collective basis because there is an express antitrust exemption provided by Congress in the governing statute allowing them to do so, and that is only because of the existence of regulatory backstop: a rate-setting court that can be turned to in the event of a negotiating impasse. 17 U.S.C. § 115(c)(1)(D). There is no similar exemption (or related regulation) applicable to WC, its comedian co-conspirators, or literary works rightsholders.

In short, WC's use of this cited testimony is procedurally improper, grossly

mischaracterizes the testimony, and, in any event, is entirely irrelevant to the counterclaims at issue.

## CONCLUSION

For the reasons set forth above, WC's request for judicial notice as to Exhibits C, D, and E should be denied.

Dated: August 5, 2022

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DANIEL D. QUEEN
MEERIM NEHME


By: */s/ Paul M. Fakler*
　　Paul M. Fakler


MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
wstallings@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC