KING & BALLOW
Richard Busch (SBN 319881)
*rbusch@kingballow.com*
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

*Attorney for Plaintiffs/Counter-*
*Defendants Yellow Rose Productions,*
*Inc.; Main Sequence Ltd.; Ron White,*
*Inc.; Robin Williams Trust; Brave Lion,*
*Inc.; Nick Di Paulo; and Mary Reese*
*Hicks; and Plaintiff Lewis Black*

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
350 S. Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248
MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Attorneys for Defendant/Counter-*
*Claimant Pandora Media, LLC*

BIRD, MARELLA, BOXER,
WOLPERT, NESSIM,
DROOKS, LINCENBERG &
RHOW, P.C.
Oliver Rocos (SBN 319059)
*orocos@birdmarella.com*
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

CRAVATH, SWAINE & MOORE LLP
Christine A. Varney (*pro hac vice*)
*cvarney@cravath.com*
Lauren A. Moskowitz (*pro hac vice*)
*lmoskowitz@cravath.com*
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1140
Facsimile: (212) 474-3700

*Attorneys for Counter-Defendant*
*Word Collections, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR <u>CONSOLIDATED ACTION</u> |
| This Document Relates To: ALL ACTIONS | **JOINT RULE 26(f) REPORT** <br> Date:     August 29, 2022 <br> Time:    9:00 a.m. <br> Honorable Mark C. Scarsi <br> Courtroom: 7C |

1

Pursuant to Federal Rule of Civil Procedure 26(f), Central District of California Local Rule 26-1, and this Court's May 6, 2022 Order, counsel for Plaintiffs/Counterclaim Defendants YELLOW ROSE PRODUCTIONS, INC., on behalf of Bill Engvall; MAIN SEQUENCE, LTD.; RON WHITE, INC., on behalf of Ron White; ROBIN WILLIAMS TRUST; BRAVE LION, INC., on behalf of Andrew Clay Silverstein a/k/a Andrew Dice Clay; NICK DI PAOLO, individually and on behalf of ACID TONGUE, INC.; MARY REESE HICKS, individually and on behalf of ARIZONA BAY PRODUCTION CO. INC.; and LEWIS BLACK, individually and on behalf of Stark Raving Black Productions, Inc. (collectively, the "Comedians"); counsel for Counterclaim Defendant Word Collections, Inc. ("Word Collections"); and counsel for Defendant/Counterclaim Plaintiff Pandora Media, LLC ("Pandora") met and conferred on August 5, 2022 and hereby submit this Joint Report.

**A.    Statement of the Case**

*Comedians' and Word Collections' Statement:*

These are straightforward copyright infringement cases. There are two copyrights involved in the recorded performance of a literary copyrighted work: a copyright in the sound recording, and a separate copyright in the underlying spoken word composition. Pursuant to 17 U.S.C. §§ 106 and 204 of the Copyright Act of 1976, copyright owners in literary works have the exclusive right to, among other things, reproduce, distribute, license, and publicly perform their works. Anyone wishing to obtain the right to distribute or perform these works must get a license from the respective copyright owner to both the recording and underlying literary work, and pay agreed-to royalties. The failure to do so constitutes copyright infringement. There are further only two elements necessary to prove copyright infringement: (1) ownership in the copyrighted work, and (2) copying or otherwise infringing on an exclusive right of a copyright owner. Pandora has been knowingly and willfully reproducing, distributing, and publicly performing the Comedians'

works within the limitations period, and are therefore liable for copyright infringement. Comedians seek in this action actual damages, and profits attributable to the infringement, or in the alternative the maximum amount allowable for willful copyright infringement: $150,000 per copyrighted work.

Faced with this undeniable infringement, Pandora is playing a game of misdirection and subterfuge. It constantly trumpets its irrelevant paying of royalties for the recordings as if that somehow alleviates the need to pay for the underlying literary works, and has asserted a baseless antitrust claim against the Comedians because they hired Word Collections as an administrator, and Word Collections then put Pandora on notice of a decade of infringement and at the same time proposed a license for the forward use of the Comedians' literary works. For this alleged conduct, Pandora seeks treble damages for defending these actions, and invalidation of the Comedians' copyrights. Yet, if the Comedians prevail, it is they who are entitled to their attorneys' fees for bringing these actions. Further, what Pandora nowhere says, or even intimates, is that the copyright infringement claims are not supported by the law. That is because even Pandora cannot say that with a straight face. Pandora's counterclaims and defenses are therefore baseless, and should not require an extended discovery schedule,

These actions are, in fact, not complicated. These actions do not need sixteen months of discovery as Pandora proposes. Indeed, they are far less complicated than a typical copyright infringement case where one would find dueling musicologists. Here, the facts are straightforward: Comedians own their copyrights, and Pandora streamed those literary works knowing it did not have a license. The Court should not indulge Pandora in its attempt to delay and drive up the cost of this litigation unnecessarily.

The operative pleadings are the Amended Consolidated Complaint, filed April 26, 2022; Pandora's Answer to the Plaintiffs' Amended Consolidated Complaint,

filed May 5, 2022; and Pandora's Counterclaims to Plaintiffs' Amended Consolidated Complaint, filed May 5, 2022 (the "Counterclaims"). Word Collections disputes Pandora's Counterclaims in their entirety. Word Collections moved to dismiss the Counterclaims by motion dated July 15, 2022, and the Comedians joined in that motion the same day. The motion to dismiss will be fully briefed on August 17, 2022 and has been set for argument on August 29, 2022.

*Pandora's Statement:*

Comedians are, and always have been, paid for streaming on Pandora's platform.  Pandora has always licensed the necessary rights to stream these comedy performances, as an integrated part of the comedy sound recordings performed under license, pursuant to long-standing industry custom and practice.  Pandora secures all the rights from the owner of the final end product—the record labels that create the comedy recordings.  These record labels contract with comedians to create the comedy recordings, secure all the necessary rights, and pass along those rights to many different end users, including Pandora.  This is how comedy rights have always been licensed and it is an efficient licensing regime that works well for all involved. Every other copyright-based industry—except the dysfunctional music industry— works this way.  Indeed, every other business that performs or distributes comedy material, including broadcasters, cable networks like HBO, video streaming services like Netflix, and live performance venues, works this way.  All of these businesses have been performing or distributing comedy material for decades without separately licensing the underlying jokes as "literary works" or otherwise.

In an effort to introduce the music industry's unique dysfunction into the comedy-licensing market, a group of comedians and their heirs have been persuaded by a new cartel—Word Collections—to try to upend decades of settled licensing practice.  To that end, Plaintiffs have now joined together through Word Collections and jointly demanded to be paid by Pandora yet another fee—in addition to the

royalties they already receive for the performance of their comedy recordings (and in addition to all of the promotional benefits that Pandora provides)—for alleged rights to the underlying jokes in the admittedly-licensed recordings. In other words, Plaintiffs—who have long competed against each other for plays by Pandora and other streamers and broadcasters of comedy recordings—and Word Collections have formed a price-fixing cartel.

Pandora's existing licenses, consistent with decades of industry custom and practice noted above, provide a complete defense to Plaintiffs' copyright claims. Nonetheless, Pandora has now removed Plaintiffs' recordings from its service pending the resolution of this litigation.  And to the extent any of its licenses were deemed technically insufficient to provide any of the necessary rights to the underlying jokes for past periods, various other defenses apply to shield Pandora from Plaintiffs' claims, including estoppel, waiver, and fair use.  Plaintiffs' scheme, coordinated with and through Word Collections, to eliminate competition and fix prices for their alleged rights also supports copyright misuse and unclean hands defenses.  Pandora also has reason to believe that at least some of Plaintiffs' copyright registrations are either invalid or do not cover the rights asserted in the Complaint, and that some of the comedy routines—to the extent they have a separate copyright at all—have been injected into the public domain by publication without notice and other failures to observe applicable formalities.

Moreover, Pandora has filed antitrust-law counterclaims against these Plaintiff comedians as well as Word Collections to stop their anticompetitive licensing tactics. Specifically, Word Collections has facilitated a horizontal price fixing conspiracy by and among its affiliated comedians (including the Plaintiffs) by consolidating the rights of otherwise competing comedians, eliminating all possibility of price competition between those comedians, taking exclusive control over the licensing of those rights, setting a single fixed price for all of those rights, and making those rights

available to Pandora (and others) exclusively on a blanket all-or-nothing basis. These licensing tactics force entities like Pandora to take this blanket license at dramatically inflated rates or forgo streaming comedy altogether. Worse, by taking control of not only the Plaintiffs' rights but also those of many other high-profile (and other) comedians, Word Collections is making its portfolio a "must-have" for any entity that wants to offer a viable comedy product. In doing so, Word Collections has obtained for itself monopoly power over services like Pandora. These actions Word Collections and its affiliated comedians have taken are paradigmatic violations of the antitrust laws. Word Collections and Plaintiffs are engaging in price fixing, anticompetitive tying, monopolization/attempted monopolization, and conspiracy to monopolize, all so as to gain and exert market power and/or monopoly power over services like Pandora, supplanting historic practice with supra-competitive licensing fees, of which Word Collections, as the cartel's ringleader, takes a substantial cut.

**B.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over the Amended Consolidated Complaint pursuant to 28 U.S.C. § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C. § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*).

Pandora's counterclaims allege anticompetitive behaviors in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 *et seq*. As such, these counterclaims are subject to the jurisdiction of this Court under 28 U.S.C. §§ 1331,1337; 15 U.S.C. §§ 15 and 26; and 15 U.S.C. §§ 1 and 2.

**C.    Legal Issues**

*Comedians' Description of the Principal Legal Issues:*

As stated above, this is a simple case for copyright infringement. As such, the principal legal issues include Comedians' ownership of the literary works, whether Pandora has infringed Comedians' copyrights, whether such infringing activity was

willful, and the amount of damages recoverable due to Pandora's infringements. Although Comedians and Word Collections have moved to dismiss Pandora's counterclaims, should any portion of the counterclaim survive, an additional legal issue would be whether Comedians' enforcement of their constitutional rights constitutes an antitrust violation.

*Pandora's Description of the Principal Legal Issues:*

This case involves questions of law and fact regarding whether:

- Plaintiff comedians have maintained a separate copyright in the underlying jokes and comedy routines related to the Works referenced in their consolidated complaint.

- Plaintiff comedians, or their affiliated companies, have legal standing to bring the copyright claims in the consolidated complaint.

- Any of Plaintiffs have injected any of the Works into the public domain by publishing them without a valid copyright notice, to the extent those Works were published at a time when such notice was mandatory.

- Pandora's conduct, including but not limited to reliance on decades of industry custom and practice, amounted to infringement of any alleged copyrightable interest in those Works.

- Pandora has valid existing express or implied licenses to use the Works as part of the licensed sound recordings at issue.

- Plaintiff comedians' actions related to the Works amount to copyright misuse, unclean hands, abandonment, waiver, authorization, or any other defense raised by Pandora sufficient to bar the claims of infringement in whole or in part.

- Plaintiff comedians and/or Counterclaim Defendant Word Collections engaged in horizontal price-fixing; anticompetitive tying; monopolization; attempted monopolization; conspiracy to monopolize;

or any other anticompetitive conduct in violation of the Sherman Antitrust Act.

This case also involves disputed legal and factual questions regarding Plaintiffs' and Pandora's alleged damages, including:

- How many statutory damages awards may be claimed where the Works referenced in the consolidated complaint were all published as contributions to collective works and derivative works.

- How actual damages would be quantified where the evidence shows that the incremental fair market value for the rights alleged are zero because comedians outside of the Word Collections and Spoken Giants cartels include those rights within the licenses for sound recording rights with no separate or additional payment beyond the license fees for the sound recordings.

- Quantification of the harm to Pandora's service from Word Collections and the Counterclaim-defendants' anticompetitive actions.

_Word Collections' Description of the Principal Legal Issues:_

The key legal issues with respect to the Counterclaims are (1) whether Pandora has Article III and antitrust standing to bring its claims; (2) whether the _Noerr-Pennington_ doctrine bars the Counterclaims; (3) whether Pandora's failure to seek individual licenses before initiating antitrust claims is fatal to its Counterclaims; (4) whether the Comedians and Word Collections possess market power within a relevant market; (5) whether the Comedians and Word Collections have entered into a conspiracy in violation of the antitrust laws; (6) whether, to maintain its tying claim, Pandora is required to prove that the alleged tying and tied products are in two separate product markets; and (7) whether on balance, Word Collections' licensing model is anticompetitive or, because of its efficiencies and ability to effectuate rights

1  protected under the copyright laws, is procompetitive and thus not violative of the

2  antitrust laws.

3  **D.    Parties, Evidence, Etc.**

4      _Comedians' Statement:_[1]

5      Comedians believe that the following individuals have relevant information

6  pertaining to the issues relevant to the Consolidated Complaint:  Bill Engvall;

7  Corporate representative(s) of MAIN SEQUENCE, LTD.; Ron White; Trustee(s) of

8  the ROBIN WILLIAMS TRUST; Andrew Clay Silverstein; Nick Di Paolo; Mary

9  Reese Hicks; Lewis Black; Benjamin Brewer (Executive Producer, Stark Raving

10 Black); Jeff Price (CEO, Word Collections); Eric Goldberg (VP of Business Affairs,

11 Word Collections); Jim King (CEO, Spoken Giants); Brenner McDonald (Member,

12 Lackey McDonald); Jaesan Subramaniam (Associate General Counsel, Pandora); Iain

13 Morris (VP, Music Licensing and Head of Publishing, Pandora); David Ring

14 (Assistant General Counsel, Chief Music Counsel, Pandora); Adam Parness (former

15 Head of Publisher Licensing and Relations, Pandora); Daniel Walvick (Senior

16 Corporate Counsel, Music, Pandora); Patrick Donnelly (Executive VP & General

17 Counsel, Sirius XM Radio Inc.). In addition to those parties identified, Comedians

18 anticipate that additional witnesses will be identified as discovery proceeds.

19     Key documents will include email communications among and between the

20 individuals named above, including:

21         • Emails from Comedians, Comedians' representatives, or Word

22             Collections personnel to Pandora requesting proof of a license or

23             payment for literary works used;

24

25

---

26     [1] Plaintiff Lewis Black is not currently a counter-defendant. Counsel for Pandora

27 however stated that Pandora would be moving to add Mr. Black as a counter-
defendant, and also bring in Spoken Giants as a third-party defendant.

28

- Emails putting Pandora on notice of its unauthorized use of copyrights held by Comedians;
- Emails between Word Collections and Pandora personnel regarding a potential licensing plan;
- Internal Pandora communications regarding Pandora's use of literary works;
- Internal Pandora communications regarding Pandora's practices of reproducing literary works on its services;
- Internal Pandora communications regarding Pandora's practice of obtaining (or not obtaining) licenses to reproduce literary works on its services;
- Internal Pandora communications regarding Word Collections' offer to license Comedians' works to Pandora;
- Internal Pandora communications regarding the preparation of Pandora's 10(k) disclosures;
- Pandora's usage data pertaining to the sound recordings encompassing the works at issue; and
- SoundExchange data pertaining to royalties received for Pandora's exploitation of the sound recordings encompassing the works at issue.

With respect to the Counterclaims, Comedians incorporate Word Collections' statement below.

*Pandora's Statement:*

As noted in its Corporate Disclosure Statement and Notice of Interested Parties (ECF No. 15), Pandora is a wholly owned subsidiary of Sirius XM Radio Inc. Sirius XM Radio Inc. is a wholly owned subsidiary of Sirius XM Holdings Inc., a public corporation. Approximately 82% of the outstanding common stock of Sirius XM

Holdings Inc. is owned, directly or indirectly, by Liberty Media Corporation, also a public corporation.

Pandora believes that the following individuals or categories of individuals have relevant information pertaining to the issues relevant to the Consolidated Complaint, Pandora's Answer and Defenses, or the Counterclaims: Jack Vaughn (Sr. VP In Charge Of Comedy at Pandora's parent company, Sirius XM); George White (Sr. VP Music Licensing at Sirius XM/Pandora); each Plaintiff comedian and/or the corporate entity listed as representing Plaintiff comedians, and one or more of each such entity's relevant employees, officers, board members, or trustees; representatives of various record companies that have released recordings featuring the Plaintiff comedians; representatives of various television and cable networks that have produced, distributed, or performed audiovisual recordings featuring the Plaintiff comedians; representatives of various live performance venues that have hosted live performances of the Works; various comedians, other than Plaintiffs, who are affiliated with, or formerly affiliated with, Word Collections or Spoken Giants; any individual or entity that has the authority to negotiate or use the copyrights asserted in this action; Word Collections, and one or more of its relevant employees, officers, board members, committee members and trustees, including, but not limited to CEO Jeff Price, Co-founder Robert Kohn, and VP Business Affairs Eric Goldberg; and Spoken Giants, and one or more of its relevant employees, officers, board members, committee members and trustees, including, but not limited to CEO Jim King.  In addition to those parties identified, Pandora anticipates that additional witnesses will be identified as discovery proceeds.

Key documents will include:

- Plaintiff comedians' copyright registration certificates and any other documents or communications related to registration or application for registration of copyright claims to the at-issue comedy recordings.

- The license agreements between Pandora and each source for the at-issue comedy recordings.

- The license agreements between Pandora (or Sirius XM to the extent the agreement also applies to Pandora) and any record companies, labels, or aggregators that license any comedy recordings.

- Communications with any record companies, labels, or aggregators regarding the licensing of comedy recordings.

- Communications with any comedians regarding the licensing or use of comedy routines on Pandora.

- Documents relating to any efforts made by comedians or their representatives to have their comedy performed on Pandora.

- Communications or agreements between Plaintiff comedians and entities that stream, broadcast, perform, distribute, or reproduce comedy content concerning the at-issue comedy recordings.

- Communications with Word Collections or Spoken Giants.

- Documents reflecting public statements made by representatives of Word Collections or Spoken Giants.

- Communications or agreements between Word Collections and Spoken Giants.

- Documents concerning the marketing or promotion of comedy on Pandora.

- Documents concerning the licensing requirements for the use of comedy on Pandora.

- Documents relating to royalties paid for the use of comedy recordings by Pandora.

- Documents relating to the Comedy Genome Project.

- Documents pertaining to Pandora's damages, including litigation costs

and the costs associated with degrading comedy offerings on its platform.

*Word Collections' Statement:*

Word Collections believes that the following individuals have relevant information pertaining to the issues relevant to the Counterclaims:  Jeff Price (CEO, Word Collections); Eric Goldberg (VP of Business Affairs, Word Collections); Jeffrey Levy (Partner, Ritholz Levy Fields LLP); Bob Kohn (Chairman & CEO, Laugh.com, Inc.); Jaesan Subramaniam (Associate General Counsel, Pandora); Iain Morris (VP, Music Licensing and Head of Publishing, Pandora); David Ring (Assistant General Counsel, Chief Music Counsel, Pandora); Adam Parness (former Head of Publisher Licensing and Relations, Pandora); Daniel Walvick (Senior Corporate Counsel, Music, Pandora); and Patrick Donnelly (Executive VP & General Counsel, Sirius XM Radio Inc.). In addition to those parties identified, Word Collections anticipates that additional witnesses will be identified as discovery proceeds.

Key documents will include email communications among and between the individuals named above, including:

- Emails from Word Collections personnel to Pandora requesting proof of a license or payment for literary works used;
- Emails putting Pandora on notice of its unauthorized use of copyrights held by Word Collections' clients;
- Emails between Word Collections and Pandora personnel regarding a potential licensing plan;
- Internal Pandora communications regarding Pandora's use of literary works as well as any estimations of their value;

- Internal Pandora communications regarding Pandora's practices of reproducing literary works on its services, including any descriptions of differences in exploitations across the services;
- Internal Pandora communications regarding Pandora's practice of obtaining (or not obtaining) licenses to reproduce literary works on its services, including the terms of any such licenses;
- Internal Pandora communications regarding Word Collections' offer to license its clients' works to Pandora, including any value estimates or cost-benefit analyses; and
- Pandora's communications with Performance Rights Organizations.

For conflicts purposes, Word Collections states that it has no parent corporation, subsidiaries or affiliates.

**E.     Damages**

*Comedians' Statement:*

It is not possible at this time to provide an accurate estimate of actual damages or profits attributable to the infringement until financial discovery is completed.

On the other hand, given the willful nature of Pandora's infringement, Comedians will be seeking the statutory maximum of $150,000 per infringed work under the Copyright Act.

*Pandora's Statement:*

Pandora is seeking both injunctive relief and monetary damages, the quantifying of which will be the subject of expert discovery. Pandora currently anticipates that those monetary damages will include the harm to Pandora arising out of the efforts of Word Collections and its co-conspirator comedians (including the Plaintiffs) to impose their anticompetitive licensing regime on Pandora, including, but not limited to, the harm to Pandora from having to degrade its comedy offering and

from having to defend against lawsuits whose purpose is to force a change to historic custom and practice and impose a new and anticompetitive licensing regime.

> *Word Collections' Statement:*

Word Collections disputes that Pandora has suffered any legally cognizable damages and that Pandora is entitled to any injunctive relief.

**F.    Insurance**

The parties are not aware of any insurance coverage for the claims and Counterclaims in this action.

**G.    Motions**

> *Comedians' Statement:*

There are other putative Plaintiffs with whom Plaintiffs' counsel has been in discussion. Therefore, if further related cases are filed, a motion to consolidate those cases into this action may be sought. Furthermore, Comedians intend to file a motion for summary judgment related to their copyright claims as well as the Counterclaims. In addition, Comedians intend to file a motion, if necessary, to try the Counterclaims separately from the underlying copyright litigation.

> *Pandora's Statement:*

Pandora currently plans to file an amended Answer to address any amendments to the Consolidated Complaint, including to address the complaint brought on behalf of Lewis Black as well as any other complaints that may be brought on behalf of additional comedians or their heirs in the future. Pandora also currently plans to file amended counterclaims to add Lewis Black and Spoken Giants—the cartel that purports to license his rights as well as those of many other comedians—as counterclaim defendants.

It is currently Pandora's intent to allege antitrust counterclaims against Spoken Giants and Lewis Black as part of a cartel separate from the Word Collections cartel that is the subject of the current counterclaims. However, without the benefits of

discovery, Pandora has already found public statements made by Word Collections' and Spoken Giants' co-founders and CEOs, Jeff Price and Jim King respectively, comparing their organizations to the heavily regulated music licensing organizations ASCAP and BMI and referencing common objectives.  Pandora anticipates that, after fact discovery, it may amend its counterclaims to allege that Word Collections, Spoken Giants, as well as potentially other individuals, are colluding with each other as part of an overarching conspiracy across the two cartels.

Pandora intends to bring summary judgment motions concerning Plaintiffs' copyright infringement cause of action as well as each cause of action alleged in the antitrust counterclaims.  Moreover, Pandora anticipates moving to consolidate all of Plaintiff comedians' actions as well as Pandora's antitrust counterclaims for trial. Subject to further discovery, Pandora does not currently anticipate seeking to add other parties or claims or move to transfer venue.

*Word Collections' Statement:*

To the extent that Pandora implies a conspiracy between Word Collections and Spoken Giants, and/or between Word Collections and unidentified "other individuals" to "collud[e] with each other as part of an overarching conspiracy across the two cartels", Word Collections objects to Pandora's vague and conclusory language and disputes that Pandora has any reasonable basis for its assertions. Word Collections does not anticipate additional motion practice at this time other than (1) a motion to dismiss if Pandora files amended Counterclaims; (2) a motion for summary judgment against the Counterclaims; and (3) a motion, if necessary, to try the Counterclaims separately from the underlying copyright litigation and separately from any counterclaim against Spoken Giants and Lewis Black.

**H.     Dispositive Motions**

   *Comedians' Statement:*

   Comedians intend to move for summary judgement or summary adjudication following the close of expert discovery (or possibly after the close of fact discovery), with regard to their copyright infringement claims as well as the Counterclaims.

   *Pandora's Statement:*

   Subject to further discovery, Pandora anticipates bringing summary judgment motions concerning Plaintiffs' copyright infringement cause of action.  Pandora also anticipates moving for summary judgment on each cause of action alleged in the Counterclaims concerning Plaintiff/Counterclaim Defendants' violations of the Sherman Antitrust Act.

   *Word Collections' Statement:*

   Word Collections intends to move for summary judgment or summary adjudication following the close of expert discovery (or possibly after the close of fact discovery), including as to the existence of a conspiracy, attempt to monopolize, and actual monopolization.

**I.     Manual for Complex Litigation**

   Apart from the procedures regarding consolidation of related actions, the parties do not believe that the Manual for Complex litigation should be used in this case.

**J.     Status of Discovery**

   The parties will serve initial disclosures on August 19, 2022.

   *Comedians' Statement:*

   Comedians are actively drafting responses to Pandora's requests for production, as well as drafting their own requests for production, requests for admission, and interrogatories, which they anticipate serving on Pandora in due course.

*Pandora's Statement:*

Pandora has already commenced written discovery by serving Requests for Production of Documents on each Plaintiff comedian—including Lewis Black—as well as Counterclaim Defendant Word Collections on August 10, 2022.  As noted above, Pandora also anticipates filing amended counterclaims to include Spoken Giants and anticipates serving similar discovery requests upon that entity once those claims are filed and Spoken Giants is a proper party in this litigation.

*Word Collections' Statement:*

Word Collections is diligently drafting responses to Pandora's requests for production, and anticipates serving its own requests for production on Pandora in due course.

**K.    Discovery Plan**

*Comedians' Statement:*

Given that the case is not yet at issue and the full scope of legal issues is not presently known, the parties cannot yet determine the full scope of discovery necessary in this matter. Nevertheless, Comedians do not propose changes to the disclosures required under Federal Rule of Civil Procedure 26(a) or alterations to any limitations. Comedians do not believe that discovery should be conducted in phases or be otherwise limited. Comedians anticipate that the subjects on which discovery may be needed with respect to the Consolidated Complaint include Pandora's practices of reproducing copyrighted literary works on its services; Pandora's practices regarding obtaining (or not obtaining) licenses to reproduce copyrighted literary works on its services; and Pandora's usage data and revenue derived from its exploitation of the Comedians' copyrighted works. Comedians believe the Court should enter a protective order and ESI protocol after the parties have met and conferred on proposed terms and submitted proposed orders to the Court.

Regarding the subjects on which discovery may be needed with respect to the Counterclaims, Comedians incorporate Word Collections' statement below.

### *Pandora's Statement:*

Pandora agrees with Plaintiff comedians and Word Collections that no changes appear necessary to the disclosures required under Federal Rule of Civil Procedure 26(a). However, in consideration of the fact that Pandora is the sole Defendant facing claims by eight—and potentially even more—separate Plaintiffs, Pandora requests this Court preemptively increase the 10 deposition limitation in Rule 30 to allow Pandora to take 25 depositions without requiring leave of this Court. Pandora also requests that this Court consider future requests to raise that limitation if necessary given the potential for an as-of-now unknown increase in the number of Plaintiff comedians, as well as the extensive third-party discovery that will be necessary in this case due to the relevance of various third-party record companies, audiovisual works distributors, comedians, and others with information necessary to Pandora's various defenses and counterclaims.

Other than the bifurcation between fact and expert discovery anticipated by this Court's Schedule Worksheet, discovery does not need to proceed in separate phases. As noted above, Pandora does intend to conduct extensive third-party discovery from record labels; from entities that stream, broadcast, perform, distribute, or reproduce Plaintiff comedians' content concerning the at-issue comedy recordings; and from other comedians and their representatives. This could include a number of record labels, comedy clubs, streaming services, or comedians. It is likely that such discovery will be extensive, but the full extent will not be clear until after party discovery has been substantially completed.

Moreover, and as Plaintiff comedians concede, the scope of this case is still uncertain, including the actual number of additional Plaintiff parties that may be joined in the future. Pandora's obligations to first attempt retrieval of relevant

documents from parties to this litigation, the likelihood that the number of plaintiffs may continue to grow, and the number of potential third-party subpoena recipients all suggest that the discovery period should extend beyond the parameters of those typically set. Pandora's requests are reflected in the Schedule Worksheet attached to this Report.

Pandora has already begun to serve written discovery on all current parties as noted in Section J above. The subjects of Pandora's discovery include Plaintiff comedians' efforts to create, register, license, protect, or otherwise use the alleged works; Word Collections'—and eventually Spoken Giants'—formation and efforts to collectively license comedy; and the extent of joint efforts and coordination between and among Plaintiff comedians, Word Collections, and Spoken Giants.

Finally, Pandora proposed at the meet and confer the need for entry of a stipulated protective order and ESI protocol. The parties agreed on both, including to adapt Magistrate Judge Rocconi's template protective order, modified to include a multi-tiered confidentiality system separating designations for documents to be viewed by the parties only from designations for documents appropriate for review only by outside counsel.

*Word Collections' Statement:*

Word Collections does not propose changes to the disclosures required under Federal Rule of Civil Procedure 26(a) or alterations to any limitations. Word Collections does not believe that discovery should be conducted in phases or be otherwise limited. Word Collections anticipates that the subjects on which discovery may be needed with respect to the Counterclaims include Pandora's practices of reproducing copyrighted literary works on its services; Pandora's practices regarding obtaining (or not obtaining) licenses to reproduce copyrighted literary works on its services; and Pandora's communications with Performance Rights Organizations.

Word Collections also anticipates seeking discovery from non-parties, including as to their licensing practices and course of dealing with Pandora and with the Comedians.

Word Collections opposes Pandora's "preemptive" request for an additional 15 depositions and a blank check for more in the future "if necessary". The Court should reject both requests as premature at this early juncture. The parties can meet and confer about the necessary number of depositions after they have an opportunity to reasonably consider the likely scope of party and non-party discovery and then present a meaningful proposal to the Court. Pandora may well decide that the core facts for each Comedian are similar enough that it can proceed on written discovery and depose only one or two of the Comedians, instead of obtaining duplicative deposition testimony from each one (Pandora itself implies below in Section O that such testimony would be duplicative).

Word Collections believes the Court should enter a protective order and ESI protocol after the parties have met and conferred on proposed terms and submitted proposed orders to the Court.

**L.   Discovery Cut-Off**

*Comedians' Statement:*

Despite a good faith attempt to agree, the parties disagree on the amount of time necessary for discovery. As discussed above, Comedians believe these to be straightforward copyright infringement actions, and have suggested a fact discovery cut-off of May 26, 2023.

*Pandora's Statement:*

Confoundingly, Plaintiffs flag an unknown number of additional plaintiffs that may yet be consolidated with this litigation, yet suggest an expedited schedule for fact discovery. They also persist in claiming this a "straightforward" copyright infringement case, but in doing so completely ignore Pandora's various defenses and counterclaims, which raise a multitude of complex legal and factual issues.  This

Court's Schedule Worksheet anticipates that trial—and subsequent discovery deadlines that flow in relation to that requested trial date—in normal cases be tethered to the complaint filing. But Pandora is still apparently susceptible to untold additional complaints that have yet to be filed. Each such potential plaintiff may also be susceptible to additional antitrust counterclaims. Moreover, as noted above, Pandora anticipates extensive third-party fact discovery into the efforts and related agreements Plaintiff comedians entered into with various third parties concerning the asserted works. Such discovery is also relevant to a variety of Pandora's asserted defenses including copyright misuse.

Pandora's proposed schedule accounts for the complexities identified above. It anticipates that the Court will require an Amended Consolidated Complaint to include (at least) Lewis Black within one week of the August 29, 2022 scheduling conference. Further, given the large and potentially increasing number of parties and counterclaims, and thus the amount of necessary discovery, Pandora's proposed schedule sets an anticipated trial date 24 months from this Amended Consolidated Complaint and other deadlines consistent with that requested trial date. For the reasons noted above, Pandora respectfully submits that its requested six-month extension of the Court's standard discovery period is appropriate so that it can present the Court with an adequate record in support of its defenses and counterclaims.

*Word Collections' Statement:*

Word Collections does not anticipate that the Counterclaims will require lengthy discovery, and so agrees with Comedians' fact discovery cut-off date of May 26, 2023. Recognizing that no one has an unlimited claim on the Court's time, and out of respect for the other matters pending before this Court, Word Collections requests that the Court deny Pandora's proposed fact discovery cut-off. The parties do not need such an extended period of time to gather information subject to discovery; this litigation can and should proceed at a faster pace so that the

Counterclaims can be promptly disposed of (should they survive past the pleadings stage). Pandora's threat to file antitrust counterclaims against any additional plaintiff who is consolidated in this action underscores Pandora's efforts to weaponize the antitrust laws against valid copyright infringement litigation and the benefit of addressing such counterclaims sooner rather than later.

**M.     Expert Discovery**

*Comedians' Statement:*

Comedians propose June 28, 2023 as the date for initial expert disclosures, July 28, 2023 as the date for rebuttal expert disclosures, and August 15, 2023 as the expert discovery cut-off date.

*Pandora's Statement:*

Subject to Pandora's discussion of an extended discovery period in Sections K & L above, Pandora proposes February 5, 2024 as the date for initial expert disclosures, March 4, 2024 as the date for rebuttal expert disclosures, and April 1, 2024 as the expert discovery cut-off date.

*Word Collections' Statement:*

Word Collections recognizes that antitrust cases that manage to survive motions to dismiss often require expert analyses. At this early stage, Word Collections agrees with the Comedians' proposed expert discovery deadlines, with the caveat that these dates may need to be revisited.

**N.     Settlement Conference / Alternative Dispute Resolution**

The parties have not engaged in any meaningful settlement discussion. The parties agree to participate in a mediation. Pandora prefers a mediation with a mediator selected from the Court's Panel, and proposes that mediation only take place after the close of fact discovery. Comedians and Word Collections prefer a private mediation.

**O.    Trial Estimate**

*Comedians' Statement:*

For the reasons set forth in Comedians' response to the Court's Order to Show Cause re: Joinder, Docket Number 13, and Section S below, Comedians are opposed to these cases being consolidated for trial and estimate that each trial will last approximately four days depending on the exact issues before the jury.

*Pandora's Statement:*

Pandora notes that there is significant overlap in the evidence that will be introduced at trial in connection with the various claims in the consolidated complaint, and the counterclaims that were brought jointly against Word Collections and Plaintiffs.  Moreover, evidence of the collective efforts of Plaintiff comedians, Word Collections, and Spoken Giants to impede competition in the market for licensing the at-issue comedy works will also be directly relevant to the antitrust counterclaims as well as several of Pandora's copyright infringement defenses, including misuse and unclean hands.  In the interest of preserving both this Court's and Pandora's resources, the best course of action would be to continue consolidation of these cases including through trial instead of having eight or more separate trials with the same witnesses and evidence presented over and over again to different juries.  Pandora estimates such a consolidated trial would exceed ten days and may last up to fourteen days.

*Word Collections' Statement:*

Assuming that any trial Word Collections might be a part of will be as to the Counterclaims only, Word Collections estimates five days of court time for trial of the Counterclaims.

**P.    Trial Counsel**

Richard Busch will serve as lead trial counsel for Comedians.

Paul Fakler will be lead trial counsel for Pandora.

Lauren Moskowitz will be lead trial counsel for Word Collections.

1  **Q.     Independent Expert or Master**

2        The parties do not believe at this time that an independent expert or master

3  should be appointed to this case.

4  **R.     Schedule Worksheet**

5        The parties have completed the scheduling form attached to the Court's Order

6  regarding this Joint Rule 26(f) Report and have attached the completed form hereto.

7  **S.     Other Issues**

8        *Comedians' Statement:*

9        Pandora has stated that it intends to request all Comedians' cases be

10 consolidated for trial. Comedians vehemently oppose such a request, as each

11 Comedian's case is fact-specific, the eight individual Comedians would be unduly

12 prejudiced by consolidation, a consolidated trial would result in jury confusion, and a

13 joinder of trial is not supported by the law as explained in Comedians' response to the

14 Court's Order to Show Cause re: Joinder, Docket Number 13. Moreover,

15 consolidating the cases for trial would allow defendants to introduce evidence that

16 may otherwise be deemed inadmissible at separate trials; as such, having one trial

17 would likely necessitate empaneling multiple juries. Further, we do not yet know how

18 many plaintiffs will ultimately file similar actions against Pandora.

19        With respect to Plaintiff Lewis Black, Comedians propose that Pandora file an

20 answer with respect to solely that action for purposes of expediency and efficiency,

21 in order to get the matter at issue. To the extent that further plaintiffs file similar

22 actions against Pandora, Comedians' counsel will take reasonable efforts to file

23 consolidated complaints as possible and necessary, such that Pandora may file

24 consolidated responses as necessary.

25        Moreover, to the extent any antitrust claims survive to the trial stage,

26 Comedians assert that the antitrust claim should be separated from Comedians'

27 copyright claims, as it would be unfairly prejudicial to Comedians and needlessly

28

confusing to the jury to include antitrust issues in each of the copyright infringement trials.

   *Pandora's Statement:*

   Plaintiffs concede in this Report that they do not know how many additional Plaintiff comedians may yet be added to this litigation.  Pandora respectfully suggests that this necessitates a plan for how to handle such additional claims.  As Plaintiff comedians' counsel is in the best position to anticipate the actual number of comedians that might yet be added, it is incumbent on them to accurately represent what that number may be to this Court and when such claims might be filed.  Pandora proposes that this Court either set a deadline by which new Plaintiff comedians might be added and consolidated with this case or allow for the continued extension of Pandora's anticipated trial schedule to accommodate the continually shifting needs for potential counterclaims and all related discovery.  Pandora also suggests staying any like claims brought after this Court-imposed deadline subject to resolution of this litigation.

   As noted above, Pandora anticipates that full consolidation through trial will be necessary as Plaintiff comedians, Word Collections, and Spoken Giants' joint efforts will necessarily produce similar evidence and be relevant to both Pandora's defenses as well as its asserted Counterclaims against all such parties.  Moreover, Plaintiffs have not articulated any specific undue prejudice they would suffer from having the claims and counterclaims tried in a consolidated trial.  Indeed, multiple trials related to the joint misconduct of Plaintiffs and Word Collections—relevant to the counterclaims as well as Pandora's copyright misuse and other defenses to Plaintiffs' infringement claims—would create, not eliminate, the possibility of inconsistent verdicts and other harms, in addition to the obvious inefficiencies created by multiple trials.

*Word Collections' Statement:*

Word Collections and Comedians are currently investigating potential antitrust claims against Pandora and its parent, Sirius XM Holdings Inc. If brought, these claims likely would be appropriately brought as part of or related to this case.

Word Collections agrees with Comedians' assessment of prejudice from jointly trying the copyright and antitrust claims at issue. A jury presented with evidence of the lawful exercise of exclusive rights granted by the copyright law and of the alleged unlawful exercise of anticompetitive power could easily blur the distinction between legitimate copyright enforcement and illegitimate use of monopoly power (or misuse of copyrights). There is very little overlap between the underlying copyright claims and Pandora's antitrust Counterclaims: the former require evidence of the validity of the copyrights and their ownership, and of Pandora's unauthorized use of the copyrights; the latter require, *inter alia*, evidence supporting a relevant product market definition; Word Collections' and the Comedians' supposed market power within that relevant market; the anticompetitive exercise of that market power; direct or indirect evidence of conspiracy. Bifurcation would simplify the issues before the jury, reduce confusion and help the Court manage the volume and complexity of evidence presented to the jury. Word Collections joins the Comedians' request for separate trials should the Counterclaims survive that far, and thus, believes a single trial on Pandora's antitrust claims should take place separately and after the copyright actions are tried.

1

Dated: August 15, 2022                         KING & BALLOW

2

3                                              By: ___/s/ Richard S. Busch___

4                                                  Richard S. Busch

5                                              Attorneys for Plaintiffs/Counter-
                                               Defendants
6                                              YELLOW ROSE PRODUCTIONS,
                                               INC.; MAIN SEQUENCE, LTD.; RON
7                                              WHITE, INC.; ROBIN WILLIAMS TRUST;
                                               BRAVE LION, INC.; NICK DI PAOLO;
8                                              AND MARY REESE HICKS; and Plaintiff
9                                              LEWIS BLACK

10

11
Dated: August 15, 2022                         MAYER BROWN LLP
12

13                                             By: ___/s/ Paul M. Fakler___

14                                                 Paul M. Fakler

15                                             Attorneys for Defendant/Counter-Claimant
                                               PANDORA MEDIA, LLC
16

17
Dated: August 15, 2022                         CRAVATH, SWAINE & MOORE LLP
18

19                                             By: ___/s/ Lauren A. Moskowitz___

20                                                 Lauren A. Moskowitz

21                                             Attorneys for Counter-Defendant
                                               WORD COLLECTIONS, INC.
22

23

24

25

26

27

28

JOINT 26(F) REPORT

Dated: August 15, 2022

BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.

By: ___/s/ Oliver Rocos_____

Oliver Rocos

Attorney for Counter-Defendant

WORD COLLECTIONS, INC.

## ATTESTATION

Pursuant to Local Rule 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  August 15, 2022

KING & BALLOW

By: ___/s/ Richard S. Busch_____

Richard S. Busch

Attorneys for Plaintiffs/Counter-Defendants
YELLOW ROSE PRODUCTIONS, INC.; MAIN SEQUENCE, LTD.; RON WHITE, INC.; ROBIN WILLIAMS TRUST; BRAVE LION, INC.; NICK DI PAOLO; AND MARY REESE HICKS; and Plaintiff LEWIS BLACK

29