Richard S. Busch - SBN 319881
rbusch@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Attorney for Plaintiffs/Counterclaim Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Master File No. 2:22-cv-00809-MCS-MAR<br><br><u>CONSOLIDATED ACTION</u><br><br>**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' JOINDER IN MOTION TO DISMISS BY COUNTERCLAIM CODEFENDANT WORD COLLECTIONS, INC.**<br><br>Date:   August 29, 2022<br>Time:   9:00 a.m.<br>Crtrm.: 7C - First Street Courthouse<br>            350 W. 1st Street, 7th Floor,<br>            Los Angeles, California 90012<br><br>Assigned to Hon. Mark C. Scarsi |

The Comedians' Joinder Motion and Memorandum of Points and Authorities in support thereof (the "Joinder Motion") is neither a "regurgitation" of the Amended Consolidated Complaint nor a "backdoor" attempt to amend the operative pleading. (Joinder Opp. 4.) It is in fact a complete Joinder to Word Collections' Motion to Dismiss and Memorandum of Points and Authorities (the "WC Motion") as discussed below, and contains, among other salient points: (1) a direct response to Pandora's counterclaims, as well as a discussion of the fatal deficiencies in Pandora's pleading, and (2) a brief discussion of the actual copyright law to directly respond to Pandora's attempt at misdirection and subterfuge with respect to the royalties Pandora pays to license only sound recordings. The Orwellian double-speak of Pandora's Opposition is both mind-numbing and telling, and demonstrates how Pandora clearly concocted baseless antitrust claims to try to avoid infringement liability.

Take just a few examples: on the one hand, in its Joinder Opposition, Pandora says that the validity of this copyright litigation is irrelevant to the antitrust claims (Joinder Opp. 5-6), but on the other hand says that its damages result from having to defend the copyright infringement actions, and it seeks treble damages, and an Order prohibiting the Comedians from relying on their copyrights to pursue these actions. (Counterclaims ¶¶ 1, 30, 82-83.) On the one hand, Pandora says that Word Collections prevents it from entering into individual licenses with the Comedians (Counterclaims ¶¶ 47, 52, 53, 63, 77, 82), but on the other hand never claims that it attempted to do so either before Word Collections arrived or after. On the one hand, Pandora says it does not need licenses for the Works (Pandora Opp. 3), while on the other hand it complains that the licenses for the Works would cost too much. (Pandora Opp. 18.) And on the one hand, Pandora trumpets how much it pays to license *recordings* (Pandora Opp. 6), while on the other hand it completely ignores the law that separately

requires licensing and payment for **the Works**, the *literary works* at issue in these actions.[1]

First, the copyright law set forth in the Comedians' Joinder Brief (at page 4), which Pandora utterly ignores, and the facial validity of these copyright infringement claims, is directly relevant to Pandora's antitrust claims. There is no suggestion by Pandora that the law set forth by the Comedians is wrong. There is simply no law to suggest that the filing of valid copyright infringement actions can be the basis of antitrust damages. Indeed, the law is to the contrary: as set forth in the WC Motion,

---

[1] In footnote 2 of its Joinder Opposition, Pandora complains that the Comedians falsely attribute the creation of the alleged custom and practice of not paying Comedians for the streaming of their Works to Pandora when in fact such practice allegedly goes back for "decades" predating Pandora. This is absolute *ipse dixit*, and clearly false. Streaming was a nascent industry in the 2000s. Physical album sales, and then iTunes permanent downloads beginning in 2004, were the dominant form of distribution. Streaming began 2011 at just 7% of all record distributions. *See generally* Jem Aswad, *Music Streaming Soared from 7% to 80% of U.S. Market in the 2010s, RIAA Stats Show*, Variety, Dec. 31, 2019, https://variety.com/2019/biz/news/music-streaming-soared-2010s-decade-riaa-1203454233/. Comedians were absolutely paid mechanical royalties for exploitation of literary works in physical sales, and in permanent downloads when sold by iTunes. The difference is that record labels were responsible for paying those mechanical royalties. Interactive streaming did not become a real business until the launch of Spotify in 2011. *See* Ben Sisario, *New Service Offers Music in Quantity, Not by Song*, New York Times, July 13, 2011, https://www.nytimes.com/2011/07/14/technology/spotify-music-streaming-service-comes-to-us.html . Unlike with physical sales, and digital sales by iTunes, Pandora and the other streaming companies have the burden of licensing literary works and paying the reproduction royalties (mechanical royalties) and public performance royalties for uses on their streaming platforms. It is those entities who decided the cost was too high, and decided to risk not licensing and paying what the law requires. They created the custom and practice Pandora now relies on.

the authority is overwhelming that fees spent defending litigation is not sufficient for antitrust damages.[2]

It is therefore true that the antitrust remedies sought by Pandora (preventing Plaintiffs from enforcing their copyrights, and awarding treble damages for fees) are absolutely "inane" in light of the filing of these copyright infringement actions. (Pandora Opp. 5-6.) Pandora cannot and does not deny that it broadcasted and interactively streamed the Works for a decade before Word Collections ever showed up with notice of infringement and a Proposed License (Ex. C to Moskowitz Decl.). Pandora also does not deny that it never sought any individual license from any Comedian before or since filing its Counterclaims. Not only is there zero authority to even suggest that an infringer can defeat valid copyright infringement cases under these circumstances, much less obtain the remedies Pandora seeks, but as explained in the WC Motion, Pandora's failure to seek any individual license for a decade or request one in response to the Proposed License sent by Word Collections is fatal to its antitrust claims. *Nero AG v. MPEG LA, LLC*, No. 10-cv-3672-MRP-RZ, 2010 WL 4366448, at *6 (C.D. Cal. Sept. 14, 2010); *see also Nat'l Cable Television Ass'n v. BMI*, 772 F. Supp. 614, 634 (D.D.C. 1991) (holding that "realistically available alternatives" to a "blanket license" existed where "plaintiffs failed to show that they made any serious efforts to obtain" an alternative license).

Indeed, and most tellingly, Pandora justifies its request for relief asking the Court to declare the Comedians' copyrights unenforceable by clarifying that the relief sought is "until such time as . . . the effects of the violations have dissipated." (Counterclaims Prayer for Relief § (f).) But that begs the question. What continuing antitrust behavior are the Comedians alleged to be committing? There is only one action: individually hiring Word Collections as each one's representative for licensing

---

[2] Indeed, if successful in the copyright infringement litigation, either Plaintiffs or Pandora may seek attorneys' fees under 17 U.S.C. § 505 as the prevailing party.

and the collection of royalties. So if the Comedians terminate their agreement with Word Collections, the counterclaims would be dismissed?[3] But it should not have to come to that, as there is no authority requiring it, and again, Pandora does not plead that it ever sought an individual license for the Works *at any time*, not before, and not after the Word Collections letter, and it likewise nowhere pleads that any Comedian (or Word Collections for that matter) rejected a request for an individual license. That is because Pandora actually does not want a license for the Works. It wants to continue as it has, merrily infringing with no repercussions. These counterclaims are about one thing: chilling these valid actions.

Relatedly, Word Collections raised the *Noerr-Pennington* doctrine as an independent ground to dismiss Pandora's counterclaim. This doctrine has an exception for "sham" litigation." 4 Nimmer on Copyright § 13.09 (2022). The law cited by the Comedians, and ignored by Pandora, shows conclusively that this litigation is anything but a sham. Pandora does not claim otherwise. The exclusive right to control an artistic work is enshrined in the very constitution. U.S. CONST. art. I, § 8, cl. 8. There is, therefore, a privileged constitutional right to file lawsuits to enforce those exclusive rights, and the filing of facially valid copyright claims cannot be the basis for antitrust damages or claims. The reason is simple, as pointed out in the Comedians' Joinder Motion: to allow otherwise would be to chill the Comedians

---

[3] Pandora also fails to plead that the Comedians are unable to easily terminate their agreements with Word Collections, a failure which fatally undermines Pandora's argument that it has been harmed because Word Collections "locked up" the Comedians (Pandora Opp. 8). *See Sanofi-Aventis U.S., LLC v. Mylan, Inc. and Mylan Specialty, LP*, No. 21-3005, 2022 WL 3273055, at *21 (10th Cir. July 29, 2022) ("It is axiomatic that short, easily terminable exclusive agreements are of little antitrust concern; a competitor can simply wait for the contracts to expire or make alluring offers to initiate termination.").

from proceeding with these actions, and scare others from joining, which is again at the root of these counterclaims.[4]

Second, Pandora goes to great lengths to discuss how amazing it is for licensing recordings and paying **sound recording** royalties. Pandora, however, again, is completely silent about licensing or paying for the Works, the **literary works** at issue in this case. Comedians have made no claim as to the separate copyrightable sound recordings in which their literary works were embodied. It is as if Pandora is living in an alternate reality where the United States Copyright Law, as discussed herein and in detail in the Joinder Motion, does not exist.[5]

Finally, Pandora complains that the Joinder Motion does not explicitly say that the Comedians are similarly situated with Word Collections, and does not cite legal authority for the points it makes, so that Pandora is "left to guess how and why" the

---

[4] Pandora spends nearly an entire page building the straw-man argument that the Comedians argue the Counterclaims are "late." The Comedians do not contend that the Counterclaims are procedurally late, but rather point out that Pandora's antitrust claims were only filed in response to these lawsuits, more than a year after the notice of infringement and proposed license was sent and ignored, and that this shows the pre-textual basis for the counterclaims.

[5] Pandora brazenly suggests that, because it claims to have licensed *sound recordings*, and paid sound recording royalties, that it should be deemed to have also magically licensed the Works, and refers to a so-called "custom and practice" it along with other streaming services created as its sole support. Pandora's "custom and practice" did nothing of the kind. If "custom and practice" is used to replace the plain terms of the Copyright Act, then ASCAP's formation in 1914 would have been for naught, as the "custom and practice" of theatres and restaurant owners would have annulled songwriters' exclusive right of public performance established years before ASCAP first brought suit to enforce the rights of its songwriter members. *Herbert v. Shanley*, 242 U.S. 591 (1917) (opinion by Justice Oliver Wendell Holmes, Jr. holding that Victor Herbert's song *Sweethearts* was infringed by its public performance in a restaurant). It was not until 1923 that musical works were held to be infringed by their public performance on the radio. *M. Witmark & Sons v. L. Hamburger & Co.*, 291 F. 776 (D.N.J 1923).

motion sought to be joined applies to the Comedians. (Pandora Opp. 8.) This too is nonsense.[6] The Joinder Motion not only expressly states that it joined the entire WC Motion, but also details numerous reasons the Counterclaims should be dismissed. There is no point burdening the Court with citing the exact same legal authority cited by Word Collections for similar points, or restating the obvious as the entire basis of Pandora's antitrust claims are a supposed antitrust conspiracy involving the Comedians, with the damages being the fees spent in defense of the Comedians' copyright actions. Pandora nowhere states that the parties are not similarly situated. If ever parties were similarly situated for purposes of a motion to dismiss, and a dismissal of one (Word Collections) would also require dismissal as to the other (the Comedians), this is it. Pandora's professed confusion is disingenuous.[7]

## CONCLUSION

For the reasons stated above, in the Comedians' Joinder Motion, and in the WC Motion and Reply, Pandora's Counterclaims should be dismissed in their entirety and with prejudice.

---

[6] Pandora cites *Tatung*, but, unlike *Tatung*, which was on summary judgment, the first ground for joinder is met here, since the similarities between Word Collections and the Comedians are obvious, the counterclaims do not differentiate between those parties at all, and the parties are "so similarly situated that filing an independent motion would be redundant." 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016). *Tatung* recognized that, under the first ground for joinder, there is no requirement that the joining party "specifically point out" that the filing of an independent motion would be redundant. *Id.* Even under the second ground, the Comedians joined the entirety of Word Collections' motion, identified standing by noting they are defendants in the counterclaims, and the same claims are asserted against them on the same bases. The Comedians also participated in the meet and confer as noted, and advised that they would be putting in a joinder motion.

[7] Furthermore, the Comedians also join in the points and authority contained in Word Collections' Reply Memorandum of Points and Authorities, also filed on this date.

1                                       Respectfully submitted,

2                                       KING & BALLOW

3

4                                       By:  <u>/s/Richard S. Busch</u>
                                                  Richard S. Busch

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28