Oliver Rocos - State Bar No. 319059
    orocos@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Christine A. Varney (*pro hac vice*)
    cvarney@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
    lmoskowitz@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Attorneys for Counterclaim Defendant Word Collections, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Master File No. 2:22-cv-00809-MCS-MAR<br><br>CONSOLIDATED ACTION<br><br>**COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PANDORA MEDIA, LLC'S COUNTERCLAIMS**<br><br>Filed concurrently with Response to Pandora Media, LLC's Opposition to Request for Judicial Notice<br><br>Date:   August 29, 2022<br>Time:   9:00 a.m.<br>Crtrm.: 7C - First Street Courthouse<br>            350 W. 1st Street, 7th Floor,<br>            Los Angeles, California 90012<br><br>Assigned to Hon. Mark C. Scarsi |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

I. PANDORA LACKS STANDING TO PURSUE ITS CLAIMS. ..................... 1

II. *NOERR-PENNINGTON* BARS PANDORA'S COUNTERCLAIMS. ............ 4

III. PANDORA FAILS TO PLEAD A PLAUSIBLE ANTITRUST CLAIM. ....... 5

    A.    Pandora's Decision Not To Seek Individual Licenses Is Fatal............... 5

    B.    Pandora Fails To State a Claim Under Sherman Act Section 2. ............ 6

    C.    Pandora Fails To State a Claim Under Sherman Act Section 1. ............ 8

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page(s)**

*Apple v. Motorola Mobility, Inc.*,
  886 F. Supp. 2d 1061 (W.D. Wisc. 2012) .............................................................. 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 8

*BMI v. CBS, Inc.*,
  441 U.S. 1 (1979) ................................................................................................... 9

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
  29 F.4th 468 (9th Cir. 2022) .................................................................................. 2

*CBS, Inc. v. ASCAP*,
  620 F.2d 930 (2d Cir. 1980) .................................................................................. 6

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) .................................................................................. 2

*Datagate, Inc. v. Hewlett-Packard Co.*,
  60 F.3d 1421 (9th Cir. 1995) ............................................................................... 10

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
  556 F. Supp. 3d 1156 (D. Or. 2021) ...................................................................... 2

*F.E.L. Publ'ns, Ltd. v. Cath. Bishop of Chi.*,
  No. 81-1333, 1982 WL 19198 (7th Cir. Mar. 25, 1982) ..................................... 10

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ............................................................................... 9

*Hirsh v. Martindale-Hubbell, Inc.*,
  674 F.2d 1343 (9th Cir. 1982) ............................................................................. 10

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) ........................................................................................... 7, 10

*Intel Corp. v. Fortress Inv. Grp.*,
  No. 19-cv-07651-EMC, 2020 WL 6390499 (N.D. Cal. July 15, 2020) ................ 8

*Intel Corp. v. Fortress Inv. Grp.*,
    511 F. Supp. 3d 1006 (N.D. Cal. 2021) ................................................................ 2

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
    99 F. Supp. 3d 610 (D. Md. 2015) ........................................................................ 3

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
    No. 11-cv-1309-DOC, 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) .................... 5

*JBL Enters., Inc. v. Jhirmack Enters., Inc.*,
    519 F. Supp. 1084 (N.D. Cal. 1981) ..................................................................... 8

*Matsushita Elec. Indus. Co. v. Cinram Int'l*,
    299 F. Supp. 2d 370 (D. Del. 2004) ...................................................................... 6

*Montreal Trading Ltd. v. Amax Inc.*,
    661 F.2d 864 (10th Cir. 1981) .............................................................................. 2

*Nero AG v. MPEG LA, LLC*,
    No. 10-cv-3672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sept. 14, 2010) ........... 5

*Newcal Indus., Inc. v. IKON Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .............................................................................. 7

*No Spill, LLC v. Scepter Can.*,
    No. 18-2681-HLT-KGG, 2021 WL 3856619 (D. Kan. Aug. 30, 2021) ............... 5

*Omega Env't, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) .............................................................................. 3

*PrimeTime 24 Joint Venture v. Nat'l Broad. Co.*,
    219 F.3d 92 (2d Cir. 2000) ................................................................................... 4

*Red v. Gen. Mills, Inc.*,
    No. 2:15-cv-02232-ODW, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ........... 3

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) .............................................................................. 10

*Samsung Elecs. Co. v. Panasonic Corp.*,
    No. 10-cv-03098-JSW, 2015 WL 10890655 (N.D. Cal. Sept. 30, 2015) ............. 5

*Sosa v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ................................................................................ 4

*Times-Picayune Publ'g Co. v. United States*,
    345 U.S. 594 (1953) .......................................................................................... 10

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) ............................................................................... 9

*United States v. Loew's, Inc.*,
    371 U.S. 38 (1962) ............................................................................................ 10

*United States v. Paramount Pictures, Inc.*,
    334 U.S. 131 (1948) .......................................................................................... 10

**Other Authorities**

P. Areeda & H. Hovenkamp, Antitrust Law (5th ed. 2022) ........................................ 6

Stripped of rhetoric and conclusory adjectives, the facts alleged in Pandora's Counterclaims[1] tell a simple story: Pandora knowingly exploited the Comedians' literary works for a decade without securing a license; the Comedians later signed up with a licensing agent (Word Collections) to license their copyrights and collect their royalties; Word Collections notified Pandora that it was infringing and offered Pandora a license for its clients' literary works; and when Pandora failed to reply or counter in any way, the Comedians brought suit for copyright infringement. These facts do not an antitrust conspiracy make. Pandora's real complaint is not with a supposed lack of opportunity to negotiate licenses, it is with having to pay anything at all. But that is a complaint with copyright law, not the basis for an antitrust claim. No amount of repetition of the hyperbolic narrative of a "scheme" led by Word Collections to "orchestrate[] a cartel" and "force" Pandora to pay "exorbitant prices" for the use of literary works can transform these simple facts supporting legitimate copyright infringement claims into a treble-damages lawsuit under the Sherman Act. Pandora's Opposition ("Opposition" or "Opp.") (ECF 54) does not overcome the myriad uncurable pleading defects identified in the Motion to Dismiss ("Motion" or "Mot.") (ECF 49). The Counterclaims should be dismissed with prejudice.

I. **PANDORA LACKS STANDING TO PURSUE ITS CLAIMS.**

*No Standing Based on "Supracompetitive" Rates.* As an initial matter, Pandora has not established actual harm because, as it concedes, it has not actually entered into a license to exploit the Comedians' literary works. (Opp. 3.) An unaccepted offer to license cannot establish the causal antitrust injury necessary for antitrust standing.[2] *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply,*

---

[1] Unless otherwise indicated, all abbreviations herein have the same meanings as set forth in Word Collections' Motion to Dismiss.

[2] Pandora argues that Article III requires only "evidence of a credible threat" of harm, borrowing case law from the unique environmental context. (Opp. 8.) That is not the law here; "[t]he Supreme Court has repeatedly reiterated that threatened

*Inc.*, 556 F. Supp. 3d 1156, 1170 n.8 (D. Or. 2021); *id.* at 1172 ("[I]t is difficult to see how an *unaccepted* offer to enter into a preferred supplier agreement with a non-compete clause can *cause* antitrust injury . . . ."). Nor can Pandora escape the law that "[n]onpurchasers who are priced out of the market" face an especially high bar for antitrust standing given "the speculative nature of the harm". (Mot. 10 (citing *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 460 (9th Cir. 2021)).)[3]

In addition, as Counterdefendants have explained, that Pandora has licensed and paid a royalty for sound recordings has *no* relevance to its failure to license and pay for past and future use of the underlying copyrighted literary works. Pandora assumes in its Counterclaims (¶ 6) that rights to literary works exist and could be licensed "separately" from the sound recordings. Pandora's failure to license and pay for the literary works in the past does not support a conclusion that paying anything going forward amounts to a supracompetitive price increase. Pandora tellingly offers no response to *Intel Corp. v. Fortress Investment Group*, 511 F. Supp. 3d 1006, 1027 (N.D. Cal. 2021), where the court rejected a similar argument that "royalties were supracompetitive because prior owners did not even assert the patents in the first place", holding that the past failure to assert the rights "does not mean that the patents were worthless".

Pandora also argues actual harm because it has "already . . . remove[d]" each Comedian's catalogue from all of Pandora's services. (Opp. 7.) But that is not

---

injury must be certainly impending to constitute injury in fact". *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 476 (9th Cir. 2022) (quotation omitted). Either way, Pandora's alleged harms do not pass muster.

[3] Pandora incorrectly argues that *City of Oakland*'s holding applies only where the plaintiff "has no prior course of dealing with any defendant". (Opp. 8.) That argument is based on language in an out-of-Circuit case, *Montreal Trading Ltd. v. Amax Inc.*, 661 F.2d 864, 868 (10th Cir. 1981), and the Ninth Circuit expressly declined to adopt that as the law in the Circuit but rather assumed it *arguendo* and still found a lack of standing. *City of Oakland*, 20 F.4th at 460. In any event, the alleged course of dealing here was copyright infringement, not a license.

harm based on any anticompetitive conduct by Counterdefendants; it is an action Pandora unilaterally took in the face of copyright infringement litigation and being offered a go-forward license.[4]  "[S]elf-inflicted harm doesn't satisfy the basic requirements for standing." *Red v. Gen. Mills, Inc.*, No. 2:15-cv-02232-ODW, 2015 WL 9484398, at *5 (C.D. Cal. Dec. 29, 2015) (quotations omitted).  Moreover, Pandora does not allege how its removal of content from just seven comedians could, or did, cause it any harm, such as the loss of any customers.  It cannot allege that it is no longer able to offer a viable comedy streaming service without these works, because it has alleged that it "can provide a viable comedy product with a relatively modest number of comedy recordings".[5]  (Counterclaims ¶ 34.)

      Pandora argues that Word Collections "has locked up numerous comedians, in a manner that precludes those comedians from negotiating competitive arrangements".  (Opp. 8.)  But Pandora nowhere alleges that it ever attempted to negotiate a license for literary works with the Comedians at any time.  And it nowhere claims that the Comedians are unable to terminate their agreements at will and negotiate with Pandora as they please.  *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) ("[T]he short duration and easy terminability of . . . agreements negate substantially their potential to foreclose competition.").

      *No Standing Based on Litigation Costs*.  Finally, Pandora's response on its litigation costs theory of standing reflects the weakness of its position.  Rather than engage with the numerous cases Word Collections cited (Mot. 12-13), Pandora cites language from a single opinion discussing the application of the *Noerr-Pennington* doctrine that does not address standing (Opp. 9-10).  Pandora offers no response at

---

[4] Word Collections never requested that the works be removed.  (Counterclaims ¶ 37 (alleging Word Collections asked Pandora to keep the content *up*).)

[5] *Cf. Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 99 F. Supp. 3d 610, 621-22 (D. Md. 2015) (Opp. 7) (alleging that Capital One's online services could not run *at all* without the patented components acquired by Intellectual Ventures).

all to Word Collections' argument that Pandora cannot establish a causal connection between its litigation costs and the alleged antitrust violation. (Mot. 13.)

## II.   *NOERR-PENNINGTON* BARS PANDORA'S COUNTERCLAIMS.

Word Collections established that *Noerr-Pennington* bars Pandora's Counterclaims. (Mot. 13-15.) In response, Pandora correctly does not argue sham litigation. Instead, it argues that the anticompetitive conduct "exist[s] independent of, not incidental to, the comedians' lawsuits." (Opp. 11.) Pandora is wrong.

The "anticompetitive activities" alleged by Pandora are Word Collections' notification to Pandora that, as acknowledged in Pandora's own SEC filings, it is using the Comedians' literary works without a license and the offer of the Proposed License (which Pandora mischaracterizes as a "demand that Pandora take [a] blanket license"). Pandora's assertion that Word Collections offered Pandora a license "long before litigation was even in view" (Opp. 11) contradicts the judicially noticeable fact that Word Collections' CEO sent the Proposed License in March 2021 alongside a notice of copyright infringement (Ex. C), which further establishes that the alleged conduct was connected to the protected litigation that was initiated thereafter.[6] *See Sosa v. DirecTV, Inc.*, 437 F.3d 923, 936 (9th Cir. 2006). Word Collections is not using the copyright litigation to "immunize prior anti-competitive conduct" (Opp. 10); it is invoking *Noerr-Pennington* to protect its petitioning activity from retaliatory antitrust claims.

Pandora's argument that *Noerr-Pennington* does not apply because it has allegedly suffered "a host of non-litigation harms" (Opp. 11-12) is also wrong.

---

[6] Pandora cites to *PrimeTime 24 Joint Venture v. National Broadcasting Co.*, 219 F.3d 92, 98-103 (2d Cir. 2000), for the principle that copyright holders may not jointly refuse to deal with a copyright infringer. (Opp. 11.) But the Counterclaims do not allege a refusal to deal—instead, they complain of the Counterdefendants' attempt to deal with Pandora by offering the Proposed License.

Whether or not Pandora alleges non-litigation harm is a standing issue only.[7] Moreover, as discussed above, Pandora has not alleged any direct financial loss, and its unilateral decision to remove and/or cease broadcasting the Comedians' comedy content either as retaliation for or in response to the copyright claims squarely supports that its actions fall within *Noerr-Pennington*.  *See, e.g.*, *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. 11-cv-1309-DOC, 2013 WL 655314, at *13-14 (C.D. Cal. Feb. 21, 2013) (dismissing counterclaim under *Noerr-Pennington* despite allegation that it "caused [counterplaintiff] to lose business").

### III. PANDORA FAILS TO PLEAD A PLAUSIBLE ANTITRUST CLAIM.

#### A. Pandora's Decision Not To Seek Individual Licenses Is Fatal.

Pandora does not contest that an offer to license a pool of rights does not restrain trade if a "realistic opportunity as a practical matter to obtain individual licenses" is available.  (Opp. 12; *see* Mot. 15-16 (collecting cases).)  Pandora also does not contest that it has *never* sought an individual license for the Comedians' literary works, arguing instead, with no basis, that doing so would have been "futile".[8]  (Opp. 12.)  Here, as in *Nero AG v. MPEG LA, LLC*, Pandora's conclusion that it lacks a realistic opportunity to obtain individual licenses is no more than a "hypothesis".  No. 10-cv-3672-MRP-RZ, 2010 WL 4366448, at *6 (C.D. Cal. Sept. 14, 2010) (rejecting argument based on the "economic infeasibility" of individual licensing where "Nero has not attempted to determine which patents it needs and to

---

[7] *No Spill, LLC v. Scepter Can.*, No. 18-2681-HLT-KGG, 2021 WL 3856619, at *4 (D. Kan. Aug. 30, 2021), is a standing case that does not mention *Noerr-Pennington* at all.  And the court in *Apple v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wisc. 2012), dismissed the antitrust claim on *Noerr-Pennington* grounds, finding it was premised on the patent litigation because Apple identified no harm other than litigation costs, but did not hold the inverse.

[8] In Pandora's cited case, *Samsung Elecs. Co. v. Panasonic Corp.*, No. 10-cv-03098-JSW, 2015 WL 10890655, at *5 (N.D. Cal. Sept. 30, 2015), Samsung alleged that it "*has attempted to negotiate* with individual SD Group members" (emphasis added), and that no member was willing to negotiate separately".

license them individually"). Although it falsely alleges that Word Collections attempted to force Pandora to take a blanket license, Pandora does acknowledge that Word Collections is willing to enter into "individual licenses on behalf of its clients". (Opp. 13 n.8.) In a desperate attempt to negate that admission, Pandora asserts that "[t]he individual owners of the right—here, the comedians—are the ones that must offer the alternative in the marketplace". (*Id.*) That is wrong. *E.g., CBS, Inc. v. ASCAP*, 620 F.2d 930, 937 (2d Cir. 1980) (individual licenses were realistic where "a single agency . . . serves as the broker" for individual copyright owners in similar situations).[9] A realistic alternative has been found where, as here, a "licensing agent" "repeatedly notified prospective licensees of the availability of individual licenses" but the licensee "did not respond . . . nor did it seek to negotiate an individual license or ask for individual licensing rates". *Matsushita Elec. Indus. Co. v. Cinram Int'l*, 299 F. Supp. 2d 370, 374, 377 (D. Del. 2004).

### B. Pandora Fails To State a Claim Under Sherman Act Section 2.

Word Collections' Motion demonstrated how Pandora fails adequately to allege that Counterdefendants have market power within a relevant market. (Mot. 17-21.) Word Collections' challenge is not about the words Pandora used but rather its failure to allege a facially plausible, non-conclusory and internally consistent market within which the Court could analyze the conduct Pandora alleges. (Mot. 17-19.) Faced with the numerous inconsistencies that Word Collections identified in its Motion, Pandora muddles things even further.

Pandora does try to address one inconsistency that Word Collections identified by disclaiming its allegations that desirable and undesirable comedy are in

---

[9] "The Supreme Court's decision [in *BMI*] applying the rule of reason and upholding the arrangement makes clear that there is nothing intrinsically harmful about copyright pools", and the presence of alternative licensing options assuages concerns that the pool may be used for exclusionary purposes. P. Areeda & H. Hovenkamp, Antitrust Law ¶ 2043d (5th ed. 2022).

separate product markets (Counterclaims ¶¶ 66, 93), stating that they are just separate products in the same market: the "U.S. market for the rights to comedy routines embodied in comedy recordings". (Opp. 17, 23; Counterclaims ¶¶ 71-72.) But even taking that alleged market at face value, Pandora does not adequately allege that Word Collections has market power in that market. Its conclusory allegation that Word Collections has market power because it is "the *exclusive* licensor for rights to comedy routines of a critical mass of iconic comedians (and others)" (Opp. 17-18), is fatally undermined by its failure to allege *facts* supporting that Word Collections' stable of fewer than 40 of the many thousands of comedians gives it any market power.

As an initial matter, to the extent Pandora is arguing that Word Collections necessarily has market power as the exclusive licensor of certain IP rights, the Supreme Court squarely has rejected that argument. *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006). Beyond that, Pandora's allegation of market power simply does not match its alleged market. The alleged market is not the market for "iconic" or "must have" comedians (whatever that even means, given consumers' shifting tastes) or just the routines for the comedians who signed up with Word Collections; the alleged market is for the rights to comedy routines in all comedy recordings in the United States. (Counterclaims ¶ 71; Opp. 17, 23.) The very market definition Pandora alleges assumes that the rights in Word Collections' portfolio are substitutable with the literary works rights held by Spoken Giants and with the rights of countless comedians not represented by any agent. *Newcal Indus., Inc. v. IKON Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) ("[T]he market must encompass the product at issue as well as all economic substitutes for the product.").[10] Pandora simply does not allege how Word Collections has market

---

[10] Pandora's claim that the existence of Spoken Giants is irrelevant to Word Collections' market power (Opp. 20 n.15) makes no sense. Both entities' portfolios

power in *that* market. (Mot. 19-21.) Conclusory allegations that Word Collections represents a "critical mass" (Opp. 18) are woefully deficient.[11]

As a last ditch effort, Pandora asserts, with no analysis whatsoever, that just as ASCAP and BMI, two PROs in the U.S. representing millions of songwriters and music publishers each have market power, so too does Word Collections with its few dozen clients. (Opp. 19-20.) That is not enough to survive a motion to dismiss.

### C. Pandora Fails To State a Claim Under Sherman Act Section 1.

*Pandora Fails To Allege an Antitrust Conspiracy*. Adequate pleading requires facts, not unsupported assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The only factual allegation Pandora offers to support its price-fixing conspiracy claim among the Comedians is that after ten years of infringement of their works, the Comedians each signed an exclusive affiliation agreement with Word Collections that gave it, for the term the agreement is in place, the power to negotiate the prices at which it would license each Comedian's rights. (Counterclaims ¶¶ 51, 85.) There are no factual allegations that they agreed *with each other* (as opposed to unilaterally) to work with Word Collections, or that they agreed Word Collections would be pooling anything or negotiating as a group. Pandora's claim is nothing more than "an allegation of parallel conduct and a bare assertion of conspiracy", which is insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Intel Corp. v. Fortress Inv. Grp.*, No. 19-cv-07651-EMC, 2020 WL 6390499, at *17 (N.D. Cal. July 15,

---

are in the alleged market, meaning that Spoken Giants could discipline any attempt by Word Collections to exercise market power (and vice versa).

[11] Pandora also argues that an increase in price provides evidence of market power. (Opp. 18.) There was no increase in price, as explained above, but even if there were, that alone is not evidence of market power. *See, e.g.*, *JBL Enters., Inc. v. Jhirmack Enters., Inc.*, 519 F. Supp. 1084, 1088 (N.D. Cal. 1981) ("That a product is sold at a higher price . . . is not probative of . . . power to control price.").

2020) ("There are no specific allegations indicating that the defendant PAEs [patent assertion entities] knew they were part of a broader scheme being facilitated by Fortress. . . . [U]nilateral action by Fortress cannot sustain a § 1 claim which requires concerted action involving all the PAEs."). Instead, the behavior alleged is completely consistent with economically rational, legal and independent business decisions by each Comedian to take advantage of the services that agents like Word Collections offers. (Mot. 23.)

*United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) (Opp. 22-23), is inapposite. After trial, the court found that Apple orchestrated a horizontal conspiracy among publishers who held meetings in the proverbial smoke-filled rooms where they strategized together about how to raise prices. *Apple*, 791 F.3d at 300, 302-11. No such facts are alleged here. There is no allegation that Word Collections and the Comedians ever met to discuss royalty rates together or separately, and thus, no horizontal conspiracy is alleged.

As to any alleged vertical conspiracies between Word Collections and each Comedian, Pandora cannot seriously contend that a principal and agent are separate entities for purposes of Section 1. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003) ("The single-entity rule is relevant in a variety of contexts. . . . It applies to principal-agent relationships."). Word Collections acts for the benefit of its clients; their interests and Word Collections' interests are one and the same, and thus, they are not "separate economic actors". (Mot. 23.)

Finally, Pandora invokes the music PROs such as BMI when it thinks it is helpful and ignores them when not. The Supreme Court held in *BMI v. CBS, Inc.*, 441 U.S. 1, 9 (1979), that even a true blanket license with a fixed fee (rather than a usage-based fee, which is what Word Collections offered in the Proposed License (Mot. 4-5 n.3)), is subject to the rule of reason, not the *per se* rule. Yet, Pandora does nothing to take on the various elements of the rule of reason analysis (including requirement to plead market power and anticompetitive effects) (Mot. 22 n.10).

*Pandora Fails To State a Section 1 Tying Claim.* Pandora readily admits that it does not allege two separate product markets for the tying and tied products. (Opp. 17.) Pandora's assertion that the law contains no such requirement is incorrect. Notably, both *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1948), and *United States v. Loew's, Inc.*, 371 U.S. 38 (1962) (Opp. 24), predated *Jefferson Parish*'s announcement that separate product markets are required for tying claims.[12] Ninth Circuit law has been, and remains, clear that "[t]he existence of separate markets for the alleged tying and tied products is crucial to a finding of an unlawful tying arrangement". *Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1350 (9th Cir. 1982) (tying claim failed where plaintiff failed to show "the existence of separate markets for informative and professional card advertising" (citing *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 614 (1953))).[13] In any event, even under outdated law, vague reference to the rights to "desirable comedy material" versus "other, less desirable material" (Opp. 23) are deficient. *See, e.g.*, *F.E.L. Publ'ns, Ltd. v. Cath. Bishop of Chi.*, No. 81-1333, 1982 WL 19198, at *7 (7th Cir. Mar. 25, 1982) ("Establishing the existence of a tying contract requires more than a bald assertion that some songs are more popular than others.").

---

[12] Nor did those cases even employ the tying framework that existed at the time. *See Jefferson Par.*, 466 U.S. at 37 n.7 (O'Connor, J., concurring). Both cases also relied heavily on the idea that the copyrights automatically conferred market power, which, as noted above, has been overruled. *Ill. Tool Works*, 547 U.S. at 45-46.

[13] *See also Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 975 (9th Cir. 2008) (affirming dismissal of tying claim where plaintiff failed to plead facts "indicating the existence of a separate market" for the tied product); *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1423 (9th Cir. 1995) (tying "is a device used by a competitor with market power in one market (for the 'tying' product) to extend its market power into an entirely distinct market (for the 'tied' product)").

Respectfully submitted,

DATED: August 17, 2022

Oliver Rocos
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

by
   */s/ Oliver Rocos*
      Oliver Rocos

Christine A. Varney
Lauren A. Moskowitz
CRAVATH, SWAINE & MOORE LLP

by
   */s/ Lauren A. Moskowitz*
      Lauren A. Moskowitz

*Attorneys for Counterclaim Defendant Word Collections, Inc.*