Jeff McFarland (SBN 157628)
jmcfarland@McKoolSmithHennigan.com
MCKOOL SMITH HENNIGAN P.C.
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Travis DeArman *(pro hac vice)*
tdearman@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile:  (214) 978-4044

Attorneys for Counterclaim Defendant
SPOKEN GIANTS, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No.: 2:22-cv-00809-MCS-MAR <u>CONSOLIDATED ACTION</u> |
| | **COUNTERCLAIM DEFENDANT SPOKEN GIANTS, LLC.'S NOTICE OF MOTION AND MOTION TO DISMISS PANDORA MEDIA, LLC'S COUNTERCLAIMS AND FOR JUDICIAL NOTICE: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: ALL ACTIONS | Filed concurrently with [Proposed] Order and Declaration of Travis DeArman |
| | Date: March 6, 2023 Time: 9am Courtroom: 7C Assigned to Hon. Mark C. Scarsi |

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2023, at 9:00 a.m, or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Mark C. Scarsi, United States District Judge of the Central District of California in Courtroom 7C, Counterclaim Defendant Spoken Giants, LLC will, and hereby does, move for an order granting Spoken Giants' request for judicial notice pursuant to Federal Rule of Evidence 201 and dismissing Defendant and Counterclaimant Pandora Media, LLC's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state any claims upon which relief can be granted.

This motion is based on the following grounds: That Pandora Media, LLC failed to adequately allege the elements of its antitrust claims, specifically that Spoken Giants, LLC possesses market power in a well-pleaded market, and the necessary elements of its conspiracy and agreement in unreasonable restraint of trade claims; and other deficiencies outlined in the accompanying Memorandum of Points and Authorities; and that judicial notice of documents incorporated by reference into the Amended Counterclaims is merited. This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, all papers on file with the Court in this action, and such other evidence and argument as the Court may receive.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which occurred on December 12, 2022.

Dated: December 19, 2022          **MCKOOL SMITH, P.C.**


                                  By: */s/ Jeff McFarland*
                                  Jeff McFarland

McKool Smith Hennigan, P.C.
Los Angeles, CA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Counterclaim-*
*Defendant Spoken Giants, LLC*

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

# TABLE OF CONTENTS

**Page(s)**

Citation and Abbreviation Conventions.................................................................vi

Memorandum of Points and Authorities.................................................................1

Statement of Facts ..................................................................................................2

Applicable Legal Standards ...................................................................................3

    A.    Fed. R. Civ. P. 12(b)(1).................................................................3

    B.    Fed. R. Civ. P. 12(b)(6).................................................................3

    C.    Fed. R. Evid. 201..........................................................................4

Argument.................................................................................................................5

    A.    The Court should take judicial notice of the Affiliation Agreement, April 19 Email, and Proposed Term Sheet. ............................5

    B.    Pandora lacks standing..................................................................5

        1.    Pandora's "blanket license" theory fails to allege Article III injury. .........................................................................7

        2.    Pandora's "litigation costs" theory fails to allege Article III Injury. ........................................................................8

        3.    Pandora fails to allege an antitrust injury. ...................9

    C.    Pandora's amended counterclaims fail as a matter of law because its "blanket license" allegations fail to plead a restraint on trade...........10

    D.    Pandora's Section 2 Claims fail because Pandora fails to plead market power...........................................................................................11

        1.    Pandora fails to plausibly allege direct evidence in support of its monopolization claims............................................12

        2.    Pandora fails to plausibly allege circumstantial evidence in support of its monopolization claims.......................................15

    E.    Pandora's Section 1 claims fails because Pandora fails to allege an antitrust conspiracy or an unreasonable restraint of trade. .................17

        1.    Pandora fails to allege an antitrust conspiracy. ........................17

        2.    Pandora fails to state a claim for unreasonable restraint of trade. ..................................................................................19

McKool Smith Hennigan, P.C.
Los Angeles, CA

i

Conclusion.............................................................................................................22

McKool Smith Hennigan, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                      **Page(s)**

*Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*,
  141 F.3d 947 (9th Cir. 1998) ................................................................26

*Am. Needle v. NFL*,
  560 U.S. 183 (2010)..............................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................9, 10

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
  166 F. Supp 3d 988 (N.D. Cal. 2015)....................................................27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................13, 18, 23

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ...............................................................10

*Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*,
  744 F.2d 917 (2d Cir. 1984) ..................................................................27

*Byron v. Maduros*,
  No. 19-cv-06742-CAS, 2020 WL 70835 (C.D. Cal. Jan. 6, 2020) ...................11

*Calculators Hawaii, Inc. v. Brandt., Inc.*,
  724 F.2d 1332 (9th Cir. 1983) ...............................................................26

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) .................................................................9

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
  No. 05-cv-3465-PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ...................14

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .................................................................14

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ...............................................................11

McKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

iii

*Frame-Wilson v. Amazon.com, Inc.*,
    591 F. Supp. 3d 975 (W.D. Wash. 2022), *reconsideration denied*, No. 2:20-
    CV-00424-RAJ, 2022 WL 4240826 (W.D. Wash. Aug. 2, 2022) .................... 26

*Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................ 12

*FTC v. Apex Cap. Grp.*,
    No. 18-cv-9573-JFW, 2022 WL 1060486 (C.D. Cal. Mar. 10, 2022) .............. 14

*Gerlinger v. Amazon.com Inc.*,
    526 F.3d 1253 (9th Cir. 2008) ............................................................. 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    308 F.R.D. 606 (N.D. Cal. 2015) ......................................................... 23

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ......................................................... 24, 25

*Intel Corp. v. Fortress Inv. Grp.*,
    511 F. Supp. 3d 1006 (N.D. Cal. 2021) ................................................. 15

*Intel Corp. v. Fortress Inv. Grp. LLC*,
    No. 21-16817, 2022 WL 16756365 (9th Cir. Nov. 8, 2022) ...................... passim

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ......................................................... 10, 24

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ............................................................................ 26

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ............................................................. 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 14

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................. 14

*Nero AG v. MPEG LA, LLC*,
    2010 WL 4366448 (C.D. Cal. Sept. 14, 2010) ..................................... 17, 18

*PLS.com, LLC v. Nat'l Assoc. of Realtors*,
    32 F.4th 824, 833 (9th Cir. 2022) ......................................................... 12

McKool Smith Hennigan, P.C.
Los Angeles, CA

iv

*PNY Techs., Inc. v. SanDisk Corp.*,
No. 11-CV-04689-WHO, 2014 WL 2987322 .......................................................27

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ...............................................................21, 26

*Reudy v. Clear Channel Outdoors, Inc.*,
693 F.Supp.2d 1091 (N.D. Cal. 2010) ...................................................21

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
471 F. Supp. 3d 981 (N.D. Cal. 2020) ...................................................13

*Rick-Mik Enters., Inc. v. Equilon Enters.*,
LLC, 532 F.3d 963 (9th Cir. 2008) .........................................13, 18, 21

*San Diego Unified Port Dist. v. Monsanto Co.*,
309 F. Supp. 3d 854 (S.D. Cal. 2018) ...................................................14

*Sanofi-Aventis U.S., LLC v. Mylan, Inc. and Mylan Specialty, LP*,
No. 21-3005, 2022 WL 3273055 (10th Cir. July 29, 2022) ...............27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..............................................................................12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ...........................................................10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) .........................................................................8, 9

Fed. R. Civ. P. 12(b)(6) .........................................................................9, 10

Fed. R. Evid. 201 ......................................................................................10

Fed. R. Evid. 201(b) .................................................................................10

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

v

## INDEX OF CITATION AND ABBREVIATION CONVENTIONS

**Entities and Parties**

- "Comedians": Brave Lion, Inc.; Nick Di Paolo; Mary Reese Hicks; Main Sequence, Ltd.; Robin Williams Trust; Ron White, Inc.; Yellow Rose Productions, Inc.

- "Counterclaim Defendants": Word Collections, the Comedians, Lewis Black, and Spoken Giants, collectively,

- "Lewis Black": Plaintiff and counterclaim defendant Lewis Black, individually.

- "Pandora": Pandora Media, LLC

- "SiriusXM": SiriusXM Holdings Inc.

- "Spoken Giants": Spoken Giants, LLC

- "Word Collections": Word Collections, Inc.

**Pleadings and Court Submissions**

- "Amended Counterclaims against Spoken Giants" or "SG ACC": Pandora's Counterclaims against Spoken Giants and Lewis Black, filed Nov. 18, 2022. (ECF No. 94.)

- "Amended Counterclaims against Word Collections" or "WC ACC": Pandora's Counterclaims against Word Collections and the Comedians, filed Nov. 18, 2022. (ECF No. 93.)

- "Decision": The Court's decision granting Word Collections' First Motion to Dismiss (as joined by the Comedians), dated Oct. 26, 2022. (ECF No. 83.)

- "Ex.": Exhibit to Declaration of Travis DeArman.

- "First Counterclaims against Spoken Giants" or "SG CC": Pandora's Counterclaims against Spoken Giants and Lewis Black, filed Sept. 26, 2022. (ECF No. 72.)

- "First Counterclaims against Word Collections" or "WC CC": Pandora's Counterclaims against Word Collections and the Comedians, filed May 5, 2022. (ECF No. 34.)

McKool Smith Hennigan, P.C.
Los Angeles, CA

- "Word Collections' First Motion to Dismiss": Word Collections' Motion to Dismiss the First Counterclaims against Word Collections. (ECF No. 49.)

**Other**

- "Affiliation Agreement": sample affiliation agreement, available on Spoken Giants' website and referenced throughout the Amended Counterclaims against Spoken Giants.

- "April 19 Email": April 19, 2021 email from Spoken Giants to Pandora, attaching the Proposed Term Sheet, referenced throughout the Amended Counterclaims against Spoken Giants.

- "Proposed Term Sheet": Performance License Agreement proposed by Spoken Giants to Pandora, referenced throughout the Amended Counterclaims against Spoken Giants.

- "Section 1 Claims": Counts I and II in the SG ACC, brought under Section 1 of the Sherman Act.

- "Section 2 Claims": Counts III and IV in the SG ACC, brought under Section 2 of the Sherman Act.

NOTICE OF MOTION AND MOTION TO DISMISS

McKool Smith Hennigan, P.C.
Los Angeles, CA

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This is not the first time the Court has been called on to evaluate Pandora's antitrust claims. In May 2022, Pandora filed substantively identical claims against Word Collections and the Comedians. Pandora then adapted and asserted the same claims against Spoken Giants and Lewis Black, in late September 2022. WC CC, ECF No. 34; SG CC, ECF No. 72. On October 26, 2022, before Spoken Giants' initial response deadline, the Court entered an order dismissing Pandora's antitrust claims against Word Collections and the Comedians, but permitted Pandora to amend. Decision, ECF. No. 83. The Court also warned Pandora that it "doubt[ed] whether Pandora can allege the necessary facts at this stage" to support its Section 1 claims. *Id.* at 27.

The Court then consolidated the schedule for Pandora to amend or withdraw its counterclaims against the Counterclaim Defendants. ECF No. 86. Disregarding the Court's warning, Pandora filed amended counterclaims, including Section 1 Claims alleging a price fixing conspiracy (Count I) and an unreasonable restraint of trade (Count II), as well as Section 2 Claims alleging monopolization, attempted monopolization, and conspiracy to monopolize (Counts III and IV). SG ACC ¶¶ 120-147.

As a preliminary matter, Spoken Giants requests that the Court take judicial notice of three documents incorporated by reference in the SG ACC. Taking the facts pleaded in the SG ACC, including through these documents, Spoken Giants demonstrates that Pandora's counterclaims fail as a matter of law for four reasons.

First, Pandora's claims should be dismissed for lack of Article III and antitrust standing, because Pandora's "Blanket License" and "Litigation Costs" theories fail to allege an injury in fact to Pandora, and fail to allege any causal connection between a supposed injury and an alleged antitrust violation by Spoken Giants.

Second, Pandora's claims fail as a matter of law because Pandora offers nothing to support its "blanket license" allegations, aside from bare legal conclusions;

NOTICE OF MOTION AND MOTION TO DISMISS

Pandora fails to plead that it was unable to obtain individual licenses; and Pandora's conclusions are contradicted by the Proposed Term Sheet and other documents in incorporated by reference in the SG ACC.

Third, Pandora's Section 2 Claims fail because Pandora has not plausibly alleged either direct or circumstantial evidence of Spoken Giants' market power. Instead, Pandora fills the SG ACC with assorted allegations concerning the popularity of certain members of Spoken Giants, without offering anything but legal conclusions that could link the facts pleaded to the alleged market at issue, or Spoken Giants' alleged power within that market.[1]

Fourth, Pandora's Section 1 Claims fail because Pandora does not plausibly allege an antitrust conspiracy, and because they are unsustainable under the rule of reason. Specifically, Pandora fails to allege an agreement among competitor comedians, facilitated by Spoken Giants, to fix prices, and fails to allege that the affiliation contracts at issue amount to antitrust agreements or that they impose an unreasonable restraint on trade.

Spoken Giants therefore requests that the Court dismiss Pandora's Amended Counterclaims against Spoken Giants pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## **STATEMENT OF FACTS**[2]

Pandora, a subsidiary of Sirius XM Radio Inc., operates a media platform that "provides its users with music, comedy, and other spoken word audio programming through internet-connected devices." SG ACC ¶ 8. In 2011, Pandora launched its comedy service. *Id.* ¶¶ 22, 30. Although its comedy library now contains "thousands

---

[1] Count IV also fails because Pandora does not plausibly allege an antitrust conspiracy.

[2] The facts contained herein are drawn from the SG ACC, taken as true, and from documents incorporated into the SG ACC by reference.

McKool Smith Hennigan, P.C.
Los Angeles, CA

of records," Pandora has never compensated comedians for the literary rights to their work. *Id.* ¶ 30.

Spoken Giants is a global rights collective for spoken word. *Id.* ¶ 3. Spoken Giants represents "creators of spoken word copyrights," including comedians. *Id.* On April 19, 2021, Spoken Giants sent Pandora an invitation to initiate licensing negotiations, including a draft of a non-binding term sheet. *Id.* ¶ 60; Ex. B; Ex. C. In doing so, Spoken Giants offered Pandora the opportunity to engage in an arms-length bargaining process as the "first step" in a potential partnership. Ex. B. Pandora refused to engage, instead retaliating against Spoken Giants and its members (as well as other comedians), including by removing comedy recordings from its platform and filing the baseless antitrust claims now subject to the this motion. *See, e.g.*, SG ACC ¶ 43.

## APPLICABLE LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(1)

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).[3] "When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as is the case here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor." Decision at 5. To survive a motion to dismiss for lack of standing, a claimant must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a (counter)defendant to challenge pleadings for "failure to state a claim upon which relief can be granted." To

---

[3] Unless otherwise noted, all internal citations and quotations are omitted.

McKool Smith Hennigan, P.C.
Los Angeles, CA

survive a Rule 12(b)(6) motion, claims must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard requires more than simply alleging facts "merely consistent with" defendants' liability. *Id.* In applying this standard, the Court disregards "naked assertions" and any "legal conclusion couched as factual allegation." *Id.*

Antitrust claims are subject to particularly rigorous review on a motion to dismiss, and "must raise a reasonable expectation that discovery will reveal evidence of an injury to competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012). Antitrust conspiracy claims must plead facts with specificity, "such as a specific time, place, or person involved in the alleged conspiracies." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

## C.   Fed. R. Evid. 201

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may also "consider documents incorporated by reference in a pleading without converting a Rule 12(b)(6) motion into a motion for summary judgment." Decision at 7, citing *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A document may be incorporated by reference if: "(1) the [pleading] refers to the document; (2) the document is central to the [pleading party's] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.*, quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Ritchie*, 342 F.3d at 908 (A document "may be incorporated by reference . . . if the [pleading party] refers extensively to the document or the document forms the basis of the [pleading party's] claim.").

McKool Smith Hennigan, P.C.
Los Angeles, CA

## ARGUMENT

**A.    The Court should take judicial notice of the Affiliation Agreement, April 19 Email, and Proposed Term Sheet.**

Pandora's amended counterclaims rely on the Affiliation Agreements, Proposed Term Sheet, and the April 19 Email. *See, e.g.*, SG ACC ¶¶ 46, 48, 49, 65, 67, 68, 71, 73, 75, 100, 107, 111, 121, 128-132, 143 (Affiliation Agreements); *id.* ¶¶ 39, 41, 60 (April 19 Email); *id.* ¶¶ 4, 5, 12, 21, 41, 42, 45, 48, 54, 55, 57, 59, 61, 62, 67, 69, 71, 74, 77, 79, 81, 83, 86, 98, 102, 106, 111, 113, 117, 122, 131, 137, 143, 144 (Proposed Term Sheet). Specifically, Pandora mischaracterizes these documents to allege that Spoken Giants has, or is likely to have, market power; that Spoken Giants' alleged antitrust violations caused anti-competitive effects; that Spoken Giants facilitated unlawful agreements among comedians; and that Spoken Giants' affiliation agreements unreasonably restrained trade. *Id.*

In doing so, Pandora has incorporated these records into its pleadings by reference. The Court may therefore consider them in deciding Spoken Giants' motion to dismiss, without treating it as a motion for summary judgment. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012). Pandora references each of these records with specificity, including through extensive direct quotations. These detailed citations and quotations incorporate these documents, warranting judicial notice. *See Byron v. Maduros*, No. 19-cv-06742-CAS, 2020 WL 70835, at *1 n.1 (C.D. Cal. Jan. 6, 2020) (judicial notice of correspondence that "form[s] the basis for the plaintiff's claim, or [is] referred to extensively" is merited).

Spoken Giants therefore asks that the Court take judicial notice of the Affiliation Agreement (Ex. A); April 19 Email (Ex. B); and the Proposed Term Sheet (Ex. C).

**B.    Pandora lacks standing.**

The Court addressed standing arguments in deciding Word Collections' First Motion to Dismiss. *See generally* Decision at 9-11. Spoken Giants does not intend to

re-plow the same ground, and instead raises distinct issues *vis-à-vis* Pandora's pleadings in the SG ACC and addresses additional case law (including new case law not yet decided at the time of the Court's Decision). On those bases, Pandora lacks standing.

An antitrust claimant must allege both Article III and "the more demanding standard" of antitrust standing. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998). To establish Article III standing, a claimant must plausibly allege that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The alleged injury must be "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

To meet the heightened antitrust standard, a claimant must plausibly allege "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." Decision at 11-12, citing *PLS.com, LLC v. Nat'l Assoc. of Realtors*, 32 F.4th 824, 833 (9th Cir. 2022); *see also Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008) ("For Article III purposes, an antitrust plaintiff establishes injury-in-fact when he has suffered an injury which bears a causal connection to the alleged antitrust violation.").

Pandora asserts two kinds of injury specific to its allegations against Spoken Giants: (1) that Spoken Giants' alleged offer of a "blanket license" gave Pandora "the Hobson's Choice between taking this price fixed and economically unviable bundle—its blanket license—and abandoning its comedy service altogether," (SG ACC ¶ 117), and (2) that the costs of defending against copyright infringement claims brought by other counterclaim defendants (including Lewis Black), including by removing comedy recordings of Mr. Black and other comedians,

(*id.* ¶ 118). Neither of these theories confers standing. Additionally, even if Pandora could identify an injury in fact (it cannot), Pandora fails to plead facts demonstrating that either supposed injury flows from Spoken Giants' supposedly unlawful conduct.

### 1.     Pandora's "blanket license" theory fails to allege Article III injury.

Pandora cannot plausibly allege an actual injury-in-fact under its "blanket licensing" theory. Pandora alleges that Spoken Giants approached Pandora with an "all-or-nothing" proposition. SG ACC ¶¶ 41-42. But the facts pleaded (and incorporated by reference) in the SG ACC render this allegation demonstrably false. Rather than an "all-or-nothing proposal," Spoken Giants expressly describes its invitation to negotiate as a "first step" toward "partner[ship]" with Pandora:

> Spoken Giants seeks to fill the gap in both licensing and administration, ensure that their members are compensated fairly and become a trusted partner for streaming services moving forward. As a first step toward those goals, attached you will find a proposed term sheet covering your services' use of SGs growing catalog of works. After you have had time to review, I would be happy to discuss any details directly and/or schedule a call with the leadership at Spoken Giants.

Ex. B.[4] The Proposed Term Sheet further states that it was a "non-binding" offer and that it contemplated an agreement to be "negotiated in full between the parties" in the future. Ex. C.

Meanwhile, Pandora offers nothing but the unsupported legal conclusion that it was "harmed" because it was forced in into a "Hobson's Choice between taking [the blanket license] or abandoning its comedy offering altogether," SG ACC ¶ 117. The Court should disregard such unsupported conclusions. *Rick-Mik Enters., Inc. v. Equilon Enters.*, LLC, 532 F.3d 963, 972 (9th Cir. 2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 997 (N.D. Cal. 2020). Simply put, Pandora fails to allege "Hobson's Choice." It alleges, at best, that it faced a choice between any number of options, and it chose

---

[4] All emphasis added unless otherwise indicated.

NOTICE OF MOTION AND MOTION TO DISMISS

McKool Smith Hennigan, P.C.
Los Angeles, CA

to employ a scorched-earth strategy, refusing to negotiate with *any* comedian, on any terms. SG ACC ¶ 33.

This is fatal to Pandora's claims for several reasons (*see* section C, below), the first of which is Pandora's failure to allege any injury traceable to Spoken Giants' actions. The facts and documents incorporated by reference show that Pandora made a business decision to de-platform comedians in an effort to bully them into continuing to accept an unfair dynamic in which Pandora has all the power and the comedians none. Pandora cannot twist its retaliation and bullying into an antitrust claim because there is no injury in fact where, as here, "the acts necessary to make the injury happen are at least partly within the plaintiff's own control". *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992).[5]

### 2. Pandora's "litigation costs" theory fails to allege Article III Injury.

Pandora's second theory is that "the costs of defending against the infringement litigation is itself a substantial burden for Pandora's business." But the "cost or potential damages of litigation are insufficient to confer standing." *FTC v. Apex Cap. Grp.*, No. 18-cv-9573-JFW, 2022 WL 1060486, at *3 (C.D. Cal. Mar. 10, 2022); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988); *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866-67 (S.D. Cal. 2018); *Chip-Mender, Inc. v. Sherwin-Williams Co.*, No. 05-cv-3465-PJH, 2006 WL 13058, at *5-6 (N.D. Cal. Jan. 3, 2006). This is especially true for Pandora's claims against Spoken Giants because Spoken Giants has not asserted any affirmative claims against Pandora. Thus, any litigation costs that Pandora may incur at this time are of Pandora's own making, and cannot amount to a distinct harm traceable to Spoken Giants or its actions.

---

[5] For the same reasons, Pandora's "blanket license" theory also fails to allege threatened harm. Threatened harm "must be certainly impending to constitute injury in fact"; "allegations of possible future injury are not sufficient." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

McKool Smith Hennigan, P.C.
Los Angeles, CA

### 3.     Pandora fails to allege an antitrust injury.

To plead an antitrust claim, Pandora must show "antitrust injury, *i.e.*, injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Knevelbaard Dairies*, 232 F.3d at 987.

In deciding Word Collections' First Motion to Dismiss, the Court considered *Intel Corp. v. Fortress Inv. Grp.*, 511 F. Supp. 3d 1006 (N.D. Cal. 2021), which was then pending appeal. (First Mot. to Dismiss at 11; Decision at 13.) After the Court's decision, the Ninth Circuit decided that appeal. *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 21-16817, 2022 WL 16756365 (9th Cir. Nov. 8, 2022).

In view of the Ninth Circuit's decision, Pandora cannot establish an antitrust injury. In *Intel*, the Ninth Circuit rejected the claimant's theory of harm because it "points to no instance in which it has actually paid higher royalties post-aggregation; it merely cites [defendant's] litigation demands as evidence that licensing prices have increased," *and* the court observed that "[t]here are substantial questions regarding whether a litigation demand is even a cognizable 'price' for purposes of the antitrust laws." *Intel Corp.*, 2022 WL 16756365, at *2. The Ninth Circuit also held that, even if the claimant had alleged higher prices, it failed to allege that any "price increase is traceable to a restraint on trade." *Id.*

While *Intel* was decided on the merits, not standing, the logic driving the Ninth Circuit's decision likewise forecloses Pandora's theory of harm based on an allegedly "supra-competitive" licensing proposal. As in *Intel*, Pandora relies on allegedly increased royalties without pleading that it has ever paid *any* increased royalty or other "price," and without pleading any connection that would allow the court to trace some alleged price increase to Spoken Giants' supposed restraint on trade.  In fact, Pandora's theories are even more removed from those in *Intel*, as Pandora fails to allege that overpayment was imminent, and the pleaded facts demonstrate that the "demand" at issue amounted to no more than an invitation to begin arms-length negotiations (an invitation Pandora unilaterally refused). In view of these facts, and

the *Intel* ruling, Spoken Giants requests that the Court dismiss Pandora's claims for lack of antitrust standing.

**C.   Pandora's amended counterclaims fail as a matter of law because its "blanket license" allegations fail to plead a restraint on trade.**

All of Pandora's claims have a fatal flaw: Pandora failed to plead that it could not obtain individual licenses from the comedians represented by Spoken Giants.[6] As a matter of law, "the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available." Decision at 17 (*citing Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2d Cir. 1984). Rather, "[a]n antitrust plaintiff has the burden of pleading the nonavailability of options to acquire individual licensing . . . and [m]ultiple courts have held this burden cannot be met where a plaintiff never makes an inquiry or attempt to negotiate an individual license." *Id*. A plaintiff's failure to allege this attempt to negotiate individual licenses is fatal, unless "the plaintiff demonstrates availability of individual licenses is illusory." *Id.* (citing *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, No. C 10-03098 JSW, 2015 WL 10890655, at *6 (N.D. Cal. Sep. 30, 2015)).

In the SG ACC, Pandora fails to plead that it made any attempt to negotiation individual licenses, and the facts as pleaded (including in the documents Pandora incorporates by reference) demonstrate that the availability of individual licenses was not (and is not) illusory. Pandora relies specifically on the April 19 Email, *e.g.*, ¶ 39, 41, 60, which expressly describes the Proposed Term Sheet as a "first step" towards negotiations and invites Pandora to engage in building a "trusted partnership." Ex. B. The Proposed Term Sheet further states that it is "not a binding contract," sets out the

---

[6] Spoken Giants recognizes the Court's decision rejecting this claim on the prior set of allegations against Word Collections, and raises this argument based on newly alleged facts that were not included in Pandora's original counterclaims against Word Collections or Spoken Giants.

NOTICE OF MOTION AND MOTION TO DISMISS

McKool Smith Hennigan, P.C.
Los Angeles, CA

McKool Smith Hennigan, P.C.
Los Angeles, CA

"Proposed License Terms," and includes placeholders, confirming that it was in draft form and that Spoken Giants was inviting Pandora to engage in negotiations. Ex. C.

Pandora attempts to overcome these facts with the unsupported conclusion that "[Pandora's] only options were to accede to [Spoken Giants'] demands and pay the supra-competitive royalty or degrade its comedy offering by removing" content, and that comedians "directed their followers to 'delete' any streaming service that fails to accede to [Spoken Giants'] demands." *Id.* ¶ 97. But Pandora's new allegations confirm that it received a genuine offer to engage in arms-length bargaining with Spoken Giants, and that Pandora chose to reject that invitation. This devastates its claim that it had no option but to accept the "blanket license" or de-platform comedians. *Nero AG v. MPEG LA, LLC*, 2010 WL 4366448, at *7 (C.D. Cal. Sept. 14, 2010).

## D. Pandora's Section 2 Claims fail because Pandora fails to plead market power.

Pandora asserts claims for monopolization, attempted monopolization, and conspiracy to monopolize. All three require Pandora to plausibly allege that Spoken Giants has obtained or is dangerously likely to obtain, market power. Specifically, a monopolization claim requires the plaintiff to plausibly allege "(1) the possession of monopoly power, (2) the willful acquisition or maintenance of such power, and (3) causal antitrust injury." Decision at 18, citing *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1159 (9th Cir. 2019).[7] Attempted monopolization requires the plaintiff to plausibly allege that "(1) the defendant has engaged in predatory or anticompetitive conduct (2) with a specific intent to

_____

[7] To plead conspiracy to monopolize, Pandora must allege "(1) the existence of a combination or conspiracy to monopolize, (2) an overt act in furtherance of the conspiracy, (3) the specific intent to monopolize, and (4) causal antitrust injury." Decision at 18, citing *In re Nat'l Football League*, 933 F.3d at 1159. As discussed in Section E.1, below, Pandora fails to allege such a conspiracy, foreclosing its conspiracy to monopolize claim (Count IV).

11

monopolize and (3) with a <u>dangerous probability of achieving that monopoly power</u>." Decision at 18, citing *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010).

A claimant may allege market power directly or circumstantially. To plausibly allege direct market power, a claimant must plead "direct evidence of the injurious exercise of market power," by alleging "restricted output or supracompetitive prices." Decision at 18-19, citing *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Direct evidence must demonstrate "'actual, sustained adverse effects on competition' in the relevant market, 'viewed in light of the reality' of the market." *Id.* at 20, quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 461 (1986). A claimant may plead circumstantial evidence by "defining a relevant market, showing that the opponent owns a dominant share of the market, and showing that there are significant barriers to entry and that existing competitors lack the capacity to increase output in the short run." Decision at 19, *citing Rebel Oil Co.*, 51 F.3d at 1434.

Assuming *arguendo* that Pandora defined the relevant market as the "U.S. market for the rights to comedy routines embodied in comedy recordings," it pleads no allegations establishing that Spoken Giants wields monopolistic or dominant power within that market. Instead, Pandora: (1) relies on bare legal conclusions that are insufficient as a matter of law (*e.g.* SG ACC ¶ 97-100); (2) alleges that Spoken Giants' mere "demand" for a license establishes monopoly power; and (3) makes generalized, unsupported allegations that Spoken Giants is monopolistic because *some* of Spoken Giants' members are "must-have" artists. Pandora's bare legal conclusions carry no force and the Court should disregard them. *Rick-Mik Enters., Inc*, 532 F.3d at 972; *Twombly*, 550 U.S. at 557.

### 1. Pandora fails to plausibly allege direct evidence in support of its monopolization claims.

Pandora alleges that "Spoken Giants' license fee demands during its negotiations with Pandora provide direct evidence of market power." (SG ACC ¶ 97.)

McKool Smith Hennigan, P.C.
Los Angeles, CA

As discussed, Pandora's "demand" and "blanket license" allegations are demonstrably false, even considering only the facts alleged and incorporated by reference. *See* Section B, above. Even more, Pandora's mere recitation of Spoken Giants' licensing "demand" (really an offer to engage in negotiation), without identifying a single "instance in which it has higher royalties post-aggregation," is insufficient to plausibly allege direct evidence of "reduced output, increased prices, or decreased quality in the relevant market." *Intel Corp.*, 2022 WL 16756365, at *2.

Pandora does not allege that it attempted to negotiate directly with individual comedians to secure rights from them, rather than from Spoken Giants. Nor does Pandora allege that it ever tried to negotiate with Spoken Giants; that Spoken Giants was unwilling to negotiate; or that it ever paid higher fees as a result of Spoken Giants' licensing proposal. Instead, Pandora's allegations describe a business decision to preemptively de-platform Spoken Giants' members and other comedians, including Lewis Black. These allegations do not plausibly plead direct evidence of a "dangerous probability" of obtaining market power, much less actual market power. Moreover, Pandora's independent business decision—and plain attempt to retaliate against and intimidate Spoken Giants, its members, and other comedians—is not evidence of *Spoken Giants'* market power, but rather demonstrates *Pandora's* superior market power and willingness to wield that power against any comedian that may contemplate protecting their rights.

Pandora alleges that Spoken Giants has (or is dangerously likely to have) market power because Pandora must have access to at least some of its members' recordings in order for it to obtain the "critical mass" of recordings that it allegedly needs to offer a viable comedy service. SG ACC ¶¶ 99, 108. Pandora's own allegations undermine its "must have" claims. Specifically, Pandora pleads, on one hand, that it cannot operate a comedy service without at least some "must have" comedians, including some unidentified members of Spoken Giants. *Id*. Yet Pandora simultaneously pleads that it would not engage in individual negotiations with any

NOTICE OF MOTION AND MOTION TO DISMISS

McKool Smith Hennigan, P.C.
Los Angeles, CA

1    comedian, but rather "would have taken that comedian's recordings off of its service."

2    SG ACC ¶ 33. This allegation establishes that no single comedian is a "must have."

3    Pandora also fails to define the "critical mass" of comedians that it allegedly

4    needed or identify the number of comedians, or which specific comedians, would

5    supply "critical mass." Rather, Pandora alleges that Spoken Giants' members

6    represent the "top five most played comedians on Pandora in 2021." *Id.* ¶ 103. Yet

7    Pandora does not allege what percentage of the overall "market" are represented by

8    these comedians' works, as opposed to their relative popularity on a single platform,

9    in a single year. Much less does Pandora link this unrelated fact to establishing

10   "dominant" power across the "U.S. market for the rights to comedy routines

11   embodied in comedy recordings."

12   Similarly, Pandora alleges that Spoken Giants' members comprise twelve of

13   twenty-five of the most-played comedians on Pandora in 2021. *Id.* ¶ 103. But again,

14   Pandora does not allege a link between this one-year statistic (which applies only to

15   Pandora and no other platform within the market) and Spoken Giants' supposed

16   power over the entire "U.S. market for the rights to comedy routines embodied in

17   comedy recordings."

18   Pandora next cites a Billboard Article, dated May 16, 2014, about comedy

19   album sales *from 1991 to 2014*, without explaining the connection between these

20   album sales and the impact on any market that Pandora participates in today. *Id.*

21   Such a connection is further attenuated by the fact that "[u]ntil 2011, Pandora did

22   not include any spoken word comedy on its service." *Id.* ¶ 22. There is no allegation

23   suggesting that comedy albums that may have been popular eight years ago, much

24   less *over thirty years ago*, remain in demand in today's market, or that comedy

25   album sales are interchangeable proxies for comedy recordings.

26   Pandora's reliance on unnamed employees on its "curation team" and two

27   dissatisfied customers is equally meritless. Pandora asserts that "Pandora's curation

28   team has concluded that if Pandora no longer had access to any of the works in the

McKool Smith Hennigan, P.C.
Los Angeles, CA

14

NOTICE OF MOTION AND MOTION TO DISMISS

[Spoken Giants' and its members'] catalog, it would, at a minimum, have to significantly degrade its comedy offering in the short run and it would not be able to offer a competitive comedy offering in the long run." *Id.* ¶ 109. Pandora also cites to two customer complaints, without explaining why these complaints are proxies for the viability of its comedy offering as a whole, or why two complaints are remotely significant given the 48.8 million monthly active users that Pandora claims its ad-supported offering, alone, served in 2021. *Id.* ¶¶ 8, 97, 110. Each of these assertions is a self-serving conclusion, without *any* link to the market. The Court should disregard such unsupported conclusions. *Rick-Mik Enters., Inc.*, 532 F.3d at 972.

### 2. Pandora fails to plausibly allege circumstantial evidence in support of its monopolization claims.

The only "circumstantial evidence" that Pandora offers is its conclusory claim that "insurmountable" barriers prevent hypothetical market entrants from checking Spoken Giants' power because there are no substitutes for Spoken Giants' "must have" portfolio.[8] SG ACC ¶ 111. That claim fails. The existence of competitors, *e.g.*, Word Collections and individual unaffiliated comedians (including Lewis Black), refutes Pandora's claim that Spoken Giants possesses, or is dangerously close to possessing, monopoly power. *Reudy v. Clear Channel Outdoors, Inc.*, 693 F.Supp.2d 1091, 1127 (N.D. Cal. 2010) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition.").

Pandora alleges that Word Collections' existence does not "undermine" Spoken Giants' market power because Pandora requires "access to at least a portion

---

[8] Pandora does not appear to attempt to allege that "existing competitors lack capacity to increase output in the short run." *Rebel Oil Co.*, 51 F.3d at 1434. To the extent it pleads that Spoken Giants owns a dominant share of the market, those allegations are deficient. *See* Section 2.D (no allegations of market power). Therefore, even if it has alleged barriers to entry (which it has not), Pandora still falls short of the requirements for pleading circumstantial evidence of market power under *Rebel Oil Co.*

McKool Smith Hennigan, P.C.
Los Angeles, CA

of the catalogs of *both*" parties. SG ACC ¶ 112. But Pandora brushes past this fundamental inconsistency in its allegations with nothing more than a bare legal conclusions. Pandora alleges no collusion between Spoken Giants and Word Collections; fails to allege what makes Spoken Giants' (or Word Collections') portfolio a "must have"; and fails to identify what portion of each competitor's portfolio it requires. At the end of the day, Pandora cannot plausibly allege that real or potential market entrants could not provide substitutes to what Spoken Giants offers, given Pandora's simultaneous allegations that Word Collections and unaffiliated comedians are providing such substitutes, and even that World Collection also has (or is dangerously close to having) "monopoly power." *See generally* WC ACC, ECF No. 93.

Pandora's allegations concerning a dangerous probability that Spoken Giants might obtain market power and Spoken Giant's intent to monopolize are likewise deficient. Pandora claims that Spoken Giants, working together with its members, "inten[ds] . . . to consolidate the works of a critical mass of comedians" so that it will "have sufficient market power to force a change to how comedy rights have been licensed for decades, secure supra-competitive royalties for its affiliated comedians, and ultimately gain full monopoly power, if it has not already done so." SG ACC ¶ 102. But Pandora's allegations confirm that, even if Spoken Giants intended to monopolize (which it does not), Spoken Giants is nowhere close to obtaining market power. Pandora alleges that it offers "recordings of thousands of comedians" (*id.* ¶ 23) while Spoken Giants possesses a portfolio of, at most, "hundreds" of comedians. *Id.* ¶ 38. Pandora asserts, conclusorily, that it needs access to Spoken Giants' portfolio to obtain a "critical mass" of comedy recordings. As discussed above, Pandora fails to define "critical mass" or allege why it requires recordings of comedians affiliated with Spoken Giants, rather than unaffiliated comedians. Accordingly, Pandora does not plausibly allege that Spoken Giants intends to obtain, or is dangerously close to obtaining, market power.

### E.   Pandora's Section 1 claims fails because Pandora fails to allege an antitrust conspiracy or an unreasonable restraint of trade.

Pandora alleges that Spoken Giants is liable for two categories of antitrust agreements: (1) an agreement among the comedians, facilitated by Spoken Giants, to fix prices (Count I); and (2) bilateral affiliation agreements between Spoken Giants and individual comedians to unreasonably restrain trade (Count II). For the first category, Pandora asserts that circumstantial evidence, including four purported "plus factors," shows that the challenged conduct amounts to an unlawful conspiracy, rather than mere interdependence, and that it results in anticompetitive effects. For the second category, Pandora alleges that Spoken Giants entered into "de facto exclusive affiliation agreements," which it contends are unlawful under the rule of reason when considered in combination with Spoken Giants' licensing proposal and its "ability to secure supra-competitive license fees." SG ACC ¶ 71.

Pandora has not met its pleading burden on either claim because it has not plausibly alleged horizontal agreements, market power, or anti-competitive effects. Thus, both claims should both be dismissed with prejudice.

#### 1.   Pandora fails to allege an antitrust conspiracy.

To state a Section 1 conspiracy claim, a plaintiff must sufficiently plead "(1) a conspiracy to fix prices in violation of the antitrust laws ('conspiracy'); (2) an antitrust injury—i.e., the impact of the defendants' unlawful activity ('impact'); and (3) damages caused by the antitrust violations ('damages')." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 620 (N.D. Cal. 2015). To allege a conspiracy, a claimant must plead more than mere "parallel conduct, even conduct consciously undertaken." *Twombly*, 550 U.S. at 557. Absent "further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id.* Because Pandora pleads a hub-and-spoke conspiracy, with Spoken Giants as the alleged hub and unnamed individual comedians as the spokes, it must plead not only the vertical agreement(s) between with the hub (Spoken Giants)

17

McKool Smith Hennigan, P.C.
Los Angeles, CA

and spokes (comedians), but also (2) the "rim of the wheel," in the form of horizontal agreements among the spokes (comedians). *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015) ("*In re Musical Instruments*").

Moreover, Pandora must plead the required facts with enough specificity to allege "who, did what, to whom (or with whom), where, and when". *In re Musical Instruments*, 798 F.3d at 1194 n.6; *see also Kendall v. Visa*, 518 F.3d 1042, 1047 (9th Cir. 2008) (A claimant must "allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin"). Such "evidentiary facts" must indicate the existence of "a contract, combination, or conspiracy . . . by which the person or entities intended to harm or restrain trade." *Kendall*, 518 F.3d at 1047.

Pandora fails to plead *any* facts establishing a horizontal agreement among competitor comedians, facilitated by Spoken Giants, to fix prices. Instead, Pandora contends that circumstantial evidence demonstrates the comedians' "conscious commitment to their unlawful objective." SG ACC ¶ 47. Pandora then alleges that "each Comedian proceeded to engage in parallel conduct" because they "entered into an affiliation agreement with Spoken Giants," *id.* ¶ 48, and that the comedians were aware of press releases and other statement made by Spoken Giants, *id.* ¶¶ 50-59. But at most, this speaks to the vertical relationship between Spoken Giants and the comedians, while saying nothing about a supposed horizontal agreement between the comedians. Pandora next relies on Spoken Giants supposed "all or nothing" license demand. That premise is thoroughly debunked above.

In sum, Pandora "rests its conspiracy claim on the individual comedians' decisions to associate with Word Collections." Decision at 24. As the Court previously observed, that is not enough to establish a hub-and-spoke conspiracy. *Id*. Rather, Pandora must "offer some facts plausibly suggesting concerted activity that is distinct from parallel conduct." *Id*.

Pandora attempts to satisfy this demand by pleading "plus factors": (1) the

McKool Smith Hennigan, P.C.
Los Angeles, CA

challenged conduct would be "against the individual self-interest of any Comedian who attempted the same action alone," SG ACC ¶ 63; (2) the comedians "all had a common motive to conspire," *id.* ¶ 64; (3) that the comedians "all undertook efforts, within a very short period of time, to force an unprecedented change to the licensing of comedy," *id.* ¶ 65; and (4) that the comedians "took direct steps to provide assurances to each of the Comedians during the period of license demands that the Collective remained intact and that they should all stick together," *id.* ¶ 66. These "plus factors" cannot remedy Pandora's failure to plead an agreement among the comedians.

*In re Musical Instruments*, is instructive. 798 F.3d at 1186. There, the plaintiffs alleged that circumstantial evidence, including similar plus factors, indicated that a price fixing conspiracy existed. Considering those allegations in their totality, the Ninth Circuit disagreed and held that, rather than suggesting conspiracy, the allegations indicated that the alleged co-conspirators each independently engaged in parallel conduct "in its own interest." *Id.* at 1198. Pandora's counterclaims are indistinguishable from those in *In re Musical Instruments*. Here, as in *In re Musical Instruments*, Pandora alleges that motive and self-interest are evidence of conspiracy, but "alleging 'common motive to conspire' simply restates that a market is interdependent." *Id.* Also information sharing among market players, whether at a trade show, as in *In re Musical Instruments*, or via marketing and public statements, as alleged in the SG ACC, "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy." 798 F.3d at 1194. Because none of Pandora's claims rise to the level of conspiracy, they fail as a matter of law.

### 2. Pandora fails to state a claim for unreasonable restraint of trade.

Pandora's remaining Section 1 claim fails because Pandora fails to allege that the affiliation contracts amount to antitrust agreements or that they impose an unreasonable restraint on trade.

19

McKool Smith Hennigan, P.C.
Los Angeles, CA

### a.   Pandora fails to allege antitrust agreements.

To state a claim for agreements in unreasonable restraint of trade, a claimant must plausibly allege that: "(1) an agreement exists, (2) the agreement imposed an unreasonable restraint of trade through either a per se or rule of reason analysis, and (3) the restraint affected interstate commerce." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 985 (W.D. Wash. 2022), *reconsideration denied*, No. 2:20-CV-00424-RAJ, 2022 WL 4240826 (W.D. Wash. Aug. 2, 2022).

Pandora's claim fails to allege that the affiliation contracts are antitrust agreements "between separate economic actors pursuing separate economic interests." *Am. Needle v. NFL*, 560 U.S. 183, 195-96 (2010). At most, Pandora alleges that the affiliation contracts create a principal-agent relationship between Spoken Giants and individual comedians. The formation of that routine kind of relationship is not actionable as an antitrust agreement. *See Calculators Hawaii, Inc. v. Brandt., Inc.*, 724 F.2d 1332, 1336 (9th Cir. 1983).

### b.   Pandora fails to allege unreasonable restraint of trade.

Pandora does not dispute that the rule of reason applies to this claim. SG ACC ¶¶ 127-134. Under the rule of reason, an antitrust plaintiff must "demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive.'" *Frame-Wilson*, 591 F. Supp. 3d at 985, quoting *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011). "In its design and function the rule distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). Conduct is "deemed *anticompetitive* under the Sherman Act . . . when it harms both allocative efficiency and raises the prices of goods above competitive levels or diminishes their quality." *Rebel Oil Co..*, 51 F.3d at 1433. To allege anti-competitive effects, a claimant must plead both market power and injury to competition. *Adaptive Power Solutions, LLC v. Hughes Missile Systems Co.*, 141 F.3d 947, 951

(9th Cir. 1998).

Pandora's claim fails because it has not alleged anti-competitive injury.[9] Pandora concludes that the affiliation agreements allow Spoken Giants to fix prices and eliminate competition, and forced Pandora to "choose between a blanket license . . . at a supra-competitive price or being unable to offer a competitively viable comedy streaming service in the long run." SG ACC ¶¶ 130-131. But alleging harm to itself, without alleging harm to competition more broadly, is insufficient under the law. *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp 3d 988, 998 (N.D. Cal. 2015). Further, Pandora does not allege that it paid, or overpaid, any license for literary works as a result of Spoken Giants' invitation to negotiate. Without identifying any actual overpayment, Pandora fails to allege any anti-competitive effects. *Intel Corp. v. Fortress Inv. Grp. LLC*, No. 21-16817, 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022).

Additionally, the affiliation agreements are easily terminable via written notice, and contemplate a three-year term.  Ex. A.  Moreover, Pandora acknowledges the easily-terminable nature of the agreements by acknowledging that Lewis Black terminated his arrangement with Spoken Giants. SG ACC ¶ 12.[10] In similar circumstances courts have held that easily terminable contract of limited duration, like the affiliation agreements, "negate[s] substantially their potential to foreclose competition." *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-CV-04689-WHO, 2014 WL 2987322, at *4-5; *see also Sanofi-Aventis U.S., LLC v. Mylan, Inc. and Mylan Specialty, LP*, No. 21-3005, 2022 WL 3273055, at *21 (10th Cir. July 29, 2022); *Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2nd Cir. 1984). Pandora's failure to plead anticompetitive injury—along with its failure to plead antitrust agreements and monopoly power—is fatal.

---

[9] Pandora's claim also fails because it has not alleged market power, *see* Section 2.D.

[10] *See also*, Lewis Black's Joinder, filed contemporaneously with this motion.

NOTICE OF MOTION AND MOTION TO DISMISS

McKool Smith Hennigan, P.C.
Los Angeles, CA

## <u>CONCLUSION</u>

For the reasons explained above, the Amended Counterclaims should be dismissed with prejudice.

DATED: December 19, 2022      **MCKOOL SMITH, P.C.**

By: */s/ Jeff McFarland*
    Jeff McFarland

*Attorneys for Counterclaim-Defendant*
*Spoken Giants, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Spoken Giants, certifies that this brief contains 6,937 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 19, 2022          **MCKOOL SMITH, P.C.**

By: */s/ Jeff McFarland*
    Jeff McFarland
    *Attorneys for Counterclaim-Defendant*
    *Spoken Giants, LLC*

NOTICE OF MOTION AND MOTION TO DISMISS