Jeffery D. McFarland (SBN 157628)
jmcfarland@mckoolsmith.com
McKOOL SMITH, P.C.
3000 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
Telephone:   (213) 694-1010
Facsimile:   (213) 694-1234

Travis E. DeArman (*pro hac vice*)
tdearman@mckoolsmith.com
McKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
Telephone:   (214) 978-4000
Facsimile:   (214) 978-4044

Attorneys for Counter Defendant
SPOKEN GIANTS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| In Re PANDORA MEDIA, LLC COPYRIGHT LITIGATION _____ This Document Relates To: ALL ACTIONS | Case No. 2:22-cv-00809-MCS-MAR <br><br> <u>CONSOLIDATED ACTION</u> <br><br> **RULE 11 MOTION FOR SANCTIONS** <br><br> Assigned to Hon. Mark C. Scarsi <br> Date: March 6, 2023 <br> Time: 9am <br> Courtroom: 7C |

McKOOL SMITH, P.C.
LOS ANGELES, CA

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2023, at 9:00am, or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Mark C. Scarsi, United States District Judge of the Central District of California in Courtroom 7C, Counterclaim Defendant Spoken Giants, LLC will, and hereby does, move for an order imposing sanctions pursuant to Federal Rule of Civil Procedure 11(b).

This motion is based on the following grounds: That Pandora Media, LLC misrepresented the record, in violation of Federal Rule of Civil Procedure 11(b)(3); that Pandora advanced legally frivolous arguments that lack evidentiary support, in violation of Federal Rule of Civil Procedure 11(b)(2) and 11(b)(3); and that Pandora filed amended counterclaims against Spoken Giants for the purpose of harassing Spoken Giants, in violation of Federal Rule of Civil Procedure 11(b)(1); and other violations outlined in the accompanying Memorandum of Points and Authorities. This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, all papers on file with the Court in this action, and such other evidence and argument as the Court may receive.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which occurred on January 12, 2023.

Dated: January 25, 2023       **MCKOOL SMITH, P.C.**

By:    _/s/ Travis DeArman_
      Travis DeArman

# TABLE OF CONTENTS

I.     Introduction ................................................................................................1

II.    Background...................................................................................................2

III.   Legal Standard .............................................................................................3

IV.    Argument .....................................................................................................4

       A.    Pandora misrepresented the record, violating Rule 11(b)(3). ..................5

             1.    Spoken Giants never demanded an "all-or-nothing blanket
                   license," and Pandora representations to the contrary are
                   objectively false. ........................................................................5

             2.    Spoken Giants is not a "de facto" exclusive licensor of the
                   rights in question.........................................................................9

       B.    Pandora advanced legally frivolous arguments that lack evidentiary
             support, violating Rule 11(b)(2) and 11(b)(3). .........................................11

             1.    Pandora's monopolization claims lack a legal or evidentiary
                   basis..........................................................................................12

             2.    Pandora's price fixing claims lack a factual basis and rely on
                   a misrepresentation of the record................................................13

             3.    Pandora's restraint of trade claims lack a factual or legal
                   basis and rely on a misrepresentation of the record.....................17

       C.    Pandora filed the SG ACC for the purpose of harassing Spoken
             Giants and increasing the cost of litigation, violating Rule 11(b)(1). ......18

V.     Conclusion & Request for Relief .................................................................19

McKool Smith, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION FOR SANCTIONS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
  92 F.3d 781 (9th Cir. 1996) ................................................................. 17

*Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*,
  744 F.2d 917 (2d Cir. 1984) ............................................................ 7, 10

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
  498 U.S. 533, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991) ................... 9

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ............................................................. 18

*Est. of Blue v. Cnty. of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) .................................................. 12, 13, 14

*Flextronics Int'l USA, Inc. v. Murata Manufacturing Co., Ltd.*,
  2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) .................................... 17

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
  310 F. Supp. 2d 569 (S.D.N.Y. 2004) ................................................... 9

*Greenberg v. Sala*,
  822 F.2d 882 (9th Cir. 1987) ................................................................. 5

*Havensight Cap. LLC v. Nike, Inc.*,
  891 F.3d 1167 (9th Cir. 2018) ........................................................... 4, 8

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2017 WL 11633138 (C.D. Cal. June 23, 2017) ................................. 5, 14

*Hunt v. Sunny Delight Beverages Co.*,
  No. 818CV00557JLSDFM, 2019 WL 1873230 (C.D. Cal. Apr. 9,
  2019) .............................................................................................. 7, 11

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ................................................................... 4

McKool Smith, P.C.
Los Angeles, CA

i

*Nero AG v. MPEG LA, LLC*,
  2010 WL 4366448 (C.D. Cal. Sept. 14, 2010) ................................................ 7, 10

*Nguyen v. Simpson Strong-Tie Co.*,
  No. 19-cv-07901-TSH, 2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) ...... 7, 8, 11

*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*,
  No. EDCV1001858VAPDTBX, 2011 WL 13135642 (C.D. Cal. Dec.
  14, 2011) ................................................................................................................19

*Reudy v. Clear Channel Outdoors, Inc.*,
  693 F.Supp.2d 1091 (N.D. Cal. 2010) ...............................................................13

*Stanich v. Hissong Grp., Inc.*,
  No. 2:09-CV-0143, 2010 WL 3732129 (S.D. Ohio Sept. 20, 2010) ..................9

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory,
  Ltd.*,
  682 F.3d 170 (2d Cir. 2012) ................................................................................4

*Stargaze Mgmt., LLC v. George Smith Partners, Inc.*,
  No. CV-15-02755-R, 2015 WL 12656918 (C.D. Cal. Oct. 9, 2015) ..................4

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) .......................................................................4, 14

*Truesdell v. S. California Permanente Med. Grp.*,
  293 F.3d 1146 (9th Cir. 2002) ............................................................................4

*United States v. Milam*,
  855 F.2d 739 (11th Cir. 1988) (per curiam) .......................................................9

*Uziel v. Superior Ct.*,
  No. CV 19-1458-DSF (JEM), 2021 WL 5830040 (C.D. Cal. Oct. 19,
  2021) .................................................................................................7, 11, 17, 18

*Whitehead v. Food Max of Miss., Inc.*,
  332 F.3d 796 (5th Cir. 2003) (*en banc*) .............................................................4

*Williams v. P.I. Properties No. 42, L.P.*,
  No. 222CV05023ODWJPRX, 2022 WL 17252573 (C.D. Cal. Nov.
  28, 2022) ..............................................................................................................8

McKool Smith, P.C.
Los Angeles, CA

ii

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................*passim*

Fed. R. Civ. P. 11(b) ........................................................... 3, 4

Fed. R. Civ. P. 11(b)(1) ......................................................... 18

Fed. R. Civ. P. 11(b)(2) ......................................................... 11

Fed. R. Civ. P. 11(b)(3) ..................................................... 5, 7, 11

Fed. R. Civ. P. 11(c) ........................................................... 3, 4

Fed. R. Civ. P. 11(c)(1) ........................................................... 3

Fed. R. Civ. P. 11(c)(2) ........................................................... 4

McKool Smith, P.C.
Los Angeles, CA

NOTICE OF MOTION AND MOTION FOR SANCTIONS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Counter-Defendant Spoken Giants, LLC ("Spoken Giants") requests that the Court impose sanctions on Defendant and Counter-Claimant Pandora Media, LLC ("Pandora") and Pandora's counsel of record, Mayer Brown, LLP ("Mayer Brown"),[1] for filing Pandora's First Amended Counterclaims against Spoken Giants (ECF No. 94, "SG ACC").

Spoken Giants does not bring this motion for sanctions lightly. However, Pandora and Mayer Brown filed the SG ACC based on fundamental misrepresentations of the record, allegations that lack any evidentiary basis, and frivolous legal contentions. This includes several instances where Pandora and Mayer Brown misleadingly quote or paraphrase evidence, while intentionally omitting critical portions of the same evidence that would prove fatal to Pandora's claims.

Such misconduct would warrant sanction in any circumstances, but sanctions are doubly justified in this case because Pandora and Mayer Brown filed the SG ACC after the Court dismissed near-identical counterclaims; warned Pandora about the flimsy support for those original counterclaims (including a reminder of Pandora's obligations under Rule 11); and cautioned Pandora that it need not rush to re-plead before developing a factual record. Pandora's and Mayer Brown's disregard of the Court's warnings, together with their baseless and misleading allegations, demonstrate the true purpose of the SG ACC: to harass and intimidate Spoken Giants and its members, and to needlessly increase the cost of litigation.

For these and all the reasons stated below, Spoken Giants requests that the Court enter an order sanctioning Pandora and Mayer Brown.

---

[1] Paul M. Fakler, of Mayer Brown, LLP signed the SG ACC on behalf of Pandora.

McKool Smith, P.C.
Los Angeles, CA

## II.   BACKGROUND

The Court is familiar with the complicated procedural history of this case. But to briefly summarize: a number of plaintiff comedians (the "Comedians") filed individual claims for copyright infringement against Pandora beginning in February 2022. Following consolidation, the Comedians filed an amended complaint on April 26, 2022. ECF No. 24.[2]

On May 5, 2022, Pandora answered and filed antitrust counterclaims against the Comedians and Word Collections Inc. ("Word Collections"), a "Performance Rights Collection Agency" working with a number of the Comedians—and a competitor of Spoken Giants. ECF No. 34 ("WC CC"). Word Collections moved to dismiss the counterclaims, and the Comedians joined that motion. ECF. No. 49 (motion to dismiss); ECF No. 50 (joinder).

On September 26, 2022, following argument on Word Collections' motion to dismiss, Pandora filed additional (and near-identical) antitrust counterclaims against Lewis Black, another comedian who had brought copyright infringement claims against Pandora, and Spoken Giants, a global rights administration company of which Mr. Black had previously been a member. ECF No. 72 ("SG ACC"). Specifically, Pandora alleged that Spoken Giants violated the Sherman Act by engaging in price fixing, tying, monopolization, attempted monopolization, and conspiracy to monopolize, through Spoken Giants' attempts to protect the copyrights of its members. SG ACC ¶¶ 80-82, 87-88, 98-101.

Before Spoken Giants' deadline to respond, the Court dismissed Pandora's counterclaims against Word Collections and the Comedians. ECF No. 83 ("Decision"). In doing so, the Court granted Pandora leave to amend, although it expressed "doubts" that Pandora would be able to "allege the necessary facts at this stage" and reminded Pandora of its obligations under Rule 11. *Id.* at 27-28. The Court

McKool Smith, P.C.
Los Angeles, CA

---

[2] The "Comedians" refers to the plaintiffs identified in ECF No. 24.

later consolidated the schedule for the amendment of Pandora's counterclaims and the response from all counterclaim defendants, including Spoken Giants. ECF No. 86.

Ignoring the Court's warnings, Pandora re-filed its counterclaims against all counterclaim defendants, including Spoken Giants, on November 18, 2022. ECF No. 84 ("SG ACC"). Spoken Giants filed a motion to dismiss these counterclaims on December 19, 2022. ECF No. 102.[3]

Because Pandora's counterclaims affirmatively misrepresent the record and advance claims without a basis in fact or law, Spoken Giants files this motion for sanctions pursuant to Federal Rule of Civil Procedure 11.

## III.   LEGAL STANDARD

Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c), in turn, permits the Court to impose sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation," after the person subject to sanctions is provided notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(c)(1). Rule 11(c) further requires that Rule 11 sanctions must be

---

[3] Word Collections filed a separate, renewed motion to dismiss. ECF No. 104. The Comedians and Lewis Black joined in the motions to dismiss. ECF No. 103, 105.

McKool Smith, P.C.
Los Angeles, CA

requested via separate motion, filed only after service on the person(s) against whom sanctions are sought, and after that person(s) is afforded twenty-one days to withdraw or correct the pleading at issue. Fed. R. Civ. P. 11(c)(2).

Each obligation of Rule 11(b) must be satisfied; violation of any prong may result in sanctions; and the standard under which an attorney or party is measured is an objective, not subjective, standard of reasonableness. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (*en banc*). Courts have broad discretion to impose sanctions for Rule 11 violations against any attorney or party when a pleading is factually misleading, legally frivolous, or presented to harass the opposing party. *See Havensight Cap. LLC v. Nike, Inc.*, 891 F.3d 1167, 1170 (9th Cir. 2018); *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002); Fed. R. Civ. P. 11(c). The Court can impose sanctions for misrepresentations or frivolous pleadings, even if the party to be sanctioned has asserted a non-frivolous claim. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

## IV.   ARGUMENT

Pandora and its counsel have violated Rule 11 by submitting amended counterclaims lacking any basis in fact, and even misrepresenting the record (11(b)(3)); making frivolous legal arguments (11(b)(2)); and filing counterclaims for the improper purpose of harassing Spoken Giants and its affiliates (11(b)(1)).

Pursuant to Fed. R. Civ. P. 11(c)(2), Spoken Giants served a copy of this motion on Pandora and Mayer Brown on December 30, 2022. [4] Twenty-one days have

---

[4] Spoken Giants made minor revisions to this motion, after serving a copy on Pandora, but the substance of the motion remains unchanged, and Spoken Giants has complied with the notice requirements of Rule 11. *See Stargaze Mgmt., LLC v. George Smith Partners, Inc.*, No. CV-15-02755-R, 2015 WL 12656918, at *1 (C.D. Cal. Oct. 9, 2015) ("[S]ubstantial compliance with the spirit of the safe harbor rule, which provides adequate notice to the allegedly offending party, may satisfy the procedural requirements set out in Rule 11(c)(2)."); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) (holding that Rule 11 movant had satisfied the safe harbor requirements by serving a letter and notice of motion, without serving the supporting motion itself, at least 3 weeks before filing the fully supported motion).

McKool Smith, P.C.
Los Angeles, CA

passed since that date, but Pandora and its counsel have refused to withdraw Pandora's antitrust counterclaims. Spoken Giant's therefore files this motion, and would show the Court as follows.

**A.   Pandora misrepresented the record, violating Rule 11(b)(3).**

Rule 11(b)(3) authorizes sanctions for claims that are factually baseless or based in affirmative misrepresentations of fact. "A claim is factually baseless if it lacks foundation" and if "no competent attorney could believe [the claim] was well grounded in fact and warranted by law." *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 11633138 (C.D. Cal. June 23, 2017); *Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987).

**1.   Spoken Giants never demanded an "all-or-nothing blanket license," and Pandora representations to the contrary are objectively false.**

Pandora's antitrust counterclaims against Spoken Giants rest on a false premise and fundamental misrepresentation: that Spoken Giants demanded that Pandora take an "all-or nothing blanket license" to the entire Spoken Giants' portfolio. This false allegation pervades Pandora's counterclaims. *E.g.*, SG ACC at ¶¶ 21, 41-42, 45, 54-61, 71, 74, 77-80, 98, 117, 143. However, it is most succinctly captured in the following paragraphs:

> On April 19, 2021, Spoken Giants followed through on the promises it made on its website, in its marketing materials, and its other public statements, and **demanded that Pandora take its license. The license that Spoken Giants insisted that Pandora enter into was exactly what it promised the Comedians it would demand—an all-or-nothing blanket license** covering the Collective's entire "growing catalog of works."

> This all-or-nothing blanket license was on behalf of all Spoken Giants-affiliated Comedians acting jointly, not in their respective individual interests. The licensing terms **did not allow for any reduction in fee** should Pandora enter into a separate license directly with a Spoken Giants-affiliated comedian, **nor did it allow for Pandora to secure the rights to just some, but not all, of the material controlled by the Collective** (whether at prices set by the individual comedians or by Spoken Giants). And, the license called for an exorbitant fee, one well in excess of what previously emerged under more competitive conditions.[5]

---

[5] All emphasis added unless otherwise indicated.

McKool Smith, P.C.
Los Angeles, CA

SG ACC ¶¶ 60-61. Pandora's allegations are objectively false and misleading. Neither Spoken Giant's April 19, 2022 email to Pandora ("April 19 Email") (Exhibit A), nor the proposed term sheet ("Term Sheet") attached to that email (Exhibit B) communicate an "all-or-nothing" demand for a "blanket license" Spoken Giants' entire catalog.

The April 19 Email is copied below, in pertinent part:

> While we know from previous public statements that streaming services have been aware of the need to license and pay royalties for spoken word uses, until now a formal rights organization has not existed within the U.S. to this administer these rights. **Spoken Giants seeks to fill the gap in both licensing and administration, ensure that their members are compensated fairly** and become a trusted partner for streaming services moving forward. **As a first step toward those goals, attached you will find a proposed term sheet** covering your services' use of SGs growing catalog of works. After you have had time to review, **I would be happy to discuss any details directly and/or schedule a call with the leadership at Spoken Giants**. In the meantime, I'm attaching a recent intro deck which was recently presented to The Copyright Society, as it gives a brief overview of Spoken Giants, along with the press release from their official launch. Additionally, you can find more details about the organization at www.spokengiants.com.

> We would appreciate hearing back from you regarding this proposal at your earliest convenience.

As shown above, this email establishes that Spoken Giants extended an invitation to Pandora to begin negotiations concerning the licensing of its members' intellectual property. The email expressly refers to this outreach as a "first step," anticipates future discussions between the parties' representatives and leadership, and invites a response from Pandora. Similarly, the Term Sheet states that it "is not a binding contract between the parties," contemplates a future license agreement that "will be negotiated in full between the parties," and includes placeholders, demonstrating that the term sheet is an opening statement, inviting negotiations.

No objectively reasonable person reading these two documents could characterize Spoken Giants' behavior as having "demanded that Pandora take the 'all-or-nothing' blanket license covering everything in its catalog for an exorbitant fee."

McKool Smith, P.C.
Los Angeles, CA

SG ACC ¶ 42.[6] However, Pandora and its counsel knew that it could not proceed with its counterclaims against Spoken Giants, unless it maintained the fiction of the "all-or-nothing blanket license." This is because, as matter of law, "the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available." *Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2d Cir. 1984); *Nero AG v. MPEG LA, LLC*, 2010 WL 4366448, at *7 (C.D. Cal. Sept. 14, 2010).

Recognizing these facts and controlling law, Pandora and its counsel intentionally omitted the April 19 Email and Term Sheet from its counterclaims (neither attaching nor quoting the relevant portions of the documents), and mixed selective quotations with flat mischaracterizations of these documents. This type of cherry-picking and mischaracterization is grounds for sanctions. *Nguyen v. Simpson Strong-Tie Co.*, No. 19-cv-07901-TSH, 2020 WL 5232564, at *7 (N.D. Cal. Sept. 2, 2020); *Uziel v. Superior Ct.*, No. CV 19-1458-DSF (JEM), 2021 WL 5830040, at *5 (C.D. Cal. Oct. 19, 2021) (finding plaintiff violated Rule 11(b)(3) because "factual contentions that were the cornerstones of his 'theory' were unsupported, and even contradicted by the record of underlying proceedings"); *Hunt v. Sunny Delight Beverages Co.*, No. 818CV00557JLSDFM, 2019 WL 1873230, at *3 (C.D. Cal. Apr. 9, 2019) (finding dismissal appropriate as a sanction where plaintiffs ignored the court's previous sanctions order to plead facts underlying their allegations, and instead repleaded affirmative misrepresentations of facts forming "the core of the dispute").

*Nguyen* is particularly instructive. There, plaintiffs brought a class action against construction manufacturers, alleging that the manufacturers failed to warn that their connectors and fasteners were susceptible to premature corrosion. *Id.* at *2-3. In their complaint, plaintiffs referenced defendants' recommendations, guidelines, and warnings that did exactly that: disclosed susceptibility to corrosion. *Id.* When

---

[6] Pandora repeats the same false allegation throughout the SG ACC, for example at paragraphs 60-61, 71, 78.

McKool Smith, P.C.
Los Angeles, CA

7

1    defendants served plaintiffs with a Rule 11 letter on the basis that the complaint could

2    not have been written after a reasonable investigation, plaintiffs doubled down:

3    "Whereas Plaintiffs had alleged that [Defendants] failed to disclose the Product defect,

4    they now alleged that [Defendants] had failed to 'adequately' disclose that the product

5    would corrode," while re-alleging that Defendants represented to customers that their

6    product would last the lifetime of a home and would resist corrosion. *Id.* The amended

7    complaint still contained references to defendants' product materials that were

8    "diametrically opposed" to its allegations. *Id.* at *4.

9        Based on this conduct, the court imposed Rule 11 sanctions because "Counsel

10   cherry picked and incorporated into the FAC isolated portions of [Defendants']

11   Application Guide and Website [. . .] while simply ignoring other language which

12   [. . .] contradicted core allegations made in the FAC." *Id.* at *5 (cleaned up). The court

13   found this conduct warranted sanctions because "[t]he result was that the FAC was

14   factually misleading." *Id.* (citing *Truesdell*, 293 F.3d at 1153).

15       Pandora's conduct in this case is more egregious than the plaintiffs' conduct in

16   *Nguyen* because after the Court put Pandora on notice that its claims were insufficient,

17   Pandora responded not with tempering language, but instead by adding misleading

18   references to (and quotations from) the April 19 Email and Term Sheet that support

19   Pandora's misrepresentations concerning an alleged "blanket license," while

20   specifically omitting those documents from its pleadings and failing to quote or

21   describe portions of those documents fatal to Pandora's claims. In doing so, Pandora

22   "cherry picked" the record in order to mislead the Court.

23       A plaintiff may not mischaracterize facts because it lacks support for its

24   allegations. *Id.*; *see also Williams v. P.I. Properties No. 42, L.P.*, No.

25   222CV05023ODWJPRX, 2022 WL 17252573, at *3 (C.D. Cal. Nov. 28, 2022)

26   (imposing sanctions where the moving plaintiff's entire case rested on abrogated law);

27   *Havensight Capital*, 891 F.3d at 1174 (imposing sanctions for vexatious filing of a

28

McKool Smith, P.C.
Los Angeles, CA

8

motion for reconsideration to extend the period of time to appeal after the court already imposed sanctions for other vexatious filings).[7]   Spoken Giants therefore requests that the Court impose Rule 11 sanctions against Pandora, and its counsel, for these misrepresentations of fact.[8]

**2.    Spoken Giants is not a "de facto" exclusive licensor of the rights in question.**

Pandora and its counsel make a second fundamental misrepresentation that is fatal to all of Pandora's counterclaims against Spoke Giants. Specifically, Pandora alleges that Spoken Giants' affiliation agreements are "anticompetitive" because:

> . . . each Comedian entered into an affiliation agreement with Spoken Giants, granting Spoken Giants the authority to pool their rights together with those of the other Comedians, become the de facto exclusive licensor of that collective set of rights, and license that set of rights only on a blanket basis and for a dramatically inflated price . . . .

SG ACC ¶ 48.

Pandora repeats this language about "de facto" exclusivity throughout its pleadings. *See*, *e.g.*, SG ACC ¶ 71 ("de facto exclusive affiliation agreements"); ¶ 72 ("de facto exclusive control over the Comedian's rights"); ¶ 76 ("Spoken Giants has become the de facto exclusive licensor of the rights of all of its co-conspirator comedian members").

Pandora's repeated use the phrase "de facto" begs two questions: (1) why characterize the agreements as "de facto" anything, and (2) why omit the form

---

[7] *Cf., e.g.*, *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-0143, 2010 WL 3732129, at *2-3, 7-10 (S.D. Ohio Sept. 20, 2010) (awarding attorney's fees and costs under 28 USC § 1927, when "[the defendants'] counsel should have recognized from the plain language of the handbook and acknowledgment that the purported arbitration agreement lacks mutuality of assent and mutuality of obligation" and when a "reasonable attorney should have perceived the risk that the motion to dismiss would needlessly obstruct the litigation of [the plaintiff's] claims"); *see also*, *e.g.*, *United States v. Milam*, 855 F.2d 739, 741, 744-45 (11th Cir. 1988) (per curiam) (affirming an award of sanctions when a party's "motion to dismiss was frivolous in light of the plain language of the statute of limitations"); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2004) (similar).

[8] Rule 11 sanctions for failure of reasonable inquiry and misrepresentation of facts are appropriate against represented parties, "who [are] better positioned to investigate the facts supporting a paper or pleading," particularly "experienced corporate client[s]." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 549, 111 S. Ct. 922, 932, 112 L. Ed. 2d 1140 (1991).

9

McKool Smith, P.C.
Los Angeles, CA

agreement (which is publicly available on Spoken Giants' website) from its pleadings? The answer is found in the plain language of the agreement. Specifically, section 4(a)(ii) reads as follows:

> Notwithstanding the provisions of Section 3 of this Agreement, **You retain the right to issue non-exclusive licenses directly to any third person** (other than to another spoken word rights administration organization) **for the public performance, in the United States, its territories and possessions, of any Work subject to this Agreement,** provided that any such direct license is memorialized in a writing, a copy of which is provided to Spoken Giants within ten (10) days of its issuance, and which identifies the Work(s) so licensed, the licensee, the time and the place of the performance(s), and any fee(s) paid therefor. You hereby acknowledge and agree that Spoken Giants will not pay royalties to You with respect to any public performance directly licensed by You.

Ex. C (form affiliation agreement); Ex. D (executed affiliation between Spoken Giants and Lewis Black).

Most egregiously, Pandora specifically references language in the parenthetical above (underlined), alleging that "these individual agreements between the Comedians and Spoken Giants explicitly prevent any Comedian from licensing their rights through any other licensing collective." SG ACC ¶ 68. In doing so, Pandora misrepresents the language as prohibiting individual comedians from pursuing individual licenses with Pandora (or others). At the same time, Pandora purposely omits the language surrounding that parenthetical (in **bold and underlined**), which expressly grants an affiliated comedian the right to directly license any third party other than a "spoken word rights organization," including Pandora.

Again, as matter of law, "the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available." *Buffalo Broad. Co.*, 744 F.2d at 925; *Nero AG*, 2010 WL 4366448, at *7. On its face, the affiliation agreements provide for the realistic opportunity to acquire individual rights. But Pandora's antitrust claims depend on its allegation that it cannot obtain licenses from individual comedians.

10

Pandora knew that the language of the affiliation agreements created this fatal defect when it filed its amended counterclaims against Spoken Giants. Yet Pandora and its counsel chose not only to omit the affiliation agreement from its pleadings, but to affirmatively mischaracterize the agreements as "de facto" exclusive licensing agreements, and to cherry-pick sections of the agreements in order to re-plead claims that any objective person would know have no basis in fact or law. For these and all the reasons stated above, Pandora's and its counsel's misconduct justifies sanctions. *Nguyen*, No. 19-cv-07901-TSH, 2020 WL 5232564, at \*7; *Uzie*, 2021 WL 5830040, at \*5 (finding plaintiff violated Rule 11(b)(3) because "factual contentions that were the cornerstones of his 'theory' were unsupported, and even contradicted by the record of underlying proceedings."); *Hunt*, 2019 WL 1873230, at \*3.

**B.    Pandora advanced legally frivolous arguments that lack evidentiary support, violating Rule 11(b)(2) and 11(b)(3).**

After dismissing near-identical antitrust counterclaims against Word Collections, the Court gave Pandora the opportunity to re-plead its claims against all counterclaim defendants, including Spoken Giants.  ECF No. 83 (order dismissing original counterclaims); ECF No. 86 (order setting consolidated amendment and response schedule). In doing so, the Court warned Pandora that it "doubts whether Pandora can allege the necessary facts at this stage" in support of its Section 1 Claims,[9] advised Pandora that further discovery might be prudent before the re-assertion of claims, and even reminded Pandora of its obligations under Rule 11. ECF No. 83 at 27-28.

Pandora ignored the Court's warnings; failed to plead support for its claims; and even affirmatively misrepresented the record (as discussed above). Pandora's pursuit of such legally and factually defective claims, in the face of a clear warning from the Court, further supports an award of sanctions against both Pandora and its

---

[9] At the time, claims for price fixing and tying under Section 1 of the Sherman Act.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

counsel. *See Est. of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (Filing identical or near-identical counterclaims is frivolous under Rule 11).

**1.    Pandora's monopolization claims lack a legal or evidentiary basis.**

The Court dismissed Pandora's original monopolization claims against Word Collections, in part, because Pandora failed to allege facts showing that "Word Collections owns a dominant share of the market or that there are significant barriers to entry in the market." Decision at 21. The Court stated that an "impressive but short list" of comedians that Pandora alleged colluded to corner the market did not suffice to demonstrate a market share. *Id.* The Court explicitly referred to Pandora's own SEC filings that reported a comedy collection consisting of works from over 3,000 comedians with more than 35,000 tracks, and rejected that 30 comedians was enough to constitute a critical mass, "especially when Pandora offers recordings by several thousand other comedians." *Id.* at 20. In addition, the Court found that Pandora failed to plead facts supporting that any of the affiliated comedians were "must have[s]." *Id.*

In response to these deficiencies, Pandora provided in its SG ACC a slightly longer list of comedians (59 compared with 30), plus allegations that Spoken Giants announced it partnered with "several very prominent signings," had control over "30,000 unique works," and referred to "hundreds" of affiliates. SG ACC ¶¶ 37-39. Thirty additional named comedians, or even hundreds of unnamed affiliates, do not establish "direct market power" where the Court found that the point of reference was "*several thousand[s]*" of comedians. *See* Decision at 20 (emphasis in original). Thus, Pandora adds nothing new of relevance to its SG ACC, which even a cursory investigation would have revealed.[10]

For example, Pandora undermines its claim that any comedian, whether a member of Spoken Giants or not, is a "must-have" by pleading that it would have

---

[10] Of course, Pandora's "market power" thesis rests on the false representation that Spoken Giants demanded an "all-or-nothing blanket license," debunked above.

refused to engage in individual negotiations with *any* comedian, and instead would drop that comedian from its service. SG ACC ¶¶ 33, 43, 63. This contradiction dooms Pandora's amended counterclaims, as Pandora cannot claim that it has suffered an antitrust injury because it is being denied the opportunity to negotiate individual rights, while simultaneously admitting that Pandora categorically refuses to negotiate individual rights. At a bare minimum, this contradiction demonstrates the plain truth that it is Pandora, not Spoken Giants or any individual comedian, that wields oppressive power.

Additionally, the SG ACC also fails to account for Word Collections, a competitor of Spoken Giants, despite Pandora filing simultaneous counterclaims alleging that it is Word Collections (not Spoken Giants) that wields monopolistic power in the market. These omissions ignore a critical factual inquiry. The law is unequivocal that competition is at least relevant to assessing market power, and that the existence of strong competitors generally precludes a claim for monopoly. *See Reudy v. Clear Channel Outdoors, Inc.*, 693 F.Supp.2d 1091, 1127 (N.D. Cal. 2010) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition. An oligopolist lacks this unilateral power.") (citing *Rebel Oil*, 5 F.3d at 1443). Pandora's failure to reconcile its mutually exclusive claims against Spoken Giants and Word Collections further reveal the baseless nature of all of Pandora's antitrust claims.

**2.  Pandora's price fixing claims lack a factual basis and rely on a misrepresentation of the record.**

Next, the Court expressed particular skepticism that Pandora would be able to remedy its price fixing pleadings. Decision at 27. In spite of the Court's guidance, Pandora re-pleads its price fixing claims with no legally meaningful changes, rendering them frivolous. *Est. of Blue*, 120 F.3d at 984. The Court previously held Pandora failed to allege a conspiracy with the requisite specificity, providing allegations of "who, did what, to whom (or with whom), where, and when" to

McKool Smith, P.C.
Los Angeles, CA

overcome "mere allegations of parallel conduct." Decision at 23 (internal citations omitted). The Court specifically found that Pandora failed to plead facts supporting agreements among comedians to "band together to collectively license their works at a fixed price." Decision at 24. The Court also found that Pandora offered no facts "plausibly suggesting concerted activity that is distinct from parallel conduct," and criticized Pandora's reliance on agreements between the Comedians and Word Collections for Word Collections to represent the Comedians in licensing negotiations. *Id.* Yet in the SG ACC, Pandora pleads nothing beyond similar vertical, lawful agreements between Spoken Giants and its members, for Spoken Giants to represent those members in negotiations.[11]

"Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Pandora was on notice that the allegations in its SG CC were insufficient. Yet Pandora re-pleads, in its SG ACC, the same type of conclusory allegations that describe the same parallel conduct that Court previously deemed insufficient. In view of the Court's prior order, "no competent attorney could believe [the claim] was well grounded in fact and warranted by law." *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 11633138 (C.D. Cal. June 23, 2017).

Specifically, Pandora states the conclusory allegation that comedians communicated their "agreement" through Spoken Giants, and that comedy managers partnered with Counter Defendants, and further allege facts that Spoken Giants announced it was "becoming the de facto collective for spoken word's future" and publicly celebrated their relationships with high-profile comedians. *See generally* SG ACC ¶¶ 34-51. As evidence of this alleged "conspiracy," Pandora represents to the Court that a podcast episode from Ted Alexandro and Eddie Pepitone demonstrates that comedians joined Spoken Giants knowing that (1) the purpose of joining Spoken

---

[11] Even Pandora's insufficient allegations rest of misrepresentations, as described above.

McKool Smith, P.C.
Los Angeles, CA

1   Giants was to pool competing rights into a single catalog, (2) Spoken Giants would

2   license that pool of rights on an all-or-nothing basis, and (3) that Spoken Giants would

3   license that pool of rights for a fee that exceeds what any individual comedian could

4   independently obtain. SG ACC ¶ 51. In fact, this podcast is the only "new" evidence

5   that Pandora proffers in its SG ACC to support its claims of "who, did what, to whom

6   (or with whom), where, and when" to overcome "mere allegations of parallel

7   conduct." Decision at 23.

8        Assuming Pandora or its counsel conducted any investigation before filing

9   antitrust counterclaims, Pandora and Mayer Brown possess a transcript or other copy

10  of this so-called "online conversation."[12] Yet Pandora again omits any transcript or

11  other source document. The motivation for this omission is clear, as Pandora and its

12  counsel mischaracterize the content of the conversation between Messrs. Alexandro

13  and Pepitone. Messrs. Alexandro and Pepitone do acknowledge that they are Spoken

14  Giants members. Mr. Pepitone does reference a conversation with Jim King, CEO of

15  Spoken Giants in the context of Mr. Pepitone learning for the first time that comics are

16  not being paid for the public performance of their jokes (unlike songwriters who are

17  paid for the public performance of their songs). But nothing in the conversation can

18  fairly or objectively be described as Messrs. Alexandro or Pepitone stating an

19  intention to join Spoken Giants in order to "pool their competing rights into a single

20  catalog that would then be licensed on an all-or-nothing basis." SG ACC ¶ 51.

21       A direct comparison of the relevant allegations in the SG ACC against the

22  transcript of the podcast, which Spoken Giants obtained, shows that Pandora

23  mischaracterized its contents.  The SG ACC and transcript is excerpted in relevant

24  part below.

25

26

27

---

28  [12] This is further evidenced by Pandora's use of quotations to the purported source material.

McKool Smith, P.C.
Los Angeles, CA

1  **SG ACC ¶ 51:**

2

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

> 51.    The comedians joining the Collective did so knowing full well that the purpose of the Collective was to pool their competing rights into a single catalog that would then be licensed on an all-or-nothing basis and for a fee that well exceeds that which any individual comedian could secure acting independently.  Members of the Collective have made public statements evidencing exactly that.  For example, comedians Ted Alexandro and Eddie Pepitone released online a conversation between them during which they: (1) identified themselves as Spoken Giants-affiliates; (2) referenced discussions with Mr. King directly about what Spoken Giants was undertaking; (3) mentioned a planned upcoming conversation with "upper-tier, household name comedian[]" Jim Gaffigan, another Spoken Giants affiliate, during a comedy tour stop Alexandro and Gaffigan shared; (4) compared themselves to the 1,000+ striking unionized laborers at Kellogg in 2021, who were "fortifying each other"; (5) took aim at those on the streaming service-side unwilling to "f***ing share the wealth" with "the little guy"; and (6) lamented the "haves and have nots" of the comedy business where "most comedians" are "scrapping together a living," asking "why can't all of us y'know just get paid" without having "the lottery ticket" of being "the Chappelles of the world, the Seinfelds, or for that matter the Jims. . . the people that are at the top."

19  A transcript of the conversation between Mr. Alexandro and Mr. Pepitone is

20  attached as Exhibit E.[13] The relevant portions of that transcript are found at pages 7-

21  11. Nothing in that transcript is fairly characterized as Mr. Alexandro or Mr. Pepitone

22  joining a "Collective" knowing that they were "pool[ing] their competing rights into a

23  single catalog" to be "licensed on an all-or nothing basis."

24  Additionally, and even if Pandora and Mayer Brown had not affirmatively

25  misrepresented the facts of this conversation (and they did), two comedians

26  mentioning their affiliation with Spoken Giants, or even extolling its goals in helping

27

28

---

[13] The transcript was generated using transcription software. At the Court's request, Spoken Giants can provide the corresponding audio/video file or a certified transcript.

McKool Smith, P.C.
Los Angeles, CA

them vindicate their rights, do not constitute allegations of "who, did what, to whom (or with whom), where, and when," required to plead an antitrust conspiracy. Decision at 24. At best, they are after-the-fact reflections about Messrs. Alexandro and Pepitone independently joining Spoken Giants and their comments on the bullying tactics employed by certain corporate entities.

Similarly, and contrary to Pandora's representations, Spoken Giants' press releases about its business say nothing about whether the affiliated comedians acted in concert to fix prices or engage in any other anticompetitive conduct. *See Flextronics Int'l USA, Inc. v. Murata Manufacturing Co., Ltd.*, 2020 WL 5106851, at *3, *15, n.6 (N.D. Cal. Aug. 31, 2020) (dismissing Section 1 claim where allegations that *some* defendants engaged in antitrust violations did not allege other defendants did).

The Court gave Pandora clear instructions on what it needed to do to plead a conspiracy without violating Rule 11. Pandora chose, nevertheless, to file its SG ACC without implementing the changes the Court recommended. Pandora's price fixing claim have no evidentiary support, and so sanctions are warranted. *See Uziel*, 2021 WL5830040 at *5 (imposing Rule 11 sanctions where factual allegations underlying plaintiff's conspiracy claims "lack[ed] evidentiary support").

### 3.    Pandora's restraint of trade claims lack a factual or legal basis and rely on a misrepresentation of the record.

Finally, Pandora dropped its tying claims, replacing them with equally frivolous claims for "unreasonable restraint of trade." Here, Pandora not only repeats baseless allegations that the Court already rejected, but it walks into its own trap, forced to contradict its previous pleadings. To state a claim for unreasonable restraint of trade under the Sherman Act, a plaintiff must allege "(1) an agreement, conspiracy, or combination between two or more entities; (2) an actual injury to competition occurs; and (3) the restraint is unreasonable as determined by balancing the restraint and any justifications or pro-competitive effects of the restrain." *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996).

McKool Smith, P.C.
Los Angeles, CA

Despite the Court's remonstrations about its deficiency in its price fixing claims, Pandora asserted allegations only of parallel conduct to support a finding of an agreement or conspiracy. Worse, Pandora alleges both contradictory facts and misrepresentations to support its anticompetitive injury. First, Pandora makes the conclusory and demonstrably false allegation that it "has been willing to enter into reasonable licenses negotiated in a competitive market for legitimate copyrights covering the content it transmits." SG ACC ¶ 29. Pandora then contradicts that statement, admitting that if *any* comedian had approached Pandora to seek a non-zero price for a license to that comedian's literary works, Pandora would have refused and dropped that comedian from its service.  SG ACC ¶¶ 33, 43, 63.

Under Rule 11, an attorney is required "not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are 'warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.'" *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986)). A reasonable attorney would not have advanced allegations previously rejected by the Court, nor allegations that directly contradicted an entire element of its claim. *See Uziel.*,2021 WL 5830040, at *5. Thus, sanctions are appropriate.

**C.    Pandora filed the SG ACC for the purpose of harassing Spoken Giants and increasing the cost of litigation, violating Rule 11(b)(1).**

Taken together, Pandora's misrepresentations of the record and legally defective claims reveal Pandora's true purpose in bringing its Amended Counterclaims: to harass Spoken Giants and drive up the cost of litigation, making it impossible or impracticable for the affiliates of Spoken Giants—in particular its less high-profile affiliates—to vindicate their rights.

Stated differently, Pandora abuses the Court and the court system to strong-arm Spoken Giants (and the other Counter Defendants) into a war of attrition. And in a war

McKool Smith, P.C.
Los Angeles, CA

of attrition, Pandora has every advantage. Pandora is a multibillion-dollar corporation, positioned against individual comedians who may earn pennies for each performance of their work. Far from Pandora's claims that Spoken Giants "exploit[s]" power over Pandora, (SG ACC ¶ 6), Pandora has already partially succeeded in its strategy to bully comedians into submission: Spoken Giants lost high-profile affiliates after Pandora responded to initial negotiations with threats and stonewalling (a fact Pandora expressly acknowledges). SG ACC ¶ 12.

Although courts cannot "divine the litigation strategy" of filing baseless, repetitive motions, the "effect of the filing reveals its improper purpose." *Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*, No. EDCV1001858VAPDTBX, 2011 WL 13135642, at *3 (C.D. Cal. Dec. 14, 2011). The effect of Pandora's SG ACC is plain. It "served no purpose other than to subject [Spoken Giants] to undue delay, waste, and monetary cost." *Id.* Pandora's and Mayer Brown's disregard of Court's warnings and cautions, and misrepresentations of the record likewise reveal Pandora's improper purpose.

## V.    CONCLUSION & REQUEST FOR RELIEF

For the above reasons, Spoken Giants respectfully requests the Court impose Rule 11 Sanctions against Pandora and its counsel, Mayer Brown, in the form of Spoken Giants' reasonable expenses and attorneys' fees incurred in defending against the SG ACC, specifically including Spoken Giants' expenses and fees incurred in:

- drafting the motion to dismiss, ECF No. 102, and related briefing;
- responding to discovery propounded by Pandora;
- drafting this motion for sanctions.

NOTICE OF MOTION AND MOTION FOR SANCTIONS

DATED: January 25, 2023[14]

Respectfully submitted,

*/s/ Travis DeArman*

Travis DeArman
tdearman@mckoolsmith.com
MCKOOL SMITH, P.C
300 Crescent Court
Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Jeffery D. McFarland
jmcfarland@mckoolsmith.com
MCKOOL SMITH, P.C.
3000 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
Telephone:      (213) 694-1010
Facsimile:      (213) 694-1234

ATTORNEYS FOR COUNTER
DEFENDANT
SPOKEN GIANTS, LLC

MCKOOL SMITH, P.C.
LOS ANGELES, CA

---

[14] Pursuant to Fed. R. Civ. P. 11(b)(2), Spoken Giants served this motion on Pandora on December 30, 2022, more than three weeks prior to filing.

20

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Spoken Giants, certifies that this brief contains 6,074 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 25, 2023        **MCKOOL SMITH, P.C.**

By *<u>/s/ Travis DeArman</u>*
Travis E. DeArman
*Attorneys for Counterclaim-Defendant*
*Spoken Giants, LLC*

NOTICE OF MOTION AND MOTION FOR SANCTIONS

McKool Smith, P.C.
Los Angeles, CA