MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
JACOB B. EBIN (*pro hac vice*)
*jebin@mayerbrown.com*
ALLISON AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:   (212) 506-2500
Facsimile:    (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
MEERIM A. NEHME (SBN 322234)
*mnehme@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, California  90071
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

[*Additional counsel listed on signature page*]

Attorneys for Counterclaimant
PANDORA MEDIA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No.: 2:22-cv-00809-MCS-MAR |
| | CONSOLIDATED ACTION |
| | **DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO LEWIS BLACK'S JOINDER IN MOTION TO DISMISS** |
| This Document Relates To: 2:22-cv-04634-MCS-MAR (Black) | Filed concurrently with Pandora's Opposition to Spoken Giants' Motion to Dismiss |
| | Date: March 6, 2023 Time:   9:00 AM Crtrm:  7C - First Street Courthouse           350 W. 1st Street, 7th Floor           Los Angeles, CA 90021 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

LEGAL STANDARD .............................................................................................2

ARGUMENT ..........................................................................................................3

A.    Mr. Black has not withdrawn from the alleged conspiracy. ..........................3

B.    Pandora was not required to engage in a futile act by trying to secure
      individual licenses from cartel members...........................................................7

C.    Mr. Black's remaining arguments rely on mischaracterizations of the
      Amended Counterclaims and are meritless....................................................11

D.    Mr. Black's arguments regarding his copyright infringement claims are
      irrelevant and meritless. ...............................................................................15

CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antablin v. Motion Picture Costumers, Local No. 705*,
2021 WL 4731339 (C.D. Cal. Feb. 16, 2021) ................................................ 4, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 3

*In re Cal. Bail Bond Antitrust Litig.*,
2020 WL 3041316 (N.D. Cal. Apr. 13, 2020) ...................................................... 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 8669891 (N.D. Cal. Aug. 22, 2016) ............................................... 4, 6, 7

*Momento, Inc. v. Seccion Amarilla USA*,
2009 WL 10696217 (N.D. Cal. Sept. 17, 2009) ................................................. 3

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) .................................................................... 2

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) .................................................................... 3

*Reisman v. United States*,
409 F.2d 789 (9th Cir. 1969) ...................................................................... 6

*Sanofi-Aventis U.S., LLC v. Mylan, Inc. & Mylan Specialty, LP*,
44 F.4th 959 (10th Cir. 2022) ................................................................... 8, 9

*Smith v. United States*,
568 U.S. 106 (2013) ................................................................................... 7

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .................................................................... 3

*Stevens v. Britax Child Safety, Inc.*,
2021 WL 4706702 (C.D. Cal. July 13, 2021) .............................................. 4, 16

*United States v. Eisen*,
    974 F.2d 246 (2d Cir. 1992) .................................................................................. 6

*United States v. Kushner*,
    305 F.3d 194 (3d Cir. 2002) .................................................................................. 7

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ............................................................................... 6

Counterclaimant Pandora Media, LLC ("Pandora") respectfully submits the following opposition to Plaintiff/Counterclaim Defendant Lewis Black's, individually and on behalf of Stark Raving Black Productions, Inc., Joinder in Motion to Dismiss by Counterclaim Co-Defendant Spoken Giants, LLC (the "Black Joinder" or "Joinder").

**INTRODUCTION**

The Black Joinder amounts to nothing more than a series of meritless arguments that rely on mischaracterizations of the factual allegations contained in Pandora's First Amended Counterclaims to Plaintiffs' Second Amended Consolidated Complaint Against Plaintiff/Counterclaim Defendant Lewis Black, Individually and on Behalf of Stark Raving Black Productions, Inc., and Counterclaim Defendant Spoken Giants, LLC (the "Amended Counterclaims" or "FACCs").

First, the Joinder attempts to make much of the fact that Mr. Black claims to have terminated his affiliation agreement with Spoken Giants. But even putting aside that this argument at most creates a factual dispute that cannot support a motion to dismiss, the law is clear—termination alone is not sufficient to withdraw from a conspiracy, even on a going-forward basis. To do so requires much more, including severing all ties to the conspiracy. Mr. Black's clear continued involvement in furthering the interests of Spoken Giants and its affiliated comedians (the "Collective") demonstrates that he has not done so. And the law is also clear that even if he had, such a withdrawal would not shield him from liability for the time prior to such withdrawal.

Next, the Joinder asserts that individual licensing to get around the Collective was possible, rendering a "fatal" blow to the Amended Counterclaims. That too is wrong. As Mr. Black acknowledges, "an antitrust plaintiff need not allege an attempt to individually license if it demonstrates that the availability of an individual license

is illusory." Joinder at 4. Pandora has made such a demonstration, and this Court, when it evaluated similar allegations against Word Collections, agreed, concluding that "Pandora adequately alleges that the availability of any individual licenses is illusory." October 26, 2022 Order Re: Motion to Dismiss ("Order"), at 17. Mr. Black offers no new argument that should lead to a different outcome on that point with respect to the Amended Counterclaims.

The remainder of the Joinder that purports to relate to the motion to dismiss contains a series of arguments that rest on mischaracterizations of the factual allegations contained in the Amended Counterclaims. When these mischaracterizations are corrected, Mr. Black's arguments all fall by the wayside and in no way demonstrate that Pandora has failed to properly plead its Amended Counterclaims against Spoken Giants and Mr. Black.

Finally, the Joinder concludes with a series of arguments that relate not to this motion, but instead to Mr. Black's separate copyright infringement claims. Like with his other arguments, these too are premised on mischaracterizations of the FACCs (and, remarkably, of Pandora's Answer and Defenses to the underlying copyright infringement claims). Not only are these arguments baseless, but as the Black Joinder acknowledges, they are "not relevant to this motion." Joinder at 5 n.7. Yet Mr. Black persists in raising them, wasting the Court's time and needlessly multiplying Pandora's burden in responding to the motion papers.

In short, Mr. Black offers no cognizable basis for dismissing Pandora's well-pled Amended Counterclaims. The Joinder should be denied in its entirety.

## LEGAL STANDARD

On a motion to dismiss, the complaint's factual allegations are "taken as true[,] and construed in the light most favorable to Plaintiffs." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). Such motions are denied when the pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The applicable plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly,* 550 U.S. at 556. In fact, a complaint "may proceed even if it strikes a savvy judge that actual proof of [the] facts is improbable, and that a recovery is very remote and unlikely." *Id.* (quotation cleaned); *see also, e.g., Starr v. Baca,* 652 F.3d 1202, 1216-17 (9th Cir. 2011) ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable."). There is, moreover, "no special pleading rule requiring greater factual specificity in antitrust cases." *Momento, Inc. v. Seccion Amarilla USA*, 2009 WL 10696217, at *1 (N.D. Cal. Sept. 17, 2009); *accord Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

**ARGUMENT**

**A.    Mr. Black has not withdrawn from the alleged conspiracy.**

As is detailed in the Amended Counterclaims, Mr. Black is an outspoken co-conspirator "member" of Spoken Giants ("SG"). By at least October 2020, he was already a member of the Collective. FACCs ¶ 11. And he has appeared alongside SG's CEO Jim King on numerous occasions as the public face of the Collective, giving press interviews regarding SG and its efforts to become a must-have licensor of rights necessary for a service like Pandora to stream comedy. *Id.* There is no dispute that Mr. Black has been affiliated with SG, including at the time that SG first presented its blanket license "term sheet" to Pandora. *Id.*, ¶ 12. SG's own public statements confirm as much. *E.g.*, *id.*, ¶¶ 35, 37. Moreover, the homepage of the SG website explicitly endorses Mr. Black's copyright infringement claims against Pandora in this action, stating that "Spoken Giants stands along[]side Mr. Black for fighting to win a victory for all in the comedy community." *Id.*, ¶ 12. Critically, Mr. Black has never disavowed the conspiracy spearheaded by SG—to the contrary, he

continues to support its goals, including by bringing his copyright infringement claims against Pandora. Accordingly, whatever formal relationship Mr. Black currently has with SG, he clearly is still involved in furthering the interests of the Collective. *Id.*

In response, Mr. Black asserts that the "termination of his affiliation agreement with Spoken Giants prior to becoming a plaintiff in this lawsuit is fatal to Pandora's antitrust claims against Black." Joinder at 1. As an initial matter, this claim is irrelevant at the motion to dismiss stage. Mr. Black's role in the conspiracy is clearly a fact over which there is a dispute, and, as this Court has previously held, resolution of disputed factual allegations such as these are appropriately resolved, not on a motion to dismiss, but at summary judgment. *Stevens v. Britax Child Safety, Inc.*, 2021 WL 4706702, at *6 (C.D. Cal. July 13, 2021) (J. Scarsi); *see also Antablin v. Motion Picture Costumers, Local No. 705*, 2021 WL 4731339, at *5 (C.D. Cal. Feb. 16, 2021) (J. Scarsi) ("Whether the causes animating Plaintiff's [inspection claim under the Labor Management Reporting and Disclosure Act] meet the legal standard is a question of fact inappropriate for determination on a motion to dismiss.").

Moreover, because withdrawal from a conspiracy "is an affirmative defense, the burden of proving withdrawal lies with" Mr. Black. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 8669891, at *2 (N.D. Cal. Aug. 22, 2016). As a result, whether Mr. Black has fully withdrawn from the conspiracy—a factual issue that is clearly disputed—is an issue that is not ripe for consideration at the motion to dismiss stage. *See, e.g.*, *In re Cal. Bail Bond Antitrust Litig.*, 2020 WL 3041316, at *19 (N.D. Cal. Apr. 13, 2020) ("[B]ecause withdrawal from a conspiracy is an affirmative defense, the application of which Plaintiffs dispute, [the] motion [to dismiss] on this point is also denied.").

It is also worth noting that Mr. Black's claim that he terminated "his affiliation agreement with Spoken Giants prior to becoming a plaintiff in this lawsuit" is dubious.[1] The original complaint filed by Mr. Black on July 7, 2022 made no disclaimer of his affiliation with SG. At that time—as noted above—Mr. Black had been very publicly affiliated with SG and had served as a spokesperson for the Collective. And on the very same day that his complaint was filed, SG posted an entry on its website endorsing Mr. Black's lawsuit and saying it "stands alongside" Mr. Black with respect to this lawsuit. FACCs ¶12. It was only *after* Pandora announced its intention to bring counterclaims against SG and Mr. Black (*see* Dkt. 58 at 15) that Mr. Black added a paragraph to his amended complaint (as part of the Second Amended Consolidated Complaint) in which he claimed that he "is not affiliated with Word Collections or Spoken Giants for the licensing of his Works." *Compare* Lewis Black's Complaint for Copyright Infringement *with* Second Amended Consolidated Complaint for Copyright Infringement ¶ 140. And outside of conclusory statements in pleadings filed by his outside counsel in this litigation, Pandora is not aware of Mr. Black ever publicly acknowledging that he has left the Collective. FACCs ¶12.

Even putting all of this to one side, Mr. Black's purported termination of his affiliation agreement with SG at some unknown time—even if it were true (and even if consideration of this factual dispute were proper at this stage)—would not be

---

[1] Mr. Black's assertion that "Pandora does not contest that [he] is not a member of Spoken Giants" (Joinder at 1-2) is false. To support this claim, Mr. Black misleadingly quotes a portion of a sentence from the Amended Counterclaims in which he claims Pandora states that he "was a member of Spoken Giants." Joinder at 1-2. The full sentence makes clear that Pandora actually alleges that Mr. Black is still a member of the conspiracy. It states: "While the Complaint asserts that Mr. Black 'is not affiliated with Word Collections or Spoken Giants for the licensing of his Works,' Mr. Black has been affiliated with Spoken Giants (i.e., he was a member of Spoken Giants), was affiliated with Spoken Giants when Spoken Giants first presented Pandora with its blanket license 'term sheet,' *and clearly remains aligned with the goals of the Spoken Giants cartel*." FACCs ¶ 12 (emphasis added). The remainder of the cited paragraph only further reinforces that Mr. Black remains a co-conspirator.

1   sufficient to withdraw from the conspiracy or support dismissal of the Amended

2   Counterclaims. For Mr. Black to demonstrate that he has truly withdrawn from the

3   alleged conspiracy, he, "[a]t a minimum," needs to show "affirmative acts

4   inconsistent with the object of the conspiracy." *In re Cathode Ray Tube*, 2016 WL

5   8669891, at *3. As the Ninth Circuit has made clear, "[t]o withdraw from a

6   conspiracy a defendant must either disavow the unlawful goal of the conspiracy,

7   affirmatively act to defeat the purpose of the conspiracy, or take 'definite, decisive,

8   and positive steps to show that the [defendant's] disassociation from the conspiracy

9   is sufficient.'" *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992)

10  (quoting *United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir.1987)). Mere

11  resignation from SG is not enough. *See, e.g.*, *Reisman v. United States*, 409 F.2d

12  789, 793 (9th Cir. 1969); *Lothian*, 976 F.2d at 1264; *United States v. Eisen*, 974 F.2d

13  246, 269 n.8 (2d Cir. 1992). And "even if a defendant severs its ties with an

14  enterprise that is participating in a conspiracy, that defendant cannot assert a

15  withdrawal defense if after withdrawing it engages in additional conduct in

16  furtherance of the conspiracy." *In re Cathode Ray Tube*, 2016 WL 8669891, at *3.

17      Mr. Black has not come close to meeting this standard. To the contrary, Mr.

18  Black brought his infringement claims to further the interest of the Collective as part

19  of the alleged conspiracy and SG's website explicitly states that "Spoken Giants

20  stands along[]side Mr. Black for fighting to win a victory for all in the comedy

21  community." FACCs ¶12. This demonstrates that Mr. Black is still an active

22  participant in the conspiracy. *Id.*

23      Moreover, even had Mr. Black sufficiently demonstrated that he has

24  withdrawn from the conspiracy—he has not—that still would not be "fatal" to

25  Pandora's claims against him. As noted above, there is no dispute that Mr. Black

26  was an active member of the Collective, and it is black-letter law that once Mr. Black

27  "joined [the] price-fixing conspiracy, [he] is jointly and severally liable for any

28

actions taken in furtherance of the conspiracy until the objectives of the conspiracy are completed or [he] withdraws." *In re Cathode Ray Tube*, 2016 WL 8669891, at *2. In other words, "[s]ince conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence,' and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. Withdrawal terminates the defendant's liability for *postwithdrawal* acts of his co-conspirators, but *he remains guilty of conspiracy.*" *Smith v. United States*, 568 U.S. 106, 111 (2013) (internal citations omitted) (emphasis added); *see also United States v. Kushner*, 305 F.3d 194, 198 (3d Cir. 2002) ("even upon withdrawal, a defendant remains liable for his previous agreement and for his own and his co-conspirators' previous acts in furtherance of the conspiracy").

**B.**   **Pandora was not required to engage in a futile act by trying to secure individual licenses from cartel members.**

As Mr. Black acknowledges, "an antitrust plaintiff need not allege an attempt to individually license if it demonstrates that the availability of an individual license is illusory." Joinder at 4. The Amended Counterclaims do exactly that. There, Pandora explains that the affiliation agreements that the comedians have entered into with SG, when coupled with SG's admitted plan to exclusively license its catalog on a blanket all-or-nothing basis, eliminate any economic incentive for either Pandora or an SG-affiliated comedian to enter into a direct license so long as the comedian remains a member of the cartel. FACCs ¶¶ 67-71.

To briefly summarize, because Pandora must have a license from SG to offer a viable comedy offering, taking an individual license for the purported "literary works" rights controlled by any individual comedian-affiliate would just result in Pandora paying twice for the same rights—once to SG and then again to the comedian directly (and, in reality, a third time, given that the rights were already

1    secured and paid for through Pandora's sound recording licenses). FACCs ¶ 69.

2    Consequently, once a comedian joins the cartel, there is no longer any economic

3    incentive to try and negotiate directly with that rightsholder—doing so would be

4    economically irrational. *Id.*

5        Individual comedian members of the cartel similarly have no economic

6    incentive to enter into a direct license with Pandora so long as they remain part of

7    the cartel. By sticking with the cartel, the comedians know they will get the inflated

8    price set by SG instead of the far lower price that would result if the comedians

9    actually competed with each other. FACCs ¶ 70. For this reason, Mr. Black's (and

10   Spoken Giants') assertion that his affiliation agreement was easily terminable, even

11   if true, is irrelevant.[2] Even assuming that termination is logistically easy, the

12   "axiomatic" rule Mr. Black points to "that short, easily terminable exclusive

13   agreements are of little antitrust concern" (*Sanofi-Aventis U.S., LLC v. Mylan, Inc.*

14   *& Mylan Specialty, LP*, 44 F.4th 959, 988 (10th Cir. 2022)) presumes an otherwise

15   competitive market, in which the parties to the exclusive agreement will decide

16   whether to continue or terminate their agreement based on the surrounding

17   competitive circumstances.

18       Here, however, Pandora has alleged facts showing that, as a result of the

19   Collective's actions, the market is no longer competitive. The affiliation agreements

20   eliminate competition among the SG-affiliated comedians, aligning them in the

---

[2] There is nothing in the Amended Counterclaims that even suggests that the SG affiliation agreements are easily terminable. Pandora's allegations about Mr. Black's contrived alleged exit from SG do nothing to suggest that SG's co-conspirator comedians are likely to terminate their participation in the normal course of business. *See* FACCs ¶ 12. And even SG's form affiliation agreement is of little help: Its spaces for the initial term's start and end are blank, so it is an open question as to whether the initial term is three years, ten years, or something else. Spoken Giants' Motion to Dismiss, McFarland Decl. Ex. A. The agreement does, however, indicate that the agreement automatically renews for three-year terms unless a party acts to terminate it within three to six months of the end of the term. *Id.* And, the agreement does not provide any way for the affiliate comedian to terminate the agreement prior to the end of the term. *Id.*

hands of SG, which recruited them in the first place with promises of utilizing its amassed monopoly power to collect returns from Pandora and others well beyond what the comedians ever enjoyed under competitive conditions. FACCs ¶¶ 74-80. Terminating participation in SG—at least without simultaneously joining Word Collections—would sacrifice the comedian's access to a share of SG's monopoly profits. These circumstances render Mr. Black's analogy to *Sanofi-Aventis U.S.,* an exclusive dealings case in which Mylan was alleged to have used exclusive agreements to keep its competitor out of the market—inapposite. There, the court concluded that the agreements being challenged actually "stimulate[d] price competition." 44 F. 4th at 989. The agreements at issue here only serve to eliminate it.

As a result of the above-discussed incentives, and as more fully explained in the Amended Counterclaims, the affiliation agreements between SG and its comedians are de facto exclusive affiliation agreements. To be clear: they are de facto exclusive in that, while they may nominally allow individual members to directly license their rights under certain circumstances (*see* Spoken Giants' Motion to Dismiss, McFarland Decl. Ex. A), even in the event a comedian did decide to act against his or her own economic self-interest, break from the collective, and seek to directly license (a fact pattern that Pandora alleges has never happened and would not be plausible), it would be economically irrational for Pandora (or any other service) to agree to take such a duplicative license. FACCs ¶¶ 69-71. Mr. Black is not entitled to any inference to the contrary.

This is not mere speculation on Pandora's part. The Amended Counterclaims are replete with descriptions *from Spoken Giants itself* confirming that blanket licensing of the combined catalog—and not individually negotiated direct licenses— is what will allow SG and its affiliated comedians to exercise market power and extract higher supracompetitive license fees. For example, the SG website states that

when a comedian joins the cartel, the first thing that SG does is "collect their works into [the SG] catalog," which it then licenses "in full" to services like Pandora. FACCs ¶ 77. Put differently, SG's publicly stated plan is to license its entire catalog exclusively on an "all-or-nothing" basis. SG's marketing materials reinforce this point, explaining that SG is modeling itself after the musical works PROs, which have been licensing their repertories on a collective "all-or-nothing" basis for over a century. *Id.* Indeed, SG even touts in these same materials that its "negotiations for blanket licenses" with services like Pandora are underway. *Id.* Public statements by SG's CEO also repeatedly emphasizes that SG's plan is "to do the same for comedy writers" as ASCAP and BMI have done for songwriters and music publishers— negotiate blanket licenses with Pandora and others "on behalf of a large group of comedians." *Id.* As SG states, it is only through "collective representation" that it can "strengthen the marketplace in favor of the [comedian] creator." *Id.*, ¶ 70.

These statements are entirely consistent with the license that Spoken Giants insisted Pandora take—one that called for at least a 25% increase in the fee that Pandora has historically paid to stream comedy, just so that Pandora could continue to do what it has always done. FACCs ¶ 78. The licensing terms did not allow for any reduction in fee should Pandora enter into a separate license directly with a SG-affiliated comedian nor did they allow Pandora to secure the rights to just some, but not all, of the material in the Spoken Giants catalog. *Id.* In short, Spoken Giants required that Pandora take an "all-or-nothing" license covering everything in its catalog for an exorbitant fee, just as it repeatedly stated it would do. By following through on its publicly stated plan—to engage in "collective representation" of comedians in order to "strengthen the marketplace in favor of the [comedian] creator" (*id.*, ¶ 70)—SG and its affiliated comedians have ensured that the prospect for Pandora to directly license the works of any individual cartel member is purely illusory.

When evaluating similar allegations with respect to Word Collections, the Court concluded that "Pandora adequately alleges that the availability of any individual licenses is illusory." Order 17. Mr. Black makes no arguments that were not previously presented to the Court, nor does he cite any new or different case law. In short, Mr. Black provides no basis for the Court to reach a different outcome here from the one it reached on this point when evaluating similar allegations against Word Collections and its affiliated comedians.

## C. Mr. Black's remaining arguments rely on mischaracterizations of the Amended Counterclaims and are meritless.

Mr. Black's remaining arguments that purport to relate to the motion to dismiss all rest on mischaracterizations of the Amended Counterclaims. Mr. Black starts by attempting to rely on the fact that Pandora has not alleged that it approached him about a license to any underlying comedy routines in his comedy recordings and goes so far as to claim—falsely—that "Pandora actually admits in its counterclaim that it would not, and will not, enter into any individual license with a comedian to stream their literary works, and will drop and not broadcast the works of any individual comedian who demands payment of a fee for the license of his or her literary works." Joinder at 3. Mr. Black later reiterates this false claim, asserting that "Pandora outright refuses to license Literary Works, individually or otherwise, and boldly declares that it will instead take down any comedic work, no matter how popular the comedian, if a comedian like Black requests a license for this protected intellectual property." *Id.* at 4.

Mr. Black cites to paragraphs 33 and 63 of the Amended Counterclaims in an effort to support these assertions. These paragraphs, however, in no way support Mr. Black's contention. What these paragraphs actually say (in relevant part) is:

- "Had a comedian attempted, on their own, to secure an ***inflated*** additional royalty for such rights [in any underlying comedy routines

1    embodied in comedy recordings] with the threat of an infringement suit
2    in the background if Pandora did not acquiesce to those demands,
3    Pandora likely would have taken that comedian's recordings off its
4    service and relied more heavily on (i.e., substituted) the recordings of
5    other competitor comedians." FACCs ¶ 33 (emphasis added);

6    • "No comedian acting alone would demand, with the threat of an
7    infringement lawsuit in the background, a ***supra-competitive*** extra
8    royalty on top of what they have historically been paid from a service
9    like Pandora absent an agreement among the Comedians to do the same.
10   Indeed, no comedian has ever done this in the decade-plus that Pandora
11   has been streaming comedy. And that is for good reason—doing so
12   would likely result in their recordings being removed from Pandora and
13   losing out on the royalties and promotion that would have otherwise
14   occurred." FACCs ¶ 63 (emphasis added).

15   In other words, the Amended Counterclaims make clear that Pandora would only
16   consider dropping a comedian if that comedian demanded a *supracompetitive*
17   *royalty on top of what they were already receiving*.[3] Mr. Black's attempt at recasting
18   these paragraphs is off-base.

19       Mr. Black's argument appears to be premised on his repeated claim that
20   Pandora has "admitted" that is has never obtained the necessary rights to the
21   underlying jokes in the licensed recordings. *E.g.*, Joinder at 3. These claims,
22   however, are a gross mischaracterization of the Amended Counterclaims, which
23   explain that Pandora "has always taken licenses for the comedy recordings that it
24   offers, and through those licenses has obtained (either explicitly or implicitly) *all of*

---

[3] Pandora has always been "willing to enter into reasonable licenses negotiated in a *competitive market* for legitimate copyrights covering the content it transmits." FACCs ¶ 29 (emphasis added).

*the rights* it needs to stream those recordings." FACCs ¶ 30 (emphasis added).[4] The Amended Counterclaims further expound on this, explaining that "[c]omedy, like every other copyright-intensive industry except the dysfunctional music licensing market, has always followed a licensing at the source model whereby the "source" or creator of the final product—in this case the record label that creates or distributes the comedy recordings—secures and passes along *all necessary rights, including any rights in any pre-existing works used in the new derivative work* to all downstream distributors, licensees, and end-users, either explicitly or implicitly." *Id.* (emphasis added).

Conforming with this longstanding practice, Pandora has not separately secured licenses just covering the underlying comedy routines embodied in comedy recordings, *because it did not need any separate licenses*—all necessary rights were provided along with the rights to stream the recordings. FACCs ¶ 30. While Mr. Black may disagree with these factual allegations, any such disagreement is irrelevant at this stage of the litigation. The issue before the Court is the adequacy of Pandora's allegations, not what Mr. Black thinks of them.

Moreover, as the FACCs also explain in detail, comedians and their representatives were clearly satisfied with the royalties and other benefits that Pandora has always provided in exchange for the right to use their comedy material. For over a decade, and despite Pandora's complete transparency as to its comedy-licensing practices, no comedian ever challenged those practices. Instead, comedians continued to seek increased airplay on Pandora. Doing so would make no economic

---

[4] The FACCs also make clear that Pandora has entered into individual agreements with comedians and comedy record labels that are not affiliated with either the SG or Word Collections cartels. Specifically, Pandora states that "dozens of other comedians and comedy record labels have recently come forward and reaffirmed historic custom and practice; they have explicitly agreed that Pandora has always had all of the rights it needs to perform, reproduce and distribute their comedy on its services, and confirmed that no additional royalties beyond those already paid for the recordings are called for." FACCs ¶ 116. Mr. Black ignores these factual allegations.

sense if the comedians felt that they were not being fully and appropriately compensated by Pandora. FACCs ¶¶ 2, 29-33. It was only with the launch of Spoken Giants (and Word Collections less than a week earlier) that anyone has tried to upend what has been working well for all involved for decades. *Id.*, ¶ 32. Mr. Black similarly ignores these factual allegations.

Were the above-discussed mischaracterizations of the Amended Counterclaims not enough, Mr. Black goes even further. Working off of the false premise that Pandora "admits" that it will not enter into any individual license with a comedian, he goes on to assert that this fabricated claim is "diametrically different" from allegations Pandora made in the original counterclaims it brought against Word Collections, in which Pandora demonstrated that Word Collections' licensing practices eliminate any possibility of Pandora entering into an individual license with its affiliated comedians. Joinder at 3. According to Mr. Black, this "180 degree turn shows Pandora's bad faith desperation to try to salvage its counterclaims at any cost." *Id.* It does nothing of the sort.

As already demonstrated, Pandora has never "admitted" that it would not enter into a license with individual comedians. It has said that it would not enter into a license at *supracompetitive fees* with any individual comedian, and that no comedian would have the incentive, absent their participation in a price-fixing cartel, to make such a demand. FACCs ¶ 63-64, 70. Moreover, there is nothing inconsistent about Pandora, on the one hand, stating that it will not enter into an agreement with any individual comedian for a supracompetitive fee and, on the other, explaining that Word Collections' affiliation agreements with its comedians and its licensing practices prevent those comedians from licensing their rights outside of the WC cartel—a point that Pandora makes in both the original and amended counterclaims against Word Collections. First Amended Counterclaims to Plaintiffs' Second Amended Consolidated Complaint Against Certain Plaintiffs/Counterclaim

1    Defendants and Counterclaim Defendant Word Collections, Inc. ¶¶ 82-86; Original

2    Counterclaims ¶¶ 51-54.

3          More generally, there is no inconsistency between Pandora's allegations in

4    any of the counterclaims that it has brought, including the original and amended

5    counterclaims. Pandora has been entirely consistent in its allegations that the

6    emergence of SG and Word Collections dramatically changed the market through

7    blatant violations of the antitrust laws. As all of the counterclaims that Pandora has

8    brought clearly state, it was only with the emergence of SG and Word Collections

9    that anyone has tried to upend historical licensing practice, which had been working

10   well for all involved for decades. FACCs ¶ 32. The Collective's anticompetitive

11   scheme is a transparent effort to secure supracompetitive fees that are well above

12   those that any individual comedian could secure under competitive conditions—a

13   conclusion that is fully supported by Spoken Giants' own public statements in which

14   it makes clear that its plan is to engage in "collective representation" to "strengthen

15   the marketplace in favor of the [comedian] creator" and ensure that its comedians

16   receive an "additive income stream." *Id.*, ¶¶ 35, 53.

17   **D.    Mr. Black's arguments regarding his copyright infringement claims are**

18   **irrelevant and meritless.**

19         The remainder of the Black Joinder resorts to ad hominem-style accusations,

20   depicting Pandora's well-pled Amended Counterclaims as "a transparent effort to

21   manufacture leverage for this case in which Pandora does not have a legitimate

22   defense to its more than ten (10) years of willful copyright infringement." Joinder at

23   5.

24         To support this claim—one that Mr. Black acknowledges is completely

25   irrelevant to the instant motion—he attempts to pre-litigate his own distinct

26   copyright infringement claims through the improper vehicle of a motion to dismiss

27   Pandora's Amended Counterclaims, all while ignoring and distorting Pandora's

28

pleadings. Joinder at 5, n.7. Specifically, Mr. Black first asserts that "Pandora does not claim to have a license for [his] literary works" and that "Pandora absolutely knew that any license it received to use a recording did not come with an 'implied license' to use [his] literary works." *Id.* Pandora's vigorous dispute of exactly these points appears at, *inter alia*, Answer & Defenses at ¶¶ 21-24, 38-40, 52-54, 66-68, 80-83, 94-96, 112-14, 123-28, 136, 139-41; FACCs ¶¶ 29-33. Indeed, as discussed above, Pandora's Amended Counterclaims could not be any clearer, explaining that "Pandora has always taken licenses for the comedy recordings that it offers, and through those licenses has obtained (either explicitly or implicitly) all of the rights it needs to stream those recordings." FACCs ¶ 30.

Mr. Black then goes on to assert that "DSP's like Pandora came into prominence in the 2010's, and created the self-serving infringing conduct they now attempt to rely on as custom and practice." Joinder at 5 & n.7. This too is entirely at odds with Pandora's Amended Counterclaims and its Answer and Defenses to the underlying infringement claims. Pandora clearly alleges that the "industry custom and practice" at play "predat[ed] Pandora by many decades." FACCs ¶ 30; *see also* Answer & Defenses at 2 (referring to "many decades" of record labels, home video companies, and others performing, copying and distributing comedy material and securing the necessary rights pursuant to this same custom and practice). Contrary to Mr. Black's mischaracterizations, this "industry custom and practice" refers to decades of widespread and consistent custom and practice in the *comedy* industry, and not merely with respect to streaming services.

At bottom, not only are these arguments irrelevant (as Mr. Black acknowledges), they are wrong. But in any event, as noted above, this Court has previously held that resolution of disputed factual allegations such as these are appropriately resolved, not on a motion to dismiss, but at summary judgment. *Stevens*, 2021 WL 4706702, at *6; *see also Antablin*, 2021 WL 4731339, at *5.

1  Pandora looks forward to disposing of Mr. Black's infringement claims at the

2  appropriate time.

3                                    **CONCLUSION**

4          For the reasons set forth above, and for those set forth in Pandora's Opposition

5  to Spoken Giants' Motion to Dismiss, Mr. Black's Joinder should be denied in its

6  entirety.

7  Dated:  January 25, 2023                          MAYER BROWN LLP
                                                     PAUL M. FAKLER
8                                                    JACOB B. EBIN
                                                     ALLISON AVIKI
9                                                    WILLIAM H. STALLINGS
                                                     CHRISTOPHER J. KELLY
10                                                   JOHN NADOLENCO
                                                     DANIEL D. QUEEN
11                                                   MEERIM NEHME

12

13                                                   By: */s/ Paul M. Fakler*
                                                         Paul M. Fakler
14

15                                                   MAYER BROWN LLP
                                                     WILLIAM H. STALLINGS (*pro hac vice*)
16                                                   *wstallings@mayerbrown.com*
                                                     1999 K Street, NW
17                                                   Washington, D.C.  20006-1101
                                                     Telephone: (202) 263-3000
18                                                   Facsimile: (202) 262-3300

19                                                   MAYER BROWN LLP
                                                     CHRISTOPHER J. KELLY (SBN
20                                                   276312)
                                                     *cjkelly@mayerbrown.com*
21                                                   Two Palo Alto Square
                                                     3000 El Camino Real
22                                                   Palo Alto, California  94306-2112
                                                     Telephone: (650) 331-2000
23                                                   Facsimile: (650) 331-2060

24                                                   Attorneys for Defendant
                                                     PANDORA MEDIA, LLC
25

26

27

28

1

## **FILER'S ATTESTATION**

2    The undersigned, counsel of record for Defendant/Counterclaimant Pandora

3  Media, LLC, certifies that this brief contains 5,379 words, which complies with the

4  word limit of L.R. 11-6.1.

5

6  Dated:  January 25, 2023

7

8                                               */s/Paul M. Fakler*
                                                Paul M. Fakler

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28