Oliver Rocos – State Bar No. 319059
     orocos@birdmarella.com
Timothy B. Yoo – State Bar No. 254332
     tyoo@birdmarella.com
Miri E. Gold – State Bar No. 319060
     mgold@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Christine A. Varney – (*Admitted Pro Hac Vice*)
     cvarney@cravath.com
Lauren A. Moskowitz – (*Admitted Pro Hac Vice*)
     lmoskowitz@cravath.com
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Attorneys for Counter Defendant
Word Collections, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION, | Master File No. 2:22-cv-00809-MCS-MAR |
| | <u>CONSOLIDATED ACTION</u> |
| This Document Relates To: | **WORD COLLECTIONS, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11; 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY AGAINST MAYER BROWN, LLP AND PANDORA MEDIA, LLC** |
| ALL ACTIONS | [Filed Concurrently with Declaration of Jeff Price, and Declaration of Oliver Rocos] |
| | Assigned to Hon. Mark C. Scarsi |
| | Date:  March 6, 2023 Time: 9:00 a.m. Courtroom 7C – First Street Courthouse 350 W. 1st Street, 7th Floor Los Angeles. California 90012 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 6, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Mark C. Scarsi, in Courtroom 7C of the United States District Court, Central District of California, located at the United States Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Defendant Word Collections, Inc. ("Word Collections") will and hereby does move this Court for an order, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and the Court's inherent authority, imposing sanctions upon Counterclaimant Pandora Media, LLC ("Pandora") and Pandora's counsel, Mayer Brown LLP ("Mayer Brown") based on their filing of the First Amended Counterclaim ("FACC") in this action (the "Motion"), including but not limited to an award to Word Collections of its reasonable expenses and attorneys' fees incurred in defending against the FACC and in filing this Motion.

This Motion is brought on the grounds that the FACC violates Rule 11(b)(1) and (b)(3), 28 U.S.C. § 1927 and is appropriate under the Court's inherent authority in that the FACC lacks evidentiary support and was filed for an improper purpose, demonstrating bad faith.  Fed. R. Civ. P. 11(b)(1), (b)(3); 28 U.S.C. § 1927; *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Jeff Price and Oliver Rocos, any matters on which judicial notice may be taken, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court may properly consider.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 12, 2023 and is made in accordance with Fed. R. Civ. P. 11(c)(2), service having been made on Pandora's counsel on January 3, 2023.

1    DATED:  January 3, 2023

2                                              Oliver Rocos
                                               BIRD, MARELLA, BOXER, WOLPERT,
3                                              NESSIM, DROOKS, LINCENBERG &
4                                              RHOW, P.C.

5                                                  by
6                                                      *s/Oliver Rocos*
7                                                         Oliver Rocos

8                                              Christine A. Varney
9                                              Lauren A. Moskowitz
                                               CRAVATH, SWAINE & MOORE LLP
10
11                                                 by
                                                       *s/Lauren A. Moskowitz*
12                                                        Lauren A. Moskowitz

13                                             Attorneys for Counterclaim Defendant
14                                                 Word Collections, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................4

MEMORANDUM OF POINTS AND AUTHORITIES...........................................8

I.      INTRODUCTION ...........................................................8

II.     FACTUAL BACKGROUND .................................................11

    A.   Word Collections Contacted Pandora With A Licensing Proposal .....11

    B.   Pandora Filed Its Counterclaims Alleging Antitrust Claims Against Plaintiff Comedians And Word Collections...........................11

    C.   Pandora Filed The First Amended Counterclaims With No New Substantive Allegations............................................13

III.    LEGAL STANDARD .....................................................13

IV.     ARGUMENT ...........................................................15

    A.   THE FACC IS FACTUALLY BASELESS AND PANDORA FAILED TO CONDUCT A REASONABLE INQUIRY PRIOR TO FILING ...........................................................15

        1.   Pandora Filed The FACC Without Attempting To Correct The Flaws In Its Market Power Allegations................................15

        2.   Pandora Failed To Conduct The Necessary Investigation To Cure The Conspiracy Allegations In The FACC.................19

        3.   Pandora Knew Its Allegation That Word Collections Demanded A "Mandatory All-Or-Nothing Blanket License" Was False.........................................20

    B.   THE FACC WAS FILED FOR AN IMPROPER PURPOSE.............23

    C.   SANCTIONS ARE APPROPRIATE AGAINST MAYER BROWN AND PANDORA...............................................26

V.      CONCLUSION .........................................................28

CERTIFICATE OF COMPLIANCE.............................................30

PROOF OF SERVICE.........................................................31

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Chambers v. Whirlpool Corp.*,
  2017 WL 11591235 (C.D. Cal. Sept. 30, 2017).................................................27

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) .....................................................................14, 15

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ........................................................................................20

*Diaz v. Messer*,
  742 F. App'x 250 (9th Cir. 2018) ....................................................................14

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ....................................................................14, 23

*Flextronics Int'l USA, Inc. v. Murata Manufacturing Co., Ltd.*,
  2020 WL 5106851 (N.D. Cal. Aug. 31, 2020).............................................19, 21

*Gardner v. Hoffman Const. Co. of Oregon*,
  1992 WL 112263 (9th Cir. 1992) ....................................................................13

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
  801 F.2d 1531 (9th Cir. 1986) ..........................................................................8

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2017 WL 11633138 (C.D. Cal. June 23, 2017)..............................................13

*Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*,
  790 F.2d 1421 (9th Cir. 1986) ..........................................................................25

*Intelligent SCM, LLC v. Qannu PTY Ltd.*,
  2015 WL 13916820 (C.D. Cal. July 2, 2015) ..................................................27

*Islamic Shura Council of S. Cal. v. F.B.I.*,
  757 F.3d 870 (9th Cir. 2014)............................................................................8

*In re Itel Securities Litig.*,
  596 F. Supp. 226 (N.D. Cal. 1984)..................................................................27

*King v. Idaho Funeral Services Ass'n*,
    862 F.2d 744 (9th Cir. 1988) ................................................................ 20

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ................................................................ 27

*Martinez v. City of W. Sacramento*,
    2021 WL 2227830 (E.D. Cal. June 2, 2021) ........................................ 21

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) .............................................................. 14

*Nguyen v. Simpson Strong-Tie Company, Inc.*,
    2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) ............................ 18, 20, 22

*Prime Healthcare Servs. v. Humana Ins. Co.*,
    2018 WL 8131762 (C.D. Cal. Aug. 22, 2018) ..................................... 18

*Reudy v. Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010) ............................................... 18

*Rodriguez v. United States*,
    542 F.3d 704 (9th Cir. 2008) ................................................................ 15

*Roe v. Rivian Automotive LLC*,
    2020 WL 8812913 (C.D. Cal. Dec. 11, 2020) ...................................... 26

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ................................................ 13, 14, 22, 24

*Uziel v. Superior Court*,
    2021 WL 5830040 (C.D. Cal. Oct. 19, 2021) ................................ 20, 23

**Federal Statutes**

28 U.S.C.
    § 1927 ...................................................................... 8, 14, 15, 23, 27

**Other Authorities**

Fed. R. Civ. P. 11(b)(1) ......................................................................... 23

Fed. R. Civ. P. 11(c)(1)........................................................................... 27

Fed. R. Civ. P. 11(c)(4)...................................................................... 27, 28

Fed. R. Civ. P. 12(b)(6) ............................................................................................28

Rule 11(b) .........................................................................................8, 12, 18, 27

Rule 11(b)(3)..............................................................................................................23

Rule 11(b)(3)..............................................................................................................15

Rule 11(c) .......................................................................................................................27

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

"Rule 11 is intended to deter baseless filings in district court and imposes a duty of 'reasonable inquiry' so that anything filed with the court is well grounded in fact, legally tenable, and not interposed for any improper purpose." *Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) (citation omitted). "[T]he Rule discourages wasteful, costly litigation battles by mandating the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position taken." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). These same considerations are at play in 28 U.S.C. § 1927, which provides for sanctions against an attorney engaged in unreasonable and vexatious litigation conduct. Pandora's conduct in this action presents exactly the circumstances that these rules and statutes are designed to address.

Word Collections refrained from filing this motion when presented with the initial baseless counterclaims ("Counterclaims") [ECF No. 34]. It does not make this motion lightly, but under the current circumstances, Word Collections is not willing to hold back this time. This motion comes after Word Collections' counsel warned Pandora in advance of the motion to dismiss that its Counterclaims were factually baseless. It comes after this Court's ruling ("Ruling") [ECF No. 83] dismissing Pandora's Counterclaims in their entirety. It comes after this Court set out what Pandora would have to be able to allege in order to state plausible antitrust claims, expressed "doubts" as to whether Pandora could state all of its claims without adducing facts to support them during discovery, and admonished Pandora that it should not amend unless it could do so in accordance with Rule 11(b). Ruling at 27-28. And this motion comes after Pandora deliberately flouted the Ruling and filed its First Amended Counterclaim ("FACC") without adding any new substantive allegations or adducing any additional facts that could support those

claims.  Pandora's counterclaims as presented in the FACC are baseless, were made without having conducted a reasonable and competent inquiry, and were filed in bad faith for an improper purpose.  Sanctions are warranted.

Pandora's counterclaims require a showing of market power.  The Court was clear that Pandora's original monopolization claims "suffer from defective allegations of monopoly power" because Pandora did not "adequately allege direct or circumstantial market power".  Ruling at 19-20.  Specifically, the Court found that "Pandora [did] not allege enough about the reality of the market" to demonstrate direct market power, and that Pandora "offer[ed] no allegations that Word Collections owns a dominant share of the market or that there are significant barriers to entry", which were required to show circumstantial market power. Ruling at 20-22.  Likewise, with respect to the conspiracy claim, the Court stated that Pandora must "offer some facts plausibly suggesting concerted activity that is distinct from parallel conduct".  Ruling at 28.  Importantly, while the Court granted Pandora leave to amend the conspiracy claim, it "doubt[ed] whether Pandora [could] allege the necessary facts at this stage".  (*Id*.)  Rather than heeding the Court's admonitions, Pandora refiled the FACC without doing any work to ensure that they could and did remedy these fatal flaws.

In addition, Pandora's entire counterclaim is premised on the allegation that on March 11, 2021 Word Collections presented it with a "mandatory all-or-nothing blanket license" that would force it to pay a supracompetitive price for all works in Word Collections' catalog, including works Pandora did not use.  That allegation is demonstrably false.  Word Collections' March 11, 2021 email does not include a request for a "blanket license".  Nor is it a "mandatory all-or-nothing" proposal. The email plainly states that the purported offer was merely a "proposal" for Pandora's consideration and comment, offered at Pandora's request.  (Declaration of Jeff Price ("Price Decl."), Ex. A.)  Pandora's ability to resist judicial notice of that document for purposes of a motion to dismiss does not save it from the fact that

Pandora is basing its claims on that document and that document simply does not say what Pandora pleads it does.[1]

Beyond the lack of foundation for the FACC, the totality of the circumstances surrounding Pandora's pleadings demonstrate an improper purpose and bad faith; specifically, that Pandora intended to use them to intimidate and retaliate.  Pandora did not file its original counterclaims until over a year *after* the alleged conduct at issue occurred and three months *after* it was sued by comedians (the "Plaintiff Comedians") for copyright infringement.  When it brought its counterclaims, it named as defendants only Word Collections and the Plaintiff Comedians (collectively, the "Counterdefendants"), rather than all of Word Collections' affiliated comedians who are supposedly part of the same conspiracy.  Additionally, the FACC contains allegations—including inaccurate statements regarding Word Collections' CEO's prior employment relationships and comparisons of him to a "mafia soldier"—that are wholly irrelevant to the antitrust claims, but which are plainly calculated to harass and humiliate.

Rather than defending itself against Word Collections' copyright claims, Pandora is pursuing baseless counterclaims against Word Collections and its clients to force them to expend significant time and resources defending those claims in the hope that Word Collections will be forced to abandon its licensing business and the Plaintiff Comedians will drop the lawsuits against Pandora.  This is precisely the type of bad faith filing that warrants sanctions.

---

[1]   As discussed herein, Pandora and Mayer Brown have made similar sanctionable misrepresentations in connection with the FACC.  For example, the FACC alleges that the license Word Collections proposed demanded payment of royalties for all of the works in its catalog even if Pandora did not use those works.  FACC ¶¶ 52, 58.  This is untrue on the face of the proposed license, which calls only for payment of royalties for works actually used.  Price Decl. Ex. A § 5.a.

## II.    FACTUAL BACKGROUND

### A.    Word Collections Contacted Pandora With A Licensing Proposal

Word Collections is a licensor of the copyrights to literary works in spoken word content, particularly comedic recordings.  FACC, Ex. A.  Pandora is a digital radio station that has streamed comedic performances since 2011.  *Id.* ¶¶ 8, 32. Pandora acknowledges that comedians are entitled to license their literary works, but concedes it has not paid any royalties for such licenses.  *Id*. ¶¶ 7, 43.

From July 2020 through March 11, 2021, at which time Word Collections represented *only twelve comedians* (*id.* ¶¶ 46, 49, Ex. A.), Word Collections' CEO Jeff Price was in regular contact with Pandora, and other streaming services, regarding its potential licensing of the literary rights owned by Word Collections' clients.  Price Decl. ¶ 3.  Mr. Price made clear to Pandora at all times that Word Collections was willing to discuss a license in whatever form Pandora wished, without any preconditions.  *Id*.  In connection with those discussions, Pandora explicitly asked Word Collections to send it a proposed license.  *Id.* ¶ 5.  Mr. Price did so on March 11, 2021 and expressly stated that he was enclosing only a "***proposal***" in the form of "a ***proposed*** licensing agreement."  *Id* ¶¶ 5-6 (emphasis added).  While there were some communications with Pandora thereafter, Pandora never responded to the licensing proposal, never asked for clarification or for different terms, and never sent a counteroffer.  *Id.* ¶¶ 6-8.

### B.    Pandora Filed Its Counterclaims Alleging Antitrust Claims Against Plaintiff Comedians And Word Collections

Hearing no response to that proposal for nearly a year, in February 2022 the Plaintiff Comedians filed individual copyright infringement lawsuits against Pandora for its past failure to license the literary works Pandora concedes exist in their comedy recordings.  Those actions were later consolidated into this action. [ECF Nos. 18-19].  It was not until May 5, 2022, more than three months after the Plaintiff Comedians filed their actions, that Pandora raised any concerns with Word

Collections' proposed license, filing its Counterclaims and adding Word Collections as a party.

On July 15, 2022, Word Collections moved to dismiss the Counterclaims. [ECF No. 49]. On October 26, 2022, this Court dismissed Pandora's Counterclaims in their entirety. Ruling at 28. In that Ruling, the Court held that Pandora had failed to "demonstrate that Word Collections owns a dominant share of the comedy recording market in the United States," in part because "Pandora fails to connect Word Collections' representation of about 30 comedians to its inability to amass the critical mass needed to offer a viable comedy streaming service, especially when Pandora offers recordings by *several thousand* other comedians." *Id.* (emphasis in original). The Court also ruled that Pandora did not "offer the necessary facts to support a conspiracy" primarily because Pandora failed to "offer some facts plausibly suggesting concerted activity that is distinct from parallel conduct." *Id.* at 23-24.

The Court granted Pandora leave to amend "[g]iven the Ninth Circuit policy of granting leave to amend with 'extreme liberality.'" *Id.* at 27-28. But the Court explicitly stated with respect to Pandora's conspiracy and tying claims that it "doubt[ed] whether Pandora can allege the necessary facts at this stage" while recognizing that "discovery may yield information about the nature of the agreements between comedians and Word Collections" that could be relevant. *Id.* at 27. The Court deliberately gave Pandora time to conduct such discovery, noting that it would "'freely give leave' to amend the pleadings . . . if previously unavailable information made available during discovery gives life to a new claim." *Id.* In its Conclusion, the Court repeated its skepticism that Pandora could successfully amend its complaint, noting that Pandora "may file an amended counterclaim. . . *if it can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order.*" *Id.* at 28 (emphasis added).

## C.   Pandora Filed The First Amended Counterclaims With No New Substantive Allegations.

Despite the Court's admonitions to include in any amended brief a range of additional facts, Word Collections is unaware of Pandora having gathered any such facts prior to filing its FACC.  Instead, Pandora promptly entered into a stipulation with Word Collections and the other counterclaim defendants agreeing to file its amended pleading, if any, on November 18, 2022, a little over three weeks after this Court's ruling.  [ECF No. 85.]

The FACC alleges three of the same claims this Court dismissed, and switched out its debunked tying claim for a new Section 1 Claim for Unreasonable Restraint on Trade.  *Id.*  The FACC is longer than the Counterclaims, but does not contain any new allegations of any substance that could cure the defects the Court identified, and it does not include any new facts that Pandora learned in discovery.

## III.   LEGAL STANDARD

Rule 11 dictates that "sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous'." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." *Id.* at 1364.  "A claim is factually baseless if it lacks foundation" and if "no competent attorney could believe [the claim] was well grounded in fact and warranted by law." *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 11633138 (C.D. Cal. June 23, 2017).

"Under Rule 11, a litigant's investigation is to be judged at the time the pleading is signed." *See Gardner v. Hoffman Const. Co. of Oregon*, 1992 WL 112263, (9th Cir. 1992) (citation omitted).  Factors considered in determining whether a reasonable inquiry was made include: (1) "the knowledge that reasonably could have been acquired at the time the pleading was filed"; (2) "an assessment of the type of claim and the difficulty of acquiring sufficient information"; (3) "an

assessment of which party has access to the relevant facts"; and (4) the significance of the frivolous portion in relation to the pleading as a whole. *Townsend*, 929 F.2d at 1364.

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). Sanctions can be imposed for improper or unwarranted allegations even if one non-frivolous claim has been pled. *Townsend*, 929 F.2d at 1362.

A court may also order sanctions pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The Ninth Circuit has held that § 1927's language – 'unreasonably and vexatiously' – implies a bad faith or intentional misconduct requirement not explicit in the statute." *Diaz v. Messer*, 742 F. App'x 250, 251-52 (9th Cir. 2018). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Id*. at 252. An argument is frivolous if its resolution "is obvious" or the argument is "wholly without merit". *Id*.

Even beyond Rule 11 and 28 U.S.C. § 1927, a court may impose sanctions pursuant to its inherent authority—including monetary sanctions or dismissal—if it "specifically finds bad faith or conduct tantamount to bad faith," including where a "party acts for an improper purpose" or where a party recklessly files frivolous papers. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1065 n.8 (9th Cir. 2007). A finding that the litigant engaged in litigation for an improper purpose will suffice, even if the litigant

advanced claims or objections that were colorable on their face.  *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008).

**IV.   ARGUMENT**

   **A.   THE FACC IS FACTUALLY BASELESS AND PANDORA FAILED TO CONDUCT A REASONABLE INQUIRY PRIOR TO FILING**

Sanctions are proper here under Rule 11(b)(3), Section 1927 and the Court's inherent authority, because the FACC is the result of an insufficient investigation and Pandora and its attorneys knew the allegations in the FACC lacked any foundation or were demonstrably false at the time the FACC was filed.  *Christian*, 286 F.3d at 1127.

   1.   Pandora Filed The FACC Without Attempting To Correct The Flaws In Its Market Power Allegations

The filing of the FACC is sanctionable because Pandora filed the FACC without even trying to correct a fundamental flaw the Court identified with the Counterclaims: Word Collections lacks market power and Pandora alleges no facts showing that it does.

As this Court previously held, Word Collections' affiliation with only a few dozen comedians is insufficient to give it power within a market that includes at least 3,000 comedians and more than 35,000 comedic recordings.  Ruling at 20-21. In its original Counterclaims, Pandora attempted to plead around this fatal flaw by contending that Word Collections controls a critical mass of "must have" comedians and comedic routines that gives it market power despite its small market share. Counterclaims ¶ 66.  This Court spurned that attempt by Pandora in its Counterclaims, finding that Pandora "does not plead facts demonstrating that [Word Collections' associated] comedians are a 'must have'" and had "fail[ed] to connect Word Collections' representation of about 30 comedians to its inability to amass the critical mass needed to offer a viable comedy streaming service."  Ruling at 20.

1    Following the Ruling, Pandora either was unable to identify any facts to buttress its

2    claims or determined it would not bother to try to do so.  As in the original

3    Counterclaims, the FACC provides *no* evidentiary facts whatsoever to show that

4    Word Collections is affiliated with "must have" comedians or to make that missing

5    "connection."

6        The "new" allegations in the FACC demonstrate that Pandora failed to

7    conduct any further investigation or allege any facts that correct the flaws in the

8    Ruling.  In the FACC, Pandora attempts to show that Word Collections is affiliated

9    with "must have" comedians by alleging that nine such comedians appear on a 2017

10   list from a random third party *Rolling Stone web page* with no affiliation with

11   Pandora titled "50 Best Stand-Up Comedians of All Time," three appear on another

12   random third party 2014 webpage from Billboard, again unaffiliated with Pandora,

13   of the top twenty comedy albums from 1991-2014, and two others are very

14   successful.  FACC ¶¶ 114-116.  Fatally, however, Pandora *has not* alleged any new

15   facts showing that the comedians' presence on these old lists makes them a "must

16   have" within its alleged market.[2]  Pandora's reliance on those allegations shows that

17   it either failed to investigate whether Word Collections was affiliated with "must

18   have" comedians, or could not find any facts to support its claims.

19       Indeed, despite the Court's ruling, the FACC still fails to even define what a

20   "must have" comedian is.  Instead, Pandora alleges that had *any* comedian

21

22   _____

23   [2]   As set forth in Word Collections' motion to dismiss the FACC, Pandora does
     not, for example, allege any facts showing that any Word Collections-affiliated
24   comedian, or any one of their comedic works, has *ever* been within the top 10, 50, or
     even 100 most-listened-to on Pandora or any other streaming service.  If that was
25   true, Pandora would undoubtedly have alleged as much.  Notably, Pandora made
     such allegations in its claims against Spoken Giants.  *See* ECF No. 94 ¶ 103
26   (asserting that Spoken Giants is affiliated with "[a]ll five of the top five most played
     comedians on Pandora in 2021" and "[t]welve of the top twenty-five, or 48%, of the
27   most played comedians on Pandora in 2021").

28

approached Pandora individually to seek any price greater than $0.00 for a license to that comedian's literary works, Pandora would have refused and dropped that comedian from its service.  FACC ¶ 44.  Far from correcting any of the issues identified in the Ruling, this "new" allegation shows that no comedian is a "must have" if they want to be paid, no matter how popular, desirable, iconic, legendary they are.  Because all Word Collections' affiliated comedians want to be paid for their literary rights embodied in their comedic recordings, Pandora apparently considers all such comedians dispensable.  Based on these new allegations, Word Collections necessarily is not affiliated with any "must have" comedians at all.

Even if Pandora's allegations *were* sufficient to show that Word Collections is affiliated with "must have" comedians—they are not—Pandora fails to allege any new facts to meet this Court's direction that it offer facts connecting Word Collections' affiliation with those comedians to its inability to "offer a viable comedy streaming service."  Pandora's assertion that its comedy "curation team" claims it cannot offer a "competitive comedy service in the long run" without Word Collections-affiliated comedians is a conclusory self-serving allegation lacking any factual support.  FACC ¶ 117.  And Pandora's claim that Word Collections has market power because it received complaints (but notably, not canceled subscriptions) from two Pandora customers—out of 48.8 million monthly active users—since taking down recordings within Word Collections' and Spoken Giants' collections is plainly insufficient to make this connection.  FACC ¶¶ 8, 118.

Pandora's lack of candor regarding its market power allegations is demonstrated most glaringly by the fact that although it did not mention Spoken Giants in its Counterclaims *at all*, it has now filed an antitrust claim against Spoken Giants alleging that it "has monopoly power (or, alternatively and at a minimum, has a dangerous probability of achieving monopoly power)" ***in the exact same market as Word Collections.***"  [*Compare* FACC ¶¶ 98-100 (alleging Word Collections' "monopoly power" in the market) *with* ECF No. 94 ¶¶ 88-90 (alleging

1  Spoken Giants' "monopoly power" in the same market).]  Beyond merely

2  concealing the existence of Spoken Giants, Pandora affirmatively opposed Word

3  Collections' request for this Court to take judicial notice of Spoken Giants' website

4  showing that it was a competitor in the marketplace.  [ECF No. 49-1 at 5; ECF No.

5  55 at 4.]  And, most critically for the purposes of this motion, Pandora simply

6  cannot allege in good faith that Word Collections has monopoly power in the

7  relevant market while simultaneously alleging that Spoken Giants *also* has

8  monopoly power in that market.  *See Reudy v. Clear Channel Outdoors, Inc.*, 693 F.

9  Supp. 2d 1091, 1127 (N.D. Cal. 2010) ("To pose a threat of monopolization, one

10  firm *alone* must have the power to control market output and exclude competition.

11  An oligopolist lacks this unilateral power.") (citing *Rebel Oil Co., Inc. v. Atlantic

12  Richfield Co., Inc.*, 5 F.3d 1421, 1443 (9th Cir. 1995)).  The disingenuousness of

13  Pandora's position is stark.

14      In sum, Pandora did not do what this Court said it must—"plead facts

15  demonstrating that [Word Collections' associated] comedians are a 'must have',"

16  and facts showing Pandora's resulting "inability to amass the critical mass needed to

17  offer a viable comedy streaming service."  Ruling at 20.  Far from remedying the

18  issues this Court identified in its Counterclaims, Pandora's new allegations further

19  undermine its case on the key element of all its claims.  This Court instructed

20  Pandora not to file an amended pleading if it could not "do so consistent with

21  Federal Rule of Civil Procedure 11(b)."  Ruling at 28.  Pandora's pleading is

22  inconsistent with that rule, and sanctions are warranted.  *See Prime Healthcare

23  Servs. v. Humana Ins. Co.*, 2018 WL 8131762, at *7 (C.D. Cal. Aug. 22, 2018)

24  (granting Rule 11 sanctions motion where "counsel did not conduct a reasonable

25  inquiry"); *Nguyen v. Simpson Strong-Tie Company, Inc.*, 2020 WL 5232564, at *5

26  (N.D. Cal. Sept. 2, 2020) ("The paucity of fact allegations rendered implausible a

27  core allegation of the FAC," meaning the FAC was "factually baseless" and Rule 11

28  sanctions were warranted).

2.    <u>Pandora Failed To Conduct The Necessary Investigation To Cure The Conspiracy Allegations In The FACC</u>

In its Ruling, this Court also determined that Pandora had not pled a valid antitrust conspiracy and stated that in order to do so, Pandora had to allege evidentiary facts showing "who, did what, to whom (or with whom), where, and when." Ruling at 24. Recognizing Pandora's heavy burden in curing its conspiracy allegations, the Court stated that it "doubt[ed] whether Pandora can allege the necessary facts" to amend them absent discovery. Ruling at 27. Despite that explicit guidance, Pandora filed its FACC apparently *without* conducting any additional investigation whatsoever.

Crucially, the FACC does not add any statements by any individual that Pandora's counsel interviewed or deposed who corroborated any aspect of the supposed conspiracy, let alone provided any of the necessary facts of "who, did what, to whom (or with whom), where, and when." The FACC also does not add citations to *any* documents or communications that provide any support for the existence of a conspiracy. Instead, the FACC merely repeats and expands allegations that show only parallel conduct—the precise sort of allegations this Court already rejected as insufficient to state a claim.[3] FACC ¶¶ 57-69, 73.

Even if this Court had not suggested to Pandora that it discover more information before amending its pleading, Pandora's failure to conduct a reasonable investigation into whether any conspiracy actually existed by not interviewing relevant people or reviewing relevant documents is sanctionable conduct. *King v.*

---

[3] Pandora's expanded allegations regarding Word Collections' business activities, such as its marketing emails, is plainly insufficient to identify even the existence of a conspiracy involving and among its affiliated comedians, let alone the specific facts this Court identified as the minimum required to state a claim. *See Flextronics Int'l USA, Inc. v. Murata Manufacturing Co., Ltd.*, 2020 WL 5106851, at *3, *15, n.6 (N.D. Cal. Aug. 31, 2020) (dismissing Section 1 claim where allegations that *some* defendants engaged in antitrust violations did not allege other defendants did).

*Idaho Funeral Services Ass'n*, 862 F.2d 744, 747 (9th Cir. 1988) (failure to conduct a reasonable inquiry into whether any alleged antitrust conspiracy actually existed prior to filing warranted sanctions); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 388 (1990) (Rule 11 sanctions appropriate where plaintiff wrongfully alleged antitrust conspiracy based on inferences from information gathered in inadequate investigation).  However, it is clear that Pandora deliberately chose not to heed the Court's directive and filed the FACC without conducting any, or any reasonable, investigation or search to determine if it could plead the facts necessary to address the flaws in its conspiracy allegations.  No competent attorney would believe Pandora's conspiracy claims are well-grounded in fact, and sanctions are warranted. *See, e.g. Nguyen*, 2020 WL 5232564, at *5; *Uziel v. Superior Court*, 2021 WL 5830040 at *5 (C.D. Cal. Oct. 19, 2021).

> 3. <u>Pandora Knew Its Allegation That Word Collections Demanded A "Mandatory All-Or-Nothing Blanket License" Was False</u>

Finally, and strikingly, Pandora's theory of anticompetitive conduct by Word Collections is based upon a single alleged communication: the March 11, 2021 email in which Word Collections made the purported "demand" that Pandora accept a "mandatory all-or-nothing blanket license" in a manner that "did not allow any means for Pandora to avoid the Collective's supra-competitive royalty price" or the blanket license, including payment of a royalty for works Pandora did not use. FACC ¶¶ 31, 52, 53, 70, 88. *But Word Collections never made that demand*.

The words of the March 11, 2021 email makes plain that Pandora's allegations are false: Word Collections *did not* "demand" Pandora enter into a blanket license, and that instead Mr. Price was merely continuing negotiations with Pandora.[4]  It states, in relevant part:

---

[4]   The Court declined to consider the contents of the March 11, 2021 email in connection with the Ruling, on the basis it was not incorporated into the

"I am sending this email as a follow-up to prior discussions between Word Collections and Pandora. **My goal is to work with you to provide an efficient licensing solution to ensure Pandora has the necessary legally required rights for the previous and future broadcast of the works Word Collections and its clients represents and controls**.

To that end, our clients have instructed me to approach you with the following information, notices **and proposal**:

. . . .

(4) A **proposed** licensing agreement with Word Collections for prospective exploitations and the **opportunity to work collaboratively** to resolve past unlicensed exploitations.

. . .

**My hope is to set a time this week or early next week to discuss next steps. I look forward to speaking further**."

Price Decl., Ex. A (emphasis added). Nowhere in that email did Word Collections "demand" Pandora accept anything at all, much less demand that it accept an "all-or-nothing blanket license" and payment of a royalty for unused works, as Pandora alleges. *Id.*

Crucially, therefore, the *sole* communication that forms the basis of Pandora's claims definitively *contradicts* Pandora's assertion that Word Collections "did not allow any means for Pandora to avoid the Collective's supra-competitive royalty price." FACC ¶¶ 52. It proves that Pandora unquestionably *did* have the opportunity to "make[] an inquiry or attempt to negotiate an individual license." Ruling at 17 (citing *Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors &*

---

Counterclaims. *Id.* However, the FACC *does* incorporate that email into the record. *See* FACC 52-54, 70-72, 88; *see also* ECF No. 104-2 at 3-4. And this Court may in any event consider evidence outside of the pleading for the purposes of a Rule 11 motion. *See, e.g.*, *Martinez v. City of W. Sacramento*, 2021 WL 2227830, at n.7 (E.D. Cal. June 2, 2021) ("[C]ourts may consider affidavits in Rule 11 motions even at the motion to dismiss stage.").

*Publishers*, 744 F.2d 917, 925 (2d Cir. 1984)).  Pandora's decision not to use that opportunity does not transform Word Collections' proposal into anticompetitive activity.  Ruling at 17 ("[A]n antitrust plaintiff has the burden of pleading the nonavailability of options to acquire individual licensing . . . [which] cannot be met where a plaintiff never makes an inquiry or attempt to negotiate an individual license.") (citations omitted).  Given the contents of the email, Pandora and its attorneys could not have made the allegations in the FACC in good faith.

*Nguyen*, 2020 WL 5232564, is instructive.  There, the court granted the defendants' motion for Rule 11 sanctions on the ground that the operative pleading "cherry picked and incorporated . . . isolated portions" from a label that supported its claims, "while simply ignoring other language which. . . contradicted core allegations".  The court concluded that this cherry picked language made the pleading "factually misleading, which warrants sanctions." *Id.* at *5.  As in *Nguyen* so too here—the entirety of the FACC is based on cherry picked portions of Word Collections' March 11, 2021 communication, when that communication as a whole makes plain that there was no anticompetitive conduct at all.  *See also Townsend*, 929 F.2d at 1366 (FAC was filed without reasonable inquiry where an affidavit available to counsel at the time it was filed contradicted allegations made therein).  As a result, this Court should impose sanctions.

The irrefutable chronology of events and communications after that proposal only emphasizes the sham nature of Pandora's claims.  During the six months after March 2021, Pandora continued to engage with Word Collections, including indicating that it was developing a methodology for handling future royalties and requesting Word Collections execute an NDA as a precursor to further discussions.  Price Decl. ¶¶ 6-8.  Again, Pandora clearly had the opportunity to respond to the proposed license, but did not do so.  And while Pandora alleges that the anticompetitive conduct occurred in March 2021, the *first* occasion on which Pandora expressed any concern with that proposed license was in May 2022 when it

filed its Counterclaims to the Plaintiff Comedians' copyright infringement claims, alleging it was an antitrust violation. *Id.* Had Pandora genuinely believed that Word Collections and its then twelve clients were engaged in an antitrust conspiracy at the time the proposed license was sent, Pandora would have said something—*anything*—in protest. Or it would have responded with what it believed was a reasonable counterproposal. It did not do so because it knew that Word Collections' proposal was lawful and not an anticompetitive "demand." Pandora's claim is an unmitigated sham, which has absolutely nothing to do with Word Collections' license *proposal* and everything to do with the Comedians' enforcement of their copyrights.

No attorney conducting a reasonable inquiry into this matter could read the March 11, 2021 communication—*the sole "evidence" of anticompetitive behavior on which the FACC is based*—to suggest that Word Collections was presenting a mandatory all-or-nothing license. That Pandora and its attorneys represented otherwise is sanctionable. *Uziel*, 2021 WL 5830040 at *5 (awarding sanctions under Rule 11(b)(3) "because the factual contentions in the FAC had no evidentiary support" where "at least two factual allegations that were cornerstones of his 'theory' were unsupported").

## B.   THE FACC WAS FILED FOR AN IMPROPER PURPOSE.

Sanctions are warranted under Rule 11 where pleadings are filed for an improper purpose, including if the intent is "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Sanctions are similarly available under 28 U.S.C. § 1927 and the court's inherent authority where the pleading is filed for an improper purposes. *Fink*, 239 F.3d at 992. "Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose. The standard governing both inquiries is objective." *Townsend*, 929 F.2d at 1362.

As set forth above, Pandora has conceded that copyrights to the literary works underlying comedy recordings exist and that it has not separately licensed or paid for broadcasting or streaming such works. *See Supra* § II.A.  When it was sued for copyright infringement, it responded not merely by defending itself, but by filing objectively baseless antitrust claims asserting that Word Collections' efforts to license those copyrights were anticompetitive.  When its Counterclaims were thrown out, it simply filed the FACC, knowing that would subject Word Collections to another expensive round of briefing.  Pandora *knew* it could not succeed on its claims, but it did not care because its true motive in filing them was to force Word Collections to expend its resources on litigation rather than developing its business, and to scare and intimidate the Comedians while also wasting their resources on defending themselves rather than pursuing Pandora.  Pandora does not want to license and pay a royalty for literary work copyrights, but rather than proving in a court of law that it does not have to, it instead wants to bully Counterdefendants into giving up.  Put simply, Pandora is not interested in justice—it is interested in destroying Word Collections.

*First*, as established in Section IV.A, the FACC is frivolous.  Pandora and its attorneys filed the FACC without including factual allegations sufficient to support three key elements of the claims—market power, conspiracy, and anticompetitive activity.  Rather than developing a factual record to show that sufficient facts *do* exist, they simply replead the same claims using substantially the same allegations, adding nothing new of substance.  Indeed, Pandora filed the FACC despite this Court's order that Pandora not to do so unless and until it obtained additional information that could support its claims.  Ruling at 27, 28.  Mayer Brown's sophistication and expertise in antitrust law is such that it must have known Pandora's claims lacked merit.  That they were nonetheless filed strongly supports an inference that Pandora is not pursuing its claims in good faith, but is in fact using litigation as a weapon to harm and intimidate Counterdefendants. *See Huettig &*

1    *Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1427

2    (9th Cir. 1986) (a sophisticated law firm's filing of a claim they "must have known"

3    was invalid gave rise to "a strong inference that their bringing of an action . . . was

4    for an improper purpose").

5        *Second*, Pandora and its attorneys' improper motive is apparent from the fact

6    that the Counterdefendants include only those comedians who have filed copyright

7    infringement cases against Pandora.  FACC ¶¶ 11-16.  This is despite Pandora's

8    allegations that *all* comedians who have affiliated with Word Collections are part of

9    the "conspiracy" to fix prices and otherwise restrain trade.  *See, e.g.*, *id.* ¶ 4

10   (defining the "Collective" as "Word Collections and its affiliated comedians" and

11   alleging "[t]he Word Collections-affiliated comedians have agreed among

12   themselves and individually with Word Collections . . ."); *id.* ¶ 57 ("[T]he comedian

13   members of the Collective [have agreed. . . [to] fix prices. . . through an all-or-

14   nothing blanket license").  That Pandora chose to name only the Plaintiff Comedians

15   as Counterdefendants demonstrates that it simply wants retribution against those

16   who filed suit against it and to obtain a litigation advantage by forcing them to

17   spend their resources defending against Pandora rather than attacking it.  The FACC

18   serves the dual purpose of a warning shot to other comedians, putting them on

19   notice that if they try to enforce their copyrights they too will be mired in protracted

20   and expensive, albeit frivolous, litigation.

21       *Third*, the timing of Pandora's Counterclaims demonstrates bad faith.

22   Pandora decided to assert these claims only *after* the Plaintiff Comedians filed

23   actions against Pandora—which were themselves filed almost a year after Word

24   Collections' purported "demand."  FACC ¶¶ 31, 52, 54.  If Pandora had truly been

25   harmed by the alleged anticompetitive conduct and had a genuine belief in the

26   merits of its antitrust claims, it would have filed earlier.  Again, Pandora's pleadings

27   smack of retribution and intimidation tactics.

28       *Last*, Pandora included wholly irrelevant allegations in the FACC whose

purpose can solely be to personally attack Word Collections' CEO and Founder Jeff Price.  Pandora's false allegation, apropos of nothing, that Mr. Price's prior employers TuneCore and Audiam "terminated him" says nothing regarding Pandora's antitrust claims.  FACC ¶ 45.  Its inclusion makes plain that Pandora is using its pleading to try to damage Mr. Price's reputation in the hopes it might force Word Collections to concede, or at least harm its business.  Pandora's excerpt of a personal Twitter post by Mr. Price of someone else's t-shirt design reading "F*ck you, pay me" from the Etsy website[5] that does not mention Pandora, licensing, comedians, Word Collections' clients and/or royalty rates and its subsequent comparison of him to a "mafia soldier" engaged in an "organized crime family's protection and loansharking operations" with "threat[s] of violence and destruction of business" is preposterously hyperbolic and similarly irrelevant.  FACC ¶ 111.  It is shocking that a firm of Mayer Brown's reputation included allegations of those sorts in a pleading.  It is plain that they serve no valid purpose whatsoever, but were included only in an attempt to harm Word Collections under cover of litigation privilege.

Pandora plainly has pursued its Counterclaims and the FACC in bad faith, knowing that it would fail but hoping to gain enough ancillary benefits to be worthwhile.  That justifies the imposition of Rule 11 sanctions.  *See, e.g., Roe v. Rivian Automotive LLC*, 2020 WL 8812913, at *3 (C.D. Cal. Dec. 11, 2020) (imposing Rule 11 sanctions where complaint was brought for improper purpose of using "bad publicity to force a settlement").

### C.   SANCTIONS ARE APPROPRIATE AGAINST MAYER BROWN AND PANDORA.

Under Rule 11(c), if the Court finds that a violation of Rule 11(b) has

---

[5]   Available at, https://www.etsy.com/listing/745136021/fuck-you-pay-me-shirt-sarcastic-t-shirt.

occurred, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).  Sanctions "may include nonmonetary directives" as well as "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Sanctions under 18 U.S.C. § 1927 may be imposed for reckless misconduct by an attorney. *Chambers*, 2017 WL 11591235, at *3.  Courts also have "inherent power to impose monetary sanctions when an attorney has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at *3.  "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1); *see also Chambers v. Whirlpool Corp.*, 2017 WL 11591235 at *2 (C.D. Cal. Sept. 30, 2017).  In the case of represented parties, "[c]lients are generally sanctioned for factual misrepresentations in the pleadings, or where it is clear that the client is the 'mastermind' behind the frivolous case," as "sanctions . . . should fall upon the individual responsible for the filing of the offending document." *Intelligent SCM, LLC v. Qannu PTY Ltd.*, 2015 WL 13916820 (C.D. Cal. July 2, 2015) (internal citations and quotations omitted).

Pursuant to 28 U.S.C. § 1927, "the attorney who commits the misconduct may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *In re Itel Securities Litig*, 596 F. Supp. 226, 234 (N.D. Cal. 1984).  And under the Court's inherent authority, it may issue sanctions in the form of dismissal and/or attorney's fees against a party or counsel for engaging in bad faith conduct. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958, 961 (9th Cir. 2006).

The purpose of Rule 11 sanctions is to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Here, Pandora had the evidence necessary to know the factual allegations underlying the

FACC were false, or were at least insufficient to state a plausible claim, and had even been admonished by the Court that it could not state claims without substantial additional facts—which appear nowhere in the FACC.  That Pandora filed the FACC anyway shows it did so for the improper purpose of needlessly increasing Word Collections' and the Plaintiff Comedians' litigation costs, deterring other bona fide copyright claims from being brought, and harassing Mr. Price.

## V.    CONCLUSION

For the foregoing reasons, Word Collections respectfully requests that the Court issue monetary sanctions against Mayer Brown[6] and Pandora, and order Pandora to pay for the attorneys' fees and costs Word Collections incurred as a result of it and Mayer Brown's conduct, including in preparing the present motion and its motion to dismiss Pandora's FACC.[7]


DATED:  January 3, 2023

Oliver Rocos
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

by

_s/Oliver Rocos_
Oliver Rocos

---

[6]    Paul M. Fakler, of Mayer Brown, LLP signed the FACC on behalf of Pandora. See FACC at 63.

[7]    Word Collections stands ready and willing to submit a declaration setting forth the fees and costs incurred as a result of Pandora and its counsel's misconduct, including those incurred preparing the present motion, and Word Collections' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the FACC.

Christine A. Varney
Lauren A. Moskowitz
CRAVATH, SWAINE & MOORE LLP

by

_s/Lauren A. Moskowitz_
Lauren A. Moskowitz

Attorneys for Counterclaim Defendant
Word Collections, Inc.

MOTION FOR SANCTIONS

1

## **<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Counterclaim Defendant Word Collections, Inc. certifies that this brief contains 6,760 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 3, 2023

<blockquote>
Oliver Rocos<br>
BIRD, MARELLA, BOXER, WOLPERT,<br>
NESSIM, DROOKS, LINCENBERG &<br>
RHOW, P.C.

by

<u>    s/*Oliver Rocos*    </u><br>
        Oliver Rocos
</blockquote>

MOTION FOR SANCTIONS

# PROOF OF SERVICE

## *In re PANDORA MEDIA, LLC*
### Case No. 2:22-cv-00809-MCS-MAR

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.

On January 3, 2023, I served the following document(s) described as **WORD COLLECTIONS, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11; 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY AGAINST MAYER BROWN, LLP AND PANDORA MEDIA, LLC** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:**  By placing a true copy thereof in sealed envelopes addressed to the parties listed on the attached Service List and causing them to be deposited in the mail at Los Angeles, California.  The envelopes were mailed with postage thereon fully prepaid.  I am readily familiar with our firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 3, 2023, at Los Angeles, California.

/s/ Katherine J. Ferguson
_____
Katherine J. Ferguson

MOTION FOR SANCTIONS

1

**SERVICE LIST**
*In re PANDORA MEDIA, LLC*
**Case No. 2:22-cv-00809-MCS-MAR**

2

3  Christopher J. Kelly
   Mayer Brown LLP
4  Two Palo Alto Square Suite 300
   Palo Alto, California 94306
5  Telephone: (650) 331-2025
   Email: cjkelly@mayerbrown.com
6  **Counsel for Defendant and Counter**
   **Claimant Pandora Media, LLC**

7

8  John Nadolenco                          Allison M. Aviki
   Mayer Brown LLP                         Paul M. Fakler
9  333 S. Grand Ave., 47th Fl.             Jacob B. Ebin
   Los Angeles, CA 90071                   Mayer Brown LLP
10 Telephone: (213) 229-5173               1221 Avenue of the Americas
   Email: jnadolenco@mayerbrown.com        New York, NY 10020-1001
11 **Counsel for Defendant and Counter**   Telephone: (212) 506-2500
   **Claimant Pandora Media, LLC**         Email: aaviki@mayerbrown.com
12                                         Email: pfakler@mayerbrown.com
                                           Email: jebin@mayerbrown.com
13                                         **Counsel for Defendant and Counter**
                                           **Claimant Pandora Media, LLC**

14 William H. Stallings
   Mayer Brown LLP
15 1999 K Street NW
   Washington, DC 20006-1101
16 Telephone: (202) 263-3000
   Email: wstallings@mayerbrown.com
17 **Counsel for Defendant and Counter**
   **Claimant Pandora Media, LLC**

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SANCTIONS