Richard S. Busch - SBN 319881
rbusch@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Attorney for Plaintiffs/Counterclaim Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br><br>2:22-cv-00817-MCS-MAR (Clay)<br>2:22-cv-01345-MCS-MAR (Di Paolo)<br>2:22-cv-00810-MCS-MAR (Carlin)<br>2:22-cv-00815-MCS-MAR (Williams)<br>2:22-cv-00813-MCS-MAR (White)<br>2:22-cv-00809-MCS-MAR (Engvall)<br>2:22-cv-00809-MCS-MAR (Hicks) | Master File No. 2:22-cv-00809-MCS-MAR<br><br>CONSOLIDATED ACTION<br><br>**CERTAIN PLAINTIFFS/COUNTERCLAIM DEFENDANTS' JOINDER IN MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11, 28 U.S.C § 1927, AND THE COURT'S INHERENT AUTHORITY BY COUNTERCLAIM CODEFENDANT WORD COLLECTIONS, INC. AGAINST MAYER BROWN, LLP AND PANDORA MEDIA, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Richard S. Busch filed concurrently herewith]<br><br>Date:    March 6, 2023<br>Time:   9:00 a.m.<br>Crtrm.: 7C - First Street Courthouse<br>350 W. 1st Street, 7th Floor,<br>Los Angeles, California 90012<br>Assigned to Hon. Mark C. Scarsi |

JOINDER IN WORD COLLECTIONS' MOTION FOR RULE 11 SANCTIONS AGAINST PANDORA MEDIA, LLC AND MAYER BROWN, LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs/Counterclaim Defendants YELLOW ROSE PRODUCTIONS, INC., on behalf of Bill Engvall; MAIN SEQUENCE, LTD.; RON WHITE, INC., on behalf of Ron White; ROBIN WILLIAMS TRUST; BRAVE LION, INC., on behalf of Andrew Clay Silverstein a/k/a Andrew Dice Clay; NICK DI PAOLO, individually and on behalf of ACID TONGUE, INC.; and MARY REESE HICKS, individually and on behalf of ARIZONA BAY PRODUCTION CO., INC. (collectively, the "Comedians")[1] hereby join in the motion of Counterclaim Defendant Word Collections, Inc. ("Word Collections") for an order under Fed. R Civ. P. 11, 28 U.S.C. § 1927 and the Court's inherent authority, imposing sanctions (the "Sanctions Motion") against Pandora Media, LLC ("Pandora") and its counsel herein, Mayer Brown, LLP ("Mayer Brown") for filing the First Amended Counterclaims (Doc. 93, filed 11/18/2022; "Amended Counterclaims") in this action, and in the Memorandum of Points and Authorities and the Declarations of Jeff Price ("Price Decl.") and Oliver Rocos ("Rocos Decl.") in support of Word Collections' Sanctions Motion, filed on January 30, 2023. The Comedians also submit herewith their own brief Memorandum of Points and Authorities in support of the Sanctions Motion, and the Declaration of Richard S. Busch ("Busch Decl."). By their Joinder, the Comedians seek an order, pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority, imposing sanctions upon Pandora and its counsel, Mayer Brown, including but not limited to monetary sanctions for the time spent by Comedians' counsel having to address the factually and legally baseless Amended Counterclaims, which were filed for an improper purpose, including but not limited

---

[1] The "Comedians" herein do not include Plaintiff/Counterclaim Defendant Lewis Black, an individual and on behalf of Stark Raving Black Productions, Inc., who contemporaneously files a Joinder in Spoken Giants, LLC's Motion for Rule 11 Sanctions against Pandora and Mayer Brown.

to harassment of the Comedians in order to deter them from pursuing these copyright infringement actions.

This Joinder is brought on the grounds that the Amended Counterclaims violates Rule 11(b)(1) and (b)(3), 28 U.S.C. § 1927, and is appropriate under the Court's inherent authority in that the Amended Counterclaims lack evidentiary support and were filed for an improper purpose, demonstrating bad faith, as more fully explained in Word Collections' Sanctions Motion and herein.  Fed. R. Civ. P. 11(b)(1), (b)(3); 28 U.S.C. § 1927; *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 12, 2023, between counsel for the Comedians and counsel for Pandora, Mayer Brown, and is made in accordance with Fed. R. Civ. P. 11(c)(2), serving having been made on Pandora's counsel on January 3, 2023.

DATED:  January 30, 2023            Respectfully submitted,
                                    KING & BALLOW

                                     /s/ Richard S. Busch
                                      Richard S. Busch
                                    Attorneys for Plaintiffs/
                                    Counterclaim Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

The Comedians hereby join in the Sanctions Motion and accompanying Memorandum of Points and Authorities and Declarations filed by Word Collections, including but not limited to Word Collections' discussion of legal authority and standards, and the facts and other law which demonstrate that Pandora and Mayer Brown violated those standards by filing the Amended Counterclaims. Joinder is appropriate because the Comedians are similarly situated with Word Collections since Pandora, through its counsel Mayer Brown, has raised the same factually and legally baseless claims against the Comedians as it raised against Word Collections in the Amended Counterclaims.[2] Therefore, while in the interest of judicial efficiency Comedians will not repeat the facts and law cited in Word Collections' Sanctions Motion and Memorandum, it is the Comedians who are the victims of this intimidation campaign by Pandora and its counsel, and who therefore wish to make a few additional points.

First, this is a classic case of David versus a financial Goliath, but here Goliath has used all of its might and unlimited resources through its chosen international law firm, Mayer Brown, in an attempt to squash David regardless of the truth or falsity of the facts upon which it relies, and by concocting antitrust counterclaims out of thin air knowing that the foundation upon which they fully rest is false. In this regard, it must be mentioned that the Comedians in many cases actually are the Estate of legendary Comedians beloved the world over (The Estate of Robin Williams, The

---

[2] "Federal courts routinely permit joinder where the notice of motion and motion filed identifies the issues to be adjudicated. [Citations omitted] . . .Courts generally allow the joinder when either (1) the parties are so similarly situated that filing an independent motion would be redundant, or (2) the party seeking joinder specifically points out: which parts of the motion apply to the joining party and the factual similarities between the joining party and moving party that give rise to a similar claim or defense. [Citation omitted]." *Huml v. Servis One, Inc.*, Case No. 8:20-cv-00489-DOC-KESx, U.S. Dist. Lexis 49824, at *28-29 (C.D. Cal. Jan. 29, 2021).

Estate of George Carlin, The Estate of Bill Hicks), meaning that these are the families of these comedians who live off of the copyrights of the Comedians, and who brought these copyright infringement lawsuits because Pandora has chosen to use the Works without license and without payment, and to remedy this copyright infringement. While these are legitimate copyright infringement cases, in response, Pandora and Mayer Brown filed the aforementioned ginned-up counterclaims for the very plain purpose of intimidating these Comedians and/or their families into dropping the claims by scaring them through these frivolous counterclaims, and with threats of treble damages, attorneys' fees, and invalidation of copyrights.  One can think of no better use of Rule 11 Sanctions (and those permitted by 28 U.S.C. § 1927 and the Court's inherent authority) than to impose them in these circumstances.

Second, it also bears mentioning that the Comedians did not bring this Sanctions Motion the first time Pandora brought these counterclaims. The Comedians and Word Collections simply moved to dismiss them. This Court not only dismissed the counterclaims, but warned Pandora to be careful in filing the counterclaims again, and to only do so if it could do so in compliance with Rule 11. Specifically, in dismissing Pandora's initial counterclaims, this Court expressed "doubts whether Pandora can allege the necessary facts at this stage," and admonished Pandora that it "may file an amended counterclaim … if it can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order."  Order re: Motion to Dismiss (Doc. 83 filed 10/26/2022 (the "Order"), at 27:8 and 28:4-6.  The Court dismissed Pandora's monopolization claims because Pandora failed "to demonstrate market power directly or circumstantially,"[3] and dismissed Pandora's conspiracy claims because Pandora failed to offer facts "plausibly suggesting concerted activity that is distinct from parallel conduct" since it "has not alleged any agreement other than agreements

---

[3] Order, 22:13-15.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINDER

2

between the comedians" and Word Collections for representation in licensing negotiations.[4] As explained in detail in Word Collections' Memorandum in support of its Motion to Dismiss (Doc. 104, filed December 19, 2022) and in the Comedians' Joinder in that motion (Doc. 105, filed December 19, 2022), Pandora has not added any relevant substantive factual allegation by way of its Amended Counterclaims to support its monopolization and conspiracy claims. Quite frankly, and as discussed fully below, in its desperation to salvage its counterclaims, Pandora and its counsel purposefully did not heed the Court's admonition to replead Pandora's claims *only* if they could do so in compliance with their obligations under Rule 11.

Specifically, the linchpin of Pandora's Amended Counterclaims (and its original Counterclaims) is the entirely false factual allegation that a proposed license sent in March, 2021 shows that Word Collections and the Comedians conspired to demand a mandatory all or nothing blanket copyright license. The cover email that went along with the proposed license, which Pandora now refers to in its Amended Counterclaims, shows that linchpin to be undeniably false, and Pandora (and Mayer Brown) know it. Indeed, the emails between Word Collections and Pandora show that it was *Pandora* who requested from *Word Collections* a legal memorandum explaining why the Works were entitled to separate copyright protection and thus licensing, Sound Exchange statements detailing usage of the subject works, and a licensing proposal from Word Collections. Price Decl., ¶¶ 3-4, Ex. A. While a review of these other emails between Word Collections and Pandora are not necessary for the Court to award sanctions, since the cover email enclosing the license that is referred to in Pandora's Amended Counterclaims clearly shows Word Collections made no demand of Pandora but simply a proposal, and was happy to negotiate, the Court may consider these other indisputable emails between the litigants if it so chooses. *See*,

---

[4] Order, 24:13-24.

*e.g.*, *Martinez v. City of W. Sacramento*, 2021 WL 2227830, at n.7 (E.D. Cal. June 2, 2021) ("[C]ourts may consider affidavits in Rule 11 motions even at the motion to dismiss stage."); *Triad Assocs, Inc. v. Chicago housing Authority*, 892 F. 2d 583, 596 & n. 10 (7th Cir. 1989) (considering materials outside of the pleadings was not improper for purposes of Rule 11 sanctions, where the sanctions targeted factual allegations in the complaint) (abrogated on other grounds); *Eisenberg v. Univ. of New Mexico*, 936 F.2d 1131, 1133-34 (10th Cir. 1991) ("consideration of papers outside the pleadings is not inappropriate when determining the existence of Rule 11 sanctions).

Word Collections complied with Pandora's request by then obtaining the relevant Sound Exchange statements, engaging counsel, King and Ballow, to write the legal memorandum, and prepared the requested proposal, all of which it sent as requested to Pandora, along with a cover letter explicitly stating it was simply a proposal, and that Word Collections stood ready to discuss an efficient licensing solution with Pandora. Price Decl., ¶¶ 3-4, Ex. A. This correspondence was not presented in any conceivable take-it-or-leave-it fashion.

Pandora maintained the pretense that it was going to engage in license negotiations by telling Word Collections that it would send proposed royalty rates for past unlicensed exploitations as well as a method to calculate royalties for literary works Word Collections would represent in the future that Pandora had exploited without a license, and by requiring Word Collections to sign an NDA with Pandora as a condition to license. Price Decl., ¶¶ 5-8, Exs. B, C and D.  Word Collections sent back the executed NDA to Pandora with no changes. Price Decl., ¶ 8,Ex.D. Finally, Pandora instructed Word Collections to provide a rolling updated list of what literary works it represented,[Price Decl., ¶ 9, Ex. E.[5]  Word Collections complied with this

---

[5] In September 2021, nearly 6 months after Word Collections made its proposal on behalf of the Comedians, Pandora retained the law firm of O'Melveny & Myers,

request. *Id.* **Pandora, however, never made any counterproposal or otherwise substantively responded to the license proposal it had requested from Word Collections.**

What is clear from this correspondence is that Word Collections dictated nothing, but instead followed every single Pandora request, and neither the Comedians nor Word Collections ever demanded any specific type of license from Pandora. What is also clear is that Pandora was pretending to be engaged by claiming that they were considering the proposal and would get back with Word Collections. [Price Decl., ¶¶ 39, Exs. A-E ]. For more than a year, as Word Collections did what Pandora asked, Pandora never raised any antitrust concerns, and never complained about the proposal.

In addition, despite Pandora's fabrication in its Amended Counterclaims, there is also absolutely nothing in the proposal that supports Pandora's contention that any Comedian ever demanded to be paid regardless of whether their individual works were streamed or broadcast, or that any Comedian did anything wrong whatsoever. Finally, and importantly in this regard, it is also worth noting that Pandora never once claimed in this correspondence that it had an implied license to use the Works, or that custom and practice meant that it did not have to obtain a license, defenses it has now raised in these actions. To the contrary, Pandora essentially admits in this correspondence that it is not licensed for the Works, but rather needs a license and even writes that it is working on "how to structure the commercial terms." Price Decl., ¶ 7, Ex. C.

---

who wrote an email to Word Collections' counsel advising that they were representing Pandora and would respond to Word Collections' correspondence, including counsel's letter and legal memorandum which accompanied the license proposal requested by Pandora. Busch Decl., Ex. A. Other than later advise that they believed the clients were working out a potential business solution, which Pandora was in fact not doing, they never did. *Id.*

If there was any doubt that these counterclaims are concocted, that doubt is not only dispelled by Word Collections following every request/requirement Pandora had with no push back and/or negotiation, but also by Pandora's complete inaction until sued for copyright infringement. If Pandora truly believed the Comedians were violating antitrust laws, it would have sued Word Collections and all of the comedians under its umbrella at the time the license proposal was made, or shortly after. It did not.

There are, in this regard, two possibilities: (1) Pandora requested a license proposal from Word Collections in order to use it later to manufacture antitrust claims should any copyright infringement suit be filed seeking more than $0 for Pandora's use of the Works after more than 10 years of willful copyright infringement; or (2) Pandora never intended to actually enter into a license, but stalled until it could come up with a strategy to avoid having to agree to one; that strategy now being to use the antitrust laws to weaponize litigation--albeit frivolous litigation-- to crush the Comedians and Word Collections into submission. Either way, Pandora has filed the Amended Counterclaims to waste the Comedians' resources and to bully them into accepting a $0 license for the use of their compositional copyrights. Pandora's true intent is thus not to vindicate its rights (it would have sued all comedians represented by Word Collections before it was sued for copyright infringement if it truly believed they were engaged in an antitrust conspiracy), but rather to send a warning shot "across the bow" should any other comedian dare to stand up for their rights in a court of law.

What is also clear is that Pandora is playing an inconsistent game of double talk with both the Court and with Word Collections and the Comedians. In its original counterclaims, Pandora asserted that companies like Word Collections make it impossible for Pandora to license the Works from the Comedians individually. Pandora's Original Counterclaims (Doc. 34, filed 05/05/2022) ¶¶ 47, 52, 53, 63, 77, and 82. Now, in the FACC, Pandora asserts that it will not license any of the Works

of any comedian individually, and will remove any works of any comedian who asks for a license for their Works for any more than $0. Amended Counterclaims ¶¶ 44, 75. So there are no "must have" Comedians other than those who donate their Works for free, and Pandora's arguments to the contrary are inherently and internally false just by a review of the differences in Pandora's own allegations.

Next, as noted in Word Collections' Motion for Rule 11 Sanctions, Pandora has cherry picked facts in bad faith. For example, Pandora cites FAQ's from Word Collections' website regarding its affiliation agreements in an effort to emphasize that they are exclusive with the Comedians (*see* Amended Counterclaims, ¶¶ 68, 81), but purposefully neglects to mention that those same FAQ's are clear that all of Word Collections' agreements with the Comedians are terminable on 30 days' notice after the initial four-month term.[6] Word Collections website, FAQs ("What is the term of the Word Collections contract? The initial term is four months. After four months, you are free to terminate your contract with Word Collections upon 30 days' notice." Request for Judicial Notice (Doc. 105-1, filed December 19, 2022, Ex. A (from wordcollections.com/faqs). As noted in the Comedians' Joinder in Word Collections' Motion to Dismiss, these easily terminable agreements cannot be the basis of an antitrust claim. *See Sanofi-Aventis U.S., LLC v. Mylan, Inc. and Mylan Specialty, LP*, 44 F.4th 959, 988 (10th Cir. 2022) ("It is axiomatic that short, easily terminable exclusive agreements are of little antitrust concern; a competitor can simply wait for the contracts to expire or make alluring offers to initiate termination."); *Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2nd Cir. 1984) ("[T]he opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available.").

---

[6] Each of the Comedians are beyond the FAQ's referenced initial 4-month term and thus each Comedian may freely terminate their agreement with Word Collections upon 30-days' written notice. Price Decl., ¶ 10.

Finally, Pandora's Amended Counterclaims for conspiracy to violate the antitrust laws also are legally baseless because Pandora continues to fail to allege facts demonstrating "who, did what, to whom (or with whom)," or the "where and when" required to support its claims that the Comedians somehow conspired and agreed amongst themselves to engage in price fixing. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n. 6 (9th Cir. 2015) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)). That Pandora made these bald allegations of a conspiracy nonetheless in the Amended Counterclaims, without factual support, is even more inexcusable, egregious, and sanctionable in light of this Court's holding that Pandora needed to allege facts showing that the Comedians conspired among themselves. Order, at 24:13-24.[7]

Nonetheless, and with that knowledge of those communications, and the fact that no demand for price fixing was ever made, Pandora continues to make the conclusory bad faith allegation that the Comedians' individual affiliation agreements with Word Collections somehow shows that the Comedians reached price fixing agreements with and between each other. *See*, *e.g.*, Amended Counterclaims, ¶ 69,

---

[7] The emails between Mr. Price and Pandora, which Pandora and its counsel have, show conclusively that such a conspiracy never happened. Indeed, Pandora and its counsel knew when they filed Pandora's Amended Counterclaims that five of the seven Comedians had not signed with Word Collections until **after** Word Collections first provided Pandora with the requested draft license proposal. Word Collections represented only the George Carlin Estate at the time Word Collections first contacted Pandora to investigate whether Pandora had acquired a license to use George Carlin's literary works. Thus, Pandora and its counsel knew that Word Collections set the wheels in motion to establish a framework for literary work licensing **before** Engvall, Williams, Clay, White, and Di Paolo had signed with Word Collections, and a year before White and Di Paolo had signed with Word Collections. Amended Counterclaims ¶¶ 17, 46, 50. In view of the irrefutable chronology of events known to Pandora and by Mayer Brown, Pandora and its counsel had no good faith basis to allege (or infer) the existence of an antitrust conspiracy either between the Comedians or between the Comedians and Word Collections.

8

28:1-4 (because the Comedians "read and heard [Word Collections'] marketing materials and public statements prior to becoming members," the Comedians entered into affiliation agreements with Word Collections "pursuant to an agreement with their fellow comedians …."); Amended Counterclaims ¶ 73, 29:15-16 ("The Comedians' parallel actions in enforcing the goals of the Collective as against Pandora also demonstrate joint conduct."). There is literally nothing that Pandora has alleged that ties any of these Comedians in these actions to any price fixing conspiracy, or to any *demand* of Pandora of any kind. [8]

As a result of Pandora's improper pursuit of its antitrust counterclaims in its FACC, and in violation of Rule 11 and 28 U.S.C. § 1927, filed for the express purpose of harassing the Comedians and their families, the Comedians join in Word Collections' Sanctions Motion against Pandora and Mayer Brown not only to punish these parties from engaging in this conduct, but to ensure that these parties and others do not engage in similar conduct in the future.

## **CONCLUSION**

For the reasons stated above, and in the Motion and Memorandum of Points and Authorities of Word Collections, the Court should grant the Sanctions Motion

---

[8] As noted in the Comedians' joinder to Word Collections' Motion to dismiss, Pandora asserts that "Eddie Brill," a non-party to this action, purportedly "provided numerous public interviews on social media and in comedy podcasts that expressed the intent of the Collective to coordinate the actions" via Word Collections. Amended Counterclaims, ¶ 63, 24:16-19. Not only is this parallel conduct that the Court has already admonished Pandora and its counsel is wholly insufficient to raise a conspiracy claim, but Pandora does not allege that Mr. Brill had any such communications with any of these Plaintiffs. *Id*. *See, Flextronics Int'l USA, Inc. v. Murata Manufacturing Co., Ltd.*, 2020 WL 5106851, at *3, *15, n.6 (N.D. Cal. Aug. 31, 2020) (dismissing Section 1 claim where allegations that some defendants engaged in antitrust violations did not allege that other defendants did). Furthermore, as discussed herein, Word Collections never once made any demand of Pandora whatsoever, and stated explicitly that it stood ready to negotiate.

and issue monetary sanctions against Pandora and its counsel, Mayer Brown, for the time spent by Comedians' counsel in having to address Pandora's baseless Amended Counterclaims, including this Joinder.

DATED: January 30, 2023

Respectfully submitted,
KING & BALLOW

 /s/ Richard S. Busch
Richard S. Busch
Attorneys for Plaintiffs/
Counterclaim Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs and Counterclaim Defendants Comedians, certifies that this brief contains 3810 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 30, 2023

Respectfully submitted,
KING & BALLOW

 /s/ Richard S. Busch
Richard S. Busch
Attorneys for Plaintiffs/
Counterclaim Defendants