MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
JACOB B. EBIN (*pro hac vice*)
*jebin@mayerbrown.com*
ALLISON AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
MEERIM A. NEHME (SBN 322234)
*mnehme@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, California  90071
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

[*Additional counsel listed on signature page*]

Attorneys for Defendant
Pandora Media, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR |
| This Document Relates To: | <u>CONSOLIDATED ACTION</u> |
| ALL ACTIONS | **DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS** Filed Concurrently with Supporting Declarations |
| | Date: March 6, 2023 Time: 9:00 a.m. Crtrm.: 7C Assigned to Hon. Mark C. Scarsi |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

STATEMENT OF FACTS ........................................................................ 2

APPLICABLE LEGAL STANDARDS ...................................................... 3

ARGUMENT ............................................................................................ 5

A.   Pandora's allegations are not baseless and do not misrepresent any
     fact. ............................................................................................. 6

   1.   SG demanded that Pandora take its all-or-nothing blanket
        license........................................................................................ 6

   2.   Pandora accurately describes SG as a de facto exclusive licensor
        of the works in its portfolio...................................................... 9

B.   Pandora's amended counterclaims are not legally frivolous and do not
     lack evidentiary support. ........................................................... 10

   1.   Pandora's monopolization claims are well supported. ...................... 10

   2.   Pandora's price-fixing claims are well supported.............................. 13

   3.   Pandora's unreasonable-restraint-of-trade allegations are well
        supported. ................................................................................ 16

C.   SG and its counsel should be sanctioned for its frivolous and harassing
     motion....................................................................................... 17

CONCLUSION AND REQUEST FOR RELIEF ..................................... 19

i

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ................................................................. 9, 10

*Agron, Inc. v. Lin,*
2004 WL 555377 (C.D. Cal. Mar. 16, 2004) .................................... 4, 17

*In re Cal. Bail Bond Antitrust Litig.,*
511 F.Supp.3d 1031 (N.D. Cal. 2021) ................................................ 4

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2002) ................................................................. 4

*EM Gen., LLC v. Ecommerce, LLC,*
2021 WL 4497888 (C.D. Cal. Jul. 28, 2021) .................................... 4

*Frost v. LG Elecs. Inc.,*
2017 WL 2775041 (N.D. Cal. Jun. 27, 2017) ............................. 4, 10, 14

*Harvey v. Cable News Network, Inc.,*
48 F.4th 257 (4th Cir. 2022) ................................................................. 5

*Intelligent SCM, LLC v. Qannu PTY Ltd.,*
2015 WL 13916820 (C.D. Cal. July 2, 2015) .................................... 3

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008) ............................................................. 14

*Lee v. Pow Ent., Inc.,*
2021 WL 5768462 (9th Cir. Dec. 6, 2021) .................................... 3, 19

*Liu v. Marriott Vacation Worldwide,*
2019 WL 8690216 (C.D. Cal. Jan. 30, 2019)................................... 18

*Love v. Kwitny,*
772 F. Supp. 1367 (S.D.N.Y. 1991) ................................................ 15

*Meredith Corp. v. SESAC LLC,*
1 F. Supp. 3d 180 (S.D.N.Y. 2014) ................................................ 12

ii

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS

*Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*,
   117 F.3d 1128 (9th Cir. 1997) ................................................................. 11

*Nguyen v. Simpson Strong-Tie Co.*,
   2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) ........................................... 8

*Operating Eng'rs Pension Tr. v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ................................................................. 3

*Parhat v. Gates*,
   532 F.3d 834 (D.C. Cir. 2008) ............................................................... 13

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
   32 F.4th 824 (9th Cir. 2022) .................................................................. 14

*Power Analytics Corp. v. Operation Tech., Inc.*,
   2017 WL 2903257 (C.D. Cal. June 7, 2017) ................................... 4, 8, 14

*Redondo Beach Waterfront, LLC v. City of Redondo Beach*,
   2018 WL 5263174 (C.D. Cal. Jan. 31, 2018) ...................................... 4, 17

*Shams v. CVS Health Corp.*,
   2019 WL 1959576 (C.D. Cal. May 2, 2019) ............................................ 15

*Sharaf v. Starbuzz Tobacco Inc.*,
   2016 WL 11757382 (C.D. Cal. Feb. 1, 2016) ........................................... 5

*Stockroom Inc. v. Bronstein*,
   2008 WL 11339650 (C.D. Cal. Dec. 8, 2008) .............................. 2, 5, 17, 18

*United States v. BMI (In re Application of Music Choice)*,
   426 F.3d 91 (2d Cir. 2005) ..................................................................... 12

*United States v. Visa U.S.A., Inc.*,
   344 F.3d 229 (2d Cir. 2003) ................................................................... 12

*United Nat. Ins. Co. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) .................................................................. 4

*Walker v. Blackground Records, LLC*,
   2017 WL 8186040 (C.D. Cal. Aug. 7, 2017) ........................................... 19

**Other Authority**

Fed. R. Civ. P. 11 .................................................................................*passim*

# INTRODUCTION

Spoken Giants' ("SG") motion for sanctions under Rule 11 ("Mot.") correctly states that sanctions should not be sought "lightly." Mot. 1. But that appears to be the *only* correct statement in SG's motion. In fact, for a document that alleges serious misconduct, SG's motion is strikingly slipshod, conclusory, confused, and—we say without irony—*itself* misleadingly wrong.

SG makes arguments of three sorts in support of its motion: that Pandora's First Amended Counterclaims against SG ("FACCs") are (1) factually inaccurate, (2) legally meritless, and (3) substantially identical to the original complaint filed against Word Collections ("WC") that the Court dismissed without prejudice in its October 26, 2022 Order (the "Order"). Each of these allegations is self-evidently frivolous.

***First***, the FACCs' factual allegations are accurate, both literally and in their substance. The point is not debatable; the allegations rest in substantial part on SG's *own* repeated statements—statements that SG ignores in its motion.

***Second***, far from being meritless, Pandora's legal claims should *prevail*; the FACCs carefully lay out the factual basis for liability and, as explained in Pandora's opposition to SG's motion to dismiss the FACCs, satisfy the requirements for liability articulated in controlling decisions of the Supreme Court and Ninth Circuit.

***Third***, SG's repeated assertion that the FACCs add nothing to Pandora's prior complaints is befuddling. The FACCs against both SG and WC add many dozens of paragraphs of detailed factual support to fill the gaps identified by the Court in the Order, (1) demonstrating that SG's stable of superstar (and other) Comedians gives it market power and (2) offering a strong basis to infer the existence of a horizontal conspiracy. Whether or not these new allegations suffice to defeat SG's renewed motion to dismiss—and, we submit, they plainly should—the FACCs' allegations are the furthest thing from insubstantial.

Against this background, the Court should find that *SG's own motion*—and not the FACCs—is abusive. SG has accused Pandora and its counsel of serious and intentional misconduct, assertions that will cause them significant expense and reputational harm even if the motion is denied as it should be.[1] But SG's motion is, fundamentally, not a serious document. Its vexatious allegations that the FACCs make knowing misstatements and offer unsupported legal claims do not stand up to even cursory scrutiny. This is precisely the sort of "groundless motion for sanctions [that] is *itself* subject to sanctions under Rule 11." *Stockroom Inc. v. Bronstein*, 2008 WL 11339650, at *2 (C.D. Cal. Dec. 8, 2008) (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) (emphasis added). Accordingly, the Court should deny SG's motion and award Pandora the fees incurred in opposing SG's frivolous sanctions request.

## STATEMENT OF FACTS

The Court is familiar with the background of this litigation, which is described in the Order and in Pandora's Opposition to SG's Motion to Dismiss the FACCs ("Opp."). Briefly, after comedians affiliated with SG or WC ("Comedians") sued Pandora for copyright infringement, Pandora separately filed antitrust counterclaims against SG, WC, and the Comedians.[2] After the Court dismissed the initial counterclaims against WC without prejudice and with leave to amend,[3] Pandora separately filed FACCs against SG and WC. SG and WC both have moved to dismiss the FACCs, and Pandora has filed its oppositions to those motions.

---

[1] SG's Rule 11 motion seeking sanctions against Pandora and Mayer Brown already has attracted press attention that recounts in some detail, without rebuttal, the substance of SG's allegations of misconduct. *See* Dave Simpson, *Mayer Brown, Pandora Face Sanctions Bid In Comedians' Suit*, Law360 (Jan 26, 2023), https://www.law360.com/articles/1569968/mayer-brown-pandora-face-sanctions-bid-in-comedians-suit.

[2] Except where otherwise noted, references to "SG" below include SG and Lewis Black, and references to "WC" below include WC and its affiliated Comedians.

[3] The Court granted Pandora leave to amend despite WC's argument that amendment would be futile. Dkt. 83 at 27; Dkt. 49 at 15, 25; Dkt. 60 at 1.

The Court dismissed the counterclaims against WC before SG had filed its motion to dismiss the original counterclaims against it. After Pandora filed the FACCs against both SG and WC, SG served its motion under Rule 11(c)(2) on Pandora on Friday, December 30, 2022, during the window in which Pandora had to respond to SG's motion to dismiss the FACCs. At the meet-and-confer between counsel regarding the instant motion for sanctions, Pandora described the sound factual and legal bases underlying the FACCs and provided a point-by-point rebuttal to each of the assertions that SG made with regard to its Rule 11 claims, including reference to SG's own statements showing that its business model is premised on blanket licensing. Stallings Decl. ¶ 15. Pandora also told SG that it would seek to recover its costs in defending against any frivolous sanctions motion. *Id.* ¶ 16.

Nevertheless, SG filed its Rule 11 motion on January 25, 2023, accusing Pandora and its counsel of "misrepresenting the record," "making frivolous legal arguments," and "harassing" SG. Mot. 4. SG makes the same substantive arguments in its motion for sanctions that it does in its still-pending motion to dismiss the FACCs. *Compare* Mot. *with* Dkt. 102. SG filed its Rule 11 motion the same day that Pandora's opposition to SG's motion to dismiss the FACCs was due—submitting the Rule 11 motion before Pandora filed its brief setting out its legal defense of the FACCs. *See* Dkt. 128.

## APPLICABLE LEGAL STANDARDS

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988); *see also Lee v. Pow Ent., Inc.*, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021). Its sanctions "are reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee*, 2021 WL 5768462, at *2 (brackets and quotations omitted); *see Intelligent SCM, LLC v. Qannu PTY Ltd.*, 2015 WL 13916820, at *22 (C.D. Cal. July 2, 2015) (quotations omitted).

"[A] non-frivolous complaint cannot be said to be filed for an improper purpose." *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 2903257, at *6 (C.D. Cal. June 7, 2017). And a complaint is sanctionably frivolous only if (1) the document as a whole is "legally or factually baseless from an objective perspective" and (2) the attorney did not "conduct[] a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *see also Redondo Beach Waterfront, LLC v. City of Redondo Beach*, 2018 WL 5263174, at *5 (C.D. Cal. Jan. 31, 2018) ("Rule 11 does not apply to the mere making of a frivolous argument.") (quotation omitted).

Rule 11 "recognize[s] that our system of litigation is an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task." *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001). As a result, "the Ninth Circuit has unequivocally stated that 'a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading.'" *Agron, Inc. v. Lin*, 2004 WL 555377, at *12 (C.D. Cal. Mar. 16, 2004) (quoting *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (per curiam)); *Frost v. LG Elecs. Inc.*, 2017 WL 2775041, at *3 (N.D. Cal. Jun. 27, 2017) (Rule 11 inapplicable "as long as the complaint is supported by some factual basis from an objective perspective"). Similarly, claims are "legally baseless" only if it is "patently clear that [they have] absolutely no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law." *Redondo Beach*, 2018 WL 5263174, at *5 (quotation omitted).

Imposing sanctions on a pleading is especially rare when the Court expressly granted leave to amend. *E.g.*, *EM Gen., LLC v. Ecommerce, LLC*, 2021 WL 4497888, at *5 (C.D. Cal. Jul. 28, 2021); *In re Cal. Bail Bond Antitrust Litig.*, 511 F.Supp.3d 1031, 1054 (N.D. Cal. 2021). As Pandora's Opp. shows, the Court-authorized

FACCs state claims against SG under both Sections 1 and 2 of the Sherman Act. But even if the Court were to disagree, when a district court grants leave to amend and later finds the amendment still fails to state a claim, "the typical outcome is dismissal . . . , not an award of sanctions against the litigant and his counsel for making an attempt." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 280 (4th Cir. 2022) (holding that the "single amended complaint" there did not "demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent . . . [of] bad faith that warranted sanctions").

As noted above, given the seriousness of Rule 11 allegations and the substantial time spent resolving them, "a groundless motion for sanctions is itself subject to sanctions under Rule 11." *Stockroom*, 2008 WL 11339650, at *2; *see also* Fed. R. Civ. P. 11(c)(2) (providing that when a party moves for Rule 11 sanctions, the court may award the prevailing party its reasonable expenses, including attorneys' fees).

## ARGUMENT

SG's Rule 11 motion is an abusive and disturbing document. Whether or not Pandora ultimately prevails with its counterclaims, the FACCs are—at a minimum— carefully documented as a matter of fact and firmly grounded in the law. SG's disagreement with Pandora should be fought out on the merits, not in the context of expensive, distracting, and reputation-impairing sanctions litigation.[4] SG's motion is itself frivolous and should be denied; moreover, SG and its counsel should be sanctioned for burdening Pandora and the Court with such an insubstantial filing.

---

[4] SG's Rule 11 motion largely repackages the legal arguments from its motion to dismiss the FACCs. That in itself is a reason to discount the sanctions motion: Repeating the same contested legal arguments verbatim, with a Rule 11 gloss, wastes time and money for this Court and the parties. *See, e.g.*, *Sharaf v. Starbuzz Tobacco Inc.*, 2016 WL 11757382, at *3 (C.D. Cal. Feb. 1, 2016) (denying Rule 11 motion that "so closely copies" the movant's dispositive motion that it evidences the movant "has few arguments that the complaint was 'baseless' beyond the arguments [already] made on its motion for summary judgment").

**A.    Pandora's allegations are not baseless and do not misrepresent any fact.**

SG begins by asserting that the FACCs make two statements "that are factually baseless or based in affirmative misrepresentations of fact." Mot. 5. It labels "objectively false and misleading" the FACCs' allegation that SG presented Pandora with an "all-or-nothing blanket license." *Id.* at 5, 9. And it maintains that Pandora's description of SG as a "de facto exclusive licensor" of its comedians' rights "has no basis in fact." *Id.* at 9, 11. Both of these assertions are themselves patently false.

*1.    SG demanded that Pandora take its all-or-nothing blanket license.*

On the first of these contentions, Pandora was correct to describe SG as demanding that Pandora take an "all-or-nothing" blanket license covering the entire SG portfolio—for several reasons.

*First*, SG does not dispute that the license it sent Pandora *was in fact* an all-or-nothing blanket license (notably, SG's motion does not quote SG's proposed term sheet, which says exactly that). Nor could it. SG's grant of rights explicitly states that it covers "any or all Works in [SG's] Catalog during the term." Mot. Ex. B at 2. "Catalog" is defined as all "Works for which Licensor has the authority to license to Licensee," including works "for which [SG] acquires the right to license after the effective date of the license agreement." *Id.* The proposed license thus covered SG's entire "growing catalog of works" (FACCs ¶ 60)—it was an "all-or-nothing blanket license." Indeed, this Court found that Pandora's initial complaint against WC "plausibly alleges that Word Collections requires a blanket license" (Order 17)—and SG's proposed license is, in relevant part, materially identical to WC's. That, alone, is enough to dispose of SG's argument.

*Second*, SG's own repeated statements declare its business model to involve pooling the otherwise competing rights of its Comedians into a single catalog that it then licenses on an all-or-nothing basis. Some of the more pungent examples include:

- The press release announcing SG's public launch states that it is the "de facto collective for spoken word's future" through "collective

representation." FACCs ¶¶ 3, 53, Ex. A.; Aviki Decl. Ex. B.

- The SG website lays out its collective licensing plan, explaining that when a comedian signs with SG, it "collect[s] their works into [the SG] catalog," which it then licenses "in full" to services like Pandora. FACCs ¶ 54; Aviki Decl. Exs. L & M.

- The SG website states that SG's "overall repertoire containing all [of its] members['] registered works is licensed directly to performance outlets." FACCs ¶ 54; Aviki Decl. Ex. M.

- Public statements by SG make clear that its plan is "to do the same for comedy writers" as ASCAP and BMI have done for songwriters and music publishers—negotiate blanket licenses "on behalf of a large group of comedians." FACCs ¶ 55; Aviki Decl. Exs. I & J.

- Jim King—SG's co-founder and CEO—publicly stated that SG has been working "to negotiate a blanket license for [its member comedians'] comedy composition rights" with another streaming service. FACCs ¶ 57; Aviki Decl. Ex. F.

- Along with its proposed blanket license, SG sent Pandora its "Company Overview" slide deck, which, among other things: (i) referred to SG as "the first collective rights organization for spoken word copyrighted works" (slide 2); (ii) stated that "Spoken Giants operates similarly" to music licensing collectives such as BMI and ASCAP (slide 3); (iii) noted that "Negotiations for Blanket Licenses [are] Underway" with digital streaming services (slide 10); and (iv) explained that SG "utilizes the foundation precedents from the music industry," incorporating the works of its comedians "in Spoken Giants['] Repertoire" and then "Licens[ing] [that] Repertoire to Performance Channels (e.g. Sirius)." Morris Decl. ¶ 5 & Exs. C & E.

7

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS

Consequently, when SG approached Pandora about taking its license, Pandora rightly understood that the only option available to it was, indeed, an all-or-nothing blanket license. Morris Decl. ¶¶ 3-5.

***Third***, SG fails even to acknowledge, let alone attempt to explain away, the blanket language of its proposed license and its repeated self-characterization as a "collective," "blanket" licensor. Instead, its argument that it did not propose an "all-or-nothing blanket license" rests entirely on a cover email accompanying its term sheet that mentioned a willingness to "discuss any details," and a statement in the term sheet indicating that a contract "will be negotiated in full between the parties." Mot. 6. But that assertion rests on a non sequitur. Even assuming that SG was open to some degree of negotiation on unspecified points, that does not detract from the fact that SG *did* demand a blanket license; and those documents did not suggest that SG was prepared to abandon its blanket license model, which neither it nor any of its Comedians ever proposed. To the contrary, SG's own statements make clear that the only option was, and ever will be, a blanket license. *See* FACCs ¶¶ 4, 41, 42, 47-61, 67-73, 77. Accordingly, an "objectively reasonable person" (Mot. 6) would understand SG to have demanded a blanket license—because that is exactly what it proposed.

This case therefore looks nothing like *Nguyen v. Simpson Strong-Tie Co.*, 2020 WL 5232564 (N.D. Cal. Sept. 2, 2020), which SG describes as "particularly instructive." Mot. 7-8. There, sanctions were imposed on counsel who represented a document as saying something "diametrically opposed" to the document's actual content. *Nguyen*, 2020 WL 5232564 at *4. Here, Pandora accurately recounted the contents of SG's proposed license and oft-repeated business model. At a minimum, Pandora's allegation is based on significantly more than the "some credible evidence" necessary to defeat a sanctions motion. *Power Analytics*, 2017 WL 2903257, at *5. SG's contrary contention is frivolous.

### 2. Pandora accurately describes SG as a de facto exclusive licensor of the works in its portfolio.

SG is equally wrong in criticizing Pandora's description of SG as the "de facto exclusive licensor" of the rights controlled by its Comedians. Mot. 9-11.[5] Although SG expresses puzzlement as to why the Comedian affiliation agreements are characterized "as 'de facto' anything" (*id.* at 9), the FACCs are expressly clear on that point: the affiliation agreements, although purporting to preserve the Comedians' ability to issue individual, direct non-exclusive licenses outside of the cartel, in fact eliminate any real-world incentive for either Pandora or a Comedian to enter into such a direct license so long as the Comedian remains a member of the cartel. FACCs ¶¶ 67-71; *see Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1182 (9th Cir. 2016) (to determine whether a contract is "de facto exclusive," courts "look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement in the real world") (internal quotations omitted).

As the FACCs explain in detail, a Comedian would be acting against his or her own economic self-interest by breaking with the collective and seeking an individual license; and if a Comedian did take such an unlikely step, it would be economically irrational for Pandora (or any other service) to agree to accept such a duplicative license. FACCs ¶¶ 69, 70, 111. Consequently, although SG's Comedians purportedly retain the theoretical ability to enter into individual licenses with Pandora—as the FACCs expressly and forthrightly observe (*id.*, ¶ 111)—that will not happen in practice, making the affiliation agreements, in fact, de facto exclusive. SG makes no response to this point, and does not attempt to explain why either a member of the collective or a service like Pandora ever actually would enter into an individual

---

[5] SG also chides Pandora for not attaching certain documents to the FACCs. *E.g.*, Mot. 9. But SG cites no rule or caselaw suggesting that there is an obligation to do so. To the contrary, pleadings often do not attach all documents that they reference. As for SG's statement (Mot. 9) that the affiliation agreement is publicly available, Pandora acknowledged as much in the FACCs. FACCs ¶ 73 ("Spoken Giants makes a copy of its affiliation agreement available on its website.").

license. And the "real world" evidence (*Aerotec*, 836 F.3d at 1182) is clear, as at no time did any individual Comedian-member of SG attempt to enter into such a license with Pandora, and at no time did SG offer Pandora a license for an individual Comedian's rights (FACCs ¶ 41). Indeed, in an email to Pandora, SG attached its affiliation agreement—and described that agreement as "showing our ***exclusive*** right to license the works" in SG's catalog. Morris Decl. Ex. F (emphasis added). It therefore is SG, not Pandora, that is wrong when it contends that Pandora has "a realistic opportunity to acquire individual rights" (Mot. 10)—an opportunity that, again, this Court already has held Pandora to have adequately pleaded as being "illusory" as to WC. Order 17.

But even if Pandora were wrong about this and there were some reason (never articulated by SG) to expect direct licensing by Comedian-members of the SG cartel to take place, that would not come close to establishing a violation of Rule 11. So long as an allegation "is supported by some factual basis," a motion for sanctions must be denied. *Frost*, 2017 WL 2775041, at *2-3. There is such a plausible factual basis for the "de facto" characterization here.

**B.   Pandora's amended counterclaims are not legally frivolous and do not lack evidentiary support.**

SG's other basis for invoking Rule 11 is its contention that the claims advanced in the FACCs are legally frivolous and factually unsupported. Mot. 11-18. This contention is completely lacking in substance, making no serious attempt to address either the law invoked by Pandora or the supporting factual allegations advanced in the FACCs.

### 1.   Pandora's monopolization claims are well supported.

Pandora's Opposition to SG's Motion to Dismiss details why SG has monopoly (or, at a minimum, market) power, addressing the reality of the market and explaining that because SG has amassed a catalog that includes many "superstar"

(and other) comedians, its catalog is a "must have" for Pandora. Opp. 6-12; *see also* FACCs ¶¶ 23, 88, 97-112. SG itself has reinforced this point, repeatedly acknowledging that its plan is to engage in "collective representation" to "strengthen the marketplace in favor of the [Comedian] creator" (*id.*, ¶¶ 35, 53)—a plan it can accomplish only with market power. It has also boasted that its portfolio includes "*comedy's most iconic estates, marquee names, and emerging talent*," affording it "*collective bargaining power.*" *Id.*, ¶¶ 3, 37, 104, Ex. A (emphases added). And it has touted that it "represents a *significant percentage* of the comedy market." *Id.*, ¶ 36 (emphasis added). These statements—which the Court has not yet evaluated and which SG entirely ignores—provide a sufficient foundation for Pandora's monopolization claims. *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997) (requiring that a complaint "completely lack a factual foundation" before a party may be sanctioned). And, of course, Pandora alleges far more than just these statements.

SG's arguments that Pandora's Section 2 claims are frivolous are wrong. ***First***, SG contends (Mot. 12) that it must lack market power because it represents only a relatively small percentage of the total number of comedians Pandora offers. This assertion is directly at odds with SG's own statement that it "represents a significant percentage of the comedy market," which (rightly) belies the proposition that the relevant metric is the raw number of comedians represented. In fact, as explained in the FACCs, the absolute number of comedians in Pandora's library is beside the point. FACCs ¶¶ 107-10; Opp. 7-9, 11-12. What is crucial is the ability to provide listeners with the recordings of a sufficient number of the "superstar" comedians that they actually want to hear. FACCs ¶ 88, 108. SG simply ignores these factual allegations.[6]

---

[6] Notably, the other cartel leader, WC, recognizes that Pandora has alleged facts to show that SG's comedian affiliates are "among the most popular, and therefore *possibly* 'must haves [for Pandora],'" "asserting that Spoken Giants is affiliated with '[a]ll five of the top five most played comedians on Pandora in 2021' and '[t]welve

11

*Second*, SG contends that "Pandora undermines its claim that any comedian … is a 'must have' by pleading that it would have refused to engage in individual negotiations with any comedian, and instead would drop that comedian from its service." Mot. 12-13. But Pandora never claimed that any individual comedian is "must have." To the contrary, it argues that *no* individual comedian is must-have; the source of SG's monopoly power is its *aggregation* of the rights to many individual "superstar" (and other) comedians, making SG's *portfolio* a must-have. *E.g.*, FACCs ¶¶ 107-10. Nor did Pandora ever state that it would refuse to engage in individual negotiations with any comedian. It actually said that it would likely drop a comedian from its service if that comedian demanded a *supra-competitive* royalty on top of what they were already receiving. *Id.*, ¶¶ 33, 63; *see also* Black MTD Joinder Opp. at 11-12, 14.

*Finally*, SG is wrong to assert that the FACCs "fail[] to account for Word Collections" and that Pandora's claims against SG and WC are "mutually exclusive." Mot. 13. In fact, Pandora needs access to the catalogs of *both* SG and WC to offer a viable comedy service; their catalogs are not substitutes. FACCs ¶ 112. Moreover, SG surely knows that both it and WC can have monopoly power over Pandora. SG has regularly compared itself to ASCAP and BMI, both of which have long been acknowledged to have substantial market power and, from the perspective of music users, are complements rather than substitutes. *See, e.g.*, *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 188-89, 218-19 (S.D.N.Y. 2014); *United States v. BMI (In re Application of Music Choice)*, 426 F.3d 91, 96 (2d Cir. 2005); *see also United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 239-240 (2d Cir. 2003) (phenomenon of multiple firms with market power in a single industry is not unique to the music industry). Indeed, SG's own outside counsel, Christopher Harrison, made precisely this point regarding BMI and ASCAP in briefing to the Second Circuit. *See* Aviki

---

of the top twenty-five, or 48%, of the most played comedians on Pandora in 2021.'" WC Motion to Dismiss FACCs at 18 (quoting SG FACCs ¶ 103).

Decl. Ex. O (Brief for Respondent-Appellee DMX Inc. at 35, *Broadcast Music, Inc. v. DMX Inc.*, No. 10-3429-cv (2d Cir. Apr. 6, 2011), ECF No. 108 ("BMI's blanket licensing practices are 'inherently anti-competitive,' reflecting BMI's exercise, as a monopolist, of 'disproportionate power over the market for music rights.'")); Aviki Decl. Ex. P (Brief for Applicant-Appellee DMX Inc. at 32, *In Re: Application of THP Capstar Acquisition Corp.*, No. 11-127-cv (2d Cir. Apr. 29, 2011), ECF No. 106 ("ASCAP's blanket licensing practices are 'inherently anti-competitive,' reflecting ASCAP's exercise of 'disproportionate power over the market for music rights.'")).[7]

### 2.    *Pandora's price-fixing claims are well supported.*

SG's challenge to the FACCs' price-fixing allegations is equally defective. The arguments here give every appearance that SG's counsel has read neither the FACCs nor Pandora's opposition to SG's motion to dismiss the FACCs.

***First***, SG's principal and repeated contention here is that the FACCs replead the price-fixing allegations from the original complaint against WC "with no legally meaningful changes." Mot. 13; *see id.* at 14 ("in the SG ACC, Pandora pleads nothing beyond similar vertical, lawful agreements"); *id.* ("the same type of conclusory allegations"). But "the fact that [SG] has 'said it thrice' does not make [the] allegation true." *Parhat v. Gates*, 532 F.3d 834, 848 (D.C. Cir. 2008). In fact, this assertion is plainly false, as even a cursory review of the redline attached to the FACCs demonstrates; the FACCs directly address what the Court regarded as omissions in the original WC complaint.

The newly added material, among other things, includes factual allegations: (i) identifying and describing "plus factors"; (ii) regarding the realities of the market; (iii) regarding the historic licensing of comedy rights and the change to historic

---

[7] WC's outside counsel, Christine Varney, made the same point while serving in the Antitrust Division at the U.S. Department of Justice, similarly concluding that ASCAP and BMI both have monopoly power in the same market. Aviki Decl. Ex. Q (Brief for the United States as Amicus Curiae at 10-11, *Broadcast Music, Inc. v. DMX Inc.*, No. 10-3429-cv (2d Cir. Apr. 14, 2011), ECF No. 120).

practice that the horizontal price-fixing conspiracy aims to bring about; (iv) regarding the risks to any individual comedian of demanding a supra-competitive royalty; (v) regarding the "who, did what, to whom (or with whom), where, and when" of the conspiracy; (vi) regarding the forced removal of comedy content from Pandora as a result of SG's actions; and (vii) additional public statements from SG reinforcing its anticompetitive scheme. *See* FACCs ¶¶ 23, 26, 35-40, 42, 50-59, 62-73, 88, 101-10, 127-34; Stalling Decl. ¶ 10. In all, these new allegations offer substantial additional information concerning the circumstances of the conspiracy's creation and operation, the reasons to believe that the Comedians knowingly participated in a collective scheme, and the circumstantial evidence of agreement. *See* Opp. 13-19.

**Second**, SG contents itself with its conclusory mischaracterization of the FACCs and makes no attempt to show that the conspiracy allegations *actually* are baseless. In fact, they are not, for the reasons shown at Opp. 12-19. Pandora has demonstrated "who, did what, to whom (or with whom), where, and when" (*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)); "[a]cceptance by competitors … of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce" (*PLS.Com, LLC v. Nat'l Ass'n of Realtors,* 32 F.4th 824, 843 (9th Cir. 2022) (citation omitted)); and plus factors providing circumstantial evidence of agreement. Pandora's conspiracy claims are neither factually nor legally baseless. *See, e.g.*, *Power Analytics*, 2017 WL 2903257, at *6 (denying sanctions for amended antitrust claim where there was some credible basis to support the claim); *Frost*, 2017 WL 2775041, at *3 ("Even assuming that the factual basis is weak and might fail to withstand a motion to dismiss, the first prong of the Rule 11 analysis is not met as long as the complaint is supported by some factual basis from an objective perspective.").

**Third**, SG devotes most of its attention regarding the price-fixing claim to its assertion that Pandora "mischaracterized the content of [a] conversation" between two SG-affiliated comedians. Mot. 14-17 (addressing FACCs ¶ 51). We note that the

14

FACCs' description of this conversation is only a very small part of the price-fixing claim, taking up just one of the almost 30 paragraphs that the FACCs address to concerted action—the rest of which SG ignores. And what SG says about this one exchange is wrong. Paragraph 51 of the FACCs identifies six statements that were made during the comedians' conversation, *all* of which the FACCs describe accurately and are contained in the transcript of that recording. Aviki Decl. Ex. R at 18-27, 50-51.[8] SG's real gripe is with the inference of collective action that Pandora draws from a conversation in which the participants, among other things, analogized themselves to striking, unionized workers—who, but for the antitrust exemption for organized labor, would be subject to Section 1. To be sure, the comedians do not speak to each other in the language of legal precedent (as apparently SG demands), but the import of their words is clear as to the value of working together, rather than competing with each other. SG may of course offer its own competing assessment of this conversation, but that hardly demonstrates misrepresentation on Pandora's part. *See, e.g.*, *Shams v. CVS Health Corp.*, 2019 WL 1959576, at *7 (C.D. Cal. May 2, 2019) (denying motion for sanctions where misrepresentations were not unequivocal, such that "reasonable attorneys could disagree on these issues"); *Love v. Kwitny*, 772 F. Supp. 1367, 1377 (S.D.N.Y. 1991) (denying motion for sanctions and granting nonmovant fees where movant "condemned as a Rule 11 violation any suggested view or interpretation of the facts that differs from his own. Which is to say, what he objects to is advocacy by his opponent.").

---

[8] SG incorrectly says that the "relevant portions of the transcript are found at pages 7-11" of the rough (and, in places, inaccurate) transcript it provided. Mot. 16. Several of the statements Pandora points to are outside of that page range. *See, e.g.*, Mot. Ex. E at 6 ("Yeah. All I want is some of the copyright money, which may lead us into. Our first well done topic.") (punctuation as stated in exhibit); *Id.* at 18 ("So they're fortifying each other and that's what needs to be done on a national basis. We need to fortify each other.").

### 3.   *Pandora's unreasonable-restraint-of-trade allegations are well supported.*

Pandora's unreasonable-restraint-of-trade claim (Count II) addresses the vertical affiliation agreements entered into between SG and its Comedians, alleging that they eliminate competition and leave SG with monopoly power. There is no dispute that such agreements exist—SG attached examples of them to its motion. Mot. Ex. C, D. And, as noted above, SG's own statements acknowledge the market power it has created for itself through "collective representation" of its Comedians facilitated by these vertical agreements. For the reasons already discussed, this showing plainly has the necessary legal and factual basis to survive a Rule 11 Motion. *See* pp. 11-13, *supra*.

SG's contrary arguments (Mot. 17-18) are nonsensical. SG first chides Pandora for "assert[ing] allegations only of parallel conduct to support a finding of an agreement or conspiracy." *Id.* 18. But that contention is another non sequitur: The agreement challenged as an unreasonable restraint of trade is not the horizontal agreement between comedians discussed above, but the vertical affiliation agreements between SG and its Comedians—agreements that SG acknowledges exist.

Next, SG claims that "Pandora makes the conclusory and demonstrably false allegation that 'it has been willing to enter into reasonable license fees negotiated in a competitive market for legitimate copyrights covering the content it transmits.'" Mot. 18. But this allegation is neither conclusory nor false. The FACCs make clear that Pandora *has* entered into such agreements with "dozens of [] comedians and comedy record labels" that "have recently come forward and reaffirmed historic custom and practice; they have explicitly agreed that Pandora has always had all of the rights it needs to perform, reproduce and distribute their comedy on its services, and confirmed that no additional royalties beyond those already paid for the recordings are called for." FACCs ¶ 116. SG fares no better in asserting that "if any

comedian had approached Pandora to seek a non-zero price for a license to that comedian's literary works, Pandora would have refused and dropped that comedian from its service." Mot. 18. As already explained, that mischaracterizes the FACCs, which make clear that Pandora would do so only if that comedian demanded a *supra-competitive* royalty on top of what they were already receiving. FACCs ¶¶ 33, 63; *see also* Black MTD Joinder Opp. at 11-12, 14.

*     *     *

At bottom, there is no even remotely plausible basis for SG's Rule 11 motion. SG accuses Pandora of misrepresenting documents that, it is readily apparent, the FACCs accurately describe. SG's challenge to Pandora's legal arguments is directed largely at strawman mischaracterizations of Pandora's real contentions, making no attempt to demonstrate that Pandora's legal position *actually* lacks merit. And SG's repeated assertion that the FACCs are materially identical to Pandora's original counterclaims against WC is simply false.

In this setting, no reasonable lawyer could say that "clear authority or [Pandora's] own clear admission erases the factual underpinning from some essential element of [Pandora's] pleading." *Agron*, 2004 WL 555377, at *12 (citation and internal quotation marks omitted). Nor would an objective observer find it "patently clear that [Pandora's claims have] absolutely no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law." *Redondo Beach*, 2018 WL 5263174, at *5 (quotation omitted). SG's skillful lawyers should have known—and, presumably, did know—that the Rule 11 motion is insupportable. That motion, accordingly, should be denied.

## C.     SG and its counsel should be sanctioned for its frivolous and harassing motion.

But that should not be the end of the matter: SG and its counsel should face sanctions for its baseless Rule 11 motion. As noted, a "groundless motion for sanctions is itself subject to sanctions under Rule 11." *Stockroom*, 2008 WL

17

11339650, at *2. The party on the receiving end of such a motion need not file its own Rule 11 motion (and satisfy the pre-filing formalities for doing so) to seek counter-sanctions. *Id.* (citing *Patelco*, 262 F.3d at 913). As it happens, though, Pandora did inform SG during the parties' Rule 11 meet-and-confer that it would seek to recover its costs in defending against this unwarranted filing, so SG's counsel were well aware of the consequences when they chose to file. Stallings Decl. ¶ 16. Although we truly do not make this request lightly, several considerations point toward sanctioning SG and its counsel.

***First***, for the reasons discussed above, SG's Rule 11 arguments are utterly groundless. By making baseless claims to sanction routine litigation conduct and credible legal arguments, SG's motion appears to be "presented for an[] improper purpose, such as to harass" Pandora and its counsel. Fed. R. Civ. P. 11(b)(1). Moreover, filing a baseless Rule 11 motion in the midst of dispositive-motions briefing injects "unnecessary delay" into the case and "needlessly increase[s] the cost of litigation." *Id.* Parties who choose to engage in such misconduct should not do so cost-free. *See, e.g.*, *Liu v. Marriott Vacation Worldwide*, 2019 WL 8690216, at *3 (C.D. Cal. Jan. 30, 2019) (sanctioning Rule 11 movant for filing a "frivolous" motion "without a legal or factual basis for support" and that "improperly [sought] sanctions . . . for entirely reasonable litigation activity"); *Stockroom*, 2008 WL 11339650, at *3 (ordering sanctions against Rule 11 movant "in an amount sufficient to reimburse [the party] for defending against these frivolous motions and to deter [the movant] from further similar conduct").

***Second***, SG's improper purpose and bad faith are confirmed by the timing and character of its Rule 11 motion. SG filed the motion without even looking at the arguments made in Pandora's opposition to SG's motion to dismiss the FACCs, submitting the motion *before* Pandora filed. *See* Dkts. 128, 129.[9] It therefore is

---

[9] SG similarly took the position prior to seeing the FACCs that any attempt to amend would be futile (Fakler Decl. ¶ 3) notwithstanding that, in granting Pandora leave to

apparent that SG was determined to seek sanctions no matter the strength of Pandora's amended claims. That also comes clear from the nature of SG's arguments, which consist mostly of conclusory Rule 11 boilerplate. Such a motion is inconsistent with the goal of Rule 11, which provides punishment that is to be "reserved for the rare and exceptional case." *Lee*, 2021 WL 5768462, at \*2; *see, e.g.*, *Walker v. Blackground Records, LLC*, 2017 WL 8186040, at \*8 (C.D. Cal. Aug. 7, 2017) (sanctioning party seeking Rule 11 sanctions when it "knew there was no legally tenable basis to pursue their Rule 11 motion").

**Third**, however the Court ultimately rules on Pandora's FACCs, this case will occupy a significant portion of the Court's and the parties' time over the coming year. For the litigation to proceed efficiently and fairly, SG must be discouraged from submitting obstructive filings like its Rule 11 motion. Pandora's ordinary filings and unexceptional claims are not a declaration of "war," as SG hyperbolically states (Mot. 18), and SG has no warrant to respond with wild and destructive accusations. Sanctioning SG and its counsel to pay Pandora's costs in briefing this opposition would provide a much-needed course correction.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Pandora respectfully requests that the Court deny SG's motion. In light of SG's frivolous invocation of Rule 11, Pandora further asks that it be awarded its fees and costs in defending against SG's motion.[10]

---

amend the WC counterclaims, the Court rejected WC's argument that amendment would be futile. Dkt. 83 at 27; Dkt. 49 at 15, 25; Dkt. 60 at 1.

[10] Pursuant to the Court's Standing Order at Section 10(d), Pandora stands ready to submit the necessary documentation to support a fee award should it be granted.

1   Dated:  February 8, 2023

2                                                    MAYER BROWN LLP
                                                     PAUL M. FAKLER
3                                                    JACOB B. EBIN
                                                     ALLISON AVIKI
4                                                    WILLIAM H. STALLINGS
                                                     CHRISTOPHER J. KELLY
5                                                    JOHN NADOLENCO
                                                     DANIEL D. QUEEN
6                                                    MEERIM NEHME

7
                                                     By: */s/ Paul M. Fakler*
8                                                          Paul M. Fakler

9
                                                     MAYER BROWN LLP
10                                                   WILLIAM H. STALLINGS (*pro hac vice*)
                                                     *wstallings@mayerbrown.com*
11                                                   1999 K Street, NW
                                                     Washington, D.C.  20006-1101
12                                                   Telephone: (202) 263-3000
                                                     Facsimile: (202) 262-3300
13
                                                     MAYER BROWN LLP
14                                                   CHRISTOPHER J. KELLY (SBN 276312)
15                                                   *cjkelly@mayerbrown.com*
                                                     Two Palo Alto Square
16                                                   3000 El Camino Real
                                                     Palo Alto, California  94306-2112
17                                                   Telephone: (650) 331-2000
                                                     Facsimile: (650) 331-2060
18
                                                     Attorneys for Defendant
19                                                   PANDORA MEDIA, LLC

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS

# **FILER'S ATTESTATION**

The undersigned, counsel of record for Defendant/Counterclaimant Pandora Media, LLC, certifies that this brief contains 6468 words, which complies with the word limit of L.R. 11-6.1.


Dated:  February 8, 2023


                                        */s/Paul M. Fakler*
                                        Paul M. Fakler

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT SPOKEN GIANTS' RULE 11 MOTION FOR SANCTIONS