MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
pfakler@mayerbrown.com
JACOB B. EBIN (*pro hac vice*)
jebin@mayerbrown.com
ALLISON AVIKI (*pro hac vice*)
aaviki@mayerbrown.com
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
jnadolenco@mayerbrown.com
DANIEL D. QUEEN (SBN 292275)
dqueen@mayerbrown.com
MEERIM A. NEHME (SBN 322234)
mnehme@mayerbrown.com
333 S. Grand Avenue, 47th Floor
Los Angeles, California  90071-1503
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
Pandora Media, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR |
|---|---|
| This Document Relates To: ALL ACTIONS | CONSOLIDATED ACTION **DECLARATION OF IAIN MORRIS IN SUPPORT OF PANDORA MEDIA, LLC'S OPPOSITION TO SPOKEN GIANTS, LLC's MOTION FOR SANCTIONS** Filed Concurrently with Opposition to Motion |

# DECLARATION OF IAIN MORRIS

I, Iain Morris, declare as follows:

1. I am currently employed by Pandora Media, LLC ("Pandora") as Vice President Music Licensing, Head of Publishing and Creative Licensing. My work is focused on the licensing of music publishing rights. I have very little direct involvement with Pandora's comedy business.

2. I have personal knowledge of the facts set forth below. If called upon to testify, I could and would competently testify to the facts set forth below.

3. In March of 2021, Ms. Jen King-Campbell, a former Pandora employee, reached out to me on behalf of Spoken Giants. I understand that she reached out to me because we had previously worked together while she was employed by Pandora. I connected her with Mr. Subramaniam and informed her that he should be her primary contact for this matter. A true and correct copy of this correspondence is attached as Exhibit A.

4. Ms. King-Campbell expressed a willingness "to discuss royalties and fee schedules," but there was no indication that Spoken Giants was willing to negotiate anything other than a blanket license. A true and correct copy of this correspondence is attached as Exhibit B. Ms. King-Campbell on behalf of Spoken Giants presented Spoken Giants as a PRO for spoken word and emphasized both the quantity of the works in their catalog and their significance in terms of the popularity.

5. On April 20, 2021, Ms. King-Campbell sent a proposed Term Sheet on behalf of Spoken Giants to myself and Mr. Subramaniam. A true and correct copy of this Term Sheet is attached as Exhibit C. This proposed Term Sheet offered a blanket license. While Ms. King-Campbell's cover email included an offer to "discuss any details," nothing in her email suggested that Spoken Giants would consider individual licenses for its members. A true and correct copy of this correspondence is attached as Exhibit D. Along with the Term Sheet, Ms. King-Campbell sent a "Spoken Giants Company Overview" slide deck. A true and correct copy of this slide

- 1 -
DECLARATION OF IAIN MORRIS IN SUPPORT OF OPPOSITION TO SPOKEN GIANTS, LLC'S MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

deck is attached as Exhibit E. The slide deck referred to Spoken Giants as "the first collective rights organization for spoken word copyrighted works" (slide 4) and stated that "Spoken Giants operates similarly to a BMI, ASCAP, HFA, and MLC for music" (slide 3) and that "Blanket licenses and other collections are established models" (slide 3). It further noted that "DSP Negotiations for Blanket Licenses [are] Underway" (slide 10) and "Signed affiliations are a key exclusive asset of Spoken Giants" (slide 9). The slide deck also listed "Licensing of Repertoire to Performance Channels (e.g. Sirius)" as an aspect of "Spoken Giants' Workflow," stating that "Spoken Giants builds on the power within US and global copyright law and utilizes the foundation precedents from the music industry" (slide 7). In conjunction with the term sheet itself, these slides contributed to our understanding that the blanket license structure was non-negotiable.

6. Nothing about our subsequent communications with Spoken Giants changed this impression. In our subsequent communications regarding Spoken Giants, Ms. King-Campbell primarily provided updates on additions to the Spoken Giants catalog, which I understood to be provided so that it was clear to Pandora that Spoken Giants was continuing to amass leverage over Pandora.

7. In March of 2022, Ms. King-Campbell reached out to me and Mr. Subramaniam to provide "a copy of the standard Spoken Giants affiliate agreement," which she stated showed Spoken Giants' "exclusive right to license the works." A true and correct copy of this correspondence is attached as Exhibit F.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed at Los Angeles, California, on February 4, 2023.

By: 
Iain Morris
Vice President Music Licensing, Head of Publishing and Creative Licensing, Pandora Media, LLC