Oliver Rocos - State Bar No. 319059
    orocos@birdmarella.com
Timothy B. Yoo - State Bar No. 254332
    tyoo@birdmarella.com
Miri E. Gold - State Bar No. 319060
    mgold@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Christine A. Varney – (*Admitted Pro Hac Vice*)
    cvarney@cravath.com
Lauren A. Moskowitz – (*Admitted Pro Hac Vice*)
    lmoskowitz@cravath.com
CRAVATH, SWAINE & MOORE, LLP
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Attorneys for Counter Defendant
Word Collections, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION, | Master File No. 2:22-cv-00809-MCS-MAR |
| | <u>CONSOLIDATED ACTION</u> |
| This Document Relates To: | **COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS** |
| ALL ACTIONS | |
| | Date:     March 6, 2023 |
| | Time:     9:00 a.m. |
| | Crtrm.:   7C |
| | Assigned to Hon. Mark C. Scarsi Courtroom 7C |

3845594.9

1

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Needle v. NFL*,
  560 U.S. 183 (2010) ...................................................................................... 14

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  691 F. App'x 389 (9th Cir. 2017) ................................................................. 11

*Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*,
  744 F.2d 917 (2d Cir. 1984) ........................................................................ 5, 6

*In re Disposable Contact Lenses Antitrust*,
  215 F. Supp. 3d 1272 (M.D. Fla. 2016) ....................................................... 13

*In re DRAM Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022) ........................................................................... 13

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) ...................................................................... 13

*In re High-Tech Employee Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ....................................................... 10

*Independent Ink, Inc. v. Trident, Inc.*,
  210 F. Supp. 2d 1155 (C.D. Cal. 2002) .......................................................... 9

*Intel Corp. v. Fortress Invest. Grp. LLC*,
  No. 19-cv-07651-EMC, 2020 WL 6390499 (N.D. Cal. July 15, 2020) ....................................................................................................... 12

*Interstate Circuit v. United States*,
  306 U.S. 208 (1939) ...................................................................................... 12

*JBL Enters., Inc. v. Jhirmack Enters., Inc.*,
  519 F. Supp. 1084 (N.D. Cal. 1981) ............................................................. 10

*Jones v. Micron Tech.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) .......................................................... 13

*Kendall v. Visa U.S.A.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................. 10, 11

*Lenhoff Enter., Inc. v. United Talent Agency*,
    No. CV 15–01086–BRO, 2015 WL 7008185 (C.D. Cal. Sep. 18,
    2015) ................................................................................................... 7, 8

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13–MD–2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21,
    2014) ....................................................................................................... 12

*Meredith Corp. v. SESAC LLC*,
    1 F. Supp. 3d 180 (S.D.N.Y. 2014) ......................................................... 8

*Meredith Corp. v. SESAC, LLC*,
    No. 09 Civ. 9177(NRB), 2011 WL 856266 (S.D.N.Y. Mar. 9, 2011) ................. 8

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ............................................................... 13

*In re Nat'l Ass'n of Music Merchants*,
    MDL No. 2012, 2012 WL 3637291 (S.D. Cal. Aug. 20, 2012) ......................... 13

*Nero AG v. MPEG LA, LLC*,
    No. 10-cv-3672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sept. 14,
    2010) ......................................................................................................... 6

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................... 7

*Reudy v. Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010) ............................................... 7, 8

*Samsung Electr's Co. v. Panasonic Corp.*,
    No. C10-03098 JSW, 2015 WL 10890655 (N.D. Cal. Sept. 30,
    2015) ......................................................................................................... 6

*SC Innovations, Inc. v. Uber Tech., Inc.*,
    434 F. Supp. 3d 782 (N.D. Cal. 2020) ..................................................... 7

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ................................................... 5

*SmileDirectClub, LLC v. Tippins*,
    31 F.4th 1110 (9th Cir. 2022) ............................................................... 11

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

*Toys R Us v. FTC*,
   221 F.3d 928 (7th Cir. 2000) ................................................................. 14

*United States v. Apple*,
   952 F. Supp. 2d 638 (S.D.N.Y. 2013) ................................................. 14

*United States v. Visa U.S.A., Inc.*,
   344 F.3d 229 (2d Cir. 2003) ..................................................................... 8

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

Pandora's[1] allegations amount to nothing more than that in 2021, Word Collections attempted to negotiate a license for the literary works rights Pandora had been unlawfully exploiting for over a decade.  This Court dismissed Pandora's original Counterclaims because they alleged nothing more than legitimate business activities.  Pandora's FACC has not cured the manifold failures this Court identified in its Ruling.  In fact, Pandora has failed to plead *any anticompetitive activity at all*, let alone the facts necessary to allege any monopoly or conspiracy.  The FACC should be dismissed with prejudice.

## I.   PANDORA FAILS TO PLEAD THAT THE AVAILABILITY OF INDIVIDUAL LICENSES WAS ILLUSORY

While Pandora bases its claims on a purported "blanket license demand," Word Collections sought merely the opportunity to "work with [Pandora] to provide an efficient licensing solution" and to discuss a "proposed license."  Rocos Decl., Ex. B.  Pandora's failure to respond and seek licenses for individual comedians' literary works means it has not pled that Word Collections engaged in any anticompetitive activity.  *Buffalo Broad. Co. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2d Cir. 1984).

Pandora's argument that Word Collections' invitation was "illusory" because those propositional words were "merely rote pleasantries routinely included in cover emails" defies logic.  Opp. 4-5.  The law does not allow Pandora to meet its pleading burden by cherry-picking parts of Word Collections' communication or asking the Court to draw unreasonable inferences.  *See, e.g.*, *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) ("[T]he Court already warned that Plaintiff may not simply cherry-pick portions of Defendants' statements. . . , but must instead account for the entirety of the statements on which

---

[1]   Capitalized terms have the same meanings as in Word Collections' Motion to Dismiss.

1    they rely." (internal quotations and brackets omitted)).

2        Pandora's remaining arguments fare no better.[2]  Pandora fails to explain how

3    its allegation that Word Collections was the exclusive licensing agent for its

4    affiliated comedians means that it could not (or would not) offer individual licenses.

5    Opp. 4.  And while Pandora alleges that Word Collections' website FAQ stated that

6    licensees would "have to pay for all broadcasts of comedy . . . or choose to

7    broadcast none of it," it does not allege that *Pandora itself* was aware of that

8    statement when Word Collections approached it about licensing, or that the

9    statement contributed to its decision *at the time* not to seek individual licenses.[3]  *Id.*

10   at 4-5.

11       Word Collections' communication merely invited Pandora's engagement—it

12   demanded nothing, nor did it preclude counterproposals.  Such an overture is lawful,

13   and Pandora's failure to attempt to seek individual licenses is fatal to all its claims.

14   *Nero AG v. MPEG LA, LLC*, 2010 WL 4366448, at *6 (C.D. Cal. Sept. 14, 2010);

15   *Buffalo Broad.*, 744 F.2d at 933.

16

17

18   [2]    Pandora again contends the purported "blanket license demand" should be
     subject to a *per se*, rather than a rule-of-reason, analysis.  Opp. 3; ECF No. 54 at 13.

19   The Court already impliedly rejected that argument by analyzing the alleged
     demand under the rule-of-reason standard, Ruling at 16-17, and Pandora does not

20   show that to be wrong.  As Word Collections already has explained in prior briefing,
     the "*per se* rule is applied when 'the practice facially appears to be one that would

21   always or almost always tend to restrict competition and decrease output'."  ECF
     No. 49 at 21 (citation omitted).  "The Supreme Court has held that even a 'blanket

22
     license' that 'accompanies the integration of sales, monitoring, and enforcement

23   against unauthorized copyright use" is subject at most to antitrust's 'rule of reason',
     rather than any *per se* prohibition."  *Id.* at 21-22 (citations omitted); *see also* Ruling

24
     at 22 (same).

25
     [3]    Pandora's attempt to compare itself to the plaintiff in *Samsung Electr's Co. v.*

26   *Panasonic Corp.*, 2015 WL 10890655, *5 (N.D. Cal. Sept. 30, 2015) fails because,

27   unlike Pandora, Samsung alleged that it "*attempted to negotiate* with individual SD

28   Group members" (emphasis added) but was rejected.  Opp. 5.

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

## II.     PANDORA FAILS TO PLEAD MARKET POWER

The FACC likewise falls distantly short of pleading Word Collections has the requisite market power to state Section 2 claims.  Mot. 14-22.  Pandora's Opposition does not show otherwise.

### A.     Word Collections Lacks Monopoly Power As A Matter Of Law

Pandora alleges that both Word Collections and Spoken Giants operate in the *same* market, and that each individually "has monopoly power (or . . . a dangerous probability of achieving monopoly power) over Pandora and . . . other services." FACC ¶ 98; ECF No. 94 ¶ 88.  Those allegations are fatal to its Section 2 claims, because it is not possible as a matter of law for *both* Word Collections *and* Spoken Giants to have monopoly power.  *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1127 (N.D. Cal. 2010) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition.").  At best, Pandora alleges an oligopoly.  But as the Ninth Circuit held decades ago, one cannot plead an actionable Section 2 claim by alleging that two entities in the same market both have monopoly power.[4]  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995); *SC Innovations, Inc. v. Uber Tech., Inc.*, 434 F. Supp. 3d 782, 793-94 (N.D. Cal. 2020) (Section 2 claims dismissed where plaintiff pled Uber was oligopolist with its competitor Lyft); *Lenhoff Enter., Inc. v. United Talent Agency*, 2015 WL 7008185, at *3 (C.D. Cal. Sep. 18, 2015) (Section 2 claims dismissed where plaintiff alleged a conspiracy to

---

[4]   While an entity with market competitors *can* be a monopolist, it must control enough of the market that "by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices."  *Rebel Oil*, 51 F.3d at 1434.  Pandora's conclusory claim that Word Collections has "the ability to control prices free from competitive discipline" (FACC ¶ 146) cannot be true if Spoken Giants allegedly *also* has monopoly power (FACC ¶ 120).

3845594.9

7

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

1   create multiple entities with monopolies); *Reudy*, 693 F. Supp. 2d at 1127 (same).[5]

2   Pandora entirely ignores that law, and asserts that Word Collections (and

3   presumably Spoken Giants) "are very much like SESAC and GMR," against whom

4   Section 2 claims have successfully been pled.  Opp. 8, FN 9; *id.* at 12.  But Pandora

5   ignores that the market in each of those actions was "the market for performance

6   rights to the copyrighted materials in the SESAC repertory" and the "GMR

7   repertory" respectively, meaning that each of SESAC and GMR had a 100% share

8   of the relevant market under consideration.  *See, e.g.*, *Meredith Corp. v. SESAC*

9   *LLC*, 1 F. Supp. 3d 180, 218 (S.D.N.Y. 2014).  In sum, *they had no market*

10  *competitors*.[6]

11  Two other fundamental differences distinguish Word Collections from

12  SESAC and GMR.  *First*, both SESAC and GMR allegedly concealed the contents

13  of their repertories to coerce plaintiffs into purchasing blanket licenses (*Meredith*

14  *Corp. v. SESAC, LLC*, 2011 WL 856266, at *3, *9 (S.D.N.Y. Mar. 9, 2011); *Radio*

15  *Music License Comm., Inc. v. Glob. Music Rights, LLC*, No. 2:19-cv-03957 (C.D.

16  Cal. June 20, 2019), ECF No. 163 ¶¶ 34-35, 76, 114, 123); here, by contrast,

17  Pandora alleges that Word Collections publicly lists its affiliated comedians and

18  regularly updated Pandora on Word Collections' portfolio.  FACC ¶¶ 48-50.

19  *Second*, television and radio stations could not avoid SESAC and GMR's repertories

20  because they could not remove the music that came prepackaged in programming

21  they bought.  *Meredith*, 2011 WL 856266, at *6, *9; *Radio Music*, ECF No. 163

22  ¶ 61.  Pandora pleads no similar allegations here.  FACC ¶ 118.

23

24  [5]   Pandora expressly concedes that monopoly power would exist "***if a single***

25  ***economic actor*** gained control over the comedy routines embodied in the recordings
    of numerous 'superstar' comedians."  Opp. 7 (emphasis added).

26  [6]   Pandora's citation to *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir.

27  2003), is similarly unavailing.  Opp. 12.  Section 2 claims were not at issue, so the
    court did not address whether multiple market participants could possess monopoly

28  power.

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

1
2

### B.   Pandora Fails To Plausibly Plead Word Collections Has Market Power

Setting aside that Word Collections *cannot* be a monopolist based on Pandora's own allegations, its portfolio of a few dozen comedians does not give it the requisite market power.  Mot. 18-22.  Pandora's argument that Word Collections' market power stems from its affiliation with a handful of "superstar" comedians, which in turn makes its portfolio a "must have," is not supported by factual allegations.  Opp. 7-8.

Pandora defines "superstar" comedians as those who account for a "significant number of streams on Pandora," and argues the ability to stream "a sufficient number of the 'superstar' comedians . . . is crucial to the long-term viability of Pandora's comedy product."  Opp. 6-7.  Fatally, however, *Pandora has not alleged that any Word Collections-affiliated comedian has ever been among the most streamed on Pandora or any other streaming service*.  Because no Word Collections-affiliated comedian passes Pandora's *own test* for being a "superstar," Word Collections' portfolio cannot be a "must have" and it must lack market power.

That conclusion is not contradicted by Pandora's allegations that some Word Collections-affiliated comedians are described in dated opinion articles by Rolling Stone and Billboard, as well as by Word Collections and the comedians themselves, as being the "best," popular, or even iconic.[7]  Opp. 7, 9; *Independent Ink, Inc. v. Trident, Inc.*, 210 F. Supp. 2d 1155, 1172 (C.D. Cal. 2002) ("[N]on-economic, qualitative descriptions of market success are insufficient to establish … market power.").  Pandora nowhere alleges that such generalized opinions or descriptions drive, or bear any relationship to, its customers' listening habits such that Word

25
26
27
28

---

[7]   Pandora offers no support for its position that Word Collections' description of itself as the "ASCAP and BMI" of comedy gives it market power.  Opp. 9.

1   Collections' portfolio is a "must have."[8]

2       Finally, even if Pandora *has* alleged that some Word Collections-affiliated

3   comedians are "superstars," Pandora has no credible allegations that it "must have"

4   Word Collections' portfolio to operate a viable comedy streaming service.

5   Pandora's failure to allege the total number of "superstar" comedians means it has,

6   again, failed to allege there are insufficient "superstar" comedians to operate without

7   Word Collections' portfolio. *See* Ruling at 21 (Pandora's failure to identify market

8   size fatal to claim that "Word Collections owns a dominant share" of market).

9       Word Collections lacks market power, and Pandora cannot show otherwise.

10  ## III.    PANDORA FAILS TO PLEAD AN ANTITRUST CONSPIRACY

11      Pandora has not identified the core aspects of an antitrust conspiracy, nor has

12  it adequately pled plus factors from which the Court can infer a conspiracy.

13      ### A.    The FACC Does Not Identify Who, Did What, To Whom, Where and When

14

15      Pandora concedes that its Section 1 claims fail unless it has pled who, did

16  what, to whom (or with whom), where, and when.  Opp. 13.  It has not done so.

17      ***Who Did What To Whom***.  Rather than alleging facts showing "who"

18  conspired, Pandora simply says the conspirators were every Word Collections-

19  affiliated comedian.  Opp. 18.  But a party is not a conspirator merely because it

20  affiliated with an alleged anticompetitive actor.  *Kendall v. Visa U.S.A.*, 518 F.3d

21  1042, 1048 (9th Cir. 2008).  Pandora pleads none of the indispensable "details"

22  about the "actors" in any conspiracy, such as who negotiated, executed, or enforced

23  any agreement.  *Cf. In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d

24

---

25  [8]   While Pandora also claims that Word Collections' "demand for a

26  supracompetitive royalty is direct evidence of market power," there was no demand,
    there was no supracompetitive price, and an increase in price is not, alone, evidence

27  of market power.  *See, e.g., JBL Enters., Inc. v. Jhirmack Enters., Inc.*, 519 F. Supp.
    1084, 1088 (N.D. Cal. 1981) ("That a product is sold at a higher price . . . is not

28  probative of . . . power to control price.").

1    1103, 1116 (N.D. Cal. 2012).

2        As to the "what", the Court already deemed insufficient Pandora's contention

3    that the Comedians conspired merely by signing their EAAs.  Ruling 24; *Kendall*,

4    518 F.3d at 1048.  Pandora's alternative contention that the "what" was Word

5    Collections' purported license "demand" also fails.  As set forth above, there was no

6    "demand", only a "proposal".  And many alleged conspirators (including three

7    counter-defendants) were not even associated with Word Collections at that time

8    and so cannot have "actively participated in" the alleged scheme.  Mot. 25;

9    *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) (conspiracy

10   claim dismissed against non-participating defendants).  Pandora cannot simply

11   dismiss that fatal flaw as "irrelevant".  Opp. 14, n.12.

12       ***Where and When***.  Pandora does not allege "where" the alleged conspiracy

13   occurred, arguing it should be excused because of "technology".  Opp. 13-14.  As to

14   the "when," Pandora's contention that conspiracy occurred whenever a comedian

15   affiliated with Word Collections fails because, as noted above, conspiracy requires

16   more than mere affiliation.  Opp. 14.  While Pandora also argues the "when" was the

17   date of Word Collections' purported "demand," that communication by a single

18   actor does not remotely support that a conspiracy was formed.  *Id.*  Pandora's failure

19   to "explain where and when the alleged collusive activity. . . occurred" dooms its

20   Section 1 claims.  *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x

21   389, 390 (9th Cir. 2017).

22       As an alternative to showing it has alleged the who, what, to/with whom,

23   where, and when, Pandora asks this Court to hold that it can plead a conspiracy

24   through unsupported inferences that (1) the statements about Word Collections'

25   proposed licensing model were made before any Comedian signed an EAA; and that

26   *each* comedian (2) *saw* that proposal; (3) understood it to mean literary rights would

27   be licensed on a blanket basis; and (4) associated with Word Collections *for that*

28

3845594.9

11

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

1    *reason*.  It has pled no facts to support these inferences.[9]

2       Pandora's reliance on *Interstate Circuit v. United States*, 306 U.S. 208 (1939),

3 is misplaced.  In *Interstate*, the manager of two movie exhibitors sent a letter to

4 eight movie distributors, naming *all of them* as addressees in the same letter,

5 threatening to cease exhibiting their movies unless they agreed to a minimum price.

6 306 U.S. at 215-19.  The distributors agreed and effectuated the demands "with

7 substantial unanimity."  *Id.*  Unlike *Interstate*, however, Pandora *has not* identified

8 any communication sent to or from the Comedians demanding licensure of literary

9 works rights solely on a blanket basis.  Instead, Pandora has made only the

10 generalized (and unsupported) allegation that the Comedians were "aware of" Word

11 Collections' supposed intent to license on a blanket basis.  Opp. 21-22.  Without any

12 actual communication to cite, Pandora has alleged only lawful parallel conduct.

13 *Intel Corp. v. Fortress Invest. Grp. LLC*, 2020 WL 6390499, at *17 (N.D. Cal. July

14 15, 2020); Ruling at 23-24.

15      **B.**     **The FACC Does Not Establish Plus Factors**

16       Pandora fails to show any "plus factors" supporting its defective conspiracy

17 claim.  Mot. 25-28.

18      ***Acts Against Self-Interest***.  Pandora's argument that the Comedians' demand

19 for a literary works license was an "extreme action against self-interest," Opp. 17, is

20 contradicted by its factual allegation that it was willing to allow the Comedians to

21 continue the pre-existing status quo if they dropped that demand.  FACC ¶ 38.

22 Pandora nowhere alleges facts suggesting the Comedians thought they were risking

23

24     ──────────────

     [9]   Pandora's reliance (Opp. 14) on *In re Lithium Ion Batteries Antitrust Litig*., 2014

25 WL 309192 (N.D. Cal. Jan. 21, 2014), to contend it need not "limn the entirety of

26 the conspiracy before discovery" is misplaced.  Pandora's allegations do not contain

remotely the level of detail alleged in that action.  *Id.* at *3-4, *10 (plaintiff

27 identified "over a hundred alleged contacts between Defendants" including specific

meetings, attendees, locations, quotes from, and times).

28

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS

being dropped by Pandora just by asking for a license for their work.  That rational business decision does not support the existence of a conspiracy.  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015).

    **Common Motive to Conspire**.  Pandora's insistence that a conspiracy must exist because "no comedian would ask for a royalty absent an agreement" to force Pandora to accept that price increase, Opp. 23-24, ignores that the alleged conspiracy excluded thousands of comedians who could undercut that purported conspiracy.  *See, e.g.*, *In re Disposable Contact Lenses Antitrust*, 215 F. Supp. 3d 1272 (M.D. Fla. 2016) (allegation that defendants "control 97% of the market" critical to presence of common motive plus factor).

    **Complex Change Close in Time**.  Pandora does not cite any facts or law supporting its contention that the simple act of seeking literary works licenses is "complex."  Opp. 19.  That comedians entered into EAAs "within a short period of time" does not suggest a conspiracy given that Word Collections was newly formed and looking for clients.  FACC ¶¶ 3, 43.  "It is not unlawful for competitors to mimic the actions of another," and no allegations suggest anything else occurred here.  *Jones v. Micron Tech*., 400 F. Supp. 3d 897, 920 (N.D. Cal. 2019).

    **Public Assurances**.  Pandora nowhere alleges facts showing that Word Collections' public statements, Opp. 24, were anything other than rational business behavior.  *In re DRAM Antitrust Litig*., 28 F.4th 42 (9th Cir. 2022); *In re Nat'l Ass'n of Music Merchants*, 2012 WL 3637291 at *5 (S.D. Cal. Aug. 20, 2012) (announcing "new practices or developments is common and doesn't imply illicit or surreptitious signaling").

## IV.   PANDORA'S RESTRAINT OF TRADE CLAIM FAILS

    The EAAs are insufficient to state a restraint claim because a principal cannot "conspire" with its agent.  *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2003).  Pandora similarly fails to plead a horizontal agreement amongst the comedians, *see supra*, as *Pandora's own cited cases* require.  *See, e.g.*

1  *American Needle v. NFL*, 560 U.S. 183, 187-89 (2010) (horizontal agreement found

2  between 32 NFL teams); *United States v. Apple*, 952 F. Supp. 2d 638, 691-92

3  (S.D.N.Y. 2013) (finding "overwhelming evidence that the Publisher Defendants

4  joined with each other in a horizontal price-fixing conspiracy"); *Toys R Us v. FTC*,

5  221 F.3d 928, 934 (7th Cir. 2000) ("[T]he critical question. . . is whether . . . there

6  was a horizontal agreement.").

7

8  DATED:  February 8, 2023          Oliver Rocos
                                     Timothy B. Yoo
9                                    Miri E. Gold
10                                   BIRD, MARELLA, BOXER, WOLPERT,
                                     NESSIM, DROOKS, LINCENBERG &
11                                   RHOW, P.C.

12

13

14                                   By: _____ *s/ Oliver Rocos* _____
15                                            Oliver Rocos
                                     Attorneys for Counterclaim Defendant Word
16                                   Collections, Inc.

17  DATED:  February 8, 2023          Christine A. Varney
                                     Lauren A. Moskowitz
18                                   CRAVATH, SWAINE & MOORE, LLP

19

20

21                                   By: _____ *s/ Lauren A. Moskowitz* _____
22                                            Lauren A. Moskowitz
                                     Attorneys for Counterclaim Defendant
23                                   WordCollections, Inc.

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Counterclaim Defendant Word Collections, Inc. certifies that this brief contains 2,996 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 8, 2023          Oliver Rocos
                                  BIRD, MARELLA, BOXER, WOLPERT,
                                  NESSIM, DROOKS, LINCENBERG &
                                  RHOW, P.C.


                                  By:  ____*s/ Oliver Rocos*____
                                              Oliver Rocos

3845594.9

15

COUNTERCLAIM DEFENDANT WORD COLLECTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PANDORA MEDIA, LLC'S FIRST AMENDED COUNTERCLAIMS