Richard S. Busch - SBN 319881
*rbusch@kingballow.com*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Attorney for Plaintiffs/Counterclaim
Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR |
| | <u>CONSOLIDATED ACTION</u> |
| | **CERTAIN PLAINTIFFS/COUNTERCLAIM DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR JOINDER IN MOTION TO DISMISS BY COUNTERCLAIM CODEFENDANT WORD COLLECTIONS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To: | |
| 2:22-cv-00817-MCS-MAR (Clay) 2:22-cv-01345-MCS-MAR (Di Paolo) 2:22-cv-00810-MCS-MAR (Carlin) 2:22-cv-00815-MCS-MAR (Williams) 2:22-cv-00813-MCS-MAR (White) 2:22-cv-00809-MCS-MAR (Engvall) 2:22-cv-00809-MCS-MAR (Hicks) | Date:     March 6, 2023 Time:    9:00 a.m. Crtrm.: 7C - First Street Courthouse          350 W. 1st Street, 7th Floor,          Los Angeles, California 90012 Assigned to Hon. Mark C. Scarsi |

# INTRODUCTION

The Comedians hereby submit this brief Reply Memorandum in further support of their Joinder to Word Collections' Motion to Dismiss (DE 104) and Request for Judicial Notice (DE 104.4) (collectively, "WC's Motion").

As a threshold matter, in response to the Comedians' seven-page Joinder, Pandora has filed a twenty-page Opposition ("Joinder Opp.") in which it accuses the Comedians of "wasting the Court's time," despite utterly failing to actually oppose the joinder to WC's Motion. Thus, Pandora's response begs the question: who really is "wasting the Court's time"? And why is twenty pages of paper necessary to respond to a seven-page Joinder if the Joinder is just a waste of the Court's time?

In fact, Pandora's response transparently expands its word limit (without leave), continuing Pandora's substantive arguments against WC's Motion. Whether Pandora is responding to the WC Motion, or the Comedians' Joinder, however, as explained herein, Pandora's arguments all rely on the same rote, threadbare, bald, and conclusory factual allegations they raised in opposition to the original Motion to Dismiss, which the Court, in its sound judgment, rejected, dismissing the original Counterclaims.

In its Order dismissing the original Counterclaims, the Court specifically set forth the material defects in the Counterclaims which preclude Pandora's recovery as a matter of law, and the Court strongly admonished Pandora that it should be mindful of its Rule 11 obligations when deciding whether to file an amended pleading and to consider not doing so unless and until discovery supported its claims. Ignoring this admonition, Pandora persisted.  As detailed herein, nothing in the First Amended Counterclaim (FACC) or Pandora's Opposition serves to move the needle. As such, the FACC should be dismissed *with prejudice*.

///

///

Indeed, the frivolousness of Pandora's Amended Counterclaims is shown by what Pandora added to the original Counterclaims in the attempt to salvage them.  In response to the dismissal, Pandora added the following "facts":

1) A screen shot of a tweet from Jeff Price that showed a t-shirt available to buy on Etsy.com by a third-party company called Polly and Crackers that has no ties to Word Collections or any of the comedians. Pandora makes quite a lot of the quote on the T-Shirt, which was clearly posted as a joke (FACC ¶111);

2) References to two dated on-line articles, one from Billboard.com in 2014 and a second from Rollingstone.com in 2017, neither of which has any ties to Pandora, Word Collections, or what's of value to Pandora's users (FACC ¶114);

3) A purported (and obviously correct) statement that comedians can make money by exploiting their copyrights in a podcast made by comedian, Eddie Brill, who is not part of the litigation for infringement, and who has not been named a party to the antitrust counterclaims despite being an alleged "cartel member.";[1]

4) A Pandora statement that, even if approached by individual comedians, they would not pay a separate non-zero royalty for literary rights, which indicates only that Pandora wants to exploit the literary rights for free and considers any price above $0 supra-competitive (FACC ¶75);

5) A statement that another entity called Spoken Giant exists in the market to license literary works, but that Spoken Giants (despite being a competitor that also came to exist in an open market) is also alleged to be a monopolist in the *same market* to license literary works (FACC ¶5);

6) The inclusion of cherry-picked language from Word Collections' email attaching the licensing proposal stating he looked forward to speaking and working with them collaboratively (FACC ¶¶70-72);

---

[1] He is also not a "must have" "superstar" according to Pandora (FACC ¶¶63, 114)

7) Cherry-picked references to Word Collections' publicly available FAQ's which discuss whether the comedians would be blacklisted, ignoring the other FAQs, especially the one that stated the rights holders can terminate at will after 4 months (FACC ¶68) (*see also* FAQ, attached as Exhibit A to Request for Judicial Notice, DE 105.3);

8) The dates when Word Collections emailed Pandora each literary work catalog it represented to Pandora.  Based on the dates of these emails, Pandora knew that the four-month Term was up and the comedians could terminate their agreement with Word Collections with 30 days' notice, and in some cases that many of the Comedians in this case were not even members when the proposal was sent (FACC ¶¶70-72); and

9) Incorrect statements about Jeff Price's past employment that have nothing to do with this case (FACC ¶45).

The question is: does the list of the "new" items above cure any of the deficiencies this Court identified in its initial Ruling? The answer is: clearly not.  As discussed below, the aforementioned facts do nothing under the law to save Pandora's antitrust claims.

**A.    The Merits Of The Comedians' Underlying Copyright Claims Are Irrelevant To Whether Pandora Has Pled Antitrust Claims**

In response to one sentence and the accompanying footnote in the Joinder, Pandora takes the opportunity to expound for two pages of their Opposition regarding the underlying Copyright Infringement Claim. (*Compare* Joinder at p. 3 and at p. 3 n.3 *with* Opp. at pp. 3-5). It is clear that nothing in the introductory paragraphs of the Joinder are, as Pandora would have this Court believe, an effort to argue the underlying copyright infringement case. Rather, they are a brief discussion of how, despite the admonition by the Court, Pandora has clearly filed meritless counterclaims in response to the Comedian's copyright claim.  This is evidenced by the fact that

Pandora did not target all the comedians that are working with Word Collections and Spoken Giants, but only those comedians that filed the copyright infringement lawsuit. Pandora's motives are not altruistic. What actually happened is that Pandora, as it articulated for seven years in a row in its SEC 10K filing, got caught with its hand in the cookie jar, profiting off the work and property of the Comedians without proper licensure or remuneration. In response to the Comedians exercising their lawful right to protect their copyrights,[2] Pandora has concocted an alleged "conspiracy" and filed counterclaims in the hopes of creating a chilling effect to deter other Comedians from standing up to a bully.

## B.   Pandora's First Amended Counterclaims Fail to State a Claim

The Court's order was clear that Pandora's original counterclaim failed to allege anything other than parallel conduct. (*See* Order at 24:13-24). The Comedians' Joinder (as well WC's Motion) demonstrate that the FACC fares no better in curing this fatal defect. Apart from threadbare allegations and cherry-picked language, Pandora does not (and cannot) properly allege the "Who, did what, to whom," nor the "where and when" required to support its claims. *In re Musical Instruments & Equip. Antitrust Litig.,* 798 F.3d 1186, 1194 n.6 (9th Cir. 2015).

### 1.  The Who Did What To Whom

Pandora's FACC and Opposition both rely on the *same* "who" and "what" that the Court has already found to be wanting. That the Comedians here (along with the other purported Cartel members like Mr. Brill whom Pandora decided *not* to include in their FACC), entered into parallel agreements with Word Collections does not show any anti-competitive conduct. Pandora cannot cite to anything other than their rank suspicion of other "price fixing" agreements. (*See* Opp. at p. 7).

---

[2] *See* U.S. Const. Art. I, § 8, cl. 8; *see also* 17 U.S.C. §§ 101, *et seq.*

Highlighting the nonexistence of any horizontal agreement amongst the Comedians is the procedural posture of this case – each Comedian (not Word Collections) brought *separate* lawsuits, at different times. Then, when ordered to show cause why the separate cases should not be completely joined (*see* DE 11), the Comedians expressly requested the right to separate trials and suggested that pretrial consolidation was more apt. *See* DE 13. The Court, in its sound judgment, agreed – consolidating the cases for all pretrial matters and reserving each Comedian the right to a separate trial. DE 18.

Pandora, ignoring this procedural posture, argues that the Comedians brought the infringement suits simultaneously, making no mention of the consolidation process and the Comedians efforts to avoid complete joinder of the lawsuits. When viewed through this lens, the infringement actions are merely furtherance of the parallel conduct that cannot constitute anti-competitive conduct.

Pandora can only rely on Word Collections' own marketing endeavors, which only sought to bring more comedians into similar *parallel* agreements which could have also led to further *parallel* infringement actions – something Pandora desperately wants to avoid. Hence, their persistence in filing their meritless FACC in hopes of creating a chilling effect that will dissuade others from filing similar infringement lawsuits.

Pandora cannot cite to any public statements made by any of the Comedians in this action to demonstrate more-than parallel conduct. Indeed, Pandora's attempt to rely upon non-party, alleged cartel member, Eddie Brill's statements is misplaced, as those statements encourage merely parallel conduct in the pursuit of legitimate profit from exploitation of copyrights, and provide no evidence supporting the inference of a conspiracy.

With only fabricated conjecture, Pandora alleges that certain Comedians instructed Word Collections to demand Pandora take a purported all-or-nothing

blanket license. This conclusory allegation is entitled to *none* of the deference afforded to factual allegations in a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, this contention is undermined by the cover email and language of the license proposal itself – which are subject to judicial notice. The cover email makes it clear that the proposed blanket license was just that – an initial proposal and invitation to negotiate licensure for use of the spoken word copyrights owned by the affiliated comedians. Pandora alleges that the Comedians "demand[ed] that Pandora take its all-or-nothing blanket license" (*see* Opp. at p. 8, citing FACC ¶52), but the facts conclusively show otherwise.

> 2.  *The "Plus Factors"*

Pandora next argues that the "plus factors" "support an inference" of a common scheme to the exclusion of parallel conduct. Opp. at p. 9. They do not. Pandora claims they have made several "factual" allegations that show the "plus factors" all weigh in their favor. However, these allegations are not based on facts, but rather a series of unsupported inferences.

<u>*Acts Against Self-Interest*</u>: Pandora's Opposition argues that the FACC shows that the Comedians were acting against their self-interest in their conduct. But Pandora identifies no facts to support this conclusory assertion. Indeed, Pandora does not identify any facts demonstrating that a comedian understood that they would be blacklisted simply for asking to be paid for his or her literary works that Pandora *was already streaming on its service*.

<u>*Common Motive*</u>: In *In re Musical Instruments & Equip. Antitrust Litig.*, (relied upon by Pandora), the Ninth Circuit expressly held that there will always be "common motive" to increase profits, and that "common motive" was essentially just a recast allegation of permissible parallel conduct. 798 F.3d 1186, 1194-95 (9th Cir. 2015). Specifically, the Ninth Circuit ruled:

> Thus, alleging "common motive to conspire" simply restates that a market is interdependent (i.e., that the profitability of a firm's decisions regarding pricing depends on competitors' reactions). Interdependence, however, does not entail collusion, as interdependent firms may engage in consciously parallel conduct through observation of their competitors' decisions, even absent an agreement. And allegations of parallel conduct—though recast as common motive—is insufficient to plead a § 1 violation.

*Id.* Pandora attempts to plead around that by alleging the motive was "going first". But this "going first" analogy has also been expressly rejected by the Ninth Circuit, again in *In re Musical Instruments. Id.* at 1195 ("But so long as prices can be easily readjusted without persistent negative consequences, one firm can risk being the first to raise prices, confident that if its price *is* followed, all firms will benefit. By that process ("follow the leader"), supra competitive prices and other anticompetitive practices, once initiated, can spread through a market without any prior agreement.").

In order to prevail on this point, Pandora would need to plead facts demonstrating that the act against self-interest or common motive to "go first" "would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement." *Id*. Pandora does not (and cannot) allege this.

*Public Assurance Marketing Endeavors*: Finally, Pandora points to marketing endeavors by Word Collections – the same marketing endeavors already been found to be parallel conduct – but this time recasts them as "public assurances that the cartel was holding strong." Of course, this presumes the existence of a cartel in the first place (yet another fallacious, begged presumption).

Pandora relies on *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1116 (N.D. Cal. 2008) to show that public statements can support an inference of

conspiracy. *See* Opp. at 12. However, Pandora ignores the plain guidance from that case, which expressly states: "Courts have held that a conspiracy to fix prices can be inferred from an invitation, **followed by responsive assurances and conduct**." *Id.* (emphasis added).

Here, Pandora does not point to *any* following "responsive assurances and conduct" by the Comedians. Thus, *even if, arguendo*, routine marketing activity could suggest an inference of conspiracy, without the following "responsive assurances and conduct" by the Comedians, this point must fail.

By stacking these conclusory, albeit false, allegations together, Pandora attempts to create the illusion that it has factual allegations with heft that support its case. But when actually analyzed with any scrutiny, it is revealed they are each, individually and collectively, as thin as a playing card.[3] That is, Pandora's *entire* argument is circular and fallacious—rather than alleging facts showing that a conspiracy was formed, it alleges only smoke and mirrors.

### C.    Alternatives to Licensing Are Not Illusory

This point has been fully briefed by multiple parties at this point, but it bares being briefly reiterated one last time – Pandora's conclusory allegation that alternatives to the blanket license  are illusory is: (1) due no deference as a threadbare conclusion under *Twombly*, *supra*.; (2) factually undercut by the cover email Word Collections sent to Pandora, of which the Court may take judicial notice; (3) factually undercut by Pandora's failure to tender a counterproposal or otherwise respond to Word Collections;  (4) is a problem *entirely of* Pandora's own making – Pandora states it would not agree to any non-zero license requested by any individual comedian, but then bemoans the lack of alternative licensing scheme and (5) there were market

---

[3] *Cf.* My Cousin Vinny's Brick vs. Playing Card analogy, available at https://www.youtube.com/watch?v=MHzOOMdhAhE.   Alternatively,   Vinny's opening statement would also be an apt critique of Pandora's arguments in this regard.

alternatives to licensing with Spoken Giants, ASCAP and BMI. Pandora bears the burden of alleging a lack of alternatives, and failure to show "serious efforts to obtain" alternate licenses precludes Pandora from being able to plead even antitrust activity. (*See* Joinder at p. 5) (gathering sources).

## CONCLUSION

For the reasons stated above, and in the Joinder, and Motion and Memorandum of Points and Authorities of Word Collections, Pandora's Amended Counterclaims should be dismissed in their entirety and *with prejudice*.

DATED:  February 8, 2023                    Respectfully submitted,
                                            KING & BALLOW

                                            /s/ Richard S. Busch
                                              Richard S. Busch
                                            Attorneys for Plaintiffs/
                                            Counterclaim Defendants

The undersigned, counsel of record for Plaintiffs and Counterclaim Defendants Comedians, certifies that this brief contains 2498 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 8, 2023                    Respectfully submitted,
                                            KING & BALLOW

                                             /s/ Richard S. Busch
                                              Richard S. Busch
                                            Attorneys for Plaintiffs/
                                            Counterclaim Defendants