Richard S. Busch - SBN 319881
*rbusch@kingballow*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Attorney for Plaintiffs/Counterclaim Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br><br>2:22-cv-04634-MCS-MAR (Black) | Master File No. 2:22-cv-00809-MCS-MAR<br><br><u>CONSOLIDATED ACTION</u><br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT LEWIS BLACK'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFF'S JOINDER IN MOTION TO DISMISS BY COUNTERCLAIM CODEFENDANT SPOKEN GIANTS, LLC**<br><br>Date:     March 6, 2023<br>Time:     9:00 a.m.<br>Crtrm.:   7C - First Street Courthouse<br>            350 W. 1st Street, 7th Floor,<br>            Los Angeles, California 90012<br><br>Assigned to Hon. Mark C. Scarsi |

Plaintiff/Counterclaim Defendant Lewis Black, individually and on behalf of Stark Raving Black Production, Inc. (collectively, "Lewis Black" or "Mr. Black"), demonstrated by his Joinder (Doc. 103 filed 12/19/2022; "Joinder") in the Motion to Dismiss (Doc. 102 filed 12/19/2022; "Motion to Dismiss") filed by Counterclaim Co-Defendant Spoken Giants, LLC ("Spoken Giants") that Pandora's antitrust counterclaims should be dismissed because:

1.      Mr. Black's termination of his affiliation agreement with Spoken Giants is fatal to Pandora's antitrust claims because it exemplifies that comedians' affiliation agreements with Spoken Giants are easily terminable and thus do not give rise to antitrust claims.  Joinder, 1:10-2:9.  Pandora asserts that easily terminable affiliation contracts do not offer an alternative for the individual negotiation of licenses based on the erroneous argument that the market is not otherwise competitive.  But Pandora is wrong because the easily terminable nature of the Spoken Giants' affiliation agreements do not preclude competition for the negotiation of individual licenses and Spoken Giants does not control a significant share of the market in any event.

2.      Pandora's admitted refusal to engage in negotiations for any individual license of a comedian's literary works for any amount over $0 shows why it never made any inquiry or attempt to negotiate an individual license with any of the comedians represented by Spoken Giants (either directly or through Spoken Giants). It also demonstrates why Pandora's erroneous argument that the availability of an individual license is "illusory" fails to protect its antitrust claims – since Pandora cannot make an alternative license "illusory" by its own conduct.  Joinder, 3:1-4:17. In response, Pandora merely repeats its argument that the availability of individual licenses is "illusory" based on the false assertion that Spoken Giants "insisted" and "required" an all or nothing blanket license.  The documents to which Pandora refers in its Amended Counterclaims, however, expressly state the exact opposite; namely, that the Proposed Term Sheet was merely a "first step" towards negotiations.

3.      Pandora cannot demonstrate monopolistic market power by Spoken Giants (or Word Collections) predicated on its argument that it "must-have" a core group of comedians in order to stream comedy, because it effectively admits that no particular comedian is or group of comedians are "must-haves," since Pandora alleges that it will not obtain a license from *any* comedian's literary works for more than $0. Joinder, 4:18-5:6.  Although Pandora makes the conclusory allegation that it will not negotiate for an "inflated" or "supra-competitive" license fee, anything over $0 – even 1 cent – is not be "inflated" or "supra-competitive."

4.      Pandora's antitrust conspiracy claims must be dismissed as against Mr. Black because Pandora fails to allege any facts demonstrating that Mr. Black engaged in any conspiracy with any other comedian as required to support Pandora's claim that Mr. Black somehow conspired and agreed to engage in price fixing.  Joinder, 5:7-6:12.  Pandora does not even address this defect in its Opposition papers.

First, Pandora admits that Mr. Black terminated his affiliation agreement with Spoken Giants (Mr. Black "*was* a member of Spoken Giants"), which demonstrates that this contract is easily terminable and not a subject for an anti-trust claim. Amended Counterclaims to Plaintiffs' Second Amended Consolidated Complaint (Doc. 94 filed 11/18.2022; the "Amended Counterclaims") ¶ 12, 6:15 (emphasis added); see Joinder at 1:10-2:3.  Pandora's Opposition Memorandum (Doc. 130 filed 1/25/2023; "Opp.") does not contest otherwise.  Instead, Pandora merely asserts that Mr. Black's termination of his affiliation agreement with Spoken Giants does not prove at the pleading stage that Mr. Black is not a member of a conspiracy with Spoken Giants.  Opp. 5:22-28 (fn. 1).  Pandora's four-page argument that Mr. Black has not withdrawn from a conspiracy with Spoken Giants, however, is the epitome of misdirection – as Mr. Black never raised the fact that he is not a member of any such conspiracy with Spoken Giants as a basis to dismiss the Amended Counterclaims. Opp. 3:14-7:12.

Instead, the point raised by Mr. Black is that easily terminable contracts like the affiliation agreements with Spoken Giants are not a basis upon which to allege antitrust violations, citing *Sanofi-Aventis U.S., LLC v. Mylan, Inc. and Mylan Specialty, LP*, 44 F.4th 959, 988 (10th Cir. 2022) ("It is axiomatic that short, easily terminable exclusive agreements are of little antitrust concern; a competitor can simply wait for the contracts to expire or make alluring offers to initiate termination.") and *Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2nd Cir. 1984) ("[T]he opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available."). Joinder, 1:10-2:9.

Pandora argues that *Sanofi-Aventis* is inapposite because it "presumes an otherwise competitive market, in which parties to the exclusive agreement will decide whether to continue or terminate their agreement based on the surrounding competitive circumstances." Opp. 8:13-17. Pandora goes on to argue that the Spoken Giants' affiliation agreements preclude competition. Opp. 8:18-9:11. But Spoken Giants ignores both the terms of the affiliation agreements, which unequivocally show that they are easily terminable,[1] and the fact that Spoken Giants does not represent a significant amount of the relevant market to preclude competition. As to the former, Spoken Giants' affiliation agreements are for a three-year term, terminable upon notice of at least three months prior to the end of the term. Spoken Giants' Ex. A to Motion to Dismiss (Doc. 102-2 filed 12/19/2022) at p. 2, § 1. The exclusive agreement in *Sanofi-Aventis* similarly was for two and one-half years, terminable on

---

[1] Also, as noted in Spoken Giants' Reply Memorandum in support of its Motion to Dismiss, Spoken Giants' affiliation agreements expressly permit comedians to individually negotiate public performance licenses (except to other performance rights organizations), so they are not "de facto exclusive" as claimed by Pandora. See Spoken Giants' Reply Memorandum filed February 8, 2023 (Doc. No. 143) at 4:2-14 and ECF. No. 102-2.

ninety days' notice.  *Sanofi-Aventis*, 44 F.4th at 988.  As to the latter point, Spoken Giants only represents hundreds of comedians, while Pandora streams the recordings of thousands of comedians.  Amended Counterclaims, ¶¶ 23, 38; see Spoken Giants' Motion to Dismiss at Doc. 102 ("Spoke Giants' Motion to Dismiss"), p. 26:12-28.  By contrast, the defendant in *Sanofi-Aventis* had a much larger share of the market – 31% - and the court nevertheless concluded that the easily terminable exclusive contracts did not provide a basis for an antitrust claim.  *Sanofi-Aventis*, 44 F.4th at 988.  The analysis of the *Sanofi-Aventis* case, therefore, is on-point and shows that Pandora's antitrust claims must be dismissed because the affiliation agreements are easily terminable and do not prevent Pandora from engaging in the market for individual licenses of comedians' underlying compositional copyrights.[2]

Second, Pandora cannot legitimately assert that the availability of obtaining literary copyrights from individual comedians was "illusory" when Pandora admits it will not negotiate an individual license for more than $0.[3]  This is a tacit admission that it is Pandora which is creating the "illusion" of somehow being prevented from negotiating individual licenses of comedians' literary copyrights, as instead it is

---

[2] The fallacy of Pandora's arguments is also shown by Pandora's admission that it will not negotiate with an individual comedian to license underlying compositional copyrights for anything greater than $0.  Amended Counterclaims, ¶¶ 33, 63.

[3] Pandora's argument that negotiating individual licenses with comedians is "illusory" because Spoken Giants "insisted" and "required" Pandora to take an "all-or-nothing" license is legally and factually wrong.  Opp. 10:14-27.  Pandora is factually incorrect because Spoken Giants never "insisted" or "required" that Pandora enter into a blanket license.  Instead, and as explained in detail in Spoken Giants' Motion to Dismiss, Spoken Giants' Proposed Term Sheet was presented to Pandora expressly as merely a "first step" towards negotiations.  Spoken Giants' Motion to Dismiss, 10:18-11:12 (citing Ex. B, Doc. 102-3 filed 12/19/2022).  Pandora is legally incorrect because even if Spoken Giants presented its Proposed Term Sheet as something "required" (it did not), this does nothing to obviate Pandora's opportunity to negotiate individual licenses with individual comedians because their affiliation agreements with Spoken Giants are easily terminable.

Pandora which refuses to enter into this market.  And despite Pandora' protestations to the contrary, Pandora's current allegations in this regard are a 180 degree turn from Pandora's original allegations that it is Word Collections (and thus presumably Spoken Giants as well) which prevent Pandora from entering into individual licenses with individual comedians.  Joinder, 3:1-12; Opp. 15:3-16.[4]

Third, Pandora has failed to allege any monopolistic market power by Spoken Giants, which has affiliation agreements with only hundreds of comedians, because Pandora admits that it streams the jokes of thousands of comedians.  Amended Counterclaims, ¶¶ 23, 38.  Pandora attempts to avoid this fatal flaw in its antitrust claims by arguing that it needs a core of "must-have" comedians in order to stream comedy to its listeners.  Amended Counterclaims, ¶¶ 111-112.  But Pandora alleges that it will not enter into any individual license with an individual comedian for a fee of more than $0.  Amended Counterclaims, ¶ 81. Accordingly, the only "must-have" comedians are those who are willing to take nothing for a license.  Pandora's retort is that it only alleged that it refuses to negotiate an "inflated" or "supra-competitive" royalty.  Opp. 11:26-12:14 (citing Amended Counterclaims ¶¶ 33, 63).  But when Pandora uses the terms "inflated" and "supra-competitive" it means anything greater than $0 – even 1 cent!  Pandora's allegations thus demonstrate it is Pandora – not the

---

[4] Pandora cannot defend its inconsistent allegations on the (false) premise that it purportedly obtained licenses for individual comedians' literary works from the record labels due to longstanding custom and practice.  Opp. 13:10-14:5. This is because Pandora's Amended Counterclaims expressly "assume *arguendo* that there exist public performance, reproduction, and/or distribution rights in the jokes embodied in comedy recordings and that comedians, as authors of those jokes, might have retained those rights."  Amended Counterclaims, ¶ 7, 4:16-19 (emphasis in original).  Indeed, it is on the basis that the comedians have rights to negotiate concerning their underlying jokes which forms the entire basis of Pandora's antitrust counterclaims.

comedians, whether individually or as affiliated with Spoken Giants (or Word Collections) – which is the one yielding power in the market for comedy streaming.[5]

Fourth, Pandora fails to allege the details of "who, did what, to whom (or with whom), or where and when," required to support its claims that Mr. Black supposedly engaged in a conspiracy with other comedians to engage in price fixing. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194, n. 6 (9th Cir. 2015 (citation omitted). Joinder, 6:3-12, including footnote 9. Indeed, Pandora's Amended Counterclaim fails to name even one comedian with whom Mr. Black purportedly conspired to engage in price fixing. Pandora's Opposition does not even address this argument. The Court should dismiss Pandora's antitrust conspiracy claims alleged against Mr. Black.

For the foregoing reasons, and those addressed in the papers submitted by Spoken Giants in support of its Motion to Dismiss, which Mr. Black has joined, the Court should dismiss Pandora's claims against Mr. Black.

Dated:  February 8, 2023          Respectfully submitted,

**KING & BALLOW**

By:  /s/ Richard S. Busch
Richard S. Busch
Attorneys for Plaintiff/Counterclaim-Defendant Lewis Black

---

[5] Pandora has also failed to allege any facts to support its assertion that Spoken Giants has enough "must-have" comedians to prevent Pandora from remaining in the comedy streaming market. See Spoken Giants' Motion to Dismiss, 15:10-16:28.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lewis Black, certifies that this brief contains 1865 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  February 8, 2023           **KING & BALLOW**

                                   By:   /s/ Richard S. Busch
                                         Richard S. Busch
                                         Attorneys for Plaintiff/Counterclaim-
                                         Defendant Lewis Black