MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
pfakler@mayerbrown.com
JACOB B. EBIN (*pro hac vice*)
jebin@mayerbrown.com
ALLISON AVIKI (*pro hac vice*)
aaviki@mayerbrown.com
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
jnadolenco@mayerbrown.com
DANIEL D. QUEEN (SBN 292275)
dqueen@mayerbrown.com
MEERIM A. NEHME (SBN 322234)
mnehme@mayerbrown.com
333 S. Grand Avenue, 47th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

[*Additional counsel listed on signature page*]

Attorneys for Defendant
Pandora Media, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. 2:22-cv-00809-MCS-MAR<br><br>CONSOLIDATED ACTION<br><br>**DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT LEWIS BLACK'S JOINDER IN RULE 11 MOTION FOR SANCTIONS**<br><br>Date: March 6, 2023<br>Time: 9:00 a.m.<br>Crtrm.: 7C<br>Assigned to Hon. Mark C. Scarsi |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD ............................................................................................ 1

ARGUMENT .......................................................................................................... 2

A.    Pandora's counterclaims were presented for a proper purpose and are not legally or factually baseless ................................................................. 2

    1.    Pandora need not name each co-conspirator as a counterclaim defendant ............................................................................................ 3

    2.    Mr. Black's purported termination of his affiliation agreement with SG is not "fatal" to Pandora's claims .......................................... 5

    3.    Pandora's counterclaims are entirely consistent ................................. 7

    4.    Pandora accurately describes SG as a de facto exclusive licensor of the works in its portfolio ................................................................ 9

    5.    Pandora's price-fixing claims are well supported............................. 10

B.    Mr. Black and his counsel should be sanctioned for his frivolous and harassing Joinder ..................................................................................... 12

CONCLUSION AND REQUEST FOR RELIEF ................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agron, Inc. v. Chien-Lu Lin*,
  2004 WL 555377 (C.D. Cal. Mar. 16, 2004) ................................................. 2, 12

*Frost v. LG Elecs. Inc.*,
  2017 WL 2775041 (N.D. Cal. Jun. 27, 2017) ......................................... 2, 10, 11

*Intelligent SCM, LLC v. Qannu PTY Ltd.*,
  2015 WL 13916820 (C.D. Cal. July 2, 2015) ...................................................... 2

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................... 10, 11

*Lee v. Pow Ent., Inc.*,
  2021 WL 5768462 (9th Cir. Dec. 6, 2021) ................................................ 1, 2, 13

*Liu v. Marriott Vacation Worldwide*,
  2019 WL 8690216 (C.D. Cal. Jan. 30, 2019) ..................................................... 13

*Love v. Kwitny*,
  772 F. Supp. 1367 (S.D.N.Y. 1991) ..................................................................... 9

*Operating Eng'rs Pension Tr. v. A-C Co.*,
  859 F.2d 1336 (9th Cir. 1988) .............................................................................. 1

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
  32 F.4th 824 (9th Cir. 2022) ............................................................................... 11

*Power Analytics Corp. v. Operation Tech., Inc.*,
  2017 WL 2903257 (C.D. Cal. June 7, 2017) ..................................................... 11,

*Rachel v. Banana Republic, Inc.*,
  831 F.2d 1503 (9th Cir. 1987) .............................................................................. 4

*Redondo Beach Waterfront, LLC v. City of Redondo Beach*,
  2018 WL 5263174 (C.D. Cal. Jan. 31, 2018) ................................................ 2, 12

*Sanofi-Aventis U.S., LLC v. Mylan, Inc. Mylan Specialty, LP*,
  44 F.4th 959 (10th Cir. 2022) .............................................................................. 6

*Shams v. CVS Health Corp.*,
    2019 WL 1959576 (C.D. Cal. May 2, 2019) .......................................................... 9

*Stockroom Inc. v. Bronstein*,
    2008 WL 11339650 (C.D. Cal. Dec. 8, 2008) ..................................... 1, 2, 12, 13

*United Nat'l Ins. v. R&D Latex Corp.*,
    242 F.3d 1102 (9th Cir. 2001) ............................................................................. 2

*Walker Distrib. Co. v. Lucky Lager Brewing Co.*,
    323 F.2d 1 (9th Cir. 1963) ................................................................................... 4

*Walker v. Blackground Recs., LLC*,
    2017 WL 8186040 (C.D. Cal. Aug. 7, 2017) ............................................... 13, 14

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
    668 F.2d 1014 (9th Cir.1981) ............................................................................. 4

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................*passim*

Fed. R. Civ. P. 13 .......................................................................................................... 4

Fed. R. Civ. P. 15 .......................................................................................................... 4

## INTRODUCTION

While Lewis Black's Joinder in Spoken Giants' ("SG") Rule 11 Motion for Sanctions ("Joinder") on its surface alleges serious misconduct, upon even modest scrutiny it is revealed to be a demonstrably frivolous document. It is rife with blatant mischaracterizations of Pandora's FACCs, offers almost no factual or legal support for its inflammatory claims, and in several places is largely incoherent. Indeed, despite repeatedly and baselessly accusing Pandora and its counsel of making factual misrepresentations to the Court, Mr. Black casually admits in the Joinder that it is his own counsel that has made such a misrepresentation.

Mr. Black's Joinder offers no basis whatsoever—it hardly even tries—for imposing sanctions on Pandora and its counsel. Each of its allegations is self-evidently frivolous. Accordingly, the Court should find *it is the Joinder*—and not the FACCs—that is abusive, and meant only to cause Pandora and its counsel significant expense and reputational harm. This is precisely the sort of "groundless motion for sanctions [that] is *itself* subject to sanctions under Rule 11." *Stockroom Inc. v. Bronstein*, 2008 WL 11339650, at *2 (C.D. Cal. Dec. 8, 2008) (emphasis added). The Court should deny Mr. Black's Joinder and award Pandora the fees incurred in opposing this improper sanctions request in order to deter any further abusive conduct.

## LEGAL STANDARD

As explained in greater detail in Pandora's Opposition to SG's Motion for Sanctions (at 3-5), "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988); *see also Lee v. Pow Ent., Inc.*, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021). Sanctions "are reserved for the rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee*, 2021 WL 5768462, at *2 (brackets and

quotation marks omitted); *see Intelligent SCM, LLC v. Qannu PTY Ltd.*, 2015 WL 13916820, at *22 (C.D. Cal. July 2, 2015).

Rule 11 "recognize[s] that our system of litigation is an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task." *United Nat'l Ins. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001). As a result, "the Ninth Circuit has unequivocally stated that 'a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading.'" *Agron, Inc. v. Chien-Lu Lin*, 2004 WL 555377, at *12 (C.D. Cal. Mar. 16, 2004) (quoting *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (per curiam)); *Frost v. LG Elecs. Inc.*, 2017 WL 2775041, at *3 (N.D. Cal. Jun. 27, 2017) (Rule 11 inapplicable "as long as the complaint is supported by some factual basis from an objective perspective"). Similarly, claims are "legally baseless" only if it is "patently clear that [they have] absolutely no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law." *Redondo Beach Waterfront, LLC v. City of Redondo Beach*, 2018 WL 5263174, at *5 (C.D. Cal. Jan. 31, 2018).

Given the seriousness of Rule 11 allegations and the substantial time spent resolving them, "a groundless motion for sanctions is itself subject to sanctions under Rule 11." *Stockroom*, 2008 WL 11339650, at *2; *see also* Fed. R. Civ. P. 11(c)(2) (providing that when a party moves for Rule 11 sanctions the court may award the prevailing party its reasonable expenses, including attorneys' fees).

## ARGUMENT

**A. Pandora's counterclaims were presented for a proper purpose and are not legally or factually baseless.**

Mr. Black's attempt to piggyback off SG's Rule 11 Motion is frivolous. He fails to carry his heavy burden of demonstrating that Pandora brought its

counterclaims for an improper purpose. He likewise fails to show that the FACCs are legally or factually baseless. Instead, Mr. Black attempts to reinforce SG's own frivolous arguments, not through facts or the law, but through hyperbolic attorney argument and groundless name-calling. Offering nothing of substance, Mr. Black's Joinder should be denied. Moreover, such an insubstantial and abusive filing merits that Mr. Black and his counsel themselves be sanctioned for burdening Pandora and the Court with this Joinder, which would serve an important role in deterring similar obstructive behavior going forward in this litigation.

### 1. *Pandora need not name each co-conspirator as a counterclaim defendant.*

Mr. Black begins by asserting that Pandora's claim that SG demanded that Pandora take its all-or-nothing blanket license is "completely false" and "made in bad faith." Joinder 2-3. From this incorrect premise, Mr. Black makes baseless assertions over the timing of Pandora's counterclaims, ultimately leaping to the conclusion that, because Mr. Black was the only "comedian ever affiliated with" SG to be sued by Pandora for antitrust violations, Pandora's counterclaim must have been brought in bad faith. *Id.* at 3. This is a frivolous argument resting on a non sequitur.

Instead of meaningfully supporting his claim that Pandora's allegation that SG demanded that it take an all-or-nothing blanket license is knowingly false, Mr. Black largely punts to SG's motion, albeit without citation. But as explained in Pandora's Opposition to SG's Motion for Sanctions ("SG Opp."), this claim is absurd—it is belied by the plain language of the proposed license and SG's own repeated statements, which make it abundantly clear that SG's entire business model is premised on blanket licensing. SG Opp. 6-8.

Mr. Black then jumps to a non sequitur, asserting that because Pandora did not bring a claim against "any other comedian ever affiliated with Spoken Giants," Pandora's counterclaim against Mr. Black was necessarily brought in bad faith. Mr. Black offers no support for this argument, nor does he explain what this has to do

with his assertions regarding SG's proposed blanket license. And he certainly never explains how it amounts to a Rule 11 violation.

In any event, Mr. Black's unsupported argument runs headlong into longstanding Ninth Circuit precedent, which makes clear that "[a] plaintiff need not sue all conspirators; he may choose to sue but one." *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 8 (9th Cir. 1963); *see also William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1052–53 (9th Cir.1981) (A party is "not required to sue all of the alleged conspirators … as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy"). Pandora's compliance with long-standing and binding precedent clearly cannot be the basis for a sanctions motion. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (a filing "well-grounded in fact and law cannot be sanctioned"). Moreover, one of Pandora's bases for standing to bring its antitrust counterclaims is the cost of litigation stemming from the copyright infringement lawsuits brought by Mr. Black and others to further the goals of the SG and WC cartels. Under these circumstances, it is entirely reasonable and appropriate to file counterclaims against those parties that caused this direct harm to Pandora—a harm that the Court has already concluded gave Pandora standing to bring its claims. October 26, 2022 Order Re: Motion to Dismiss 11, 13-14.

Mr. Black also appears to insinuate that the timing of Pandora's counterclaim necessitates a finding of bad faith. Joinder 3. This argument is similarly meritless. Pandora filed its counterclaims in accordance with Rules 13 and 15 of the Federal Rules of Civil Procedure, and Mr. Black has made no showing (nor could he) that there was anything improper—procedurally or otherwise—with Pandora bringing its allegations of violations of Sections 1 and 2 of the Sherman Act as counterclaims. Mr. Black makes no serious effort to demonstrate sanctionable conduct by Pandora, nor does he cite any caselaw remotely suggesting that such conduct is even

problematic. There was nothing improper about the timing, the parties named, or the substance of Pandora's counterclaims.

### 2. Mr. Black's purported termination of his affiliation agreement with SG is not "fatal" to Pandora's claims.

Mr. Black's second argument—that the alleged termination of his affiliation agreement with SG is "fatal to Pandora's antitrust claims" (Joinder 4)—fares no better. As a preliminary matter, and as discussed in the FACCs and Pandora's Opposition to Lewis Black's Joinder in Motion to Dismiss ("MTD Joinder Opp."), Mr. Black is an outspoken member of SG, having appeared alongside SG's co-founder and CEO Jim King on numerous occasions as the public face of the cartel. FACCs ¶ 11. Moreover, he remains part of the conspiracy spearheaded by SG—he has never disavowed the conspiracy and he continues to support its goals, including by bringing his copyright infringement claims against Pandora. *Id.* ¶¶ 11-12; MTD Joinder Opp. 3-7. Indeed, other than conclusory statements in pleadings filed by his outside counsel in this litigation, Pandora is unaware of Mr. Black ever publicly acknowledging that he has left the cartel. FACCs ¶12.

Mr. Black nevertheless suggests that because he says that he was able to terminate his affiliation agreement with SG, those agreements must be of "little antitrust concern," apparently rendering Pandora's filing of the FACCs worthy of sanctions. Mr. Black's contention is wrong. As a preliminary matter, and as Pandora demonstrated in the MTD Joinder Opp., even if Mr. Black had actually and fully withdrawn from the Spoken Giants cartel, such withdrawal still does not absolve him of liability for his antitrust violations at issue in the FACCs. MTD Joinder Opp. 5-7. If Mr. Black's argument had any merit, every antitrust conspirator could avoid all liability for past illegal conduct merely by ceasing that conduct after getting caught. That is obviously not the law. *Id.* Moreover, the only documentary evidence submitted by Mr. Black and SG regarding the current status of Mr. Black's affiliation with SG, a document they claim is Mr. Black's SG affiliation agreement, does not

allow termination at all prior to the expiration of the agreement's three-year term. Dkt. 128-6, DeArman Decl. Ex. D. And while SG has recently claimed that Mr. Black executed a termination agreement on August 24, 2022, neither SG nor Mr. Black has produced a copy of that agreement. Indeed, neither SG nor Mr. Black has produced a single document in this case, whether about Mr. Black's purported termination or otherwise.

But, even if it were true that termination of SG's affiliation agreement is logistically easy, as explained in the MTD Joinder Opp. (at 7-11), the "axiomatic" rule Mr. Black points to "that short, easily terminable exclusive agreements are of little antitrust concern" (*Sanofi-Aventis U.S., LLC v. Mylan, Inc. Mylan Specialty, LP*, 44 F.4th 959, 988 (10th Cir. 2022)) presumes an otherwise *competitive* market in which the parties to the exclusive agreement will decide whether to continue or terminate their agreement based on the surrounding competitive circumstances.

But the market here is not competitive, rendering Mr. Black's "rule" beside the point. Here, and unlike in *Sanofi-Aventis*, SG and its Comedians, through their affiliation agreements, have eliminated competition among the Comedians, aligning them in the hands of SG, which recruited them in the first place with promises of utilizing its amassed monopoly power to collect returns from Pandora and others beyond what the Comedians enjoyed under competitive conditions. FACCs ¶¶ 74-80. Terminating participation in SG—at least without simultaneously joining Word Collections—would sacrifice the terminating Comedians' access to a share of SG's monopoly profits. These circumstances render Mr. Black's analogy to *Sanofi-Aventis*—an exclusive dealings case in which Mylan was alleged to have used exclusive agreements to keep its competitor out of the market—inapposite. There, the court concluded that the agreements being challenged actually "stimulate[d] price competition." 44 F. 4th at 989. The agreements here eliminate it. In short, Mr. Black's arguments about his purported termination from SG in no way demonstrate any sanctionable conduct on Pandora's part.

PANDORA MEDIA, LLC'S OPPOSITION TO LEWIS BLACK'S JOINDER IN MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

To the contrary, the only sanctionable conduct that stems from Mr. Black's purported termination of his SG affiliation agreement is his own counsel's misrepresentation to the Court regarding the timing of that supposed termination. Mr. Black's December 19, 2022 Motion for Joinder in Motion to Dismiss states that Mr. Black "terminat[ed] . . . his affiliation agreement with Spoken Giants *prior to becoming a plaintiff in this lawsuit.*" MTD Joinder at 1 (emphasis added). But, as the instant Joinder now concedes, that was false. Even according to Mr. Black, at the time he became a plaintiff in this litigation, "he had not yet terminated his relationship with Spoken Giants." Joinder 3 n.4. If anything, it is Mr. Black's counsel who has engaged in deliberate misrepresentation to the Court.

### 3. *Pandora's counterclaims are entirely consistent.*

Mr. Black's third argument is similarly frivolous. Mr. Black once again tries to show that there is some inconsistency between Pandora's Amended Counterclaims and those it previously brought against Word Collections, claiming that Pandora, on the one hand, "admits that it is not interested in licensing the individual Works of any Comedian for any price" and, on the other, that WC and SG "prevent Pandora from licensing Works individually." Joinder 5. Here again, Mr. Black cites no caselaw and otherwise fails entirely to demonstrate that the conduct he complains of comes anywhere close to warranting sanctions. And, yet again, Mr. Black's claim is wrong—it rests on blatant mischaracterizations of the FACCs.

As Pandora has explained (MTD Joinder Opp. 11-15), Pandora has not asserted that it would never enter into an individual license with a comedian. What the FACCs actually say is that Pandora would consider dropping a comedian if that comedian demanded a *supracompetitive royalty on top of what they were already receiving. Id.* There is also nothing inconsistent about Pandora stating, on the one hand, that it will not enter into an agreement with any individual comedian for a supracompetitive fee and explaining, on the other, that Word Collections' affiliation agreements with its comedians and its licensing practices prevent those comedians

from licensing their rights outside the WC cartel—a point that Pandora makes in both the original and amended counterclaims against Word Collections. *Id.*

As to Mr. Black's related assertion (at 5) that there is something nefarious about the fact that Pandora never approached him directly about licensing any rights he may control, that too is wrong. As Pandora has repeatedly explained, it did not approach Mr. Black directly because Pandora historically had all of the necessary licenses in place such that reaching out to Mr. Black would not have made sense. As explained in the FACCs, Pandora "has always taken licenses for the comedy recordings that it offers, and through those licenses has obtained (either explicitly or implicitly) *all of the rights* it needs to stream those recordings." FACCs ¶ 30 (emphasis added). The Amended Counterclaims further expound on this, explaining that "[c]omedy, like every other copyright-intensive industry except the dysfunctional music licensing market, has always followed a licensing at the source model whereby the 'source' or creator of the final product—in this case the record label that creates or distributes the comedy recordings—secures and passes along *all necessary rights, including any rights in any pre-existing works used in the new derivative work* to all downstream distributors, licensees, and end-users, either explicitly or implicitly." *Id.* (emphasis added). Conforming with this longstanding practice, Pandora has not in the past separately secured licenses just covering the underlying comedy routines embodied in comedy recordings, *because it did not need any separate licenses*—all necessary rights were provided along with the rights to stream the recordings. *Id.*

Moreover, as the FACCs also explain in detail, comedians and their representatives were clearly satisfied with the royalties and other benefits that Pandora has always provided in exchange for the right to use their comedy material. For over a decade, and despite Pandora's complete transparency as to its comedy-licensing practices, no comedian ever challenged those practices. Instead, comedians continued to seek increased airplay on Pandora. Doing so would make no economic

sense if the comedians felt that they were not being fully and appropriately compensated by Pandora. FACCs ¶¶ 2, 29-33. It was only with the launch of Spoken Giants (and Word Collections less than a week earlier) that anyone has tried to upend what has been working well for all involved for decades. *Id.*, ¶ 32.

While Mr. Black may disagree with these factual allegations or the inferences Pandora draws from them, such disagreement is far from demonstrating a Rule 11 violation. *See, e.g.*, *Shams v. CVS Health Corp.*, 2019 WL 1959576, at *7 (C.D. Cal. May 2, 2019) (denying motion for sanctions where misrepresentations were not unequivocal, such that "reasonable attorneys could disagree on these issues."); *Love v. Kwitny*, 772 F. Supp. 1367, 1377 (S.D.N.Y. 1991) (denying motion for sanctions and granting nonmovant fees where movant "condemned as a Rule 11 violation any suggested view or interpretation of the facts that differs from his own. Which is to say, what he objects to is advocacy by his opponent").

### 4. *Pandora accurately describes SG as a de facto exclusive licensor of the works in its portfolio.*

Mr. Black is equally wrong in criticizing Pandora's description of SG as the "de facto exclusive licensor" of the rights controlled by its comedians. Joinder 5-6. As Pandora has explained, the FACCs are clear that the affiliation agreements, although facially purporting to preserve the Comedians' ability to issue individual, direct, non-exclusive licenses outside the cartel, in practical effect eliminate any real-world incentive for either Pandora or a Comedian to enter into such a direct license so long as the Comedian remains a member of the cartel. SG Opp. 9-10. But rather than acknowledge that this is explicitly spelled out in the FACCs (FACCs ¶¶ 67-71) or that Pandora expressly and forthrightly acknowledges that SG's Comedians purportedly retain the theoretical ability to enter into an individual license with Pandora (*id.*, ¶ 111), Mr. Black instead ignores what the FACCs actually say. Nor does he even try to explain why either a SG-affiliated Comedian or a service like Pandora would ever actually enter into an individual license. Indeed, no SG-member

ever attempted to enter into such a license with Pandora. (FACCs ¶ 41). Nor did SG offer Pandora a license for an individual comedian's rights. FACCs ¶ 41; Dkt. 140-10, Declaration of Iain Morris in Support of Pandora Media, LLC's Opposition to Spoken Giants, LLC's Motion for Sanctions ("Morris Decl."), ¶¶ 4-7.

But even if Pandora were wrong about this and there were some reason (never explained by Mr. Black) to expect direct licensing by Comedian-members of the SG cartel to take place, that would not come close to establishing a violation of Rule 11. So long as an allegation "is supported by some factual basis," a motion for sanctions must be denied. *Frost*, 2017 WL 2775041, *3. Pandora's allegations about the exclusivity of SG's licensing relationship with its Comedians are not only well supported for the reasons described above, Pandora's allegations are reinforced by SG's own statement (by email, to Pandora) that SG's affiliation agreement "show[s] our *exclusive* right to license the works" in SG's catalog. Morris Decl. ¶ 7 & Ex. F (emphasis added). It cannot be that SG tells Pandora that its right to license is "exclusive" only to have Pandora wind up sanctioned for using the same language as SG but adding the modifier "de facto." Pandora's factual basis for its "de facto" characterization is more than well supported.

### 5. *Pandora's price-fixing claims are well supported.*

Mr. Black's final effort to support his request for sanctions is his assertion that Pandora's counterclaims are "legally baseless because Pandora continues to fail to allege facts demonstrating 'who, did what, to whom (or with whom),' or the 'where and when' required to support its claims." Joinder 6-7. This claim is devoid of fact and substance—it gives every appearance that Mr. Black's counsel has not read the FACCs, Pandora's opposition to SG's motion to dismiss the FACCs, or Pandora's opposition to Mr. Black's Joinder in that motion.

Mr. Black's conclusory claim is plainly false, as even a cursory review of the FACCs demonstrates. Not only do the FACCs demonstrate "who, did what, to whom (or with whom), where, and when" (*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048

(9th Cir. 2008)), but they also demonstrate "[a]cceptance by competitors … of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce" (*PLS.Com, LLC v. Nat'l Ass'n of Realtors,* 32 F.4th 824, 843 (9th Cir. 2022) (citation omitted)) as well as plus factors providing circumstantial evidence of agreement. SG MTD Opp. 12-19.

The FACCs also directly address what the Court regarded as omissions in the original WC complaint. Newly added material, among other things, includes factual allegations: (i) identifying and describing "plus factors"; (ii) regarding the realities of the market; (iii) regarding the historic licensing of comedy rights and the change to historic practice that the horizontal price-fixing conspiracy aims to bring about; (iv) regarding the risks to any individual comedian of demanding a supra-competitive royalty; (v) regarding the "who, did what, to whom (or with whom), where, and when" of the conspiracy; (vi) regarding the forced removal of comedy content from Pandora as a result of SG's actions; and (vii) additional public statements from SG reinforcing its anticompetitive scheme. *See* FACCs ¶¶ 23, 26, 35-40, 42, 50-59, 62-73, 88, 101-110, 127-134; Dkt. 140-1, Declaration of William H. Stallings in Support of Pandora Media, LLC's Opposition to Spoken Giants' Rule 11 Motion for Sanctions ("Stallings Decl."), ¶ 10. In all, these new allegations offer substantial additional information concerning the circumstances of the conspiracy's creation and operation, the reasons to believe that the Comedians knowingly participated in a collective scheme, and the circumstantial evidence of agreement. *See* SG MTD Opp. 13-19. Pandora's conspiracy claims are anything but "legally baseless," and the request for sanctions should be denied. *See, e.g.*, *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 2903257, at *6 (C.D. Cal. June 7, 2017) (denying sanctions for amended antitrust claim where there was some credible basis to support the claim); *Frost*, 2017 WL 2775041, at *3 ("Even assuming that the factual basis is weak and might fail to withstand a motion to dismiss, the first prong of the Rule 11 analysis is

not met as long as the complaint is supported by some factual basis from an objective perspective.").

\*   \*   \*

At bottom, Mr. Black's Joinder has no plausible basis. The Joinder is an exercise in projection, where Mr. Black falsely accuses Pandora and its counsel of the misconduct in which he and his counsel have actually engaged. He accuses Pandora of misrepresenting documents which, as is readily apparent, the FACCs accurately describe. And his challenge to Pandora's legal arguments is directed largely at straw-man mischaracterizations of Pandora's real contentions, making no attempt to demonstrate that Pandora's legal position *actually* lacks merit. No reasonable lawyer could say that "clear authority or [Pandora's] own clear admission erases the factual underpinning from some essential element of [Pandora's] pleading." *Agron*, 2004 WL 555377, at \*12 (cleaned up). Nor would an objective observer find it "patently clear that [Pandora's claims have] absolutely no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law." *Redondo*, 2018 WL 5263174, at \*5.

**B.     Mr. Black and his counsel should be sanctioned for his frivolous and harassing Joinder.**

Mr. Black and his counsel should face sanctions for his frivolous Joinder. As noted, a "groundless motion for sanctions is itself subject to sanctions under Rule 11." *Stockroom*, 2008 WL 11339650, at \*2 (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001)). The party on the receiving end of such a motion need not file its own Rule 11 motion (and satisfy the pre-filing formalities for doing so) to seek counter-sanctions. *Id.* As it happens, though, Pandora did inform Mr. Black's counsel during the parties' Rule 11 meet-and-confer that it would seek to recover its costs in defending against this unwarranted filing. Stallings Decl. ¶ 16. Several considerations point toward sanctioning Mr. Black and his counsel.

***First***, Mr. Black's arguments are groundless. By making inflammatory and unsubstantiated claims to sanction routine litigation conduct and credible legal arguments, Mr. Black's motion has been "presented for an[] improper purpose, such as to harass" Pandora and its counsel. Fed. R. Civ. P. 11(b). Moreover, filing a baseless Joinder in the midst of dispositive-motions briefing injects "unnecessary delay" into the case and "needlessly increase[s] the cost of litigation." *Id.* Parties who choose to engage in such misconduct should not do so cost-free. *Liu v. Marriott Vacation Worldwide*, 2019 WL 8690216, at *3 (C.D. Cal. Jan. 30, 2019) (sanctioning Rule 11 movant for filing a "frivolous" motion "without a legal or factual basis for support" and that "improperly [sought] sanctions . . . for entirely reasonable litigation activity"); *Stockroom*, 2008 WL 11339650, at *3 (ordering sanctions against Rule 11 movant "in an amount sufficient to reimburse [the party] for defending against these frivolous motions and to deter [the movant] from further similar conduct").

***Second***, Mr. Black's improper purpose and bad faith are confirmed by the timing and character of his Joinder. When first told that Pandora intended to amend its counterclaims against SG and Mr. Black, counsel for Mr. Black immediately threatened Pandora with a Rule 11 sanctions motion *before* he even saw the amended pleadings.[1] Fakler Decl. ¶ 3. Mr. Black's counsel reiterated that threat in an email, again *before* the FACCs were filed. *Id.* at ¶ 5 & Ex. A. It is therefore apparent that Mr. Black was determined to seek sanctions no matter the strength of Pandora's amended claims. This is only reinforced by the nature of Mr. Black's arguments, which consist mostly of conclusory, and in places incoherent, attorney argument, devoid of factual or legal support. Such a motion flouts the goal of Rule 11, which provides punishment that is to be "reserved for the rare and exceptional case." *Lee*, 2021 WL 5768462, at *2 (internal quotation marks omitted); *Walker v. Blackground*

---

[1] Mr. Black's counsel similarly took the position—also before seeing the amended pleadings—that any attempt to amend would be futile even though the Court rejected WC's argument that amendment would be futile when it granted Pandora leave to amend the WC counterclaims. Fakler Decl. ¶ 3; Dkt. 83 at 27; Dkt. 49 at 25, 35; Dkt. 60 at 6.

*Recs., LLC*, 2017 WL 8186040, at *8 (C.D. Cal. Aug. 7, 2017) (sanctioning party seeking Rule 11 sanctions when it "knew there was no legally tenable basis to pursue their Rule 11 motion").

***Third***, however the Court ultimately rules on Pandora's FACCs, this case will occupy a significant portion of the Court's and the parties' time over the coming year. For the litigation to proceed efficiently and fairly, Mr. Black and his counsel must be discouraged from submitting obstructive filings like this Joinder. Pandora's ordinary filings and unexceptional claims are not brought to "harass[]" or "intimidate" as Mr. Black hyperbolically states (Joinder 7), and Mr. Black has no warrant to respond with wild and destructive accusations. Sanctioning Mr. Black and his counsel to pay Pandora's costs in briefing this opposition would provide a much-needed deterrent to such vexatious conduct.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Pandora respectfully requests that the Court deny Mr. Black's Joinder. In light of Mr. Black's frivolous invocation of Rule 11, Pandora further asks that it be awarded its fees and costs in defending against the Joinder.[2]

---

[2] Pursuant to the Court's Standing Order at Section 10(d), Pandora stands ready to submit the necessary documentation to support a fee award should it be granted.

Dated: February 10, 2023

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DANIEL D. QUEEN
MEERIM NEHME

By: */s/ Paul M. Fakler*
    Paul M. Fakler

MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
wstallings@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC

## **FILER'S ATTESTATION**

The undersigned, counsel of record for Defendant/Counterclaimant Pandora Media, LLC, certifies that this brief contains 4642 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 10, 2023

/s/*Paul M. Fakler*
Paul M. Fakler

16
PANDORA MEDIA, LLC'S OPPOSITION TO LEWIS BLACK'S JOINDER IN MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR