MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
JACOB B. EBIN (*pro hac vice*)
*jebin@mayerbrown.com*
ALLISON AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DANIEL D. QUEEN (SBN 292275)
*dqueen@mayerbrown.com*
MEERIM A. NEHME (SBN 322234)
*mnehme@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, California  90071
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
Pandora Media, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR |
| This Document Relates To: | <u>CONSOLIDATED ACTION</u> |
| ALL ACTIONS | **DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS** |
| | Filed Concurrently with Supporting Declarations |
| | Date: March 6, 2023
Time: 9:00 a.m.
Crtrm.: 7C
Assigned to Hon. Mark C. Scarsi |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

APPLICABLE LEGAL STANDARDS ..................................................................... 3

    A.    Rule 11. .................................................................................................... 3

    B.    28 U.S.C. § 1927. ................................................................................... 5

    C.    Inherent authority. .................................................................................. 6

ARGUMENT .............................................................................................................. 6

    A.    Pandora's amended counterclaims are not factually baseless and
           were brought after a reasonable investigation. ...................................... 7

          1.    Pandora's monopolization claims are well-supported ............... 7

          2.    Pandora's price fixing claims are well-supported. .................. 12

          3.    WC demanded that Pandora take its all-or-nothing blanket
               license. ..................................................................................... 13

    B.    The FACCs were not brought for an improper purpose. ..................... 17

    C.    WC should be sanctioned for its frivolous and harassing motion. ..... 19

CONCLUSION AND REQUEST FOR RELIEF ..................................................... 21

i

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agron, Inc. v. Chien-Lu Lin*,
  2004 WL 555377 (C.D. Cal. Mar. 16, 2004) ................................................. 4, 16

*Bhakta v. Bhakta*,
  2021 WL 4352375 (C.D. Cal. June 14, 2021) ...................................................... 6

*Cal. Bail Bond Antitrust Litig.*,
  511 F.Supp.3d 1031 (N.D. Cal. 2021) ................................................................. 4

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ...................................................................... 3, 19

*DC2NY, Inc. v. Academy Bus, LLC*,
  2020 WL 1536219 (D.D.C. Mar. 31, 2020) ........................................................ 9

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) ................................................................................. 9

*EM Gen., LLC v. Ecommerce, LLC*,
  2021 WL 4497888 (C.D. Cal. Jul. 28, 2021) ...................................................... 4

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) .............................................................................. 5

*Frost v. LG Elecs. Inc.*,
  2017 WL 2775041 (N.D. Cal. Jun. 27, 2017) ................................................ 4, 13

*Harara v. ConocoPhillips Co.*,
  2005 WL 240773 (N.D. Cal. Jan. 27, 2005) ..................................................... 17

*Harvey v. Cable News Network, Inc.*,
  48 F.4th 257 (4th Cir. 2022) ............................................................................... 4

*Intelligent SCM, LLC v. Qannu PTY Ltd.*,
  2015 WL 13916820 (C.D. Cal. July 2, 2015) ..................................................... 3

*Keegan Mgmt. Co., Secs. Litig.*,
  78 F.3d 431 (9th Cir. 1996) ................................................................................ 5

ii

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................. 13

*Kinslow v. Fifth Third Bank, Inc.*,
   529 F. App'x 467 (6th Cir. 2013) ............................................................. 18

*Lee v. Pow Ent., Inc.*,
   2021 WL 5768462 (9th Cir. Dec. 6, 2021) ............................................. 3, 21

*Lincoln Prop. Co. v. Roche*,
   546 U.S. 81 (2005) .............................................................................. 17, 18

*Liu v. Marriott Vacation Worldwide*,
   2019 WL 8690216 (C.D. Cal. Jan. 30, 2019) ........................................... 20

*Martin v. Ford Motor Co.*,
   2019 WL 6875344 (C.D. Cal. Dec. 13, 2019) .......................................... 18

*Mattel, Inc. v. MGA Ent., Inc.*,
   705 F.3d 1108 (9th Cir. 2013) ................................................................. 18

*Meredith Corp. v. SESAC LLC*,
   1 F. Supp. 3d 180 (S.D.N.Y. 2014) ......................................................... 10

*MGIC Indem. Corp. v. Moore*,
   952 F.2d 1120 (9th Cir. 1991) ................................................................... 5

*Montrose Chem. Corp. v. Am. Motorists Ins. Co.*,
   117 F.3d 1128 (9th Cir. 1997) ................................................................... 8

*Nguyen v. Simpson Strong-Tie Co.*,
   2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) .......................................... 16

*Operating Eng'rs Pension Tr. v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988) ................................................................... 3

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
   32 F.4th 824 (9th Cir. 2022) .................................................................... 13

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ..................................................................... 6

*Power Analytics Corp. v. Operation Tech., Inc.*,
   2017 WL 2903257 (C.D. Cal. June 7, 2017) .................................... 3, 13, 16

iii

*Redondo Beach Waterfront, LLC v. City of Redondo Beach*,
   2018 WL 5263174 (C.D. Cal. Jan. 31, 2018)................................................3, 4, 16

*Sharaf v. Starbuzz Tobacco Inc.*,
   2016 WL 11757382 (C.D. Cal. Feb. 1, 2016) ......................................................6

*Stockroom Inc. v. Bronstein*,
   2008 WL 11339650 (C.D. Cal. Dec. 8, 2008) ...................................2, 5, 19, 20

*Theodoropoulos v. Cnty. of Los Angeles*,
   2016 WL 9223862 (C.D. Cal. Jan. 5, 2016)........................................................5

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990)...........................................................................17

*U.S. Philips Corp. v. KXD Tech., Inc.*,
   2007 WL 4984150 (C.D. Cal. Sept. 7, 2007) ......................................................5

*United States v. BMI (In re Application of Music Choice)*,
   426 F.3d 91 (2d Cir. 2005) ................................................................................10

*United States. v. Visa U.S.A., Inc.*,
   344 F.3d 229 (2d Cir. 2003) ..............................................................................11

*United Nat'l Ins. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001).........................................................................3, 4

*United States v. Am. Express Co.*,
   CV10-4496 (E.D.N.Y. Oct. 4, 2010)..................................................................11

*Walker v. Blackground Recs., LLC*,
   2017 WL 8186040 (C.D. Cal. Aug. 7, 2017) ....................................................21

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015)...........................................................................18

*Weiss Residential Rsch. LLC v. Experian Info. Sols., Inc.*,
   2020 WL 11884828 (C.D. Cal. Dec. 29, 2020) ..................................................5

**Statutes**

15 U.S.C. § 1.............................................................................................1, 4, 11, 13

15 U.S.C. § 2.............................................................................................................4, 8

iv

28 U.S.C. § 1927 ........................................................................................... 5, 6, 19

**Other Authorities**

Fed. R. Civ. P. 11 ............................................................................................ *passim*

Fed. R. Civ. P. 13(a)(1)(A) .................................................................................. 18

v

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

**INTRODUCTION**

Word Collections' ("WC") motion for sanctions ("Mot.") is substantially similar to the parallel motion filed by Spoken Giants ("SG"). Like that other motion, WC's filing is strikingly slipshod, conclusory, confused—and *itself* misleadingly wrong.

Like SG, WC makes arguments of three general sorts in support of its motion, although its contentions differ a bit from SG's in their particulars. For its part, WC asserts that Pandora's First Amended Counterclaims against it ("FACCs") (1) fail to show that WC has market power; (2) make no effort to show the existence of a horizontal price-fixing conspiracy; and (3) are disingenuous in alleging that WC demanded Pandora enter into its blanket, all-or-nothing license. Each of these allegations is self-evidently frivolous.

*First*, the FACCs show why the assembly of a stable of "superstar" comedians creates market power, and why the facts here establish that WC *has* assembled just such a stable. The point is not debatable; the allegations rest in substantial part on WC's *own* repeated statements—statements that WC ignores in its motion.

*Second*, WC's Section 1 arguments rest on its contention that Pandora took no steps to flesh out the existence of a horizontal conspiracy. But this assertion is mystifying; the FACCs recite at length the additional facts that support a strong inference of conspiracy.

*Third*, WC's denial that it sought a blanket license is even *more* mystifying. That is exactly what it sought; that is the kind of license required by its self-professed business model; and this Court *already* has held that Pandora plausibly alleged that WC "requires a blanket license."

Against this background, the Court should find that *WC's own motion*—and not the FACCs—is abusive. WC has accused Pandora and its counsel of serious and intentional misconduct, assertions that will cause them significant expense and

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

reputational harm even if the motion is denied as it should be. But WC's motion, like SG's, is fundamentally not a serious document. Its vexatious allegations do not stand up to even cursory scrutiny; indeed, on what the motion proclaims to be "critical" points, its arguments are flatly inconsistent with statements made elsewhere by WC's own counsel. This is precisely the sort of "groundless motion for sanctions [that] is *itself* subject to sanctions under Rule 11." *Stockroom Inc. v. Bronstein*, 2008 WL 11339650, at *2 (C.D. Cal. Dec. 8, 2008) (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) (emphasis added)). Accordingly, the Court should deny WC's motion and award Pandora the fees incurred in opposing WC's frivolous sanctions request.

## STATEMENT OF FACTS

The Court is familiar with the background of this litigation, which is described in the Order and in Pandora's Opposition to WC's Motion to Dismiss the FACCs ("Opp."). Briefly, after comedians affiliated with WC or SG ("Comedians") sued Pandora for copyright infringement, Pandora separately filed antitrust counterclaims against WC, SG, and the Comedians.[1] After the Court dismissed the initial counterclaims against WC without prejudice and with leave to amend,[2] Pandora separately filed FACCs against WC and SG. WC and SG both have moved to dismiss the FACCs, and Pandora has filed Oppositions to those motions.

WC served Pandora with its sanctions motion on January 3, 2023, while Pandora was preparing its response to WC's motion to dismiss the FACCs. At counsel's meet-and-confer regarding the sanctions motion, Pandora provided a point-by-point rebuttal to each of the assertions that WC made with regard to its claims.

---

[1] Except where otherwise noted, references to "WC" below include WC and its affiliated Comedians, and references to "SG" below include SG and Lewis Black.

[2] The Court granted Pandora leave to amend despite WC's argument that amendment would be futile. Dkt. 83 at 27; Dkt. 49 at 25, 35; Dkt. 60 at 6.

2

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

Stallings Decl. ¶ 15. Pandora also told WC that it would seek to recover its costs in defending against any frivolous sanctions motion. *Id.* ¶ 16.

Pandora's Opp., filed on January 25, 2023, reflected what Pandora had stated in the meet-and-confer. Nevertheless, WC filed its sanctions motion on January 30, 2023. WC makes the same substantive arguments in its motion for sanctions that it does in its still-pending motion to dismiss the FACCs. *Compare* Mot., *with* Dkt. 104.

## APPLICABLE LEGAL STANDARDS

### A.    Rule 11.

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988); *see also Lee v. Pow Ent., Inc.*, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021). Its sanctions "are reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee*, 2021 WL 5768462, at *2 (brackets and quotation marks omitted); *see Intelligent SCM, LLC v. Qannu PTY Ltd.*, 2015 WL 13916820, at *22 (C.D. Cal. July 2, 2015).

"[A] non-frivolous complaint cannot be said to be filed for an improper purpose." *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 2903257, at *6 (C.D. Cal. June 7, 2017). And a complaint is frivolous only if (1) the document as a whole is "legally or factually baseless from an objective perspective" and (2) the attorney did not "conduct[] a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *see also Redondo Beach Waterfront, LLC v. City of Redondo Beach*, 2018 WL 5263174, at *5 (C.D. Cal. Jan. 31, 2018) ("Rule 11 does not apply to the mere making of a frivolous argument.") (quotation marks omitted).

Rule 11 "recognize[s] that our system of litigation *is* an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is

the nub of the lawyer's task." *United Nat'l Ins. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001). As a result, "the Ninth Circuit has unequivocally stated that 'a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading.'" *Agron, Inc. v. Chien-Lu Lin*, 2004 WL 555377, at *12 (C.D. Cal. Mar. 16, 2004) (quoting *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (per curiam)); *Frost v. LG Elecs. Inc.*, 2017 WL 2775041, at *3 (N.D. Cal. Jun. 27, 2017) (Rule 11 is inapplicable "as long as the complaint is supported by some factual basis from an objective perspective"). Similarly, claims are "legally baseless" only if it is "patently clear that [they have] absolutely no chance of success under the existing precedents, and no reasonable argument can be advanced to extend, modify or reverse the law." *Redondo Beach*, 2018 WL 5263174, at *5 (quotation marks omitted).

Imposing sanctions on a pleading is especially rare when the Court expressly granted leave to amend. *E.g.*, *EM Gen., LLC v. Ecommerce, LLC*, 2021 WL 4497888, at *5 (C.D. Cal. Jul. 28, 2021); *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1054 (N.D. Cal. Jan. 5, 2021). As Pandora's Opp. shows, the Court-authorized FACCs properly and supportably state claims against WC under both Sections 1 and 2 of the Sherman Act. But even if the Court were to disagree, when a district court grants leave to amend and later finds that the amendment still fails to state a claim, "the typical outcome is dismissal … , not an award of sanctions against the litigant and his counsel for making an attempt." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 280 (4th Cir. Sept. 2, 2022) (holding that the "single amended complaint" there did not "demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent … [of] bad faith that warranted sanctions").

Given the seriousness of Rule 11 allegations and the substantial time spent resolving them, "a groundless motion for sanctions is itself subject to sanctions under

4

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS CASE NO. 2:22-CV-00809-MCS-MAR

Rule 11." *Stockroom*, 2008 WL 11339650, at *2; *see also* Fed. R. Civ. P. 11(c)(2) (Rule 11 sanctions award may include the prevailing party's reasonable expenses, including attorneys' fees).

**B.     28 U.S.C. § 1927.**

Sanctions under 28 U.S.C. § 1927 are "an extraordinary remedy … exercised with extreme caution." *In re Keegan Mgmt. Co., Secs. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quotation marks omitted). They are to be "sparingly applied in instances evidencing bad faith and a serious and standard disregard for the orderly process of justice." *U.S. Philips Corp. v. KXD Tech., Inc.*, 2007 WL 4984150, at *5 (C.D. Cal. Sept. 17, 2007) (quotation marks omitted).

The movant's burden to support sanctions under § 1927 is even higher than that for Rule 11. Courts "assess an attorney's bad faith under a subjective standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991). Sanctions are inappropriate under § 1927 where "[t]he record does not support a finding that [a] party presented unreasonable, vexatious, or bad faith arguments[.]" *Weiss Residential Rsch. LLC v. Experian Info. Sols., Inc.*, 2020 WL 11884828, at *4 (C.D. Cal. Dec. 29, 2020) (Scarsi, J.); *accord Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) ("[Section 1927] penaliz[es] conduct that unreasonably and vexatiously multiplies the proceedings.").

Because the focus is on a pattern of bad conduct, "the Ninth Circuit has repeatedly held that § 1927 sanctions cannot be applied to initial pleadings." *Theodoropoulos v. Cnty. of Los Angeles*, 2016 WL 9223862, at *4 (C.D. Cal. Jan. 5, 2016), *aff'd*, 687 F. App'x 573 (9th Cir. 2017). Though "technically … 'subsequent' to the initiation of the lawsuit," a first amended complaint is similarly not "the type of filing that significantly multipl[ies] or prolong[s] proceedings after the complaint is filed." *Id.* (quotation marks omitted).

### C.    Inherent authority.

A contempt sanction pursuant to a district court's inherent authority is levied to "protect[] the due and orderly administration of justice and maintain[] the authority and dignity of the court." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quotation marks omitted). Like § 1927, the movant's burden to support sanctions under the Court's inherent authority is higher than that for Rule 11. "Before awarding sanctions under its inherent powers, … the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Id.* (citation omitted). This requirement "sets a high threshold" intended to "preserve[] a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.* at 649; *accord Bhakta v. Bhakta*, 2021 WL 4352375, at *2 (C.D. Cal. June 14, 2021) ("Because it risks conflict with the rationale of the American rule, the bad faith exception should be construed narrowly.") (cleaned up).

## ARGUMENT

Like SG's corresponding motion, which it largely mimics, WC's sanctions motion is abusive and disturbing. Whether or not Pandora ultimately prevails on its counterclaims, the FACCs are—at a minimum—carefully documented as a matter of fact, are firmly grounded in the law, and were brought for a proper purpose. WC's disagreement with Pandora should be fought out on the merits, not in the context of expensive, distracting, and reputation-impairing sanctions litigation.[3] WC's motion is itself frivolous and should be denied. Indeed, that point is so clear that WC and its counsel should be sanctioned for burdening Pandora and the Court with such an insubstantial filing.

---

[3] WC's Rule 11 motion largely repackages the arguments from its motion to dismiss the FACCs. That itself is a reason to discount the sanctions motion. *See, e.g.*, *Sharaf v. Starbuzz Tobacco Inc.*, 2016 WL 11757382, at *3 (C.D. Cal. Feb. 1, 2016) (denying Rule 11 motion that "so closely copies" the movant's dispositive motion that it evidences the movant "has few arguments that the complaint was 'baseless' beyond the arguments [already] made on its motion for summary judgment").

6

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

**A.    Pandora's amended counterclaims are not factually baseless and were brought after a reasonable investigation.**

WC's first basis for invoking Rule 11 is its contention that the FACCs are the "result of an insufficient investigation," "lacked any foundation," or "were demonstrably false." Mot. 15-23. This contention is completely lacking in substance, making no serious attempt to address either the law Pandora invoked or the FACCs' supporting factual allegations.

### 1.    Pandora's monopolization claims are well-supported.

The Opp. details why WC has monopoly (or, at a minimum, market) power, addressing market realities and explaining that, because WC has amassed a catalog that includes many "superstar" (and other) comedians, its catalog is a "must have" for Pandora. Opp. 6-12; *see also* FACCs ¶¶ 33, 98, 107-20.

WC has reinforced this point, repeatedly referring to itself as the "ASCAP and BMI for spoken word instead of music." FACCs ¶¶ 17, 45. The collective licensing models of ASCAP and BMI—and the market power that results from such practices—is well-established and understood. *Id.*, ¶¶ 65-66. Indeed, WC's own outside counsel, Christine Varney, acknowledged this point while serving in the Antitrust Division of the U.S. Department of Justice, when she noted that BMI's and ASCAP's "aggregat[ion of] rights from copyright holders" gives these "PROs significant market power." Brief for the United States as Amicus Curiae at 1, *Broad. Music, Inc. v. DMX Inc.*, No. 10-3429-cv (2d Cir. Apr. 14, 2011), ECF No. 120 ("Varney *BMI* Brief"); *id.* at 10-11 (describing both ASCAP and BMI as "monopolist[s]" that "exercise[] disproportionate power over the market for music rights.").[4] WC's vociferous invocation of the ASCAP/BMI model, therefore, is an implicit recognition that it *does* have market power. Moreover, WC has boasted that

---

[4] A copy of this brief is attached as Ex. G to the Declaration of Allison Aviki ("Aviki Decl.").

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS CASE NO. 2:22-CV-00809-MCS-MAR

its "clients" include "some of the world's most iconic comedians," a conclusion reinforced by the counterclaim-defendant Comedians themselves, all of whom touted that they are "iconic, world famous comedians, each of whom have captivated audiences for decades and are considered, by many, as legends in the entertainment field, having brought to their audiences works that will be treasured for years to come." FACCs ¶ 116.[5] These statements alone provide a substantial foundation for Pandora's monopolization claims. *Montrose Chem. Corp. v. Am. Motorists Ins.*, 117 F.3d 1128, 1133 (9th Cir. 1997) (requiring that a complaint "*completely lack*[] a factual foundation" before a party may be sanctioned). And, of course, Pandora alleges far more than just these statements.

WC's arguments that Pandora's Section 2 claims are frivolous are wrong. *First*, WC contends (Mot. 15-16) that it must lack market power because it represents a relatively small percentage of the total number of comedians Pandora offers. But, as the FACCs explain, the absolute number of comedians in Pandora's library is irrelevant. FACCs ¶¶ 33, 112-18; Opp. 6-9, 11-12. What is crucial is the ability to offer listeners the recordings of a sufficient number of the "superstar" comedians they actually want to hear. FACCs ¶¶ 98, 112-18. WC simply ignores these factual allegations that "connect Word Collections' representation of about 30 comedians to [Pandora's] inability to amass the critical mass needed to offer a viable comedy streaming service." Dkt. 83, Order 20.

*Second*, WC contends that "the FACC provides *no* evidentiary facts whatsoever to show that Word Collections is affiliated with 'must have' comedians." Mot. 16-17. But if WC means to assert that Pandora must show that each (or any particular one) of the WC Comedians is a "must-have," that is wrong, and never has

---

[5] WC Comedian Eddie Brill also made this clear, explaining that WC has "all these very famous people," including "not only great comedians who are alive, but the estate of George Carlin, the estate of Richard Pryor … on and on" and that, as a result of its collective might, "there is going to be a whole financial windfall." FACCs ¶ 63.

been Pandora's position. To the contrary, Pandora argues that *no* individual comedian is must-have; the source of WC's monopoly power is its *aggregation* of the rights to a sufficient number of individual "superstar" (and other) comedians, making WC's *portfolio* a must-have. *E.g.*, FACCs ¶¶ 112-18.

*Third*, WC asserts that "Pandora fails to allege any new facts … connecting Word Collections' affiliation with those comedians to its inability to 'offer a viable comedy streaming service.'" Mot. 17. But WC's own motion demonstrates that this contention is wrong. The FACCs contain a host of newly alleged facts doing just that, including: (i) the presence of multiple WC Comedians on "third party" lists prepared by industry experts regarding the top comedians of all time and those with the most successful comedy albums; (ii) the conclusions of Pandora's curation team regarding what it needs to offer a viable comedy service; and (iii) customer complaints that occurred in the short time since Pandora was forced to take down the comedy of WC and SG-affiliated Comedians. Mot. 16-17; FACCs ¶¶ 114-18. Rather than address these points on their merits, WC simply dismisses them on wholly conclusory terms as "self-serving" or (for reasons not further explained) "plainly insufficient." Mot. 17. WC points to no rule of law (and we are not aware of one) indicating that such factual allegations are entitled to no weight, and as a matter of "common sense" (Dkt. 83, Order 5), the views of professionals in the business and the complaints of customers "connect[] Word Collections' affiliation with [its] comedians to [Pandora's] inability to 'offer a viable comedy streaming service.'" Mot. 17; *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("[T]he facts a plaintiff alleges in the complaint may turn out to be self-serving and untrue. But a court at this stage of our proceeding is not engaged in an effort to determine the true facts."); *DC2NY, Inc. v. Academy Bus, LLC*, 2020 WL 1536219, at *14 (D.D.C. Mar. 31, 2020) (accepting amended pleading over argument that pleading consisted only of "'naked assertions' devoid of 'further factual enhancement'"—because the amendment "provided the

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

dates and partial contents" of "customer complaints").

*Finally*, and perhaps most revealing, WC describes as its "most critical[]" point that Pandora has "filed an antitrust claim against Spoken Giants alleging that it 'has monopoly power' … *in the exact same market as Word Collections*." Mot. 17; *see id.* ("Pandora's lack of candor regarding its market power allegations is demonstrated most glaringly" by the allegation that both WC and SG have market power). According to WC, "Pandora simply cannot allege in good faith that Word Collections has monopoly power in the relevant market while simultaneously alleging that Spoken Giants *also* has monopoly power in that market." *Id.* at 18.

But that "critical" contention is, itself, frivolous. As Pandora explained, it must have access to the catalogs of *both* SG and WC to offer a viable comedy service; their catalogs are not substitutes. FACCs ¶ 112. And WC surely knows that both it and SG *can* have monopoly power over Pandora. WC has regularly compared itself to ASCAP and BMI, both of which have long been acknowledged to have substantial market power and, from the perspective of music users, are not substitutes. *See, e.g.*, *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 188-89, 218-19 (S.D.N.Y. 2014); *United States v. BMI (In re Application of Music Choice)*, 426 F.3d 91, 96 (2d Cir. 2005). As noted, WC's own outside counsel made precisely this point regarding BMI and ASCAP, similarly concluding that ASCAP and BMI *both* have monopoly power in the same market. Varney *BMI* Brief at 10-11 (describing both ASCAP and BMI as "monopolist[s]" that "exercise[] disproportionate power over the market for music rights.").[6]

---

[6] SG's outside counsel, Christopher Harrison, made this same point. *See* Brief of Respondent-Appellee DMX Inc. at 35, *Broad. Music, Inc. v. DMX Inc.*, No. 10-3429-cv (2d Cir. Apr. 6, 2011), ECF No. 108 ("BMI's blanket licensing practices are 'inherently anti-competitive,' reflecting BMI's exercise, as a monopolist, of 'disproportionate power over the market for music rights.'"); Brief of Applicant-Appellee DMX Inc. at 32, *In Re Application of THP Capstar Acquisition Corp.*, No. 11-127-cv (2d Cir. Apr. 29, 2011), ECF No. 106 ("ASCAP's blanket licensing practices are 'inherently anti-competitive,' reflecting ASCAP's exercise of

The *BMI* case was not the only instance when Ms. Varney took the position that multiple "must have" sellers each have market power in the same market. Also while at the Department of Justice, Ms. Varney signed a complaint alleging that "Visa, MasterCard, and American Express *each* possess market power in the General Purpose Card network services market." Complaint for Equitable Relief for Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, at ¶ 55, *United States v. Am. Express Co.*, CV10-4496 (E.D.N.Y. Oct. 4, 2010), ECF No. 1 (emphasis added).[7] In that complaint, Ms. Varney explained that despite high fees, "merchants continue to accept Defendants' General Purpose Cards because they would face serious economic consequences if they ceased to accept any one of the three Defendants' General Purpose Cards." *Id.* at ¶ 61. The merchants were left with the "all-or-nothing choice" of either paying the high fees or "no longer accepting that Defendant's cards." *Id.* Doing the latter would "severely constrain[] merchants, because dropping any one of the Defendants' General Purpose Cards could alienate customers and lead to significant lost sales … leav[ing] merchants less able to avoid Defendants' supracompetitive prices than they otherwise would be." *Id.*; *see also United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 239-240 (2d Cir. 2003). That fact pattern is just a less extreme version of this case, where losing access to the catalog of either SG or WC would do more than result in significant lost sales—it could ultimately spell the end of Pandora's comedy offering altogether. FACCs ¶¶ 109, 115, 117. That WC is willing to assert a "critical[]" position completely at odds with its own outside counsel's prior position makes clear that it is WC, and not Pandora, that is being "disingenuous[]." Mot. 18.

---

'disproportionate power over the market for music rights.'"). These briefs are attached as Exhibits H and I, respectively, to the Aviki Declaration.

[7] This complaint is attached as Exhibit J to the Aviki Declaration.

### *2.      Pandora's price-fixing claims are well-supported.*

WC's challenge to the FACCs' price-fixing allegations is equally defective. Of course, WC's counsel could not have read the Opp. before initially drafting and serving its sanctions motion. But the arguments here give every appearance that WC's counsel read neither the Opp. nor the FACCs themselves.

*First*, WC contends primarily, and repeatedly, that Pandora's counsel re-pleaded the original counterclaims' price-fixing allegations "*without* conducting any additional investigation whatsoever." Mot. 19-20. This assertion is plainly false, as even a cursory review of the redline attached to the FACCs demonstrates; the FACCs are filled with additional factual allegations, discovered during the course of a "reasonable investigation," that directly address what the Court regarded as omissions in the original counterclaims.

The newly-added material, among other things, includes factual allegations identifying and describing (i) "plus factors"; (ii) market realities; (iii) the historic licensing of comedy rights and the change thereto that the conspiracy aims to bring about; (iv) the risks to any individual comedian of demanding a supra-competitive royalty; (v) the "who, did what, to whom (or with whom), where, and when" of the conspiracy; (vi) the forced removal of comedy content from Pandora as a result of WC's actions; and (vii) additional public statements from WC reinforcing its anticompetitive scheme. *See* FACCs ¶¶ 6, 33, 36, 44, 47-50, 52-56, 60-81, 98, 107-20; Stallings Decl. ¶ 10. In all, these new allegations offer substantial additional information concerning the circumstances of the conspiracy's creation and operation, the reasons to believe that the Comedians knowingly participated in a collective scheme, and the circumstantial evidence of agreement. *See* Opp. 13-20. Pandora plainly conducted a reasonable investigation.

*Second*, WC contents itself with its conclusory mischaracterization of the FACCs, not even attempting to show that the conspiracy allegations *actually* are of

the type that "[n]o competent attorney would believe … are well-grounded in fact." Mot. 20. That is for good reason; they *are* well-grounded, both in fact and in the law, for the reasons shown at Opp. 12-20. Pandora has demonstrated "who, did what, to whom (or with whom), where, and when" (*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)); "'[a]cceptance by competitors … of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce'" (*PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 843 (9th Cir. 2022) (citation omitted)); and plus factors providing circumstantial evidence of agreement. Pandora's conspiracy claims are neither factually nor legally baseless. *See, e.g.*, *Power Analytics Corp.*, 2017 WL 2903257 at * 6 (denying sanctions for amended antitrust claim where there was some credible basis to support the claim); *Frost*, 2017 WL 2775041 at * 3 ("Rule 11 analysis is not met as long as the complaint is supported by some factual basis from an objective perspective.").[8]

WC's real gripe is that Pandora failed to depose the counterdefendants or to induce them in voluntary interviews to acknowledge their conspiracy. Mot. 19-20. But Rule 11 sanctions are hardly justified because a plaintiff failed to conduct depositions or to seek confessions from the conspirators at the motion-to-dismiss stage. If that were the standard, Section 1 of the Sherman Act would be read off the books. On this, as with its other contentions, WC's assertions are insubstantial.

### 3. *WC demanded that Pandora take its all-or-nothing blanket license.*

WC's final challenge to the FACCs is similarly head-scratching. It labels "false" Pandora's allegation that WC demanded that Pandora "accept a 'mandatory all-or-nothing blanket license' in a manner that 'did not allow any means for Pandora to avoid the Collective's supra-competitive royalty price.'" Mot. 20-23. This assertion is itself patently false. Pandora was correct to describe WC as demanding

---

[8] Notably, WC does not even attempt to demonstrate any flaw in the FACCs' Count II (Agreement in Unreasonable Restraint of Trade).

13

that Pandora take an "all-or-nothing" blanket license covering the entire WC portfolio—for several reasons.[9]

*First*, WC does not dispute that the license it sent Pandora *was in fact* an all-or-nothing blanket license. Nor could it. WC's proposed license explicitly states that it grants Pandora the right "to make non-dramatic public performances of the Works controlled by [WC]." Price Decl. Ex. A at 14. "Works" is defined as "the literary works or works of the performing arts for which [WC] has the right to license the non-dramatic public performance on the Authorized Properties at the time of performance of such literary works or works of the performing arts during the Term." *Id.* The proposed license thus covered WC's entire growing catalog of works (FACCs ¶ 52)—it was an "all-or-nothing blanket license." Indeed, this Court *already* found that Pandora's initial counterclaims against WC "plausibly allege[] that Word Collections requires a blanket license." Dkt. 83, Order 17. That alone is enough to dispose of WC's argument.

*Second*, WC's own repeated statements declare its business model to involve pooling its Comedians' previously competing rights into a single catalog that it then licenses on an all-or-nothing basis. For example, WC repeatedly refers to itself as "the ASCAP and BMI for spoken word instead of music," including in the press release announcing its public launch. FACCs ¶ 65, Ex. A.; Aviki Decl. Ex. B. As the FACCs explain, the blanket-licensing business model of ASCAP and BMI is well-established and understood. FACCs ¶¶ 65-66; *see also* Morris Decl. ¶ 8. And Jeff Price—WC's co-founder and CEO—has discussed publicly WC's negotiations with streaming services for "blanket performing licenses." FACCs ¶ 67; Aviki Decl. Ex. E. Moreover, along with its proposed blanket license, WC sent Pandora a letter from its outside counsel Richard Busch reiterating WC's demand to "license its *catalogue*

---

[9] Contrary to WC's contention, the FACCs do not assert that WC demanded that Pandora pay a "royalty for works Pandora did not use." Mot. 20. The cited paragraphs of the FACCs (¶¶ 31, 52, 53, 70, 88) simply do not say that.

14

of literary works to Pandora," with the threat of litigation if Pandora does not enter into such a license with WC. Price Decl. Ex. A at 7-8 (emphasis added). Consequently, when WC approached Pandora about taking its license, Pandora rightly understood that the only option available was a license for WC's entire catalog—an all-or-nothing blanket license. Morris Decl. ¶¶ 6-8.

*Third*, WC fails even to acknowledge, let alone attempt to explain away, the blanket language of its proposed license and its repeated self-characterization as "the ASCAP and BMI for spoken word instead of music." Instead, its argument that it did not require an "all-or-nothing blanket license" rests entirely on a cover email accompanying its proposed license that mouthed a willingness to "work with [Pandora] to provide an efficient licensing solution." Mot. 21. But that assertion rests on a non sequitur. Even assuming WC was open to some degree of negotiation on unspecified points, that does not detract from the fact that WC *did* demand a blanket license; and the transmittal email did not suggest that WC was prepared to abandon its blanket-license model—a move that neither it nor any of its Comedians ever proposed. To the contrary, WC's own statements make clear that the only option was, and ever will be, a blanket license. *See* FACCs ¶¶ 45, 52, 64-69, 87-90.

Moreover, in a legal memorandum that also accompanied the proposed blanket license, Mr. Busch details how WC is willing to work with Pandora, including on "specifications for metadata exchange, protocols and workflow for identification of past and future exploitations of literary works, processes for conflict resolution (if applicable), ISRC data for identification of applicable sound recordings, catalog notification updates, royalty distribution cycles, specifications for invoicing and/or royalty statements, nuances and other unique workflow changes tied to incremental territorial exploitation, format and contents of any Letters of Direction, etc." Price Decl. Ex. A at 12-13. Notably absent from this exhaustive list is any indication of a willingness to negotiate over the blanket nature of WC's license. Accordingly, an

15

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

1   objectively reasonable person would understand WC to have demanded a blanket

2   license—because that is exactly what it proposed.

3       This case therefore looks nothing like the supposedly "instructive" (Mot. 22)

4   *Nguyen v. Simpson Strong-Tie Co.*, 2020 WL 5232564 (N.D. Cal. Sept. 2, 2020).

5   There, sanctions were imposed on counsel who represented a document as saying

6   something "diametrically opposed" to its actual content. 2020 WL 5232564, at *4.

7   Here, Pandora accurately recounted the contents of WC's proposed license and oft-

8   repeated business model. At a minimum, Pandora's allegation is based on

9   significantly more than the "some credible evidence" necessary to defeat a sanctions

10   motion. *Power Analytics Corp.*, 2017 WL 2903257 at *5. WC's contrary contention

11   is frivolous.

12                     *     *     *

13       At bottom, there is no even remotely plausible basis for WC's sanctions

14   motion. WC accuses Pandora of misrepresenting documents that, it is readily

15   apparent, the FACCs accurately describe. WC's challenge to Pandora's legal

16   arguments is directed largely at straw-man mischaracterizations of Pandora's real

17   contentions, making no attempt to demonstrate that Pandora's *actual* legal position

18   lacks merit. And WC's repeated assertion that the FACCs show that Pandora failed

19   to undertake a reasonable investigation is simply false.

20       In this setting, no reasonable lawyer could say that "clear authority or

21   [Pandora's] own clear admission erases the factual underpinning from some essential

22   element of [Pandora's] pleading." *Agron*, 2004 WL 555377, at *12 (citation and

23   internal quotation marks omitted). Nor would an objective observer find it "patently

24   clear that [Pandora's claims have] absolutely no chance of success under the existing

25   precedents, and no reasonable argument can be advanced to extend, modify or reverse

26   the law." *Redondo Beach*, 2018 WL 5263174, at *5 (quotation marks omitted). WC's

27   skillful lawyers should have known—and, presumably, did know—that the sanctions

28

16

1  motion is insupportable. The motion, accordingly, should be denied.

2  **B.  The FACCs were not brought for an improper purpose.**

3  WC's next contention—that the FACCs were "filed for an improper purpose,"

4  Mot. 23—is constructed entirely out of argumentative boilerplate. WC does not point

5  to a single instance where a court awarded sanctions based on conduct remotely

6  analogous to Pandora's actions here.

7  *First*, WC's improper-purpose arguments necessarily are predicated on WC's

8  claim that Pandora's FACCs are frivolous. *See* Mot. 24. For pleadings, "a finding of

9  frivolousness is a necessary prerequisite to an award for sanctions under the improper

10  purpose clause of Rule 11." *Harara v. ConocoPhillips Co.*, 2005 WL 240773, at *1

11  (N.D. Cal. Jan. 27, 2005). But as discussed above, the FACCs are far from frivolous.

12  That should end the matter. *See, e.g.*, *Townsend v. Holman Consulting Corp.*, 929

13  F.2d 1358, 1362 (9th Cir. 1990) ("[I]t would be counterproductive to use Rule 11 to

14  penalize the assertion of non-frivolous substantive claims, even when the motives for

15  asserting those claims are not entirely pure.").[10]

16  *Second*, WC's improper-purpose arguments (Mot. 24-26) fail for the separate

17  reason that they conflate perfectly reasonable, routine litigation decisions with

18  sanctionable conduct.

19  For one, WC faults Pandora for not asserting counterclaims against the cartel's

20  entire stable of comedians. Mot. 25. But plaintiffs are not required to sue all possible

21  defendants. It is black-letter law that "'the plaintiff is the master of the complaint and

22  has the option of naming only those parties the plaintiff chooses to sue.'" *Lincoln*

23

24  _____

[10] Unsurprisingly, WC identifies no authority to the contrary. The one decision it cites
25  involved a claim that *was* frivolous. *See* Mot. 24-25 (citing *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1427 (9th Cir. 1986)).
26  There, "experienced labor lawyers" brought claims "foreclosed by a decision of the NLRB and which was confirmed by [the Ninth Circuit]" seeking damages resulting
27  from their client's own "breach of [a] collective bargaining agreement." 790 F.2d at 1427. Here, Pandora's claims are, to say the least, plainly not foreclosed by existing
28  authority.

17

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

*Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (quoting 16 J. Moore et al., *Moore's Fed. Prac.* § 107.14[2][c], at 167 (3d ed. 2005)); *accord Martin v. Ford Motor Co.*, 2019 WL 6875344, at *4 (C.D. Cal. Dec. 13, 2019). WC's contrary view would encourage unnecessary and excessive litigation. Moreover, given the counterclaims at issue, Pandora did not need to sue every comedian to make itself whole: "A plaintiff is not required to sue all of the alleged conspirators" to recover because "antitrust conspirators are jointly and severally liable for all damages caused by the conspiracy." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (cleaned up), *abrogated on other grounds by Sperring v. LLR, Inc.*, 995 F.3d 680, 681 (9th Cir. 2021).

WC also finds it suspicious that Pandora did not sue it and its Comedians before the Comedians filed suit. Mot. 25. But WC should know better. "[W]inning the race to the courthouse and requiring the opponent to assert its position as a counterclaim" is a "well-recognized feature[] of modern litigation." *Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467, 472 (6th Cir. 2013). The Comedians filed first; once they did, it became incumbent on Pandora to raise antitrust counterclaims or risk losing them. After all, "[a] pleading must state as a counterclaim any claim that— at the time of its service—the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). And here, there exists a "logical relationship" between the counterclaims and claims, *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013), because "the same operative facts serve as the basis of both claims," *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005) (quotation marks omitted).

*Finally*, WC tries to infer bad faith from Pandora's allegations concerning Mr. Price. Mot. 25-26. WC complains about what it terms Pandora's "comparison of [Mr. Price] to a 'mafia soldier' engaged in an 'organized crime family's protection and

loansharking operations.'" *Id.* at 26.[11] This assertion is silly. Pandora did not invoke organized crime in connection with Mr. Price. Instead, it pointed to his own invocation of mobsters in illustrating what WC plainly means to be WC's "official" business attitude: pay us a record amount or face unpleasant economic consequences.[12] Although the FACCs may recount more significant evidence of WC's problematic business practices than this Twitter post (*see* FACCs ¶¶ 4, 45-73, 77, 82-90), it is hardly "wholly irrelevant" (Mot. 25) that WC's CEO and co-founder chose to characterize WC's business model as one that imposes overbearing demands.

## C.    WC should be sanctioned for its frivolous and harassing motion.

But that should not be the end of the matter: WC and its counsel should themselves face sanctions for WC's baseless Rule 11 motion.[13] As noted, a "groundless motion for sanctions is itself subject to sanctions under Rule 11." *Stockroom*, 2008 WL 11339650, at *2 (citing *Patelco*, 262 F.3d at 913). The party on the receiving end of such a motion need not file its own Rule 11 motion (and satisfy the pre-filing formalities for doing so) to seek counter-sanctions (*id.*), although Pandora did inform WC during the parties' Rule 11 meet-and-confer that it

---

[11] WC also accuses Pandora of making a "false allegation" that Mr. Price's prior employers TuneCore and Audiam terminated him. Mot. 26. But Mr. Price has publicly stated that he was terminated by TuneCore and Audiam. Aviki Decl. Ex. K (at ¶ 12); Ex. L; Ex. M.

[12] In the tweet in question, Mr. Price posted a picture of a T-shirt with an iconic line from *Goodfellas* ("f*ck you, pay me") and said: "Im [sic] so thinking that this should be the official T-Shirt and slogan of Word Collections." FACCs ¶ 111.

[13] WC's invocation of Section 1927 and the Court's inherent authority adds nothing to its argument. As the Ninth Circuit has emphasized: "[T]he district court has a broad array of sanctions options at its disposal: Rule 11, 28 U.S.C. § 1927, and the court's inherent authority. Each of these sanctions alternatives has its own particular requirements, and *it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy*." *Christian*, 286 F.3d at 1131 (emphasis added). But WC made no attempt to separately articulate the basis for imposing sanctions under these sources of authority or, for that matter, to tie them to any aspect of Pandora's conduct. The Court therefore should disregard these alternative bases for sanctions.

would seek to recover its costs in defending against this unwarranted filing, so WC's counsel were well aware of the consequences when they chose to file. Stallings Decl. ¶ 16. Several considerations point toward sanctioning WC and its counsel.

*First*, as discussed above, WC's arguments are utterly groundless. By making baseless claims to sanction routine litigation conduct and credible legal arguments, WC's motion is "presented for an[] improper purpose, such as to harass" Pandora and its counsel. Fed. R. Civ. P. 11(b). Moreover, filing a baseless Rule 11 motion in the midst of dispositive-motions briefing injects "unnecessary delay" into the case and "needlessly increase[s] the cost of litigation." *Id.* Parties who choose to engage in such misconduct should not do so cost-free. *See, e.g.*, *Liu v. Marriott Vacation Worldwide*, 2019 WL 8690216, at *3 (C.D. Cal. Jan. 30, 2019) (sanctioning Rule 11 movant for "frivolous" motion, "without a legal or factual basis for support," that "improperly [sought] sanctions . . . for entirely reasonable litigation activity"); *Stockroom*, 2008 WL 11339650, at *3 (ordering sanctions against Rule 11 movant "in an amount sufficient to reimburse [the party] for defending against these frivolous motions and to deter [the movant] from further similar conduct").

*Second*, WC's improper purpose and bad faith are confirmed by the timing and character of its Rule 11 motion. If WC were pursuing this motion in good faith, it would have at least addressed the points Pandora made in the meet-and-confer on the motion and then in Pandora's opposition to WC's motion to dismiss the FACCs. Instead, WC's motion as filed is substantively identical to the draft it served on Pandora in early January nearly a month before, merely offering its motion to dismiss at a higher pitch.[14] It therefore is apparent that WC was determined to seek sanctions no matter the strength of Pandora's claims. Such a motion is inconsistent with the

---

[14] WC similarly took the position prior to seeing the FACCs that any attempt to amend would be futile (Fakler Decl. ¶¶ 3-7), notwithstanding that in granting Pandora leave to amend, the Court rejected that very argument. Dkt. 83 at 27; Dkt. 49 at 25, 35; Dkt. 60 at 6.

goal of Rule 11, which provides punishment that is to be "reserved for the rare and exceptional case." *Lee*, 2021 WL 5768462 at *2; *see, e.g.*, *Walker v. Blackground Recs., LLC*, 2017 WL 8186040, at *8 (C.D. Cal. Aug. 7, 2017) (sanctioning party seeking Rule 11 sanctions when it "knew there was no legally tenable basis to pursue their Rule 11 motion").

*Third*, however the Court ultimately rules on Pandora's FACCs, this case will occupy a significant portion of the Court's and the parties' time over the coming year. For the litigation to proceed efficiently and fairly, WC must be discouraged from submitting baseless filings like this motion. Pandora's unexceptional claims do not use "litigation as a weapon," as WC hyperbolically states (Mot. 24), and WC has no warrant to respond with wild and destructive accusations. Sanctioning WC and its counsel to pay Pandora's costs in opposing the Rule 11 motion would provide a much-needed course correction.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Pandora respectfully requests that the Court deny WC's motion. In light of WC's frivolous invocation of Rule 11, Pandora further asks that it be awarded its fees and costs in defending against WC's motion.[15]

---

[15] Pursuant to the Court's Standing Order at Section 10(d), Pandora stands ready to submit the necessary documentation to support a fee award should it be granted.

Dated:  February 13, 2023

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DANIEL D. QUEEN
MEERIM NEHME


By: */s/ Paul M. Fakler*
    Paul M. Fakler


MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
*wstallings@mayerbrown.com*
1999 K Street, NW
Washington, D.C.  20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
*cjkelly@mayerbrown.com*
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California  94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR

1

## **FILER'S ATTESTATION**

2

  The undersigned, counsel of record for Defendant/Counterclaimant Pandora

3  Media, LLC, certifies that this brief contains 6,996 words, which complies with the

4  word limit of L.R. 11-6.1.

5  Dated:  February 13, 2023

6

7                                    _/s/Paul M. Fakler_
                                      Paul M. Fakler

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIMANT PANDORA MEDIA, LLC'S OPPOSITION TO COUNTERCLAIM
DEFENDANT WORD COLLECTIONS' MOTION FOR SANCTIONS
CASE NO. 2:22-CV-00809-MCS-MAR