MAYER BROWN LLP
PAUL M. FAKLER (*pro hac vice*)
*pfakler@mayerbrown.com*
JACOB B. EBIN (*pro hac vice*)
*jebin@mayerbrown.com*
ALLISON AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, New York  10020-1001
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
DOUGLAS A. SMITH (SBN 290598)
*dougsmith@mayerbrown.com*
MICHAEL A. CALVANICO (SBN 344792)
*mcalvanico@mayerbrown.com*
333 S. Grand Avenue, 47th Floor
Los Angeles, California  90071-1503
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

*Attorneys for Defendant
Pandora Media, LLC*

[*Additional counsel listed on signature page*]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION | Master File No. 2:22-cv-00809-MCS-MAR <br><br> CONSOLIDATED ACTION |
| This Document Relates To: <br><br> ALL ACTIONS | **PANDORA MEDIA, LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** <br><br> Hon. Margo A. Rocconi <br><br> Date:                 August 9, 2023 <br> Time:               11:00 AM <br> Discovery Cutoff:  February 28, 2024 <br> Pretrial Conference: November 18, 2024 <br> Trial Date:          December 3, 2024 |

As Pandora established in the Joint Stipulation ("JS"), its musical works licenses cannot, as a matter of law, convey or impact any rights to the spoken-word comedy routines at issue in this case. Even Plaintiffs admit this. That uncontroverted truth should end the matter—it makes it abundantly clear that the sought discovery into Pandora's musical works usage and licensing is irrelevant to this litigation.

In an effort to distract from this dispositive and straightforward point, Plaintiffs submit declarations from each of the two co-founders of Word Collections, Jeff Price and Bob Kohn. These are not disinterested parties—***they both have a direct financial interest in the outcome of this case***. Moreover, documents recently obtained through third-party discovery indicate that Jeff Price and Word Collections recruited Plaintiffs and persuaded them to allow these suits to be filed in their names with promises of millions of dollars in windfall payments. Further, Word Collections agreed to pay all litigation costs and arranged for counsel, also at no cost to Plaintiffs.

Pandora has already detailed the many flaws and misrepresentations in Mr. Price's declaration—one that only demonstrates that the discovery at issue is being pursued for improper purposes related to the music licensing side of Word Collections. As for Mr. Kohn, his "expert" declaration is nothing more than an extra legal brief, rife with irrelevant legal opinions and conclusions going to the merits of the case rather than the issues in this Motion—it is yet another effort to distract the Court, and should be excluded, just as Mr. Kohn's testimony has been time and again by other courts. Pandora's Motion should be granted in its entirety.

## ARGUMENT

There is no dispute that Pandora's musical works licenses cannot apply to spoken-word comedy, rendering Pandora's musical works usage reporting and licensing practices irrelevant to this litigation. And, this Motion only concerns discovery regarding Pandora's musical works usage and licensing practices. Pandora has and will continue to produce documents regarding its licensing and usage of spoken-word comedy. Aviki Decl. ¶¶ 3-6. Yet Plaintiffs continue to press for

burdensome and irrelevant discovery, offering a series of nonsensical arguments.

*First*, Plaintiffs assert that Pandora only has a "singular licensing workflow" that applies to both musical works and spoken-word comedy. JS 39. This assertion has no basis in fact. As Pandora has demonstrated, it necessarily licenses spoken-word comedy in a wholly different manner than it does musical works—the licenses Pandora secures for musical works rights, by law and regulation, cannot apply to spoken-word comedy. Aviki Decl. Ex. C ¶¶ 6, 15-29, 49; *id.* Ex. A, ECF 178 ("MTC") 21-28, 30-42. Plaintiffs attempt to deflect from this irrefutable fact by conflating licensing with usage reporting. But as Pandora has explained, it reports its sound recording usage per the requirements of its musical works licenses, and that reporting has no impact on the rights conveyed by those licenses. *Id.*

To try and muddy the waters further, Plaintiffs concoct a fictional requirement—unmoored to any statute, regulation, or license—that Pandora must exclude spoken-word recordings from its usage reporting, and then fault Pandora for not meeting this made-up requirement. But as Pandora has already shown, there is a process to exclude spoken-word from musical works royalty distributions—one that has been put in place by the *licensors* of musical works including the MLC and the PROs. All of these entities have their own processes to ensure that, absent fraud, only musical works rightsholders are paid. Aviki Decl. Ex. C ¶¶ 15-29, 49; MTC 37-42.

*Next*, Plaintiffs claim that Pandora has "made up" "conspiracy theories" regarding Plaintiffs' true purpose for seeking this irrelevant discovery and has a "baffling fixation" with Mr. Price. But this "conspiracy theory" was first spelled out by *Plaintiffs in their own letter* to Pandora, claiming the discovery is relevant to demonstrate "a breach of federal regulatory requirements and result in underpayment of *music publishers* by attributing mechanical and public performance payments to literary works Pandora now claims it never paid." Aviki Decl. Ex. D (emphasis added). Seeking discovery in this case to establish harm to music publishers is plainly improper. Plaintiffs' and Word Collections' improper purpose is further confirmed

by Mr. Price's Declaration in Support of Plaintiffs' Motion to Compel. There, he also attempts to show that certain royalties that should have been paid to musical works rightsholders were paid to Plaintiffs, thereby harming non-party musical works rightsholders. But as Pandora has already shown, to the extent Mr. Price's analysis demonstrates anything, it is that a music publisher fraudulently claimed that certain spoken-word comedy routines are musical works, in violation of the MLC's Terms of Use, thereby inducing the MLC (and not Pandora) to pay royalties for these works. MTC 34-37; Aviki Decl. Ex. C ¶¶ 30-35.

*As to Mr. Price, third-party discovery has now exposed that his involvement in orchestrating this action goes far deeper than merely instigating these litigations*. Aviki Decl. Exs. E-H. Mr. Price recruited Plaintiffs with claims of windfall recoveries. *Id.* He also promised that Word Collections would fund this litigation, and arranged for legal representation of the Plaintiffs. *Id.* These documents clearly show that Mr. Price is the moving force controlling this litigation and Word Collections is a true party in interest. Notably, Pandora was only able to secure these documents by serving a third-party subpoena—despite Plaintiffs' counsel's representation that the individual served had no relevant documents. Aviki Decl. Ex. I at 1.

*Finally*, Plaintiffs claim that the discovery at issue is not unduly burdensome.[1] But Plaintiffs ignore critical aspects of Pandora's showing, which amply demonstrates the burden associated with the sought discovery. JS 24-25; Aviki Decl.

---

[1] Plaintiffs also suggest that a protective order is not an appropriate remedy because the motion is directed to a subject matter and not specific requests. JS 32-33. But protective orders can "forbid[] inquiry into certain matters," Fed. R. Civ. 26(c)(1)(D), and Ninth Circuit courts regularly exercise their discretion to do so, particularly where they determine that an area of inquiry is not relevant. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1069-75 (9th Cir. 2004); *Carrera v. First Am. Home Buyers Prot. Co.*, 2014 WL 3695403, at *4 (S.D. Cal. July 23, 2014); *Food Mkt. Merchandizing, Inc. v. California Milk Processor Bd.*, 2022 WL 1811076, at *8 (E.D. Cal. June 2, 2022). Pandora clearly identified its need for a protective order as to both the already served requests and any future discovery inquiries; the Court is well within its discretion to enter the requested protective order. JS 11, n. 2; 14-25.

Ex. C ¶¶ 50-54. Where the discovery at issue is irrelevant, this showing of burden is more than sufficient.[2] *United States v. Metic Transplantation Lab, Inc.*, 2017 WL 11636152, at *2 (C.D. Cal. Feb. 16, 2017).

Plaintiffs also submitted purported expert testimony from Bob Kohn ("Kohn Decl."), the other co-founder of Word Collections (Aviki Decl. Ex. J), who admits (at Kohn Decl. ¶ 5) that he is a part owner, **giving him a direct financial interest in the outcome of this case**. That declaration should be excluded in its entirety.

*First*, Mr. Kohn's declaration is just an improper legal brief parroting Plaintiffs' merits arguments dressed up as an expert declaration. It is filled with improper advocacy and legal conclusions, with extensive citations to statutes and caselaw, and impermissibly opines on Pandora's state of mind. *See, e.g.*, Kohn Decl. ¶¶ 10-37, 70, 91-101. This is precisely the sort of testimony that is routinely excluded. *See, e.g.*, *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 749 (9th Cir. 2005) ("Experts may interpret and analyze factual evidence but may not testify about the law."); *U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (same). Mr. Kohn is well aware that such testimony is improper—**his "expert" testimony has been excluded multiple times for these same failings**. In *Twelve Sixty LLC v. Extreme Music Library Limited*, his testimony was excluded because, like here, it is "difficult to separate outright advocacy from purported expertise" and because "his report reads even more like a brief." 2020 WL 2749708, at *8-9 (S.D.N.Y. May 26, 2020). In *SA Music LLC v. Apple, Inc.*, the court struck sections of his report offering conclusions on the defendant's "mental state." 592 F. Supp. 3d 869, 903-4 (N.D. Cal. 2022).[3]

---

[2] The cases cited by Plaintiffs all involved discovery that was found to be *highly relevant*. *See, e.g.*, *Garner v. Amazon.com, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (noting the "importance of the discovery in resolving those issues"); *Sung Gon Kang v. Credit Bureau Connection, Inc.*, 2020 WL 1689708 at *7 (E.D. Cal. April 7, 2020) ("the information will be useful—and in fact is essential—to Plaintiff's class certification motion").

[3] Mr. Kohn's testimony was also struck in *Levy v. Zimmerman* because he engaged in "cherry-picking words and phrases and assigning them meanings that ignore the

*Second*, while the Declaration provides Mr. Kohn's views on certain topics, most have no relevance to this litigation at all. To the extent he provides opinions related to the overall case, they only relate to the ultimate merits of Pandora's industry custom and practice allegations—*but the substantive merits of those allegations are not at issue in this Motion*. Nowhere does Mr. Kohn even attempt to explain why Plaintiffs should be entitled to the *musical works* discovery they seek other than a passing reference to his "understanding that Pandora has the same workflow" for musical works and spoken-word comedy licensing. Kohn Decl. ¶ 40. But his entire basis for that "understanding" is his reliance on Mr. Price's analysis—one that Pandora has already debunked. MTC 30-42; Aviki Decl. Ex. C ¶¶ 30-49.

*Third*, Mr. Kohn's opinions regarding comedy industry custom and practice are unsubstantiated. He devotes pages to establishing his credentials in the field of *music* licensing, but has little experience in the field of comedy, and certainly could not properly be deemed an expert in that industry's custom and practice. While he makes sweeping claims about such practices, the only support he points to is a single paragraph purportedly taken from a single agreement between one Plaintiff and a record label—an agreement that was never produced in discovery and could never be sufficient to establish overall industry custom and practice. Aviki Decl. ¶ 11.

*Finally*, Plaintiffs' failure to produce this agreement—or any other material relied on by Mr. Kohn—within three business days of submitting his declaration is a violation of the Court's Order Regarding Expert Stipulation. Aviki Decl. ¶ 12; Ex. K, ECF 159 ¶ 7.[4] Mr. Kohn's testimony should be excluded on that ground alone.

For these reasons, and those set forth in the Joint Stipulation, Pandora's Motion for Protective Order should be granted and Pandora should be awarded its costs.

---

surrounding words and are inconsistent with the [agreement] when read as a whole." 2 Misc. 3d 1213(A), at *5, *6 (N.Y. Sup. Ct. 2021).

[4] Plaintiffs, as they did with their Motion to Compel, also violated a host of local rules in connection with this Motion. Aviki Decl. ¶¶ 7-10.

Dated: July 25, 2023

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DOUGLAS A. SMITH
MICHAEL A. CALVANICO

By: */s/ Paul M. Fakler*
    Paul M. Fakler

MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
wstallings@mayerbrown.com
1999 K Street, NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC