1  MAYER BROWN LLP
   PAUL M. FAKLER (*pro hac vice*)
2  *pfakler@mayerbrown.com*
   JACOB B. EBIN (*pro hac vice*)
3  *jebin@mayerbrown.com*
   ALLISON AVIKI (*pro hac vice*)
4  *aaviki@mayerbrown.com*
   1221 Avenue of the Americas
5  New York, New York 10020-1001
   Telephone:  (212) 506-2500
6  Facsimile:  (212) 262-1910

7  MAYER BROWN LLP
   JOHN NADOLENCO (SBN 181128)
8  *jnadolenco@mayerbrown.com*
   DOUGLAS A. SMITH (SBN 290598)
9  *dougsmith@mayerbrown.com*
   MAX W. HIRSCH (SBN 301872)
10 *mhirsch@mayerbrown.com*
   MICHAEL A. CALVANICO (SBN 344792)
11 *mcalvanico@mayerbrown.com*
   333 S. Grand Avenue, 47th Floor
12 Los Angeles, California  90071-1503
   Telephone:  (213) 229-9500
13 Facsimile:  (213) 625-0248

14 *Attorneys for Defendant*
   *Pandora Media, LLC*
15
   [*Additional counsel listed on signature*
16 *page*]

   ## UNITED STATES DISTRICT COURT
17 ## CENTRAL DISTRICT OF CALIFORNIA

18 | In re PANDORA MEDIA, LLC | Master File No. 2:22-cv-00809-MCS-MAR |
19 | COPYRIGHT LITIGATION | |

   CONSOLIDATED ACTION
20
   This Document Relates To:
21
                                      **PANDORA MEDIA, LLC'S MOTION**
22 ALL ACTIONS                        **TO EXTEND CASE SCHEDULE**

23                                     [*Declaration of Allison Aviki and Proposed*
                                       *Order filed concurrently herewith*]
24
                                       Date: January 8, 2024
25                                     Time: 9:00 AM
                                       Courtroom: Courtroom 7C
26                                     Judge: Hon. Mark C. Scarsi

27

28

**TO THE COURT AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on January 8, 2024, or as soon thereafter as counsel may be heard in Courtroom 7C of the United States District Court, Central District, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Pandora Media, LLC ("Pandora"), by and through its counsel, will respectfully request that the Court extend the case schedule in this action by approximately six months.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 1, 2023.

This Motion is based on this notice of motion, the memorandum of points and authorities attached hereto, the declaration of Allison Aviki, the pleadings and records on file with this Court, all matters of which this Court may take judicial notice, and on such oral and documentary evidence as may be presented at the hearing of this Motion.

1   Dated:  December 8, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DOUGLAS A. SMITH
MAX W. HIRSCH
MICHAEL A. CALVANICO

By: */s/ Paul M. Fakler*
Paul M. Fakler

MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
*wstallings@mayerbrown.com*
1999 K Street, NW
Washington, D.C.  20006-1101
Telephone:  (202) 263-3000
Facsimile:  (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
*cjkelly@mayerbrown.com*
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California  94306-2112
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 3

LEGAL STANDARD ..................................................................................... 17

ARGUMENT .................................................................................................. 18

    A.    Pandora Diligently Conducted Discovery ......................................... 18

    B.    Plaintiffs' Broken Promises and Delays Constitute Exceptional Circumstances Warranting An Extension. ........................................... 19

    C.    Pandora Would Be Prejudiced Absent an Extension .......................... 19

    D.    Plaintiffs Would Not Be Prejudiced By This Extension .................... 22

CONCLUSION ............................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcantara v. United Furniture Indus., Inc.*,
  2023 WL 6190817 (C.D. Cal. July 25, 2023) (Scarsi, J.) ...............17, 18, 19, 22

*Avila v. Willits Env't Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) ...............................................................................17

*C. v. Anthem Blue Cross Life & Health Ins. Co.*,
  2023 WL 6373840 (C.D. Cal. Jan. 17, 2023).......................................................19

*DeRosa v. ViacomCBS, Inc.*,
  2021 WL 8531653 (C.D. Cal. Dec. 3, 2021) (Scarsi, J.) ......................17, 19, 22

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ...............................................................................17

*M.H.C. v. Cnty. of L.A.*,
  2019 WL 13242561 (C.D. Cal. Nov. 5, 2019) ....................................................22

*Sharp v. Balboa Islands, LLC*,
  2012 WL 13176036 (S.D. Cal. June 20, 2012) ....................................................17

**Other Authorities**

Fed. R. Civ. P 16...........................................................................................17, 18

Fed. R. Civ. P 33....................................................................................................16

iv

1

## INTRODUCTION

On June 15, 2023, this Court granted the Parties' joint stipulation modifying pretrial deadlines (the "Order," ECF No. 174). In that Order, the Court recognized that the Parties requested "a significant modification from the original schedule," and that it "sees no reason why a final disposition cannot be achieved within the newly ordered timeframe." Order at 2-3. Accordingly, the Court warned that it did not "anticipate granting any further continuances or requests to modify the schedule . . . absent extraordinary circumstances." *Id*. at 3. Unfortunately, Plaintiffs' failure to comply with even the most basic of discovery obligations—including those to which Plaintiffs agreed in the joint stipulation—have created those extraordinary circumstances, forcing Pandora to file this Motion for a six-month extension to the case schedule.

Specifically, Pandora has been diligent and taken discovery seriously, issuing more than 100 document requests and interrogatories, initiating countless meet and confers with Plaintiffs' counsel, writing eleven L.R. 37-1 letters, issuing dozens of third-party subpoenas, and filing four discovery motions, one of which remains pending, with a fifth to be filed imminently. But despite Plaintiffs' promises of compliance that Pandora relied on when agreeing to the current case schedule, Plaintiffs have largely ignored their discovery obligations. For example:

- Most Plaintiffs have failed to produce a ***single document*** from their own files to date, nearly ***sixteen months*** after the requests for production were first served;

- Plaintiffs failed to comply with the Parties' stipulated substantial completion deadline of November 15, 2023, now representing it will take "weeks" to comply, and as of the filing of this Motion still have not complied;

- Plaintiff George Lopez has failed to produce documents related to his motive for bringing his lawsuit, despite Magistrate Judge Rocconi's August 15, 2023 order that he do so;

- Plaintiffs have failed to produce certain financial documents, despite Magistrate Judge Rocconi's August 15, 2023 order that they do so;

- Plaintiffs have failed to produce documents from the majority of their agreed-to custodians;

- Plaintiffs have failed to produce many of the "hand-pull" documents they have been promising to produce since at least July 2023;

- Plaintiffs have made hundreds of inappropriate redactions of non-privileged portions of responsive documents on supposed "confidentiality" or "privacy" grounds; and

- Plaintiffs have failed to supplement their interrogatory responses, despite promising to do so by a date certain multiple times.

Based on Plaintiffs' repeated representations to Pandora and the Court, Pandora expected that most (if not all) of these issues would be rectified at the latest by the November 15, 2023 substantial completion deadline. But that deadline has come and gone and the above issues remain outstanding, necessitating this Motion.

In short, Pandora has acted diligently to comply with the Court's Order, Pandora will be prejudiced without the requested extension, and Plaintiffs cannot claim any prejudice by an extension, considering they are the sole cause of the need for an extension.[1] Short of seeking sanctions at this juncture,[2] Pandora must be allowed more time to conduct discovery in light of Plaintiffs' seeming

---

[1] While Plaintiffs did not agree with the basis for the Motion, Plaintiffs stated that they did not oppose a shorter extension of three months, nor did they articulate any prejudice if the full extension requested by Pandora were granted other than delay. Declaration of Allison Aviki ("Aviki Decl.") ¶¶ 104, 105.
[2] Pandora reserves its right to seek sanctions, including issue and terminating sanctions, should Plaintiffs continue to delay and ignore their discovery obligations.

unwillingness to participate in discovery. Accordingly, the Court should grant this Motion by extending fact discovery by six months and the other pretrial deadlines and the trial date by a commensurate amount of time.

## BACKGROUND

### A.    Pandora Diligently Conducted Discovery

Throughout this litigation, Pandora has repeatedly undertaken efforts to secure basic, relevant, and proportional discovery from Plaintiffs. Plaintiffs, for their part, have repeatedly assured Pandora and, at times, the Court, that they would eventually comply with their discovery obligations, in many instances committing to a date certain by which certain discovery deficiencies would be rectified. But time and again, Plaintiffs failed to meet deadlines they agreed to, always claiming that they would comply, but it would just take more time, thereby discouraging Pandora from seeking relief from Magistrate Judge Rocconi. In contrast, Pandora has complied with its discovery obligations, timely responded to all requests, produced documents on a rolling basis, and met the November 15, 2023 substantial completion deadline.

### 1.    *Pandora's Efforts To Secure Discovery Prior to the Court's Order*

On August 10, 2022, prior to the initial scheduling conference, Pandora served its first set of requests for production on all of the then eight plaintiffs. Aviki Decl. ¶ 9. Shortly after Plaintiff Lopez's then-new case was consolidated with the others, Pandora served its first set of requests for production on him on September 13, 2022. *Id.* ¶ 10. Pandora served its second set of requests for production on all nine Plaintiffs on December 15, 2022, and its third on June 2, 2023. *Id.* ¶ 11.

On October 13, 2022, Pandora served its first set of interrogatories on Plaintiffs. *Id.* ¶ 12. And in January and June of 2023, Pandora served its second and third sets of interrogatories on all Plaintiffs. *Id.* ¶ 13. In total, Pandora served over

100 requests for production and interrogatories on Plaintiffs. *Id*. ¶ 14. Throughout this period, Plaintiffs' responses and objections (including supplemental responses) to Pandora's written discovery trickled in, with the latest supplemental responses served by Plaintiffs in August 2023. *Id*. ¶ 15.

After receiving each set of discovery responses, Pandora met and conferred with Plaintiffs, in some cases multiple times, to clarify Plaintiffs' positions and attempt to resolve their improper objections, including ubiquitous non-specific boilerplate objections. *Id*. ¶ 16. For document requests, Pandora also met to ascertain what, if anything, Plaintiffs were withholding and when productions would commence. *Id*. With limited exceptions, Pandora was able to reach agreements with Plaintiffs on what would be produced and, where the parties did reach impasse, Pandora promptly went to Magistrate Judge Rocconi to seek relief. *Id*. ¶ 17. For those requests where there was no dispute, Plaintiffs committed that they would be producing responsive documents on a rolling basis. *Id*. ¶ 18. As a result, Pandora was left with little choice but to wait for the promised productions to see if Plaintiffs were actually complying with their obligations.

When no document productions came, Pandora regularly followed up with Plaintiffs, including engaging in more meet and confers, during which Plaintiffs again assured Pandora that documents would be produced in short order. *Id*. ¶ 19. Finally, in April 2023, two of the nine Plaintiffs made initial, but far from complete, document productions. *Id*. ¶ 20. By June 2023—ten months after Pandora had first served requests for production—seven of the nine Plaintiffs had still not produced a single document. *Id*. ¶ 21. At that point, it became clear that an extension would be necessary for there to be any chance that Plaintiffs would produce documents sufficiently in advance of the close of fact discovery to conduct depositions and allow for any necessary follow-up discovery or motion practice. The parties discussed an extension and agreed upon a revised schedule. *Id*. ¶ 22. Critical to that

4

new schedule was the parties' stipulation to substantially complete document production by November 15, 2023. *Id*. ¶ 23. The parties sought an extension from the Court on June 9, 2023. ECF No. 171.

While Pandora was pressing to obtain discovery from Plaintiffs, it also sought discovery from third parties via subpoenas. Specifically, starting on November 29, 2022, and continuing through November 2023, Pandora served 29 third-party document subpoenas. Aviki Decl. ¶ 24. And based on what Pandora has learned from the discovery secured to date, Pandora expects to have to serve additional third-party subpoenas in the coming days and weeks. *Id*. ¶ 25.

### 2. *Pandora's Efforts To Secure Discovery After the Court's Order*

As noted, in June 2023, the parties stipulated to an extension of the pretrial dates. *Id*. ¶ 26. Due to Plaintiffs' many prior unmet promises to timely produce documents, Pandora insisted that any stipulation must include a deadline for substantial completion of document production, to which Plaintiffs agreed. *Id*. ¶ 27. That agreement is memorialized both in the stipulation and the proposed order that accompanied the stipulation. ECF No. 171 at 12; ECF No. 171-3 at 2.

After the Court issued its Order extending the schedule, Pandora did not simply sit on its hands. Instead, it took numerous steps to ensure that the Parties could meet the modified case schedule and complete fact discovery by the February 28, 2024 deadline. Aviki Decl. ¶ 28.

*First*, Pandora repeatedly contacted Plaintiffs to secure a date certain by which documents would be produced. Continuing their past practice, Plaintiffs assured Pandora that documents would be coming on a rolling basis and that Pandora simply needs to be patient. Aviki Decl. ¶ 29. Plaintiffs stated as much to Judge Rocconi in their response to Pandora's motion to compel certain discovery asserting that Pandora's motion "seems to arise primarily from its impatience with the discovery process" and that because at that time there were still seven months

remaining until the close of fact discovery, that "Pandora's complaints about timeliness are particularly premature and unfounded." ECF No. 180 at 9-10. In some instances, Plaintiffs did provide a date certain by which they would produce certain documents, only to later miss those deadlines, claiming that they just needed more time. Aviki Decl. ¶ 30.[3] But Plaintiffs were always clear that, at a minimum, they would substantially complete their production by the November 15, 2023 deadline. *Id*. ¶ 33.

*Second*, since the Court issued its Order and extended the parties' case schedule, Pandora has painstakingly reviewed Plaintiffs' interrogatory responses and has urged Plaintiffs to supplement facially deficient responses. *Id*. ¶ 34. As a result of Pandora's repeated follow-up, including with Local Rule 37-1 letters, Plaintiffs served multiple supplemental discovery responses. *Id*. ¶ 35. In fact, Plaintiffs did not commit to supplement their interrogatory responses until Pandora filed its portion of the joint stipulation compelling Plaintiffs to do so.  *Id*. ¶ 36. But still, many of Plaintiffs' interrogatory responses remain deficient, including because many still do not have the required party verifications, and Plaintiffs have repeatedly promised to further supplement. *Id*. ¶ 37.

*Third*, and more generally, Pandora has attempted to resolve all discovery disputes with Plaintiffs informally to obviate the need for motion practice. Pandora sent letters to Plaintiffs' counsel to meet and confer regarding Plaintiffs' discovery issues on July 20 and 24 and November 21, 2023. *Id*. ¶¶ 38-39. This led to meet and confers with Plaintiffs' counsel during August and December 2023. *Id*. ¶ 40. Pandora also traded countless emails with Plaintiffs' counsel regarding Plaintiffs'

---

[3] For example, Plaintiffs stated they would be producing certain "hand-pull" documents by August 22, 2023. *Id*. ¶ 31. When that did not happen, Plaintiffs next promised to produce the documents by September 22, 2023. *Id*. When that still did not happen, in response to an email from Pandora to Judge Rocconi's chambers requesting a telephonic hearing, Plaintiffs promised to produce the documents by October 15, 2023. *Id*. ¶ 32. To date, many of those documents have still not been produced. *Id*.

discovery issues. *Id*. ¶ 41. These communications led Pandora to believe that Plaintiffs would resolve most, if not all, of their outstanding discovery issues by the November 15 substantial completion deadline. *Id*.

*Finally*, Pandora has filed four motions to compel, with a fifth to be filed imminently:

**Pandora's Motion to Compel Plaintiffs**: On July 19, 2023, Pandora moved to compel Plaintiffs to produce certain categories of documents and supplement certain interrogatory responses by a date certain. ECF No. 180. On August 15, 2023, Magistrate Judge Rocconi granted the motion, ordering Plaintiffs to produce documents in response to RFP Nos. 30, 35, 42-44 (with slight modifications to requests 42-44), and ordered Plaintiffs to supplement their interrogatory responses within 30 days. ECF No. 193 at 10. Judge Rocconi's order did not contain a date certain for production of the compelled documents, and Plaintiffs have to this day failed to comply with that Order. Aviki Decl. ¶ 42. Indeed, on the meet and confer held on December 1, 2023, Pandora incredibly first learned that Plaintiffs are not sure if responsive documents to all of these requests even exist. *Id*. ¶ 43. Plaintiffs have still not undertaken the most basic efforts to comply with Judge Rocconi's order and, if it turns out that no such documents exist, forced Pandora and Judge Rocconi to engage in pointless motion practice.

**Pandora's Motion to Compel Word Collections**: On August 31, 2023, Pandora moved to compel non-party Word Collections to comply with a subpoena issued in the Southern District of New York. *Id*. ¶ 45. Word Collections plays a key role—and has a direct financial interest—in this case. *Id*. ¶ 46. It is not only the self-described exclusive licensor of many of the works asserted against Pandora, but it is also orchestrating and funding the litigations brought by most of the Plaintiffs, as Pandora discovered through different third-party discovery in July 2023. *Id*. Moreover, Word Collections is one of the two collective licensing entities

facilitating one type of the copyright misuse that Pandora raises as a defense. *Id*. Yet Word Collections has not produced a single document in response to Pandora's subpoena, necessitating the motion to compel. *Id*. ¶ 47.

By September 11, 2023, the motion was fully briefed. *Id*. Then, on October 5, 2023, based on Word Collections' letter motion to transfer, the motion was transferred to this Court. *Id*. ¶ 48. On December 7, 2023 Judge Rocconi granted the motion in part and denied it in part, ordering Word Collections to make its production within 21 days. As part of her Order, Judge Rocconi observed that "[b]ased on the discovery motions currently before the Court, it appears that the parties still have extensive discovery to complete before [the close of fact discovery], which is not altogether too far from now, especially considering the intervening holidays." Case No. 2:23-mc-00140, ECF No. 27 at 8. While Pandora is still reviewing this decision, it currently anticipates that it will appeal Judge Rocconi's decision to this Court, which, if successful, would likely mean Word Collections would be producing additional documents by, at the earliest, mid-January.

***Pandora's Motion to Compel Spoken Giants***: On October 12, 2023, Pandora moved to compel non-party Spoken Giants to comply with a subpoena issued in the District of Delaware. *Id*. ¶ 49. Like Word Collections, and again as learned by Pandora recently through different third-party discovery, Spoken Giants is also funding and orchestrating some of this litigation, has a financial interest in this case, is the self-described collective licensor of many of the works asserted against Pandora, and is the other entity facilitating one type of the copyright misuse that Pandora asserts as a defense. *Id*. ¶ 50. Spoken Giants refused to produce any documents in response to Pandora's subpoena, necessitating the bringing of the motion. *Id*. ¶ 51.

To expedite a resolution of Pandora's motion, the parties stipulated to transfer the motion to this Court and to complete briefing by November 16, 2023. *Id*. ¶ 52.  On December 7, 2023, Judge Rocconi granted the motion in part and denied it in part, ordering Spoken Giants to make its production within 21 days. While Pandora is still reviewing this decision, it currently anticipates that it will appeal Judge Rocconi's decision to this Court, which, if successful, would likely mean Spoken Giants would be producing additional documents by, at the earliest, mid-January.

*Pandora's Motion to Compel 800 Pound Gorilla*: On November 8, 2023, Pandora moved to compel non-party 800 Pound Gorilla to comply with a subpoena issued in the District of Delaware. *Id*. ¶ 53. 800 Pound Gorilla also plays a key role in this case. It is one of the largest comedy record labels operating today and has produced some of the Plaintiffs' comedy recordings. *Id*. ¶ 54. As a result, it has (among other things) documents that are relevant to the custom and practice of the spoken-word comedy industry—an issue central to this litigation. *Id*. 800 Pound Gorilla is also owned and founded by two of the individuals who created Spoken Giants. *Id*. ¶ 55. Indeed, Spoken Giants is the evolution of a publishing entity created by 800 Pound Gorilla called Sidehatch Publishing. *Id*. Yet despite the foregoing, 800 Pound Gorilla only produced four documents in response to Pandora's subpoena, necessitating a motion to compel. *Id*. ¶ 56. Like the Spoken Giants motion to compel, Pandora stipulated to transfer the motion to this district and to a briefing schedule, with a noticed hearing date of January 3, 2024. *Id*. ¶ 57.

*Pandora's Second Motion to Compel Plaintiffs*: On November 21, 2023, Pandora served a Local Rule 37-1 letter on Plaintiffs, identifying a host of discovery issues that are now ripe given that the November 15, 2023 substantial completion deadline has passed. *Id*. ¶ 58. The parties met and conferred on December 1, 2023 and, after getting leave from Judge Rocconi, Pandora is serving

9

its portion of a joint stipulation of a motion to compel Plaintiffs to comply with their discovery obligations on December 8, 2023, concurrently with the filing of this motion. *Id*. ¶ 59. Pursuant to the Local Rules, that motion to compel will be filed on or before December 20, 2023, and fully briefed by December 27, 2023, with an anticipated hearing date of January 10, 2024.

In short, Pandora has been forced to waste ***considerable*** time and resources to get Plaintiffs (and related third-parties) to comply with their basic discovery obligations and produce information fundamental to this action, and has repeatedly had to file motions to compel.

### 3. *Pandora Has Complied with Its Own Discovery Obligations*

In contrast to Plaintiffs, Pandora has complied with all of its discovery obligations. It has timely responded to all of Plaintiffs many discovery requests. *Id*. ¶ 60. It promptly began its document production and has produced documents on a rolling basis—as the parties agreed. *Id*. Pandora also collected, reviewed, and produced documents from all of the custodians covered by the proposed search protocol it provided to Plaintiffs on August 3, 2023 and heard no objection to (despite Pandora's follow up). *Id*. Specifically, Pandora has made productions on November 17, 2022, December 27, 2022, April 7, 2023, June 2, 2023, October 12 and 17, 2023, and November 8, 13, and 15, 2023. *Id*. ¶ 61. And critically, Pandora met the stipulated substantial completion deadline. *Id*. ¶ 62. Indeed, on the meet and confer that preceded the filing of this Motion, Plaintiffs did not raise any concerns with Pandora's discovery to date. *Id*. ¶ 63.

### B.   Plaintiffs' Failure to Meaningfully Participate in Discovery

Despite Pandora's efforts to pursue discovery, and despite Plaintiffs bringing nine copyright infringement suits, each seeking millions of dollars in damages, ***Plaintiffs clearly have no intention of fully complying with their discovery obligations***. Pandora served most of its document requests more than a year ago,

10

yet no Plaintiff produced any documents until April 2023, at which point only two Plaintiffs made relatively small and incomplete productions. *Id*. ¶ 64. Five of the nine Plaintiffs did not produce a single document until October 15, 2023, and the remaining two Plaintiffs still have not produced a single document from any of their identified custodians. *Id*. ¶ 65.

As also noted above, throughout this litigation, Pandora has continuously pressed Plaintiffs to produce responsive documents and Plaintiffs have repeatedly assured Pandora that they would do so on a rolling basis, only to ignore their own promises. *Id*. ¶ 66. By doing so, Plaintiffs' gamesmanship effectively prevented Pandora from seeking earlier relief, as when Pandora raised the possibility of going to the Court (as it did many times), Plaintiffs stated that documents are coming and that motion practice is unnecessary. *Id*. ¶ 67. Plaintiffs' discovery failures have continued. Specifically:

***Plaintiffs Violated the Substantial Completion Deadline***: The Parties' substantial completion deadline, pursuant to their stipulation filed with the Court, was November 15, 2023. ECF No. 171. As November 15 approached, Plaintiffs' counsel reiterated their intent to comply with the deadline. Aviki Decl. ¶ 68. But then, on November 15, 2023, at 7:57 p.m., Plaintiffs informed Pandora that "various unexpected issues . . . necessitate a significant re-review in an effort to minimize errors." *Id*. Ex. 1. The email stated that it would take up to "three weeks" for Plaintiffs to substantially complete their production of documents. *Id*. Plaintiffs failed to give Pandora any warning that they would violate the substantial completion deadline before the deadline. *Id*. ¶ 70. To date, Plaintiffs have still not substantially completed their production of documents. Moreover, given Plaintiffs' consistent practice of failing to meet their own promised deadlines throughout this litigation (as detailed in the Aviki Declaration), such promises have proven to be meaningless. Worse, on the meet and confer preceding the filing of this Motion, it

became clear that Plaintiffs have much more work to do to substantially complete their production than they previously suggested. Plaintiffs acknowledged that they have thousands of documents that they have collected, but still need to review, and there still are certain custodians for which they have not finished collecting documents. *Id*. ¶ 72. With respect to Lewis Black, not one of the four attorneys for Plaintiffs on the meet and confer could state whether his documents had even been collected (let alone reviewed). *Id*. ¶ 73.

*Plaintiff Lopez Violates Court Order re: Motive Documents*: Plaintiff Lopez has still not produced the "Motive Documents" that Judge Rocconi ordered him to on August 15, 2023. *See* ECF No. 193 at 7-8, 10. On October 4, 2023, Pandora sought confirmation that Plaintiff Lopez would produce those documents no later than October 13, 2023—*i.e.*, two months after the Court's order. *See* Aviki Decl. Ex. 2 (October 4, 2023 Email from Hirsch to Plaintiffs). The next day, Plaintiffs' counsel responded that they would "produce all responsive documents as part of their overall production . . . with production to be substantially complete by the date previously agreed upon by the parties" (*i.e.*, November 15). *Id*. ¶ 76. That still has not happened.

*Plaintiffs Violate Court Order re: Financial Documents*: Judge Rocconi's August 15, 2023 order also compelled all Plaintiffs to produce "Financial Documents" responsive to RFP Nos. 42-44. ECF No. 193 at 8-10. That Order specifically required all Plaintiffs to produce documents showing Plaintiffs' royalties and revenue earned for "all works in which [Plaintiffs] own the literary copyright" as well as "[a]ll financial statements pertaining to a Plaintiff's comedy business" maintained in the ordinary course of business. *Id.* Nearly four months have passed, the Parties' agreed-upon deadline for substantial completion of document production has come and gone, and several Plaintiffs still have not complied. Aviki Decl. ¶ 78.

***Plaintiffs Have Produced Little or No Documents***: Even though the substantial completion deadline has passed, six of the Plaintiffs—Bill Engvall, Ron White, Andrew Dice Clay, Mary Reese Hicks, Lewis Black, and George Lopez— have still not produced a single document from their own files. And for three Plaintiffs—Lewis Black, George Carlin, and Andrew Dice Clay—they and all of their identified document custodians have produced either zero or extremely few documents. *Id*. ¶ 79. Specifically, Black has produced no documents from the five custodians he agreed to collect from; Carlin has produced approximately 250 documents from only a single custodian, and Clay has produced no documents at all. *Id*. ¶ 80.[4]

More generally, as shown in the chart below, Plaintiffs failed to produce documents from the ***majority*** of the agreed-upon document custodians:[5]

| Plaintiff | Agreed-to Custodians and Number of Documents Produced |
|---|---|
| **Bill Engvall/Yellow Rose** | Jenny Riker (298) JP Williams (0) Bill Engvall (0) Sandy Fox (645*) Loan Dang (Del Shaw Moonves) (70*) *Although Fox and Dang were listed as Yellow Rose custodians, a large portion of their documents appear to |

---

[4] There are a handful of other documents produced that appear to relate to these three Plaintiffs—documents without any custodians—but these documents consist entirely of publicly available printouts from the U.S. Copyright Office, many time-stamped to show they were created—apparently by litigation counsel—shortly before the October 15, 2023 "hand pull" deadline. *Id*. ¶ 81.

[5] These numbers include the documents produced by Plaintiffs on December 6 and 7, 2023—weeks after the substantial completion deadline. Plaintiffs also made an additional production on December 5, 2023. That production appears to contain only additional documents from some of the same custodians they have previously produced documents from. That production, however, is missing much of the required metadata, including the required Custodian field, making it impossible for Pandora to update this chart to account for this production, also made weeks after the substantial completion deadline.

|  |  |
|---|---|
|  | be solely related to Plaintiffs Ron White and Lewis Black respectively. |
| **George Carlin/Main Sequence** | Alex Hamza (234) <br> Jerold Hamza (0) <br> Kelly Carlin (0) |
| **Ron White** | Ron White (0) <br> Sandy Fox (645) <br> Nancy Shultz (0) <br> Michael Blakey (Electra Star Management)(0) |
| **Robin Williams Trust** | Steve Tenenbaum (686) <br> Arnie Kassoy (390) <br> Manatt Phelps (Brian Sbardelli) (0) <br> David Steinberg (0) <br> Schulman Lobel (Joel Faden) (0) |
| **Andrew Dice Clay/Brave Lion** | Pam Malek (0)[6] <br> Andrew Dice Clay (0) |
| **Nick Di Paolo** | Andrea Di Paolo (756) <br> Nick Di Paolo (including Acid Tongue, Inc.) (27) <br> Jason Riggs (BSeen Media) (344) |
| **Mary Reese Hicks** | Kent Marcus (87) <br> Lynn Hicks (including Arizona Bay Productions Co. Inc.) (395) <br> Mary Reese Hicks (0) |
| **Lewis Black** | Benjamin Brewer (Stark Raving Black Productions) (0) <br> Matt Lichtenberg (Level Four) (0) <br> Lewis Black (0) <br> James Salkind (Stark Raving Black Productions) (0) <br> Michael Rotenberg (0) |
| **George Lopez** | Todd Bozick (Boulevard Management) (750) <br> George Lopez (0) |

---

[6] Plaintiffs' counsel told Pandora for the first time during the December 1, 2023 meet-and-confer that Pam Malek will no longer be a custodian, but that a new business manager for Plaintiff Clay is taking her place on this list. *Id*. ¶ 80

14

| | Lester Knispel (Boulevard Management) (35) |
|---|---|

***Plaintiffs Failed to Produce "Hand Pull" Documents***: Plaintiffs have also not produced a complete set of their "hand-pull" documents—those documents that either exist in hard copy or should have been collected directly without the need for electronic search terms—despite repeated assurances that they would do so. *Id.* ¶ 83. Indeed, in a September 27, 2023, email to Judge Rocconi concerning Pandora's latest request for these documents, Plaintiffs represented that they "already produced their hard copy documents to Pandora" and further committed to "produce the so-called 'hand-pull' document categories for all Plaintiffs by a date certain of October 15th." *See id.* Ex. 3 (September 27, 2023 Email from Amerine to Courtroom Deputy Velasco).

Plaintiffs' September 27 assurances to the Court appear to be false. For one, it is inconceivable that the documents Plaintiffs produced by that date constituted a complete set of hard-copy documents. Indeed, since that representation to the Court, Plaintiffs have produced a handful of additional hard copy documents. *Id.* ¶ 85. Moreover, the Plaintiff Comedians have enjoyed long comedy careers, some reaching back decades. They doubtless have in their possession, custody, or control ***at least some*** hard-copy documents, including, for instance, older copyright registration certificates and application material or agreements concerning the older Asserted Works. And yet for several Plaintiffs, no such documents have been produced. *Id.* And, several agreed-to categories of hard copy documents remain clearly outstanding, including (i) samples of the asserted works; (ii) agreements concerning the asserted works; (iii) chain-of-title documents; and (iv) affiliation agreements with Word Collections and Spoken Giants. *Id.* ¶ 86.

***Plaintiffs' Inappropriate Redactions for Privacy/Confidentiality***: Plaintiffs have also produced several hundred documents with copious redactions for

"privacy" or "confidentiality." Although some of these redactions appear appropriately limited to obscuring small portions containing sensitive personally identifiable information—*e.g.*, social security numbers—others cover large, substantive sections of documents. Aviki Decl. ¶ 87. For example, Plaintiffs have produced financial documents summarizing income and other financial information related to Plaintiff George Lopez with extensive redactions for "privacy." *Id*. ¶ 88.

There is no justification for these redactions. The protective order permits the designation of any information that implicates confidentiality concerns, prohibiting them from being disseminated to the public, thereby protecting their contents. *See* ECF No. 80 at ¶ 2.13. Redactions for "privacy" or similar confidentiality concerns are inappropriate when the parties are operating under a protective order like the one here.

***Plaintiffs' Failure to Supplement Interrogatory Responses***: Plaintiffs have failed to supplement their interrogatory responses as promised. *Id*. ¶ 89. Supplementation was necessary because Plaintiffs' original responses were deficient; among other things, certain responses did not answer the question posed and five responses were served without FRCP 33's required verifications. *Id*. ¶ 90. On September 27, 2023, Plaintiffs agreed to provide supplemental responses to Interrogatory Nos. 15 and 16 "by the end of next week." *See id*. Ex. 4 (September 27, 2023 Email from Amerine to Pandora). Nearly a month later, on October 23, 2023, Plaintiffs stated that they "are still in the process of supplementing and providing verification for their responses to Interrogatories No. 15 and 16." *See id*. Ex. 5 (October 23, 2023 Email from Amerine to Pandora). And now, nearly two months later, Pandora still has not received the promised supplemental responses or verifications. *Id*. ¶ 93. Plaintiffs also agreed to supplement their responses to Interrogatory Nos. 4 and 12-14 during a meet and confer on May 8, 2023. *Id*. ¶ 94.

Seven months have passed since that representation, and Plaintiffs' responses have yet to be supplemented. *Id*. ¶ 95.

***

Overall, Plaintiffs repeatedly made vague promises of future productions or supplementations, effectively preventing Pandora from seeking relief from the Court, and then repeatedly broke those promises, even when under court order.

## LEGAL STANDARD

"[D]istrict judges have broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Alcantara v. United Furniture Indus., Inc.*, 2023 WL 6190817, at *1 (C.D. Cal. July 25, 2023) (Scarsi, J.) (quoting *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011)). "In general, the pretrial scheduling order can only be modified 'upon a showing of good cause.'" *DeRosa v. ViacomCBS, Inc.*, 2021 WL 8531653, at *1 (C.D. Cal. Dec. 3, 2021) (Scarsi, J.).

"Rule 16(b)'s good cause standard generally means diligence or exceptional circumstances." *Sharp v. Balboa Islands, LLC*, 2012 WL 13176036, at *3 (S.D. Cal. June 20, 2012) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). In regard to diligence, "[t]he pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension." *Alcantara*, 2023 WL 6190817, at *1 (internal quotation marks and citation omitted). Exceptional circumstances or extraordinary circumstances *independently and sufficiently* satisfies Rule 16's "good cause" standard because "'[g]ood cause is shown when there are 'extenuating circumstances.'" *Johnson*, 975 F.2d at 610 (stating "as a practical matter, extraordinary circumstances is a close correlate of good cause."). In either case, "[p]rejudice to the opposing party, though

17

not the focus of the inquiry, also may support denying a motion." *Alcantara*, 2023 WL 6190817, at *1.

## ARGUMENT

Rule 16's good cause standard is doubly met here. First, Pandora has been diligent in its efforts to meet the existing fact discovery cutoff (and would be prejudiced without the extra time needed to secure discovery improperly withheld or delayed by Plaintiffs). Second, the standard is *independently* and *sufficiently* met because Plaintiffs' delays and broken promises constitute "extraordinary circumstances" and thus good cause for an extension. And while prejudice is not the focus of Rule 16's good cause standard, it is notable that Plaintiffs would not be prejudiced by an extension, and in fact support at least some extension (albeit for different reasons).

### A.    Pandora Diligently Conducted Discovery

Pandora diligently pursued discovery and made every effort to comply with the Court's Order. As detailed above, Pandora has (i) issued more than one hundred requests for production and interrogatories; (ii) served dozens of third-party subpoenas, (iii) conducted countless meet and confers with Plaintiffs' counsel, (iv) regularly followed-up with Plaintiffs' counsel to inquire about the status of discovery; and (v) filed four motions to compel discovery, with a fifth being filed imminently. Pandora has actively engaged in the discovery process, attempted to resolve discovery disputes informally with Plaintiffs (and third parties) as they arose, and, when that failed, has brought multiple discovery disputes to Judge Rocconi for resolution. In contrast, Plaintiffs have failed to materially comply with their discovery obligations and have attempted to run out the clock by repeatedly promising to produce documents and then ignoring those promises.

In short, Pandora has made every effort to comply with its discovery obligations, and thus has acted diligently pursuant to Rule 16, as multiple courts

granting extensions to the case schedule in similar circumstances have held. *See, e.g.*, *DeRosa*, 2021 WL 8531653, at *2 (granting extension because party "demonstrate[d] that she has diligently attempted to comply with the scheduling order" by "serving early class discovery" and "presenting several motions to compel discovery to the Magistrate Judge"); *Alcantara*, 2023 WL 6190817, at *1 (granting extension because movants "diligently prosecuted discovery and raised disputes informally with" non-movants); *C. v. Anthem Blue Cross Life & Health Ins. Co.*, 2023 WL 6373840, at *2 (C.D. Cal. Jan. 17, 2023) (movant demonstrated "sufficient diligence to warrant an extension" considering movant "met and conferred shortly" after "a dispute arose" and filed motion to compel "prior to the discovery cutoff").

### B.  Plaintiffs' Broken Promises and Delays Constitute Exceptional Circumstances Warranting An Extension.

Additionally, as discussed *supra*, Plaintiffs' repeated broken promises and delays constitute exceptional circumstances warranting an extension. Specifically, since the Order was granted, Plaintiffs have (i) violated the parties agreed-upon substantial completion deadline; (ii) violated Judge Rocconi's order granting Pandora's motion to compel; (iii) produced little or no documents, including from the majority of the custodians they agreed upon; (iv) failed to produce all hard copy documents, despite claiming to the Court that they have done so, as well as all "hand pull" documents; and (v) failed to supplement their interrogatory responses. Any one of these failings would be problematic on their own, but collectively they constitute extraordinary circumstances that have made it impossible for Pandora to comply with the parties' current case schedule.

### C.    Pandora Would Be Prejudiced Absent an Extension

With fact discovery set to close on February 28, 2024, Plaintiffs' continued failure to comply with their discovery obligations has unfairly prejudiced Pandora

19

and will continue to do so absent an extension. *First*, Plaintiffs' failure to produce documents and respond appropriately to written discovery impedes Pandora's ability to prepare for and take depositions by the discovery cutoff. *Id.* ¶ 97. Under the current schedule, Pandora must take dozens of depositions, including multiple party depositions for each of the nine Plaintiffs, and multiple third party witnesses who have important relevant evidence. *Id.* ¶ 98. But, as discussed above, some Plaintiffs have not even ***produced a single document*** to date. Pandora cannot adequately take depositions of Plaintiffs who have produced little to no documents. Indeed, Pandora cannot even identify the complete list of deponents without a substantially complete production from Plaintiffs.

*Second*, Plaintiffs' delay has and continues to prejudice Pandora's ability to pursue additional party and nonparty discovery. For example, Plaintiffs just recently produced an email between Plaintiff Di Paolo and his distributor contemplating the placement of Asserted Works on a bit torrent site for promotional purposes. *Id.* Ex. 6. The possibility that one or more Plaintiff Comedians made the Asserted Works available royalty free through pirate sites is new information to Pandora, as is the individual involved in those actions. *Id.* ¶ 100. Additionally, Plaintiffs recently produced a document demonstrating that Spoken Giants had at least some relationship with a Plaintiff who previously claimed to not be affiliated with Spoken Giants. *Id.* ¶ 101. Pandora cannot be expected to finish discovery in less than three months while still waiting for Plaintiffs to substantially complete their production and supplement their interrogatory responses, considering the information that has been revealed to date. *Id.* ¶ 102.

These are not trivial issues. Pandora must have sufficient time to conduct both party and non-party discovery given the nature of this case. This is not a simple copyright infringement case. Plaintiffs, at the behest of and with funding from Word Collections and Spoken Giants, brought nine infringement actions to

20

upend decades of historic custom and practice in the spoken-word comedy industry and create a new revenue stream never before sought by any comedian. In other words, this is a bet the industry litigation, engineered to create a new market for rights licensing, which will have far ranging implications beyond just the handful of comedy albums at issue here. And because the historic custom and practice of the comedy industry is such a critical aspect of this litigation, Pandora must be afforded sufficient time to conduct the necessary discovery to demonstrate that practice— one that requires discovery from not just the parties, but also dozens of third parties. Notably, the need for extensive discovery is an asymmetric problem, which at least partially explains why Plaintiffs can be so cavalier about timing. The discovery all nine Plaintiffs need comes from one party, Pandora, and is largely the same. Pandora, in contrast, needs separate discovery from each of the nine plaintiffs, and also needs to support defenses based on industry custom and practice and the conduct of Plaintiffs in conjunction with various third parties, all of which requires extensive third-party discovery. Indeed, Plaintiffs admitted this very asymmetry in their Response to the Court's Order to Show Cause re: Joinder. *See* Plaintiff Main Sequence, LTD.'s Response to Order to Show Cause, Case No. 2:22-cv-00810-MCS-MAR, ECF No. 17, at 3-5 (arguing that "each Plaintiffs' infringement claims arise out of distinctly different transactions which occurred at different points in time without any specific correlation" while "much if not all of the discovery requested by the Plaintiffs would be duplicative and overly time consuming and burdensome if not consolidated"). And, as demonstrated above, Pandora has timely complied with its discovery obligations to Plaintiffs. Thus, the prejudice flowing from a failure to extend the fact discovery deadline will only impact Pandora.[7]

---

[7] In fact, Plaintiffs' inability to comply with their discovery obligations arguably entitles Pandora to a unilateral extension of the discovery cutoff period, as Plaintiffs should not benefit from their own failures to participate in this case.

21

### D.   Plaintiffs Would Not Be Prejudiced By This Extension

Finally, Plaintiffs would not be prejudiced by an extension of the trial schedule. Quite to the contrary, they support an extension (albeit a shorter one and for different reasons). During the parties' meet and confer prior to filing this Motion, Plaintiffs were unable to articulate any prejudice they might suffer from an extension beyond making unspecified claims regarding potential witness availability. That is unsurprising, as a six-month extension will have no impact on Plaintiffs other than allowing their counsel to (hopefully) finally comply with their discovery obligations. Plaintiffs' inability to articulate any real prejudice they would suffer should an extension be granted further supports granting the Motion. *See, e.g.*, *Alcantara*, 2023 WL 6190817, at *1 (granting motion because non-movants did "not rebut [movants]' argument that [non-movants] would suffer no unfair prejudice if an extension were granted").

Additionally, a party, like Plaintiffs here, that engages in "dilatory tactics" and fails to comply with its "discovery obligations" cannot be heard to be prejudiced by an extension. *DeRosa*, 2021 WL 8531653, at *2 (granting motion to extend and "invit[ing] Movant] to file a motion for sanctions"); *see also M.H.C. v. Cnty. of L.A.*, 2019 WL 13242561, at *5 (C.D. Cal. Nov. 5, 2019) (granting motion in part because non-movants were "partially to blame" for the delay by not "disclosing [witness]'s role in their written discovery responses"). Indeed, despite the significance of this litigation, Plaintiffs can point to no urgent need for hasty resolution of this complex dispute. Plaintiffs are challenging conduct of Pandora's that dates back to 2011, but did not even start to bring these actions until February 2022. And the operative complaint was not filed until even later—in September 2022—because Plaintiffs' counsel continued to add parties to the consolidated litigation over the intervening months. And, because Pandora promptly took down the Asserted Works from its service, there is no ongoing conduct at issue. In short,

22

Plaintiffs cannot be heard to complain about a modest extension when they waited more than a decade to raise their concerns.

## CONCLUSION

Pandora respectfully requests that the Court grant its Motion and extend the discovery cutoff by six months, pursuant to the revised schedule set forth in the Proposed Order submitted concurrently.

Dated:  December 8, 2023

MAYER BROWN LLP
PAUL M. FAKLER
JACOB B. EBIN
ALLISON AVIKI
WILLIAM H. STALLINGS
CHRISTOPHER J. KELLY
JOHN NADOLENCO
DOUGLAS A. SMITH
MAX W. HIRSCH
MICHAEL A. CALVANICO

By: */s/ Paul M. Fakler*
Paul M. Fakler

MAYER BROWN LLP
WILLIAM H. STALLINGS (*pro hac vice*)
*wstallings@mayerbrown.com*
1999 K Street, NW
Washington, D.C.  20006-1101
Telephone:  (202) 263-3000
Facsimile:  (202) 262-3300

MAYER BROWN LLP
CHRISTOPHER J. KELLY (SBN 276312)
*cjkelly@mayerbrown.com*
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California  94306-2112
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

Attorneys for Defendant
PANDORA MEDIA, LLC

# FILER'S ATTESTATION

The undersigned, counsel of record for Defendant Pandora Media, LLC, certifies that this brief contains 6,942 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 8, 2023

*/s/ Paul M. Fakler*
*Paul M. Fakler*

24