Richard S. Busch - SBN 319881
*rbusch@kingballow.com*
KING & BALLOW
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| In re PANDORA MEDIA, LLC COPYRIGHT LITIGATION<br><br><br><br><br><br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. 2:22-cv-00809-MCS-MAR<br><br>CONSOLIDATED ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN QUALIFIED OPPOSITION TO PANDORA MEDIA, LLC'S MOTION TO EXTEND CASE SCHEDULE**<br><br>[*Declarations of Mary Catherine Amerine and Mark L. Block filed concurrently herewith*]<br><br>Hearing Date: January 8, 2024<br>Time:       9:00 AM<br>Courtroom:   7C<br>Judge Hon. Mark C. Scarsi |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

BACKGROUND ................................................................................................. 4

    A.   Pandora Apparently Did No Custom and Practice Investigation Before Deciding To Willfully Infringe ................................................................. 5

    B.   Already-Conducted Discovery Has Revealed that Pandora's Implied License and Custom and Practice Defenses are Frivolous and Six Months Of Additional Discovery Will Not Change That Fact .............. 7

    C.   Pandora's Copyright Misuse Defense Does Not Require or Justify Another Six Months of Discovery ........................................................ 8

    D.   Pandora's Complaints about Plaintiffs' Discovery Are Meritless, and Do Not Warrant a Six-Month Extension, But Plaintiffs Are Agreeable To A More Reasonable 3 Month Extension .......................................... 9

LEGAL STANDARD ...................................................................................... 12

ARGUMENT .................................................................................................... 13

    A.   Plaintiffs Have Complied And Are Complying With Their Discovery Obligations ............................................................................................ 13

        1.   *Seven Plaintiffs Have Already Substantially Completed Their Document Production; the Other Two Will Do So Shortly* ..... 13

        2.   *The Only "Issue" With Plaintiffs' Designated Document Custodians is of Pandora's Own Making* ................................ 14

        3.   *Plaintiffs Have Produced So-Called "Hand-Pull" Documents* ................................................................................................ 17

    B.   Plaintiffs Have Properly Redacted Sensitive Financial Documents, Including Information to Which the Court Has Ordered Pandora Is Not Entitled ................................................................................................ 21

    C.   Pandora Is Not Prejudiced by Plaintiffs' Ongoing Discovery ............. 23

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

*Federal Trade Comm'n v. AMG Servs., Inc.,* 291 F.R.D. 544 (D. Nev. 2013) .........22

*Found. For Global Sports Dev. v. United States Olympic Comm.*, No. No. 2:20-CV-04782 FMO (PVCx), 2021 U.S. Dist. LEXIS 252941, *27 (C.D. Cal. June 24, 2021 ........................................................................................................................22

*FTC v. AMG Servs.*, Case No. 2:12-cv-536-GMN-VCF, 2014 WL 5454170 (D.Nev. Oct. 27, 2014 .............................................................................................................13

*In re Bard IVC Filters Prods. Liab. Lit.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) .......13

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) .......................................................................................................................20

*L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) ............20

*Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996).......................20

*Nazar v. Harbor Freight Tools USA Inc.*, No. 2:18-cv-00348-SMJ2019, U.S. Dist. LEXIS 232999 (E.D. Wa. Dec. 27, 2019)............................................................22

*Pandora Media, LLC v. Word Collections, Inc.*, CD Cal. Case No. 2:23-mc-140-MCS-MAR,.............................................................................................................9

**Other Authorities**

Copyright Office Circular 15A, "Duration of Copyright" ........................................20

**Rules**

Fed.R.Civ.P. 16(b)(4) ...............................................................................................12

Fed.R.Civ.P. Rule 26(b)(1)........................................................................................12

**INTRODUCTION**

Plaintiffs hereby submit this response to the motion of Pandora for an Order extending the Scheduling Order in this action by six months based upon the supposed need for that additional length of time to conduct "custom and practice" discovery to defend against this case of cut and dried, simple copyright infringement. ECF No. 203 at 21. While Plaintiffs do not oppose a 3-month extension, the reasons that Pandora raises for the need for a 6-month extension are quite frankly contrived.

First, Pandora claims that it needs 6 months to conduct third party custom and practice discovery. ECF No. 203 at 21. As discussed below, however, from the beginning, Pandora has engaged in scorched earth, Rambo style litigation first by responding to these lawsuits with ill-conceived antitrust claims, which the Court dismissed twice, and next by sending no less than *28 Subpoenas* to every third party under the sun. The truth is, as discussed below, that nothing has stopped Pandora from engaging in this third-party discovery to date, and it has done so. Pandora is just not happy that it has not turned out the way it hoped: the agreements produced in this action, either by Plaintiffs or by third parties, show that no less than 50 comedians' recording agreements provide the right to license literary works separately from sound recordings and the right of comedians to receive separate royalties for their literary works. Block Decl. ¶ 15.

Furthermore, while Pandora has spent, Plaintiffs are sure, many, many millions of dollars in legal fees fighting tooth and nail to avoid paying comedians royalties for their literary works to which they're entitled (pennies in comparison) and asserting baseless antitrust clams, many other digital service providers –some of the largest in the world –have recognized the right of these comedians to be paid for the streaming of their literary works, separate from recordings, and have entered into agreements with third Party Word Collections accordingly. Declaration of Mary Catherine Amerine filed concurrently herewith ("Amerine Decl."), ¶ 19. For these reasons, and others discussed below, Pandora does not need six months for discovery on custom

and practice discovery. Indeed, what is also clear from discovery in this case, is that Pandora did no real investigation before it decided to willfully infringe and is now just desperately trying to cobble some plausible litigation inspired defense together as part of this litigation.

Pandora also places the blame for this alleged need for six months of additional discovery squarely at the feet of Plaintiffs for allegedly being late in producing their documents pursuant to an informal agreement of the parties. ECF No. 203 at 1-2. With respect to the finger pointing at Plaintiffs, Pandora's angst is also misplaced, and does not justify a six-month extension to the case schedule. Plaintiffs' exhaustive efforts to comply with their discovery obligations are detailed below. The bottom line is that despite having to canvass more than 34 custodians, with 2 million documents, and technical issues with Plaintiffs' e-discovery vendor, Plaintiffs now have substantially produced all responsive documents in their possession, custody, or control for 7 of the 9 Comedians and will complete production for the remaining 2 by the end of December, 2023. Amerine Decl. ¶ 8; 11. Plaintiffs have produced over 9000 documents, including all of their "hard copy" (i.e., paper) documents. Block Decl., ¶¶ 7-8; Amerine Decl ¶ 7. Nonetheless, as discussed more fully below, Plaintiffs are 6 weeks tardy in completing substantial document production for all comedians under the parties' informal agreement and therefore do not oppose a 3-month extension in discovery. Plaintiffs offered to stipulate to that request with Pandora together with a neutral statement of the facts supporting it, but Pandora rejected that and instead filed this ill-conceived incendiary motion. Plaintiffs believe a three-month extension of discovery is warranted and request the Court extend discovery by that time.

## BACKGROUND

Plaintiffs are nine (9) comedians (and/or their loan-out companies) who bring claims against Pandora for infringement of Plaintiffs' literary copyrights to their comedy routines embodied in the sound recordings streamed by Pandora on its

services. Pandora knowingly failed to obtain a license or pay royalties on these underlying literary works.

Pandora denies it infringed Plaintiffs' literary copyrights, even though it admits to streaming Plaintiffs' literary works on both its non-interactive and interactive streaming service. The instant motion is largely based upon Pandora's supposed need for extensive additional third-party discovery on its affirmative defenses of implied license and misuse of copyright. Pandora's implied license defense is premised on its allegation that – per *alleged* decades-long industry custom and practice – no compositional licenses are necessary, as no licenses have been entered into, or royalties ever been paid, to license comedian's literary works. ECF No. 71 at 2-10. As mentioned, third party discovery has already shown that claim to be frivolous. Pandora's misuse of copyright defense relies on allegations that Plaintiffs banded together to license their literary works and filed the instant consolidated lawsuits against Pandora for copyright infringement. This is just a derivative of their already failed antitrust claim. Pandora also asserts that discovery should be extended because Plaintiffs have supposedly not produced relevant documents (ECF No. 203 at 10-16) and because it may appeal the Magistrate Judge's recent decision basically denying in whole Pandora's latest motion to compel against Word Collections. ECF No. 203 at 8. These issues are all addressed in turn.

### A. Pandora Apparently Did No Custom and Practice Investigation Before Deciding To Willfully Infringe

As mentioned in the Amended Consolidated Complaint, Pandora submitted SEC filings between 2011 and 2017 stating that industry custom and practice meant that it need not enter into performance licenses for literary works streaming on its radio like streaming service. ECF No. 70 at 42. Plaintiffs contend that there was no such custom and practice supporting that assertion.

In 2017, Pandora acquired the assets of RDIO, and began its ***interactive*** streaming of literary works. ECF No. 179 at 27; ECF No. 179-9; ECF No. 179-10.

This is when Pandora would have first needed a mechanical or publishing license to stream literary works. ECF No. 179-36 at 17. It did not obtain any such license. Pandora claims that the custom and practice of the industry was that literary works were never licensed separately from the recordings of literary works, and comedians not paid publishing royalties for literary works so Pandora was under no obligation to do so. ECF No. 71 at 2-10.

As a result, in discovery, Plaintiffs asked Pandora very simple questions and served requests for documents asking Pandora whether it did any investigation into custom and practice before distributing the literary works, and, if so, to identify the recording agreements, or other documents it reviewed to supposedly reach the conclusion it did that no licenses and no royalty payments needed to be paid. Amerine Decl. at ¶ 20 Ex. F. Pandora responded by making vague references to its "assessment" of the rights necessary to begin streaming literary works, but provided no actual information about that assessment, and claims that ***no documents*** related to that assessment exist. Amerine Decl. ¶ 20. Ex. F (Def.'s Response to Interrogatory Nos. 7 & 8). Pandora instead hid behind an assertion of attorney-client privilege, and stated only that it "was based upon the collective and significant industry experience of Pandora employees, including in-house counsel." Amerine Decl. Ex. F.

Pandora's improper use of Attorney Client privilege to obfuscate their so-called "assessment" and shield their willful infringement, speaks volumes. What is apparent is that Pandora actually did no "assessment," or there would be documents to produce and they would answer simple questions that go to the heart of their defenses, but just decided to willfully infringe. Anything Pandora does now is just after the fact litigation inspired to try to justify its behavior. It should not be lost on the Court that it has been approximately 7 years since Pandora began its interactive streaming business, and more than 3 years since put on notice by Word Collections of its infringement, and Pandora not only has nothing to support it analyzing any supposed custom and practice during this time, but the 28 Subpoenas it has served in this case

now show just how frivolous this position is. Pandora has had years: it does not need another 6-month extension of discovery so it can likely serve multiple other subpoenas in the attempt to just drown the Plaintiffs with costs in the hope that this case will be too expensive to continue. That has clearly been Pandora's tact from the beginning.

**B.    Already-Conducted Discovery Has Revealed that Pandora's Implied License and Custom and Practice Defenses are Frivolous and Six Months Of Additional Discovery Will Not Change That Fact**

As discussed, an additional six months of discovery cannot help Pandora avoid the conclusions that have been established by the already-conducted discovery: that their "custom and practice" defense is not only a fabrication, but that it is entirely and conclusively contradicted by the documents that Pandora has received from both Plaintiffs and third parties. As an initial matter, any such alleged custom and practice is no defense to copyright infringement, as "[c]ustom and usage may not be invoked to relieve defendant of the clear-cut obligations imposed by the application of the statute." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 212 (3d Cir. 2002). But Pandora's defense is even thinner, because – as Pandora well knows – there *is no such custom and usage*. Discovery has shown that at least 50 comedians are entitled under their agreements to license and receive royalties for use of their literary works, and documents received show a minimum of 35 of these comedians have been paid mechanical equivalent royalties for the use of their works. Block Decl., ¶ 16. Indeed, the parties have established through discovery that major industry players such as Warner Music Group, Universal, Sony, and Comedy Central have included mechanical royalties in their contracts with both Plaintiff comedians and other unrelated comics. Amerine Decl., ¶ 21. In some cases, Word Collections has been and continues to receive mechanical payments from the major labels for the applicable literary works. Amerine Decl., ¶ 22.

And while Pandora has been busy issuing subpoenas, seven other Digital

Service Providers, some of the largest and most sophisticated companies in the world two prior to the infringement complaints, have acknowledged their obligation to license comedians' literary works, and have entered into literary works licenses with nonparty Word Collections. Amerine Decl., ¶ 19.

### C.    Pandora's Copyright Misuse Defense Does Not Require or Justify Another Six Months of Discovery

Defendant's misuse of copyright defense fares no better, and given the evidence already produced does not justify a six (6) month extension of the discovery schedule. Defendant's misuse of copyright defense is based on allegations that Plaintiffs somehow violated the anti-trust laws by banding together in connection with the licensing of their literary rights and pursuit of these lawsuits to redress Defendant's infringement of their literary copyrights. Seven of the nine Plaintiffs, however, have already produced whatever written communications they may have (mostly with Word Collections) regarding the licensing of their literary copyrights and the filing of these consolidated lawsuits. The other two Plaintiffs will have substantially completed their document production before the end of this month. And Word Collections is producing its communications with Plaintiffs pursuant to Pandora's Subpoena and the Court's Order limiting that Subpoena under the required deadlines.

Moreover, there is no basis under the law and the undisputed facts for the assertion of a copyright misuse defense. Accordingly, Defendant's purported need to obtain even more documentary evidence regarding this defense does not justify an extension of the discovery schedule. As Judge Rocconi observed in denying in large part Pandora's Motion to Compel against Word Collections:

> Pandora relies on M. Witmark & Sons v. Jensen, 80 F. Supp. 843 (D. Minn. 1948) to argue that the act of banding together to form blanket licensing collectives can support the defense of copyright misuse. However, M. Witmark & Sons is distinguishable from this case. In M. Witmark & Sons the collective was found to control 80% of the market,

and based on that percentage, the court found the collective liable for violating antitrust laws. Id. at 847-50. Thus, the copyright misuse in M. Witmark & Sons was directly tied to an antitrust violation. By contrast, here the district court found that Pandora's claims lacked specificity, and that even with a "hypothetical total," Spoken Giants and Word Collections' combined market share was only28% - well below the threshold of 65% market share courts generally use "for finding a prima face case of monopoly power." [Citations omitted].[1]

### D.   Pandora's Complaints about Plaintiffs' Discovery Are Meritless, and Do Not Warrant a Six-Month Extension, But Plaintiffs Are Agreeable To A More Reasonable 3 Month Extension

Pandora falsely accuses Plaintiffs of not being diligent in their document production in an effort to justify further delay of this case. In response to Pandora's 88 Requests for Production, the nine individual Plaintiffs in this case have collected and searched, collectively, over ***two million*** documents. Amerine Decl. ¶ 3. Over the course of this litigation, Plaintiffs have exhaustively pursued every possible avenue to track down relevant documents in their attempts to identify what individuals or organizations might possibly still have access to documents that are, in many cases, decades old. They have consulted with Plaintiffs' current and former business managers; current and former attorneys; family members; and management companies. Counsel for Plaintiffs have digitized boxes upon boxes of waterlogged, molding documents; collectively spent hundreds of hours searching and reviewing electronic discovery; and sifted through thousands of pages of irrelevant and non-responsive information. Amerine Decl., ¶¶ 3-5; Block Decl., ¶¶ 3-6.

---

[1] *Pandora Media, LLC v. Word Collections, Inc.*, CD Cal. Case No. 2:23-mc-140-MCS-MAR, Order re: Pandora's Motion to Compel Word Collections, Inc. to Comply with Subpoena (dated Dec. 6, 2023), p. 4.

Pandora's complaint boils down to Pandora's contention that Plaintiffs have documents which they simply do not have or that do not exist. Pandora's retelling of Plaintiffs' discovery would have this Court believe that they are simply failing to produce documents. To the contrary, Plaintiffs have thus far produced over 9,000 documents, many of which fall into the very categories of documents that Pandora complains about in this Motion. Amerine Decl., ¶ 7. Seven of the nine Plaintiffs have substantially completed their document production. *Id.*, ¶ 8. The fact that there are not more responsive documents is not, as Pandora asserts, evidence of Plaintiffs' failure to produce documents. Rather, the relatively few responsive documents in comparison to the vast number of documents collected by Plaintiffs – at great expense and burden – demonstrates in clearest terms the extensive efforts that have been made to locate and produce these responsive documents, the completeness of Plaintiffs' search attempts, and the simple reality that for the majority of Plaintiffs, no further documents exist.

Moreover, the complaints Pandora now brings are largely of its own making, as it is willfully blind to several realities: first, that this case is brought by individual entertainers, with varied and idiosyncratic record-keeping; and second, that Pandora seeks information spanning these entertainers' decades-long careers. The result of these two factors, taken together, should not be surprising: much of the documentation that Pandora seeks simply does not exist. Plaintiffs have consistently informed Pandora of this; in agreeing to include custodians that Pandora insisted on, Plaintiffs repeatedly notified Pandora that many of these custodians have no documents, but agreed to confirm – yet again – that this is the case. Block Decl. at Exs. A - C. They have now done so. Yet Pandora continues to pretend that more documents exist, which is ironic given Pandora's complaint about Plaintiffs' requests for documents from Pandora "going back many years, including in some instances all the way back to 2005" (ECF No. 179 at 30) – which is more recent by a full thirty years than some of the documents Pandora seeks – and has asserted that searching for information from

less than twenty years ago is "incredibly time consuming and expensive." (ECF No. 179 at 31). The hypocrisy is astounding.

Plaintiffs acknowledge that they continue to review and produce documents for Plaintiff Lewis Black, the ongoing production of which is mostly a result of health issues and hospitalization on the part of one of Black's custodians. Amerine Decl., ¶ 9. They further acknowledge that additional documents for Plaintiff George Carlin have been acquired, and are in the process of being reviewed and produced. As a result, Plaintiff Carlin and Black's productions remain ongoing; however, the substantial production of their responsive, non-privileged documents will be produced well in advance of this Court's Order on this Motion, and Plaintiffs affirm that by December 27 - the filing deadline for parties' supplemental memorandum of law to this Motion - they will have reached substantial completion for all Plaintiffs, which they will confirm in that reply.

There is simply no legitimate reason for Pandora to blame Plaintiffs for any need to extend the case schedule. Contrary to Pandora's assertions, Plaintiffs have not violated any discovery orders. While they now argue that the "substantial completion" deadline was binding (contrary to the parties' understanding at the time), that deadline was explicitly excluded from Judge Scarsi's Scheduling Order. All Plaintiffs have conducted full and appropriate searches for relevant, responsive documents, and are not withholding any documents. That Pandora does not like the results of that search does not mean that Plaintiffs have not complied with their discovery obligations. Plaintiffs' responses to Interrogatory Nos. 15 and 16 have already been supplemented, and in light of the substantial completion of Plaintiffs' document production, Plaintiffs' supplemental responses to Interrogatory Nos. 4, 12, 13, and 14 will be forthcoming.

As noted, Plaintiffs are, however, agreeable to a 3-month extension.

# LEGAL STANDARD

The operative Scheduling Order was issued by the Court pursuant to stipulation of the parties. ECF No. 174, entered June 15, 2023. "A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). In that Scheduling Order, the Court stated that "The Court will not entertain any … motion to extend any other date or deadline absent extraordinary circumstances." ECF No. 174, at 3.

Pandora argues that its need to conduct even more discovery, including for its implied license/custom and practice and copyright misuse defenses provides good cause for further amendment of the Scheduling Order. Pandora's Motion at 12 (so-called "motive" documents, at 15 (affiliation agreements). But Pandora's argument presupposes that the additional discovery Pandora purportedly wants more time to pursue is permitted under Rule 26. In this regard Rule 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. Rule 26(b)(1). As this Rule states, discovery must be "proportional to the needs of the case, considering … the importance of the discovery in resolving the issues." *Id.*

Regarding Pandora's affirmative defenses of implied license/industry custom and practice and copyright misuse, "[a] defendant is not entitled to discovery in connection with a defense merely because the defendant's answer pleads a defense." *FTC v. AMG Servs.*, Case No. 2:12-cv-536-GMN-VCF, 2014 WL 5454170, * 28

(D.Nev. Oct. 27, 2014). This is because "[r]elevancy alone is no longer sufficient – discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liab. Lit.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). Given the documentary evidence already produced and the law on implied license/industry custom and practice and copyright misuse, the additional discovery sought by Pandora is neither proportional to the needs of the case nor is it important to resolve the validity of Pandora's defenses, and does not justify a six month extension of the case schedule.

## ARGUMENT

### A. Plaintiffs Have Complied And Are Complying With Their Discovery Obligations

#### 1. *Seven Plaintiffs Have Already Substantially Completed Their Document Production; the Other Two Will Do So Shortly*

Pandora would have this Court believe that Plaintiffs' ongoing discovery efforts represent lack of diligence or care on the part of Plaintiffs. That could not be further from the truth. Indeed, Plaintiffs anticipated meeting their informal deadline for substantial completion, and were working to accomplish that goal when they discovered errors in their planned production, including both over-inclusiveness of clearly irrelevant documents, and exclusion of responsive documents, which appeared to be the result of issues with the review population assembled by their external discovery vendor. Amerine Decl., ¶ 6; Block Decl., ¶ 10. In order to correct these errors and ensure the accuracy and completeness of their production, Plaintiffs undertook an extensive re-review of thousands of documents. Amerine Decl., ¶ 6. That re-review has now been completed, and those documents produced. Amerine Decl., ¶ 8.

That Plaintiffs' document production has taken longer than anticipated is due primarily to the vast scope of discovery demanded by Pandora. Plaintiffs have expended every effort to complete their production. As of the date of this submission,

they have substantially completed their document production for seven of the nine Plaintiffs, and anticipate reaching substantial completion for all Plaintiffs before the end of his month. While this substantial completion was not reached by the date informally agreed upon by the parties, this does not constitute a violation of any binding Order, and does not represent a failure of Plaintiffs to fulfill their discovery obligations.

### 2.   The Only "Issue" With Plaintiffs' Designated Document Custodians is of Pandora's Own Making

Throughout this discovery process, Plaintiffs have informed Pandora that many of the document custodians Pandora insisted upon have no relevant documents. Pandora disregarded these warnings, and insisted upon the extensive, overly inclusive set of custodians that Pandora now presents to the Court. Pandora thus now feigns surprise that these custodians indeed did not have any responsive documents to produce.

Indeed, in agreeing to this custodian list, Plaintiffs explicitly informed Pandora no less than three times that many of the individuals listed as custodians would not have documents relevant to this case. Block Decl. at Exs. A – Ex. C. Nevertheless, in agreeing to include these individuals in their custodian list, at Pandora's insistence, Plaintiffs committed to ask these individuals whether they possess documents that Plaintiffs agreed to produce. Plaintiffs have made these inquiries, and upon investigation it appears that they are in possession of no such documents. While Pandora would like nothing more than to force Plaintiffs to run around in circles trying to fulfil imaginary obligations, Plaintiffs are not required to grant Pandora's wish; having conducted their investigation, Plaintiffs are not obligated to expend further time, money, and resources pursuing such fruitless avenues of inquiry. Should Pandora now argue to the contrary, Plaintiffs note again that they informed Pandora – multiple times – that their inclusion of individuals on their custodian list signified

only that they would inquire into their possession of relevant documents. Plaintiffs did not obligate themselves to collect and search the data of individuals who have repeatedly confirmed that they have no such documents in their possession. Plaintiffs' collection efforts have appropriately included all custodians who are actually in possession of responsive documents.[2]

Pandora further manufactures another artificial complaint about Plaintiffs' collection and production, claiming that they are deficient because they do not include documents "from their own files." But that is not a requirement of Plaintiffs' document production. Rather, Plaintiffs have confirmed that individual Plaintiffs possess no documents that are not also in the custody of their business managers, and that have been searched and produced through those managers.[3] The production of documents from Plaintiffs' own files would be wholly and completely duplicative, and an exercise in futility – another attempt of Pandora to needlessly squander Plaintiffs' resources. It is thus entirely unnecessary to search Plaintiffs' personal files, which contain nothing more than documents that have already been produced – and particularly unnecessary to do so in order to achieve "substantial completion" of document production, which is accomplished by the production of all relevant documents regardless of their source. Nonetheless, in the spirit of cooperation,

---

[2] Additionally, Plaintiffs note that Pandora's complaint about supposed issues with the "custodian" metadata Plaintiffs included in their production is inaccurate. As Plaintiffs have already informed Pandora, their productions have included metadata identifying all custodians connected with each document. There is no additional custodian metadata that is missing, or that can be added to Plaintiffs' productions. Amerine Decl., ¶ 15; Amerine Decl. at Ex. D and Ex. E.

[3] In the case of Andrew Dice Clay, Plaintiffs established through investigation that he conducts no business from the Gmail account identified by Pandora, which is used entirely for personal purposes, and which contains no relevant or responsive documents. Plaintiffs further note that Mary Reese Hicks' documents were produced through her daughter, Lynn Hicks, who assisted Plaintiff Hicks with discovery matters.

Plaintiffs agree to undergo additional searches in Plaintiffs' personal files, and will produce any non-duplicative responsive documents to Pandora.

Plaintiffs do not contest the relevance of these particular categories of documents Pandora seeks, and – again – are not withholding any such documents from production. But Pandora is intent on setting ever-more-impossible benchmarks for Plaintiffs to reach, only so it can complain about Plaintiffs' document production. As an initial matter, the category of "hand-pull documents" is a construct of Pandora's to obfuscate the difficulty actually involved in obtaining these documents; while Pandora characterizes them as categories of documents that would be "typically kept in organized hard copy or electronic files," and therefore easy to access, that is simply not the case. Rather, Pandora's request for such so-called "hand-pull" documents included broad categories of documents responsive to a large number of their requests for production, and indeed was nothing more than an attempt to expedite the entirety of Plaintiffs' production through this mischaracterization. This is apparent on the face of the requests that Pandora characterizes as "hand-pull," which includes requests calling for "all documents concerning" various requests; drafts; negotiations; and communications. That Pandora believes that this could magically be accomplished without the need to conduct extensive electronic searching is laughable. Nevertheless, Plaintiffs made every effort to prioritize their production of these categories of documents, and indeed produced all such available documents by the agreed-upon date.

To the extent that Pandora continues to complain about "gaps" in Plaintiffs' production, Plaintiffs state again that any incomplete records are not the result of production deficiencies, but of incomplete record-keeping. While Pandora purportedly finds it "inconceivable" that Plaintiffs do not possess the documents Pandora thinks they ought, this is not a sufficient basis for a motion to compel, and Plaintiffs cannot produce documents that do not exist.

### 3. **Plaintiffs Have Produced So-Called "Hand-Pull" Documents**

### i. **Samples of the Asserted Works.**

Plaintiffs have indeed produced to Pandora all hard-copy documents in Plaintiffs' possession that are regularly kept in the ordinary course of business. Block Decl., ¶ 8. While it is beside the point to quibble about linguistics, Plaintiffs do not appreciate Pandora's implication that any such misrepresentation about the completeness of their production of hard-copy documents, as it is hardly reasonable to assume that the physical albums and CDs that Pandora has requested fall within this category. Indeed, taking Pandora's examples of the "samples" of these albums in Plaintiffs' possession, Pandora apparently expects Plaintiffs to summarily disassemble and dismantle framed displays of their accomplishments, and ship fragments of those displays to Pandora. This absurdity highlights Pandora's approach to this entire litigation, which is to present the most preposterous suppositions as fact, and expect Plaintiffs and this Court to accept them as such.

While Plaintiffs are flattered that Pandora would apparently like to enter the memorabilia collecting business, they decline to ransack their home décor in support of this endeavor. However, they are engaging in the requested scavenger hunts through their belongings, and will produce as agreed one sample, or photocopy of a sample, of each Asserted Work in their possession, custody, or control. But this handful of albums is hardly necessary for Plaintiffs to meet the threshold of "substantial completion" of discovery, which contemplates that the *majority* of production be completed, with the understanding that some additional documents may be forthcoming. Given the nature of this request, the undertaking required by Plaintiffs to fulfil it, and the limited number of samples in question, it is hardly a requirement that these copies be in Pandora's possession for their productions to be substantially complete. Finally, there is no prejudice to Pandora, as it already has electronic copies of these works it was streaming, which led to Plaintiffs filing these consolidated copyright infringement actions.

### ii.   *Hand Pull Agreements Involving Plaintiff Comedians.*

Plaintiffs reiterate again that Pandora's mischaracterization of these documents as "straightforward to locate, segregate, and produce," is inaccurate, and remind the Court that they include documents concerning the entirety of Plaintiffs' decades-long comedy careers, including agreements that may date back almost fifty years, some of which are understandably no longer in Plaintiffs' possession.

Plaintiffs acknowledge that their production of documents for Plaintiff Lewis Black is ongoing, and that his forthcoming document production will include agreements that fall within this category. As previously stated, Plaintiff Black and Plaintiff Carlins productions will be substantially complete by a date certain of December 26th. All other Plaintiffs have completed full searches for these documents, and have substantially produced all non-privileged documents in their possession that are responsive to these requests.[4]      Pandora makes much of the necessity of these documents as critically relevant to Pandora's implied license and industry custom and practice defenses. Setting aside that Plaintiffs do not dispute the relevance of these documents, and are not withholding any such responsive documents, Pandora's claims about the necessity of these documents to establish its defenses – which it uses

---

[4] Plaintiffs note specifically that Plaintiff Clay was no longer in possession of his recording agreement and was unaware of any individuals who may be in possession of that or any other agreement. Plaintiffs did not rest there, but then subpoenaed nonparty Universal Music Group to obtain a copy of Andrew Dice Clay's recording agreement. While Universal did not have the agreement, Plaintiffs' counsel was advised Rick Rubin Enterprises did. Plaintiffs' counsel then worked with counsel for Universal and Rick Rubin Enterprises and obtained the Agreement. This agreement and royalty information for literary works over the last three years received from Universal has now been produced to Pandora. Amerine Decl. at 23. While Plaintiffs cannot foreclose the possibility that additional responsive documents for Plaintiffs other than Black or Carlin may be uncovered through Plaintiffs' further review, they do not anticipate that any such potential further productions - if any - will be significant, or go beyond those expected and typical after substantial completion has been reached.

as justification to hound Plaintiffs for nonexistent documents – ignore the evidence *actually in the record*. The documents that actually exist and that have been produced establish conclusively that Plaintiffs *have* entered into agreements that include the licensing of literary works, and that they *have* received royalties for their underlying literary works.

### iii. Documents Related to Ownership, Registration and Use of the Asserted Works.

As explained above, Pandora's claims about the "ease" with which these documents could be located and produced is wholly inaccurate. Plaintiffs further affirm that, as discussed above, Plaintiff Black's documents are forthcoming, and will include all such responsive, non-privileged documents that exist.

As an initial matter, Plaintiffs have provided Pandora with copyright registration information for all Asserted Works, and all copyright registration application information, correspondence, and registration certificates where available. This registration information provided is sufficient for Pandora to confirm the registration of copyrights in the Asserted Works, and the scope of those copyrights as issued. Pandora's claims that additional documentation is necessary to Pandora's defenses hinges on unfounded speculations about what *might* have happened during the registration process – that Plaintiffs might have provided "deliberately inaccurate information" to the Copyright Office; that the registrations might "disclaim or simply fail to mention rights to the literary works at issue"; or that examiners may have "rejected or challenged" Plaintiffs' registrations, or placed "other limitations" on these copyrights. But this is nothing more than foundationless speculation; Pandora has no reason to believe that any such circumstances occurred, or that documents memorializing these imagined occurrences exist. Pandora offers no explanation for this speculation, nor can it do so, as literary and dramatic works are squarely and explicitly within the scope of protectible subject matter under the Copyright Act. 17 U.S.C. § 102(a), and nothing within the copyright registrations Plaintiffs have

produced contradicts their assertions that their literary works are protected by these registrations. Copyright ownership vests in an author at the moment of creation. Copyright Office Circular 15A, "Duration of Copyright," at 1. All that is required to succeed on a claim of copyright infringement is a copyright registration covering the work and copying of original elements of that work. *L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012). Plaintiffs have produced the copyright registrations and it is not disputed that Pandora copied and distributed each of the Works. While Pandora attempts to question Plaintiffs' ownership of the Asserted Works through alleged gaps in Plaintiffs' 'chain of title' documents, which is baseless since these are comedians who write and perform their own works and these are companies founded and owned by Plaintiffs (a fact Pandora neglects to mention), Pandora simply does not have standing to raise any such issue. *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) (noting that "Section 204(a) is designed to resolve disputes between owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership," and that "[w]here there is no dispute between the copyright owner and transferee," defendants have no standing to invoke § 204(a) to avoid suit for copyright infringement.); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996).

Nonetheless, Plaintiffs are not withholding any non-privileged documents responsive to these requests; indeed, Pandora's conspiracy theories aside, it would not be to their benefit to do so. But the parties must work with the documents that exist, and Plaintiffs cannot be asked to produce anything more than what they have in their possession, custody, or control.

### iv.    Affiliation Agreements with Word Collections and Spoken Giants.

Plaintiffs note, once again, that the issues Pandora raise with Plaintiffs' production are, at heart, record-keeping issues, not production issues. With the exception of Plaintiffs Black and Carlin – as already addressed – Plaintiffs documents

concerning their affiliation agreements – to the extent that they exist and are in Plaintiffs' possession - have been produced. Further, per the Court's Order on Pandora's subpoena to nonparty Word Collections, these and related documents will be produced by Word Collections, which undoubtedly has more complete records in their possession. ECF Nos. 5-6. There is no purpose to Pandora's continued hounding Plaintiffs for documents that they will receive through another channel.

### B. Plaintiffs Have Properly Redacted Sensitive Financial Documents, Including Information to Which the Court Has Ordered Pandora Is Not Entitled

The allegedly improper redactions Pandora complains of include two general categories of information: first, information about Plaintiffs' personal and business finances that are entirely unrelated to their comedy business; and second, information about the finances of entirely unrelated third parties. The former contains information which this Court has specifically declined to order Plaintiffs to produce, limiting Plaintiffs' production obligations in response to RFP Nos. 42, 43, and 44 to only financial information related to Plaintiffs' literary copyrights or comedy business (ECF No. 193 at 8). Pandora now attempts to make an end run around this Order, and access additional irrelevant financial records that Plaintiffs are *not* obligated to produce simply because they are in the same documents which contain some relevant financial statements. This is not justified.

Plaintiffs' second category of redactions include financial information about entirely unrelated third parties, whose only connection to this lawsuit is that they are represented by the same business managers or other entities that represent Plaintiffs. Because many custodians are business managers or other entertainment businesses, who provide representation for many unrelated entertainment professionals, relevant information about Plaintiffs' finances or comedy business are contained in the records of those business managers, whose record-keeping includes the financial information of many unrelated individuals in single documents. Regardless of the protective order

in this case, it is simply inconceivable that Plaintiffs should be obligated to produce unredacted information about the income of, for example, Woody Allen, the Marvin Gaye Estate, Billy Crystal, or countless others.

In both of these situations, Plaintiffs' redactions are entirely appropriate, and indeed necessary. While relevancy redactions may typically be unusual, they are permitted in specific circumstances, including "when the redacted information plainly has no potential relevancy to the litigation or is particularly sensitive." *Found. For Global Sports Dev. v. United States Olympic Comm*., No. No. 2:20-CV-04782 FMO (PVCx), 2021 U.S. Dist. LEXIS 252941, *27 (C.D. Cal. June 24, 2021). Such redactions have been held to be appropriate in the case of, for example, vendor contracts unrelated to the product at issue in a products liability case (*Nazar v. Harbor Freight Tools USA Inc.,* No. 2:18-cv-00348-SMJ2019, U.S. Dist. LEXIS 232999, *7 (E.D. Wa. Dec. 27, 2019); consumer bank statements containing transactions with third parties unrelated to the consumers' fraud claims against the bank (*Federal Trade Comm'n v. AMG Servs., Inc.,* 291 F.R.D. 544 (D. Nev. 2013); and litigation costs incurred in an unrelated matter (*Found. For Global Sports Dev. v. United States Olympic Comm*., No. No. 2:20-CV-04782 FMO (PVCx), 2021 U.S. Dist. LEXIS 252941).

The redacted information in question – Plaintiffs' financial information unrelated to literary works or comedy, and unrelated nonparty individuals' financial information – is plainly both irrelevant, and particularly sensitive. Further, Pandora has not, and indeed cannot explain why such information is necessary for Pandora's defenses to this action. This Court has already rejected its arguments regarding the relevance of Plaintiffs' broader financial information (ECF No. 193 at 8); Pandora can fare no better in claiming entitlement to unrelated individuals' finances. In these circumstances, where Plaintiffs' documents include such irrelevant and sensitive material, Plaintiffs' redactions are both necessary and proper.

### C.    Pandora Is Not Prejudiced by Plaintiffs' Ongoing Discovery

Pandora's claims of prejudice are similarly inaccurate. In this regard, Pandora's claims about Plaintiffs' supposedly deficient document productions are greatly overblown, as almost all Plaintiffs have substantially completed their production, and the remaining substantial completion is imminent. That Pandora proclaims dissatisfaction with the volume of documents it has received does not mean that Plaintiffs have not fulfilled their discovery obligations.

And while Pandora claims that Plaintiffs' document productions have hindered its ability to conduct third-party discovery, that is plainly not the case. To the contrary, Pandora has subpoenaed an astonishing 28 third party subpoenas, and indeed appears intent on subpoenaing every entity in the entire comedy field, with no end in sight. **Indeed, apparently discontented with their first subpoenas to nonparties Word Collection, Spoken Giants, and 800 Pound Gorilla, on December 14th Pandora served a *second* subpoena on each of these three nonparties.**

Plaintiffs respectfully submit to the Court that there has been no breach of a binding discovery Order; that almost all of the Plaintiffs have already substantially completed their production, and that the entirety of Plaintiffs will have completed their production by December 26th. As such, Pandora is wrong in blaming Plaintiffs for delay in their ability to conduct discovery. Nevertheless, given the one and one-half month delay in Plaintiffs substantial completion of their document production, Plaintiffs are amenable to a three-month extension of the case schedule.

### CONCLUSION

To be clear, Plaintiffs do not oppose a three month extension of the case schedule, but not because of the inaccurate, mud-slinging reasons argued by Pandora. Rather, as a result of the magnitude of the discovery Pandora has served on Plaintiffs and third parties, as well as the extensive and time-consuming efforts Plaintiffs have undertaken to fulfil their discovery obligations, discovery has indeed taken longer to complete than either party anticipated when making their first request to extend the

case schedule. Additionally, the parties' briefing on discovery issues has been ongoing: Plaintiffs' Motion for Clarification regarding Magistrate Judge Rocconi's first discovery Order was only granted in October, and Pandora is filing yet another motion to compel against Plaintiffs, which Plaintiffs assert is also completely baseless for many of the reasons discussed herein, but it will likely not be heard until January. As a result, Plaintiffs request that this Court extend the case schedule by three months.

DATED: December 18, 2023                      KING & BALLOW

                                              By: /s/ Richard S. Busch
                                              Richard S. Busch

                                              Attorney for Plaintiffs *Yellow Rose Productions, Inc.; Main Sequence Ltd.; Ron White, Inc.; Robin Williams Trust; Brave Lion, Inc.; Nick Di Paolo; Mary Reese Hicks; Lewis Black; and George Lopez*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,793 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 18, 2023    Respectfully submitted,
               **KING & BALLOW**

              By: <u>/s/Richard S. Busch</u>
               Richard S. Busch
               Attorneys for Plaintiffs