1  KING & BALLOW
   Richard S. Busch (SBN 319881)
2  rbusch@kingballow.com
3  2121 Avenue of the Stars, Suite 800
   Los Angeles, CA 90067
4  Telephone: (424) 253-1255
   Facsimile: (888) 688-0482
5  Attorney for Plaintiffs
6

7              **UNITED STATES DISTRICT COURT**
8      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
9

10

11 In    re    PANDORA    MEDIA,        Master File No. 2:22-cv-00809-MCS-MAR
                                        CONSOLIDATED ACTION
12 COPYRIGHT LITIGATION

13                                      **REDACTED MEMORANDUM OF
                                        LAW IN SUPPORT OF PLAINTIFFS'**
14 This Document Relates To:           **MOTION TO EXCLUDE DEFENDANT
                                        PANDORA'S EXPERT DOMINIC DEL**
15     ALL ACTIONS                      **BENE**

16                                      Hearing Date:      October 28, 2024
17                                      Time:              9:00 a.m.
                                        Courtroom:         7C
18                                      Pretrial Conference: January 27, 2025
19                                      Trial Date:        February 11, 2025

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Preliminary Statement ............................................................................. 1

Challenged Opinions ................................................................................ 2

Legal Standard ......................................................................................... 5

Argument ................................................................................................... 6

   I.   Del Bene's Limited Knowledge, Skill, Experience, and Training are Insufficient to Qualify Him as an Expert. .......................................................... 6

   II.   Del Bene's Opinions Are Not Based on Sufficient Facts or Data ........................ 9

      A. Del Bene's Opinions about Recording Agreements ...................................... 10

      B. Del Bene's Opinions on the "Fraud" on the MLC ......................................... 12

   III.  Del Bene's Opinions Are Not Reliable .............................................. 14

   IV. Del Bene's Opinions Will Not Help the Trier of Fact to Understand the Evidence or to Determine a Fact in Issue. ........................................................ 17

   V.   Del Bene Offers Impermissible Legal Conclusions ............................................ 18

   VI. Del Bene Offers Impermissible Opinions as to Third-Parties' State of Mind ........................................................................... 20

Conclusion ................................................................................................ 20

**TABLE OF AUTHORITIES**

**The Supreme Court of the United States**

*Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)........................ 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ............................ passim

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997).............................................. 10

*Steward v. Abend*, 495 U.S. 207 (1990).......................................................... 18

**Cases**

*Anderson v. L. C. Smith Constr. Co.*, 276 Cal. App. 2d 436 (Cal. Ct. App. 1969) ............ 16

*Arrison v. Info. Res., Inc.*, C95-3554TEH, 1999 U.S. Dist. LEXIS 11471

    (N.D. Cal. July 15, 1999) ................................................................. 15

*Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828 (9th Cir. 2011) ........................... 8, 9

*Bunker v. Ford Motor Co.*, 640 F. App'x 661 (9th Cir. 2016).............................................. 7

*Bunker v. Ford Motor Co.*, No. 2:11-CV-01286-PMP-NJK,

    2013 U.S. Dist. LEXIS 119451 (D. Nev. Aug. 21, 2013) ................................................. 7

*Cano v. Cont'l Airlines, Inc.*, 193 F. App'x 664 (9th Cir. 2006).................................... 10, 12

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014)........................... 5, 17

*Crow Tribe of Indians v. Racicot*, 87 F.3d 1039 (9th Cir. 1996) ...................................... 18

*Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311 (9th Cir. 1995)................................. 14, 17

*Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600 Cir. 2002) ...................................... 10, 12

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,

    307 F.3d 197 (3d Cir. 2002)................................................................. 16

*Gable v. NBC*, 727 F. Supp. 2d 815 (C.D. Cal. 2010),

    *aff'd*, 438 Fed. Appx. 587 (9th Cir. 2011) .................................................. 14, 15

*Gilbert-Daniels v. Lions Gate Ent. Corp.*, No. 2:23-cv-02147-SVW-AGR,

    2023 U.S. Dist. LEXIS 218404 (C.D. Cal. Dec. 7, 2023) ........................................ 8

*Goomar v. Centennial Life Ins. Co.*, 855 F. Supp. 319 (S.D. Cal. 1994) ............................ 9

*Hein v. Merck & Co.*, 868 F. Supp. 230 (M.D. Tenn. 1994).............................................. 14

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002)............................................ 17

*In re LHC, LLC*, 497 B.R. 281 (Bankr. N.D. Ill. 2013) ......................................... 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab.
  Litig.*, 978 F. Supp. 2d 1053 (C.D. Cal. 2013) .................................................. 10

*Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993 (9th Cir. 2001) ................................. 5, 6

*Kauffman v. Manchester Tank & Equip. Co.*, No. 98-35218,
  1999 U.S. App. LEXIS 32173, at *6 (9th Cir. Dec. 3, 1999) ........................................ 9

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ........................................ 14, 17

*Lust by & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594 (9th Cir. 1996) ................. 6

*Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009) ..................................... 12

*Marvez v. Uproar Entm't*, No. 2:22-cv-02866-SVW-MRW, 2022 U.S. Dist. LEXIS
  225572 (C.D. Cal. Dec. 12, 2022) ...................................................................... 16

*Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529 (9th Cir. 1996)
  .................................................................................................................. 16

*Newton v. Diamond*, 349 F.3d 591 (9th Cir. 2003) ................................................... 15

*Ocg Energy, LLC v. Jarvan Shen*, No. 8:22-cv-01568-FWS-DFM, 2024 U.S. Dist. LEXIS
  32117 (C.D. Cal. Feb. 12, 2024) ....................................................................... 20

*Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565 (S.D.N.Y. 2016) ...... 16

*Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948 (9th Cir. 2011) ........................ 6

*Schall v. Suzuki Motor of Am.*, No. 4:14-CV-00074-JHM,
  2020 U.S. Dist. LEXIS 43119 (W.D. Ky. Mar. 12, 2020) ........................................ 19

*Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187 (9th Cir. 2007) .................................. 17

*Sybersound Records, Inc. v. UAV Corp.*, No. CV 05-5861-JFW (FMOx), 2006 U.S. Dist.
  LEXIS 117934 (C.D. Cal. Jan. 6, 2006) ............................................................ 16

*United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018) ............................................. 5

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006) ............................. 17

**Statutes**

17 U.S.C. § 102 ................................................................................................. 15

**Rules**

FEDERAL RULE OF EVIDENCE 702.................................................................................... 1, 5, 14

**Treatises and Other Authorities**

Passman, Donald, *All You Need to Know About the Music Business* (10th ed. 2019).........3

25 C.J.S. Customs and Usages § 45 .................................................................................. 15

Elton, Serona. (2019). Mechanical Licensing Before and After the Music Modernization Act. Journal of the Music and Entertainment Industry Educators Association. Vol 19, No.1 .................................................................................................................................3

PRELIMINARY STATEMENT

Pandora retained Del Bene to provide testimony on industry customs and practices in comedy, specifically stand-up comedy, including the creation and commercial exploitation of audio/audiovisual recordings of comedy performances, and how those practices differ from those in the music industry. (Del Bene Expt. Rept., at 1:7-11 (reattached as **Exhibit 1**).  Mr. Del Bene's Report and Rebuttal Report (attached as **Exhibit 2**) suffer, however, from the same deficiencies. Del Bene should be excluded entirely as an expert witness in this matter because his reports and deposition testimony violate FEDERAL RULE OF EVIDENCE 702.

Pandora has infringed on hundreds of literary Works owned by nine of the greatest comedians of all time, including by publicly performing and distributing them on its non-interactive digital radio service since 2011 and publicly performing, reproducing, and distributing the Works on its interactive streaming service since March 2017, without public performance nor reproduction licenses. *See* Plaintiffs' SUMF¶¶217-318;546-654;1110-1282;1428-1480;1717-1831;2541-2809;4427-5074;5428-5564;5759-5832. Pandora attempts to fog the lens by which its rampant willful infringement is clearly viewed by asserting that it is industry custom and practice not to pay for Literary Works (the "Works") in comedy, and/or that it had an implied license to use the Works. These assertions are clearly not borne out by the record.

Del Bene does not have the actual experience or knowledge tied to the historical and empirical custom and practice of the music industry which dates back over 70 years to rely upon. Mr. Del Bene first received a "certificate" from San Francisco State University in 2006. Ex.3, 18:6-19:10. Del Bene did not graduate college and did not take any courses on how comedians have historically been paid. *Id.*; *id.*, 67:13-20. He has never worked at a major record label or discussed practices in comedy with anyone who has about the very agreements he's opining on. *See* Ex.1; Ex.3, 30:3-9;103:17-21. His first job was at Sony Metreon, where he focused on retail and retail management. Ex.3, 19:23-20:13. He then worked at small comedy labels only from 2011 to present, including as a managing

producer from 2011-2014 at 'Rooftop Comedy' which was acquired by Audible, the audio book company and as Director of Comedy Productions at 'Audible' from 2014-2017. *Id.* at Ex. 3 at 23:16-24:10;26:12-23. Since 2018, he has worked at his self-created, independent label 'Blonde Medicine', where his focus was always on producing and distributing comedy albums. Ex.1 at 1.  While he says he "reviewed his recollection of conversations" with comedians to support some of his opinions (none are Plaintiffs) (Ex. 3 at 303:9-15), it's unclear what if anything he did to form his opinion spanning the entirety of the history of recorded comedy given his relative late entrance into the field.

Del Bene is not an attorney, and prior to this litigation, he was unaware of the existing agreements and the terms in them for comedians dating back over sixty years before 2011. Ex.3, 103:17-21.

In remarkable testimony, that is almost laughable, he resorts to claiming that attorneys who negotiated mechanical royalty provisions with major record labels for payment of royalties for Works somehow tricked those major record labels into including those provisions into those agreements Ex.3, 109:9,19-21, and essentially accused senior lawyers from major record labels and distributors of committing perjury in Declarations they submitted in this case because they were supposedly submitting them to avoid their own liability. Ex.3, 147:18-148:9.

Del Bene is impermissibly advocating. He disregards the last seventy years of empirical history of the custom and practice of the music industry as it relates to comedians and literary works as it appears to not work in favor of the entity that is paying him and has no knowledge (and did no investigation) to know what he is talking about.

### CHALLENGED OPINIONS

In addition to being unqualified, Del Bene conjures several opinions which are improper and must be excluded.

1. The foundational (flawed) opinion, is that unlike musical works, underlying written comedic material is "merged" with the "final product" *i.e.* the recording of the material. Allegedly, they are not treated separately nor paid for separately.

This is repugnant to deeply ensconced copyright law and belied by the agreements and royalty statements of the Plaintiffs and many other legendary comedians produced in this case demonstrating separate licensing and royalty payments for the underlying Works, including those from all major labels, and to this Court's earlier opinion holding that underlying comedic material is separate from the recorded performance of the material. As his "custom and practice" theories directly contravene fact and law, they must be excluded.

2. Corollary, but diametrically opposed to the foregoing, Del Bene discusses the 'license at the source model' upon which Pandora allegedly relies,[1] opining that a label gets the rights from the work's creator, passing said rights to the exploiter of the sound recording.[2] Del Bene does not even consider the possibility that the labels could choose not to, and simply ignored the record evidence of labels choosing not to pass through rights to the underlying material. Resting merely on *ipse dixit* (and improper state of mind opinion), his opinions will not assist the trier of fact.

3. Mr. Del Bene further attempts to offer "custom and practice" testimony about payment of royalties for Works to Comedians, but his testimony is limited to recent contracts, which he improperly (mis)interprets. He simply ignores any evidence to the contrary, including, as discussed above, the contracts which

---

[1] Begging the question: if routine and recording merge, why the need to ensure licensing for the underlying material at source?

[2] Comedians license their Works to record labels in much the same way as the music industry, where recording contracts have a standard "controlled composition" clause whereby the artist/writer grants the label an at source mechanical license for the distribution of musical compositions. *See e.g.,* Elton, Serona. (2019). Mechanical Licensing Before and After the Music Modernization Act. Journal of the Music and Entertainment Industry Educators Association. Vol 19, No.1. Passman, Donald, *All You Need to Know About the Music Business*, 264-65, (10th ed. 2019) ("[T]here's a controlled comp clause in every record deal," and "[S]treaming mechanicals are paid by the DSPs (not [the] record company), so the record companies no longer care how much [the artist] get[s]".

called for the separate payments of mechanical royalties to comedians. His focus is on recent comedy recording agreements, such as those from Comedy Dynamics, which post-date many of the Plaintiffs *by decades*, is improper. Contorting fact to meet conclusions, he opines these modern agreements do not provide for payment of literary work royalties (Ex.1, App'x.B). But they do. These, "net receipt" agreements, provide that Comedy Dynamics pays to the comedian a percentage of everything it collects—inclusive of the underlying Materials. Del Bene admits this would include royalties for Works (Ex.3, 76:25-77:5) but baldly asserts that collecting royalties for Works is improper,  and claims that Comedy Dynamics' Administrator, Sunflower Entertainment, supposedly hatched a  "scheme" to do so (his only evidence of such a "scheme" is completely based on hearsay from an unsworn, unverified conversation Del Bene supposedly had with a former Comedy Dynamics employee (Ex.3, 72:3-15)).

4. Del Bene alleges that recorded spoken word focuses predominately on the album, not the individual track. In a perfunctory blurb, Del Bene reiterates his flawed merger theory that the "routines are meant to flow together", and that comedians take care to construct the overall set or performance. (Ex.1 at 60-61). These are nothing more than incomplete lay observations masquerading as expert testimony. Offering no insight into the process of how comedians create their material, and implying they create their material as one piece (belied by the Plaintiffs' testimony), Del Bene opines that his label operates as if the sixty-minute routines were one special. Anecdotes about what *his* label does cannot change that Pandora exploits and pays royalties on the tracks individually. His opinion on this matter is willfully incomplete, and fundamentally flawed.

5. Del Bene also attempts to improperly opine on others' state of mind or intent, which is patently improper. The two most notable examples are: (1) Tracie Parry, of Warner Music Group, and MaryLynne Drexler of Alternative Distribution

Alliance, who Mr. Del Bene basically accuses of perjury stemming from their Declarations where they explain that neither WMG nor ADA passed-through any rights to the Works to Pandora; and (2) downplaying the import of other DSPs that have entered into licenses with Word Collections for the Works calling that just a cheap way to avoid litigation risk. These types of attacks are patently improper state of mind testimony, which would invade the province of the jury.

In sum, Mr. Del Bene does not have sufficient experience (or any actually) to offer the opinions he does. Mr. Del Bene's opinions are comprised of mere say-so conclusions—often impermissible ones—not grounded upon any stated or reliable expert methodology, or upon any business experience relevant to the questions at hand.

## LEGAL STANDARD

Rule 702 provides that expert testimony is admissible only if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 n.2 (9th Cir. 2014). The Rule imposes an obligation on courts to act in "a gatekeeping role…." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert I*"). As "expert testimony can be both highly persuasive and difficult for a lay jury to evaluate, the importance of this gatekeeping function cannot be overstated." *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018).

This is because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001) (quoting *Daubert I*, 509 U.S. at 595). And "[b]ecause of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than lay witnesses." *Id*. Additionally, "care must be taken to

assure that a proffered witness truly qualifies as an expert, and that such testimony meets the requirements of Rule 702" because where a witness is "cloaked with the mantle of an expert" they are allowed to testify based on "hearsay information" and "generalized 'opinions'" rather than "first-hand knowledge" and their opinion is "likely to carry special weight with the jury." *Jinro Am., Inc.*, 266 F.3d at 1004.

**ARGUMENT**

Pandora as "the proponent of the expert who has the burden of proving [Del Bene's] admissibility." *Lust by & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996). Here, Pandora cannot meet its burden and Del Bene's reports and testimony must be excluded in their entirety.

## I. Del Bene's Limited Knowledge, Skill, Experience, and Training are Insufficient to Qualify Him as an Expert.

Del Bene does not qualify as an expert due to his lack of knowledge, skill, experience, and training. He does not possess the scientific, technical, or other specialized knowledge necessary to provide relevant and reliable expert opinions regarding custom and practice in the comedy industry.

Del Bene has only "been working in the stand-up comedy industry since 2011," (Ex.1 at 1:18), and demonstrates no personal expertise regarding the industry prior thereto. His comedy industry experience is general, and does not pertain directly to the issues at bar. Therefore, his opinions express uncertainty and a lack of understanding and foundation regarding the issues on which he seeks to opine. For instance, Del Bene's waffled during his deposition on stating affirmatively whether there has been a history of separate licensing of rights to material other than sound recordings in comedy; he stated he did not "think" that there was,[3] and he ultimately demonstrated he did not know the relevant

---

[3] "[K]nowledge connotes more than subjective belief or unsupported speculation." *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 952 (9th Cir. 2011) (affirming striking material portions of proposed expert's declaration) (quoting *Daubert I*, 509 U.S. at 590).

history. (Ex.3, 35:11; 50:20-22).[4] This lack of knowledge of the relevant history of copyright licensing in comedy renders him unqualified, and requires exclusion, or at the very least limitation to within the period since 2011.

This result is contemplated by the case of *Bunker v. Ford Motor Co.*, 640 F. App'x 661, 662 (9th Cir. 2016) ("*Bunker II*"), where a proposed expert was found "not 'qualified'", *id.*, to opine on brake shift interlock systems and excluded despite an asserted "thirty years of experience as a consultant, inspector, and tester in the automotive industry, … fifteen years of experience as a forensic automotive consultant, and … expertise in brake systems, transmissions, and mechanical defects." *Bunker v. Ford Motor Co.*, No. 2:11-CV-01286-PMP-NJK, 2013 U.S. Dist. LEXIS 119451, at *15 (D. Nev. Aug. 21, 2013) ("*Bunker I*"). In the proposed expert's deposition, similar to this case, "he testified that he did not know the history of such systems, that only a few of his prior expert testimony engagements about automobiles related to transmission issues, and that none of his previous engagements related to brake shift interlock systems specifically." *Id*. The facts are worse for Del Bene, who, in addition to not knowing the "history of such" rights, licensing, and payment (which is more damaging in this case, as history is what establishes the foundation of a *custom* and practice), has never had any "expert testimony engagements", let alone any "related to [custom and practice in the comedy industry] specifically." *Bunker II*, 640 F. App'x at 662; *see* (Ex.1, 10:8-10). Contributing to the Ninth Circuit's decision, the proposed expert in *Bunker* stated he "did independent research regarding other vehicles," *Bunker I*, 2013 U.S. Dist. LEXIS 119451, at *16, but he did not conduct a survey regarding other manufacturers using similar systems. *Bunker II*, 640 F.

---

[4] For example, when asked whether he agreed with a statement by Adam Parness that literary work rights are separate from sound recording rights in comedy, and the literary rights are copyrightable and licensable separately from a sound recording, Del Bene stated he did not generally disagree with the statement, and on a follow up question stated he had no specific objection to that statement, only that he did not "think" that there had been a history of separate licensing of material outside sound recordings, before doubling back and changing his testimony. (Ex.3, 49:18-52:3).

App'x at 662. Similarly, Del Bene simply reviewed usage and spin data from certain websites and distributors (limited to the past three years) (*see* Doc. No. 193), a few law review and comedy articles, and did not survey any major label about whether they historically pay mechanical royalties for literary works. (Ex.1 at 4; Ex.3, 39:13). Del Bene must be excluded.

"[T]o determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." *Gilbert-Daniels v. Lions Gate Ent. Corp.*, No. 2:23-cv-02147-SVW-AGR, 2023 U.S. Dist. LEXIS 218404, at *4 (C.D. Cal. Dec. 7, 2023). An expert may only testify on matters "within the reasonable confines of his subject area." *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011). Del Bene "cannot testify as an expert witness unless he 'is qualified as an expert *in the pertinent art*[.]'" *Sport Dimension, Inc. v. Coleman Co.*, No. CV 14-00438 BRO (MRWx), 2015 U.S. Dist. LEXIS 192011, at *7 (C.D. Cal. Jan. 29, 2015) (emphasis kept)); *see id*. at *6 ("'[I]t is an abuse of discretion to permit a witness to testify as an expert on the issue[] of noninfringement … unless that witness is qualified as an expert in the pertinent art.' As the Federal Circuit has explained, admitting testimony from a person with no skill in the pertinent art serves only to cause mischief and confuse the factfinder.'")

Del Bene simply does not qualify as a general expert regarding the comedy industry or customs and practices of comedic literary Work licensing. He is testifying outside of any reasonable confines of his subject area, which requires exclusion. *Avila*, 633 F.3d at 839; *Sport Dimension, Inc.*, 2015 U.S. Dist. LEXIS 192011, at *14, 17-18 (excluding expert due to insufficient qualification in the 'pertinent art' where proposed expert had forty-four years of industrial product design experience, concluding that despite experience "designing buoyant devices, he does not have any work experience in connection with *wearable* buoyant devices") (quotations omitted). When questioned, Del Bene voluntarily described what he felt was his role at Audible from t 2014 to 2017 as that of just a producer,

without mentioning any rights licensing, royalty administration, or other responsibilities, stating: "[W]henever the executives would come from Newark to say "hi," they would always wonder, "What do you do?" And I would say, "I produce stand-up comedy albums and specials for third-party distribution[.]" (Ex.3, 28:14-18).4 He states in his report that he has helped comedians for at least the past three years to understand their agreements, royalties, and rights, but without any further explanation or elaboration. (Ex.1 at 2:8-11). The chart Del Bene annexes as Appendix D, meant to explain such matters, is, in effect, gibberish. Del Bene has far less experience than the proposed experts in the cases above, who also had much closer experience to the 'pertinent art' they proposed to testify on than Del Bene does. Therefore, he must be excluded similarly.

Where an expert is excluded "for lack of qualification", there is "no need to reach whether [their] conclusions are reliable." *Avila*, 633 F.3d at 839. Nonetheless, Plaintiffs address the reliability of his proposed opinions as well the other elements of admissibility which render his testimony and reports inadmissible.

## II.    Del Bene's Opinions Are Not Based on Sufficient Facts or Data

Expert opinion is insufficient if it "is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable[.]" *Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993); *Kauffman v. Manchester Tank & Equip. Co.*, No. 98-35218, 1999 U.S. App. LEXIS 32173, at *6 (9th Cir. Dec. 3, 1999). Again, it is unclear what Del Bene's actual opinion is, as he waffles and evades during his deposition when asked pointed questions as to what his opinion is and what it is based upon.[5] Even assuming his opinion is that historically, literary works have never been licensed separately, this is not supported by sufficient facts to validate it. Indeed, it is contradicted by the indisputable facts, rendering his opinions unreasonable.

---

[5] *See Goomar v. Centennial Life Ins. Co.*, 855 F. Supp. 319, 326 (S.D. Cal. 1994) ("If proffered expert testimony is no more than unsupported speculation, the trial judge should exclude it.") (citing *Daubert I*, 113 S. Ct. at 2796).

## A. Del Bene's Opinions about Recording Agreements

The record is replete with numerous contracts and royalty statements showing literary works being licensed and paid separate royalties throughout the history of comedy dating back to the beginning of the industry. SUMF¶¶6034-6040. Indeed, even Del Bene admits that many of the Plaintiffs, and many of the other greatest comedians of all time have such provisions in their agreements and identifies those in his Report. Ex.1, App'x. B. Despite this, he still opines that it is a custom and practice in the comedy industry not to license and pay separate royalties for underlying literary works. Del Bene's opinions on custom and practice must be excluded as contradicted by indisputable record facts. *Brooke Grp.*, 509 U.S. at 242; *Rebel Oil Co.*, 51 F.3d at 1436.  He even admitted that those agreements he initially claimed do not call for payment of literary work royalties actually do as they are net receipt agreements. Ex.3, 76:25-77:5.

Del Bene relies upon his naked *ipse dixit* and unverified communications throughout his opinions, particularly when asked how he 'knew' none of the major labels historically paid comedic literary work royalties, and by extension that he thought they had never been paid at all. The Ninth Circuit has repeatedly held this is grounds for exclusion. *Cano v. Cont'l Airlines, Inc.*, 193 F. App'x 664, 666 (9th Cir. 2006) ("As we have previously recognized, 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.' Appellants have provided little more, and we therefore cannot say that the district court's exclusion of [expert's] testimony was an abuse of discretion.") (quoting *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002)); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (quoting *Joiner*, 522 U.S. at 146, as "explaining that expert opinions cannot be 'connected to existing data only by the ipse dixit of the expert'").

The following exchange from his deposition is illustrative of this principle's application here and why Del Bene must be excluded:

Q. How do you know that none of those companies [(the major labels)] have ever paid a royalty to a comedian for the exploitation of their literary works beyond paying them a sound recording royalty? How do you know that?

A. Because that's not how comedy is licensed.

Q. How do you know that those companies have never done so?

A. Because I've done hundreds of agreements and that's not how it works.

Q. How do you know that those companies have never done so, sir?

A. Because there wouldn't – there's not a means to do it.

Q. You've never spoken to anybody at Warner, Universal, or Sony about whether they pay the mechanical-type royalty for literary works, have you?

A. No.

…

Q. Is it your testimony – "yes" or "no" -- that there has never been a royalty paid to a comedian for the exploitation, sale, or license of literary works beyond what a record label or distributor pays for a sound recording royalty? "Yes" or "no"?

A. My testimony is that that's not how it works, and so there couldn't be.

Q. And your basis for saying "that's not how it works" is based on your sole job at -- your sole job at Rooftop Comedy from 2011 to 2018 and your work -- and your company, Blonde Medicine, from 2018 to the present; correct?

A. It's based on my experience in both my time in music labels and for the last 15 years at comedy labels.

(Ex.3, 38:18-39:13; 40:10-41:13) (cleaned up).

Del Bene even admits to reviewing evidence to the contrary of his opinions like the deposition testimony of Sandy Fox who testified that he negotiated on behalf of Jeff Foxworthy, and others, record deals that included mechanical royalty provisions, but ignored them as "improper," claiming "this is not how recording deals work by people

1  who are drafting them within the context of the industry." Ex.3, at 105:4-112:17 (quotation
2  from 109:9,19-21); *see also*, 54:14-55:9; 57:4-11.

3      Taking aside the absurd premise that Jeff Foxworthy's recording agreements,
4  negotiated by competent counsel with a major record label (Warner Bros. Records) are not
5  within the "context" of the recorded comedy industry, Del Bene cannot provide ***any***
6  evidence to support his opinion that these agreements were "improper".

7      Ignoring evidence to the contrary while providing mere bald assertions for an
8  opinion is exactly the type of 'that's how it is' or 'because I said so' testimony that is
9  precisely the definition of *ipse dixit*. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 930 (9th
10  Cir. 2009) (Bybee, J., concurring in part and dissenting in part) ("This purported
11  explanation is a non-explanation -- an *ipse dixit* or 'because I said so' edict."). Here, Del
12  Bene cites his own credentials, disclaims reliance on agreements other than the limited
13  agreements he worked on, and provides no support for his 'because I said so' style of
14  opinion, which opinion vacillates in any event. Del Bene's providing little more than this
15  *ipse dixit* is grounds for exclusion. *Cano*, 193 F. App'x at 666; *Domingo*, 289 F.3d at 607.

16              **B. Del Bene's Opinions on the "Fraud" on the MLC**

17      Del Bene opines that Bluewater "fraudulently" tried to pass off literary works as
18  musical compositions with the MLC. The reasons that this is not fraudulent (or even
19  improper) are discussed at length in Plaintiffs' Motion for Partial Summary Judgment and
20  Opposition to Pandora's Motion for Summary Judgment. However, for instant purposes,
21  what is operative is that Del Bene ***did not even review the submissions Bluewater sent to***
22  ***the MLC to render this opinion***. As admitted at deposition:

23      Q:    You have opined that it was improper – and you even used the word
24            "fraudulent" – for what Bluewater did with regard to certain of the spoken
25            word copyrights it submitted claims for to the MLC; right?
26      The Witness: As I understand it, yeah.
27      Q:    Did you review the actual spreadsheet that Mr. Roselli prepared and
28            submitted to the MLC?

A:    No.

Q:    So as you sit here today, you cannot say one way or the other whether there is any information included in that spreadsheet that was false?

A:    As I haven't seen the spreadsheet, I couldn't say one way or the other. (Ex.3, 339:20-340:12 (objections omitted).

Instead, Del Bene relies on conversations he had with an unnamed MLC employee, who likely could not bind the company, that was not testifying under oath (despite Pandora subpoenaing a 30(b)(6) deposition of the MLC). Ex.3, 340:13-341:4. It is important to note that Del Bene sets up a hypothetical unlike the fact pattern in evidence. To briefly recap (as the issue has been thoroughly briefed), Bluewater did not "register" spoken word copyrights with the MLC, but rather made claims to the underlying material for sound recordings which the MLC had populated in the claiming portal. SUMF¶¶6075-6083. Except Del Bene posed the following hypothetical to the MLC: "as someone with an interest in stand-up comedy sound recordings, whether the comedians who are performing in those sound recordings should be ***registering*** their works with the MLC. And they said it would be improper for comedy works to be ***registered and collected and paid out via the MLC***…." Ex.3, 340:20-341:2.

*Even if* this unnamed MLC employee had requisite authority to justify Del Bene's opinion that what Bluewater did was ***fraud*** (setting aside that he cannot even opine to this legal conclusion, *see infra*), said employee was answering the wrong question ***and*** didn't even claim that such behavior would be "fraud." *Id*. Undaunted, and lacking *any* evidence to support his improper legal conclusion, Del Bene opines that Bluewater's conduct was fraudulent. At deposition, Del Bene completely recanted, admitting there's "nothing wrong with" truthfully identifying oneself as administrator of spoken word copyrights to MRI (or by extension, to the MLC). Ex.3, 336:2-19. Given Del Bene's recanting, bolstered by the fact that allegations of "fraud" are not borne out by the record – the record Del Bene admits that he did not review – his opinions must be excluded.

### III.    Del Bene's Opinions Are Not Reliable

"*Daubert*'s requirement of reliability extend[s] to all expert testimony, whether based on scientific, technical or other specialized knowledge." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, No. CV 96-3281 MMM (RCx), 2003 U.S. Dist. LEXIS 14438, at *15 (C.D. Cal. Aug. 8, 2003) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999)). The reliability requirement is evaluated based on a number of factors, and "[w]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *City of Pomona*, 750 F.3d at 1043 n.2; *Kumho Tire*, 526 U.S. at 153.

"While declining to set forth a 'definitive checklist or test,' the [Supreme] Court did list several factors federal judges can consider in determining whether to admit expert scientific testimony under Fed. R. Evid. 702: whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*") (quoting *Daubert I*). Courts also consider whether the expert proposes to testify about matters growing naturally out of research they conducted independent of the litigation or whether they developed their opinions expressly for the purposes of testifying, *id.* at 1317, whether the underlying data is untrustworthy for hearsay or other reasons, whether the underlying data exclude other causes to a reasonable confidence level, what the leading professional societies say about this specialty or this type of testimony, how much of the technique is based on the subjective analysis or interpretation of the alleged 'expert', and the judge's experience and common sense. *Hein v. Merck & Co.*, 868 F. Supp. 230, 231 (M.D. Tenn. 1994).

An expert "cannot purport to testify as to a custom and practice without first establishing that such a practice existed." *Gable v. NBC*, 727 F. Supp. 2d 815, 830 (C.D. Cal. 2010), *aff'd*, 438 Fed. Appx. 587 (9th Cir. 2011). "Proof of matters pertaining to custom is not admissible before the existence of the custom has been established by the

evidence." *Id*. (quoting 25 C.J.S. Customs and Usages § 45). Where this is not established, "expert testimony is not reliable." *Id*. Here, Del Bene has not and cannot establish that such a practice exists.

Again, Del Bene cannot establish that the practice of never paying comedians for their underlying literary works exists: there is overwhelming record evidence of agreements and royalty statements dating back to the inception of the recorded comedy industry to the contrary, demonstrating that comedians have been paid for literary works separate and apart from the sound recordings. The custom and practice that comedians have not been paid for their literary works has not been established because it simply cannot be established—it does not exist. Therefore, Del Bene's "testimony is not reliable" and his opinion related to "matters pertaining to custom is not admissible[.]" *Gable*, 727 F. Supp. 2d at 830; *cf. Arrison v. Info. Res., Inc.*, C95-3554TEH, 1999 U.S. Dist. LEXIS 11471, at *5 (N.D. Cal. July 15, 1999) ("To be legally binding upon the parties, a custom or usage must be certain, continuous, and uniform. … If the evidence is contradictory and the custom is not established by proof of certain and uniform usage, it is insufficient to establish the validity of the custom.").

In assessing reliability "[t]he inquiry is whether the inference to be drawn from the expert's opinion is 'reasonable given the substantive law which is the foundation for the claim or defense.'" *Rebel Oil Co.*, 51 F.3d at 1436. Del Bene's opinion is clearly unreasonable, as the alleged custom and practice he purports to opine on is repugnant to established copyright law, and therefore it must be excluded.

It is axiomatic that "[s]ound recordings and their underlying compositions are separate works with their own distinct copyrights." *Newton v. Diamond*, 349 F.3d 591, 592-93 (9th Cir. 2003) (citing 17 U.S.C. § 102(a)(2), (7)); Doc. No. 83, p.2 n.1 ("Similar to recorded music, a performance of a comedic routine and the underlying routine itself are two distinct works under the Copyright Act."). "Mechanical royalties are paid to copyright holders to compensate them for the use of an underlying work, such as a composition, when the work is reproduced for sale" pursuant to a license. *Marvez v. Uproar Entm't*, No. 2:22-

cv-02866-SVW-MRW, 2022 U.S. Dist. LEXIS 225572, at *6 (C.D. Cal. Dec. 12, 2022). Stating that there is a custom and practice of disregarding Congress' express intent in the Copyright Act and these and other attendant provisions makes Del Bene's opinion not simply unreasonable, but completely untenable as a matter of law.

It is generally a "principle that custom or usage cannot overcome a rule of law…." *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 536 (9th Cir. 1996). But more specifically, and quite fatally, "[c]ustom and practice … is no authority to disregard or trump the … the provisions of the Copyright Act." *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 211-12 (3d Cir. 2002). "Custom and usage may not be invoked to relieve [a] defendant of the clear-cut obligations imposed by the application of the statute." *Id.* (quotations and citation omitted). This Court and others have held the same. *Sybersound Records, Inc. v. UAV Corp.*, No. CV 05-5861-JFW (FMOx), 2006 U.S. Dist. LEXIS 117934, at *19 (C.D. Cal. Jan. 6, 2006) (where an "industry may have a custom and practice[,]" and "Copyright law is not in accord," the law controls); *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 575 (S.D.N.Y. 2016) ("[E]vidence of custom and course of dealing cannot displace rights conferred by the copyright laws."). These decisions are undergirded by the logic that "[a] defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble." *Dun*, 307 F.3d at 211. A defense of industry custom and practice here is legally unsustainable, *a fortiori*, Del Bene's testimony to support such a defense is foreclosed.[6]

*Finally*, essential elements of reliability include the requirement that the testimony is (i) the product of reliable principles and methods and (ii) the expert has reliably applied such principles and methods to the facts of the case. *City of Pomona v. SQM N. Am. Corp.*,

---

[6] In addition, "[t]he following of a custom that is contrary to law or an ordinance is not an excuse for the infraction, nor can it minimize the liability of the actor…. A usage in violation of the law can never grow into a valid custom." *Anderson v. L. C. Smith Constr. Co.*, 276 Cal. App. 2d 436, 444 (Cal. Ct. App. 1969)

750 F.3d 1036, 1043 n.2 (9th Cir. 2014). Nowhere in Mr. Del Bene's reports or testimony does Mr. Del Bene sufficiently set forth reliable principles and methods upon which his opinions are based and how he applied such principles and methods to the facts of the case.

### IV.   Del Bene's Opinions Will Not Help the Trier of Fact to Understand the Evidence or to Determine a Fact in Issue.

"Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). "Expert opinion testimony is relevant if the knowledge underlying it has a 'valid connection to the pertinent inquiry.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (quoting *Kumho Tire*, 526 U.S. at 149). To be relevant, the proposed expert testimony must "logically advance[] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315.

"In elucidating [this] requirement of Rule 702, *Daubert* [*I*] stressed the importance of the 'fit' between the testimony and an issue in the case[.]" *Id*. at 1320. "Here, the pertinent issue is" liability. *Id*. "In assessing whether the proffered expert testimony 'will assist the trier of fact' in resolving this issue, we must look to the governing substantive standard, which in this case is supplied by [copyright] law." *Id*. Defendants cannot demonstrate they are not liable, relying instead on alleged custom and practice and/or purported implied licenses to excuse their infringement. Del Bene purports to testify regarding custom and practice in the comedy industry, however, copyright law does not permit such proof, and therefore Del Bene must be excluded on this ground.

Additionally, "[e]xpert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert I*, 509 U.S. at 591). Del Bene's report is littered with unrelated and gratuitous opinions. For instance, the section titled "The Historic Licensing Practices in the Comedy Industry Serve Comedians Well" has nothing to do with the issues in this case, but is merely an attempt to provide a backing rationale for what Del Bene and Pandora wish the law was. Whether an alleged historic licensing practice serves comedians

well is irrelevant to the issue of whether one exists or not; providing policy reasons for why his purported licensing practice is good does nothing to assist the trier of fact and only serves to confuse the fact finder.

## V. Del Bene Offers Impermissible Legal Conclusions

Finally, Del Bene purports to give opinions that are simply legal conclusions that must be excluded. *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). For instance, as discussed above, opining that written material is merged with its respective individual performance, (Ex.1, 5:11-13), is to say that a composition is merged with a sound recording, which is not only legally incorrect (discussed above) but impermissible expert opinion as it is a legal conclusion. Not only has this Court already ruled that there is no such 'merger' (Doc. No. 83, p.2 n.1) but the Supreme Court has *twice* rejected this "merger" theory. *Steward v. Abend*, 495 U.S. 207, 212 (1990); *Petrella*, *Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 673-687 (2014). As discussed in Plaintiffs' Opposition to Pandora's Motion for Summary Judgment (Doc. No. 396), both cases dealt with the rights to the underlying material to motion pictures, and in both cases, the Supreme Court rejected arguments that the underlying material merged with the motion picture and that licenses to the underlying material must be acquired for continued exploitation after a reversion of rights.  Furthermore, as discussed in n.2, the music industry licenses musical compositions "at source" in recording agreements, but Pandora admits it must get separate mechanical licenses for musical compositions and cannot rely on sound recording licenses. SUMF¶5857. The issue is whether Pandora received pass through licenses from distributors, they did not, so the contracts between comedians and their record labels, just like musical recording agreements, are irrelevant.

As discussed above, Del Bene also on numerous occasions opines that Bluewater and Sunflower music "fraudulently" tried to pass off literary works as musical recordings. Ex.1, ¶¶168-70, Ex.2 at ¶¶48-9;51-53. Again, this is not borne out by the record, but even if it were, this amounts to an improper legal conclusion–one that is highly prejudicial to Plaintiffs. *Schall v. Suzuki Motor of Am.*, No. 4:14-CV-00074-JHM, 2020 U.S. Dist. LEXIS

18

43119, at *7 (W.D. Ky. Mar. 12, 2020)  ("Also, [the expert] may not opine that [defendant's] conduct was criminal or fraudulent."); *In re LHC, LLC*, 497 B.R. 281, 305 n.19 (Bankr. N.D. Ill. 2013) (same). Mr. Del Bene's opinions in this regard must be excluded.

The matter is compounded when *Pandora's own counsel* examined Mr. Del Bene, explicitly asking him to provide legal conclusions with tellingly leading questions. By Ms. Aviki:



Ex.3, 343:1-345:20. These improper legal conclusions must be excluded.

## VI.    **Del Bene Offers Impermissible Opinions as to Third-Parties' State of Mind**

"Intent, motive, or state of mind, and his other opinions in the same vein, are also improper expert testimony that invades the province of the jury." *Ocg Energy, LLC v. Jarvan Shen*, No. 8:22-cv-01568-FWS-DFM, 2024 U.S. Dist. LEXIS 32117, at *19 (C.D. Cal. Feb. 12, 2024). Del Bene does just that. First, he attempts to downplay the import of Tracie Parry's declaration and communications with Word Collections regarding whether or not Warner Music Group passed on rights to the underlying literary works in its sound recording license. Del Bene claims baldly that Ms. Parry was just trying to avoid liability from Warner. Ex.3, 135:25-136:20. He all but opines that Ms. Parry committed perjury when she signed her declaration confirming the same position taken her pre-suit communications with Word Collections. Ex.3, 147:18-148:9. He has no factual basis  to address Ms. Parry's state of mind.

Del Bene likewise has unnaturally prescient insight into the motivations behind the streaming companies which entered into agreements with Word Collections, calling them merely a "response to litigation threats". Ex.3, 312:22-315:23. But he admitted that he did not speak to anyone at these streaming companies, did not review any emails regarding the negotiations of these license agreements, and had no knowledge (first-hand or from review of the record) to support his opinions. *Id*. Again, when pressured, he admitted, "I don't allege to know precisely what they thought" and that it's just his "view" and "opinion." *Id*.

### Conclusion

In conclusion, for the reasons stated above, Del Bene must be excluded as an expert witness in the entirety in this case.

DATED: September 30, 2024

KING & BALLOW

By: /s/ *Richard S. Busch*
Richard S. Busch

Attorneys for Plaintiffs *Yellow Rose Productions, Inc.; Main Sequence Ltd.; Ron White, Inc.; Robin Williams Trust; Brave Lion, Inc.; Nick Di Paolo; Mary Reese Hicks; Lewis Black; and George Lopez*

21

REDACTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO EXCLUDE DEFENDANT PANDORA'S EXPERT DOMINIC DEL BENE
Case No. 2:22-cv-00809-MCS-MAR

1

## CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Plaintiffs, certifies that this brief contains

3 6987 words, which complies with the word limit set by L.R. 11-6.1.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO EXCLUDE DEFENDANT PANDORA'S EXPERT DOMINIC DEL BENE
Case No. 2:22-cv-00809-MCS-MAR